Monique Olivier (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-0333
Facsimile:   (415) 449-6556

Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
KOSINSKI + THIAGARAJ, LLP
351 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 230-2860
Facsimile: (415) 723-7099

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUILIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>VIRGIN AMERICA, INC.; and DOES 1 to 10, inclusive,<br><br>           Defendants. | **CLASS ACTION**<br><br>Case No.  3:15-cv-02277<br><br>**PLAINTIFFS' REPLY TO DEFENDANT VIRGIN AMERICA'S OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Date:       October 18, 2016<br>Time:      2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:    Hon. Jon S. Tigar |

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION .........................................................................................................1

II.   ARGUMENT..............................................................................................................1

    A.  Virgin Mischaracterizes the Evidence to Inaccurately
        Portray Its Pay Policies and Practices........................................................................1

    B.  Virgin's Contention that the Class Is Not Ascertainable
        Is Based Upon a Fundamental Misreading of the Law.............................................5

    C.  The Proposed Class Is Sufficiently Numerous, and
        Plaintiffs Are Adequate Representatives with Typical Claims..............................10

    D.  Common Questions Predominate Over Any Individualized Inquiries...................10

        1.   Whether Virgin Fails to Pay Flight Attendants for All Hours
            Worked and Fails to Pay Overtime Are Common and
            Predominant Issues....................................................................................11

        2.   Whether Virgin's Uniform Practice Fails to Provide Meal
            and Rest Breaks to Flight Attendants Is a Common, Predominate Issue....13

    E.  Plaintiffs' Proposed Trial Plan Demonstrates the Manageability
        of this Action...........................................................................................................14

III.  CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Zep Inc.*,
No. 13-cv-00563-WHO, 2014 U.S. Dist. LEXIS 120315 (N.D. Cal. Aug. 27, 2014) ................ 7

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................ 11

*Anderson v. CRST Int'l*,
No. CV 14-368 DSF (MANx), 2015 U.S. Dist. LEXIS 45161 (C.D. Cal. Apr. 1, 2015) .......... 10

*Autozone, Inc.*,
No. 3:10-md-02159-CRB, 2016 U.S. Dist. LEXIS 105746 (N.D. Cal. Aug. 10, 2016) ........... 14

*Blackwell v. Skywest Airlines*,
245 F.R.D. 453 (S.D. Cal. 2007) ................................................................................ 6

*Booher v. JetBlue Airways Corp.*,
No. ?DOCKET?, 2016 WL 1642929 (N.D. Cal. Apr. 26, 2016) .................................... 12

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ..................................................................................... 13, 14

*Brown v. Am. Airlines, Inc.*,
285 F.R.D. 546 (C.D. Cal. 2011) ................................................................................ 6

*Brown v. Fed. Express Corp.*,
249 F.R.D. 580 (C.D. Cal. 2008) .............................................................................. 14

*Clear-View Techs., Inc. v. Rasnick*,
No. 13-cv-02744-BLF, 2015 U.S. Dist. LEXIS 72601 (N.D. Cal. June 3, 2015) ................ 4, 15

*Coleman v. Jenny Craig, Inc.*,
No. CASE NO. 11cv1301-MMA (DHB), 2013 U.S. Dist. LEXIS 176294 (S.D. Cal. Nov. 27,
2013) .................................................................................................................. 12

*Cotter v. Lyft, Inc.*,
60 F. Supp. 3d 1059 (N.D. Cal. 2014) ......................................................................... 8

*Flores v. Cvs Pharm.*,
No. 2:07-cv-05326-JHN-Ex, 2010 U.S. Dist. LEXIS 118098 (C.D. Cal. Sept. 7, 2010) .......... 12

*Hanni v. Am. Airlines, Inc.*,
No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410 (N.D. Cal. Dec. 15, 2010) ....................... 6

*Jimenez v. Allstate Ins. Co.*,
765 F.3d 1161 (9th Cir. 2014) .................................................................................. 15

*Kamar v. Radio Shack Corp.*,
254 F.R.D. 387 (C.D. Cal. 2008) .............................................................................. 11

*Koike v. Starbucks Corp.*,
  No. No C 06-3215 VRW, 2008 U.S. Dist. LEXIS 115164 (N.D. Cal. June 20, 2008) ............ 12

*Leyva v. Medline Indus.*,
  716 F.3d 510 (9th Cir. 2013) ..................................................................... 13

*Lilly v. Jamba Juice Co.*,
  308 F.R.D. 231 (N.D. Cal. 2014) ................................................................. 5

*Minns v. Adv. Clinical Empl. Staffing L.L.C.*,
  No. 13-cv-03249-SI, 2015 U.S. Dist. LEXIS 71946 (N.D. Cal. June 2, 2015) ........................ 15

*Oman v. Delta Air Lines, Inc.*,
  153 F. Supp. 3d 1094 (N.D. Cal. 2015) ........................................................... 12

*Priyanto v. M/S Amsterdam*,
  No. CV 07-3811 AHM (JTLx), 2009 U.S. Dist. LEXIS 7849 (C.D. Cal. Dec. 23, 2009) ........ 10

*Quezada v. Con-Way Freight, Inc.*,
  No. C 09-03670 JSW, 2014 U.S. Dist. LEXIS 5922 (N.D. Cal. Dec. 16, 2014) ...................... 11

*Ricaldai v. US Investigations Servs., L.L.C.*,
  878 F. Supp. 2d 1038 (C.D. Cal. 2012) ........................................................... 14

*Rodman v. Safeway, Inc.*,
  No. 11-cv-03003-JST, 2014 U.S. Dist. LEXIS 31438, 2014 WL 988992
  (N.D. Cal. Mar. 10, 2014) .......................................................................... 5

*Russo v. APL Marine Servs., Ltd.*,
  135 F. Supp. 3d 1089 (C.D. Cal. 2015) ........................................................... 9

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
  663 F. Supp. 2d 883 (C.D. Cal. 2009) ......................................................... 8, 9

*See's Candy Shops, Inc. v. Superior Court*,
  210 Cal. App. 4th 889 (2012) ..................................................................... 7

*Stockwell v. City & Cty. of S.F.*,
  749 F.3d 1107 (9th Cir. 2014) ................................................................... 12

*Sullivan v. Oracle Corp.*,
  51 Cal. 4th 1191 (2011) ..................................................................... 6, 7, 8

*Sullivan v. Oracle Corp.*,
  662 F.3d 1265 (9th Cir. 2011) ................................................................... 7

*Taylor v. Lockheed Martin Corp.*,
  78 Cal. App. 4th 472 (2000) ..................................................................... 10

*Tidewater Marine W., Inc. v. Bradshaw*,
  14 Cal. 4th 557 (1996) ....................................................................... 6, 7, 8

*Tyson Foods, Inc. v. Bouaphakeo,*
  136 S. Ct. 1036 (2016) .............................................................................................. 13, 15

*Vaquero v. Ashley Furniture Indus.,*
  824 F.3d 1150 (9th Cir. 2016) ............................................................................................ 11

*Villa v. United Site Servs. of Cal., Inc.,*
  No. 5:12-CV-00318-LHK, 2012 U.S. Dist. LEXIS 162922 (N.D. Cal. Nov. 13, 2012) ........... 14

*Villalpando v. Exel Direct Inc.,*
  No. 13-3091-JCS, 2016 U.S. Dist. LEXIS 53773 (N.D. Cal. Apr. 21, 2016) .......................... 15

*Ward v. United Airlines, Inc.,*
  No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 38896 (N.D. Cal. Mar. 23, 2016) ................... 9

*Ward v. United Airlines, Inc.,*
  No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 94803 (N.D. Cal. July 19, 2016) ................... 9

*Washington v. Joe's Crab Shack,*
  271 F.R.D. 629 (N.D. Cal. 2010) ........................................................................................... 6

*Whittell v. Franchise Tax Bd.,*
  231 Cal. App. 2d 278 (1964) ................................................................................................. 8

*iPhone 4S Consumer Litig.,*
  No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058 (N.D. Cal. July 23, 2013) ....................... 8

**Other**

Fed. R. Civ. P. 37(c)(1) ............................................................................................. 4, 15

## I.   INTRODUCTION

Defendant Virgin America, Inc.'s opposition is an exercise in diversion.  Unable to explain away the key, unrefuted facts demonstrating that class certification is the superior way to prosecute the claims of over 1,400 flight attendants subject to the same work and pay practices, Virgin unfortunately fills its brief with irrelevant facts, false "facts" and erroneous legal premises.

Virgin does not pay its flight attendants for any time on the ground until a plane starts or stops moving, does not pay overtime, and does not pay for hours training, taking drug tests, working on reserve or completing incident reports. Virgin also has a uniform policy that flight attendants cannot be relieved of duty at any time on flight days. *None of this can be disputed credibly*.  It also is not subject to dispute that these uniform pay practices are well-documented in Virgin's own procedures, and confirmed by the detailed time and pay records for all class members.

In its zeal, beyond simply mischaracterizing these common facts that present a turnkey case for certification, Virgin seeks to have this Court apply an entirely false legal construct, suggesting that any class would be "ascertainable" only if class members primarily worked in California, and that such an undertaking somehow spells disaster for certification.  Unfortunately for Virgin, its hyperbolic rhetoric remains consistently untethered to actual, applicable legal principles.  And, without this faulty rhetoric, the majority of Virgin's opposition falls away.  Try as it may, Virgin cannot distance itself from the fact that it is a California-based airline with all operations and virtually of its flight attendants based in (and a large majority residing in) California, working on flights in and out of California airports.  Despite its caviling and carping, it is not excused from complying with California law.  And, any defenses (dubious as they may be) as to Plaintiffs' claims run to the class as a whole.

Plaintiffs meet the requirements of Rule 23. Certification is the superior way to manage this action.  Accordingly, Plaintiffs respectfully request that the Court certify the class and subclass.

## II.   ARGUMENT

### A. Virgin Mischaracterizes the Evidence to Inaccurately Portray Its Pay Policies and Practices.

Virgin attempts to confuse and overwhelm the Court with irrelevant facts and

mischaracterizations.  The key, unrefuted facts demonstrate that certifying the class and subclass is superior than proceeding as hundreds of individual actions.  First, Virgin admits that its Work Rules and Crew Pay Manual contain the uniform policies and procedures governing how all flight attendants are paid.[1]  Every flight attendant is subject to these same work rules, and is paid uniformly according to these documents.[2]  Similarly, records of the monthly schedules worked by flight attendants are recorded and compiled into uniform CrewTrac data that can be easily manipulated to extract hours worked.[3]

Second, Virgin's assertion that Plaintiffs have "failed to show a common policy resulting in flight attendants working off-the-clock when attending training" demonstrates its unabashed distortion.  Virgin maintains records of the scheduled hours for each training and applies uniform rules that govern how much to pay flight attendants for each training.[4]  For no training is it Virgin's policy to pay a flight attendant for all hours spent attending that training.  Not surprisingly, then, Virgin admits that its policy is to pay all flight attendants 3.5 hours for training, but chooses to not mention that all of its trainings are at least five hours long, and most are at least eight hours long.[5]

Third, Virgin's description of drug testing and incident reports as indeterminate and individualized is similarly distorted.  Virgin retains records of every drug test that a flight attendant undergoes and, pursuant to the Work Rules, pays the flight attendant for thirty minutes at their hourly rate, irrespective of how much longer the drug test lasts.[6]  In contrast to Virgin's

---

[1] *See* Ex. 8 [Work Rules 2013]; Ex. 9 [Work Rules 2012]; Ex. 10 [Work Rules 2011]; Ex. 1 [Hendrickson 45:23-25; 61:5-11, 84:20-85:3, 86:1-19, 168:8-25]; Ex. 16 [Crew Pay Manual]. All references to Exhibits 1-41 refer to the Exhibits in the Kosinski Declaration, Dkt. 70.  All references to Exhibits 42-54 shall refer to the Exhibits in the Supplemental Kosinski Declaration, submitted concurrently herewith.

[2] Ex. 1 [Hendrickson 45:23-25]; Ex. 2 [Jenkins 126:3-6; 223:22-224:1].

[3] Ex. 26 [Breshears Decl. ¶23]; Ex. 42 [Estevez 26:4-27:17]. Virgin's description of its monthly bidding system as individualized and unpredictable is a red herring—all potential bidding ultimately turns into uniform data of time actually scheduled and worked in CrewTrac.

[4] Ex. 43 [Kliff 38:24-39:1, 46:7-9, 50:1-3, 54:7-9] . *See* Dkt. 71 at 10:6-12, where Virgin admits that all class members attend recurrent training for eight hours and are paid 3.5 hours.  *See also* Ex. 8 [Work Rules 2013, VIR/BER 849]; Ex. 9 [Work Rules 2012, VIR/BER 958]; Ex. 10 [Work Rules 2011, VIR/BER 1038].

[5] Ex. 4 [Kliff. 44:22-45:7, 59:8-9].

[6] Ex. 19 [General Manual, Ch. 5, VIR/BER 8028-8031]; Ex. 8 [Work Rules 2013, VIR/BER 854].

unsupported assertions, flight attendants consistently testified that drug tests last more than thirty minutes.[7]  Similarly, Virgin retains records of all incident reports, which are submitted electronically by flight attendants with a time stamp.[8]  Virgin has no policy to pay flight attendants for time drafting incident reports and flight attendants cannot complete them while on duty.[9]

Fourth, Virgin's claim that it pays for all hours flight attendants work through a "credit-based system" is directly contradicted by its admission that "[e]ven for flying activity, crew members are not paid for time 'on the clock' (duty time); instead, *they are typically paid only when the aircraft is moving*."[10]  Virgin's fictional "credit-based system" has absolutely no support in the record.  As Virgin pays a flight attendant for a pairing as follows:  (1) for all block time worked each day of the pairing; (2) for block time spent deadheading, depending on the reason for deadheading; and (3) up to 3.5 hours of minimum duty credit if a flight attendant's block time and deadhead time in one day do not exceed 3.5 hours in total.[11]  *Virgin has identified no pay, pursuant to the Work Rules, that is intended to compensate flight attendants for any time other than this time*.[12] Further, Virgin's own documents show that flight attendants are hired for positions paid on an hourly basis—not through formulas.[13]

Fifth, Virgin offers a distorted analysis of the realities of meal and rest break practices and

---

[7] *See* Ex. 44 [Bernstein 239:23-240:2] "I know it would be more than 30 minutes"; Ex. 45 [Ryan 85:12-17] "It usually took between one to two hours"; Ex. 32 [Laurie Decl. ¶15] "one time it took over three hours"; Ex. 38 [Schmitz Decl. ¶16] "it took approximately one hour"; Ex. 39 [Croteau Decl. ¶19] "It generally took between 1.5 and three hours."

[8] For examples of time-stamped IRs, *see* Ex. 46 [Garcia Incident Rep., VIR/BER 9711-9714].

[9] Ex. 8 [Work Rules 2013, VIR/BER 868]; Ex. 9 [Work Rules 2012, VIR/BER 938]; *See e.g.,* Ex. 54 [Smith 183:11-15] "I cannot write it on the plane because it has to be done at a computer.  We are not allowed to use those while we are flying.  And the other is even if I was, it is very time-consuming"; Ex. 34 [Hoover Decl. ¶10]; Ex. 37 [Watt Decl. ¶13]; Ex. 47 [Croteau 164:18-165:15]; Ex. 45 [Ryan 120:9-17]; Ex.48 [Tomlinson 143:2-146:21].

[10] Ex. 16 [Crew Pay Manual, VIR/BER 1047]; Ex. 8 [Work Rules 2013, VIR/BER 845]; Ex. 9 [Work Rules 2012, VIR/BER 952]; Ex. 10 [Work Rules 2011, VIR/BER 1034].

[11] Ex. 8 [Work Rules 2013, VIR/BER 845-846].

[12] Ex. 8 [Work Rules 2013, VIR/BER 845-847].

[13] Ex. 50 [Smith New-Hire Letter, VIR/BER 9093] "[Y]ou will be paid on an hourly basis at the increased rate of $25.00 per hour." *See also* Ex. 17 [Bernstein Wage Statements], Ex. 22 [Garcia Wage Statements], and Ex. 11 [Smith Wage Statements], each which show under "Earnings" compensation earned at an hourly rate and corresponding number of hours worked at that rate.

policies for its flight attendants.  The record is unambiguous:  Virgin does not have a meal or rest

break policy that applies to flight attendants, nor has it established a practice that permits flight

attendants to take meal and rest breaks.  Virgin admitted that the Playbook's meal and rest break

policy *does not apply* to flight attendants during regular work duties.[14]  Virgin's claim that flight

attendants coordinate with one another to take breaks is contradicted by testimony that flight

attendants do not do so and the lack of evidence that Virgin instructs them to do so.[15]

Further, contrary to Virgin's assertion, no flight attendant has testified that Virgin encouraged

them to take meal or rest breaks.  Virgin's cite to Plaintiff Garcia's testimony that on

transcontinental flights "there have been times [she has] been able to sit down" and that on "some

flights" she ate food that she brought onboard conveniently ignores the testimony that she cannot

remember a time when she *ever* had a legally-compliant, ten-minute uninterrupted break during a

transcontinental flight, let alone a meal period.[16]  Surely if Virgin actually did encourage flight

attendants to take breaks (or they actually took breaks), it would have provided evidence of same.[17]

As such, the record demonstrates a consistent practice of preventing full, uninterrupted breaks.

Finally, Virgin's calculations regarding time that each Plaintiff worked in California versus

time worked in other states is inadmissible, misleading and based on blatantly unreasonable

assumptions.[18]  When measuring the time that each Plaintiff worked in California, Virgin's expert

---

[14] Ex. 2 [Jenkins 150:18-151:22].  In fact, the only applicable policy is Virgin's requirement that it not free flight attendants from all duties at any time while on duty.  Ex. 51 [Jenkins 147:16-25].
[15] Ex. 52 [Garcia. 275:4-276:10]; Ex. 48 [Tomlinson 149:7-12].
[16] Ex. 52 [Garcia. 275:4-13].
[17] Virgin also misrepresents the facts regarding breaks during turns by alleging that flight attendants "are free to do whatever they want" between flights. *See* Dkt. 71 at fn 27.  In reality, even when flight attendants are not shuttling between gates, they are not allowed to use their phones or eat in public, and must stay in uniform and follow Virgin's rules of conduct.  Ex. 2 [Jenkins 155:13-20]; Ex. 30 [Contaldo Decl. ¶13]; Ex. 31 [Evans-Bunch Decl. ¶11]; Ex. 32 [Laurie Decl. ¶12, 13]; Ex. 33 [O'Connor Decl. ¶12]; Ex. 34 [Hoover Decl. ¶13]; Ex. 37 [Watt Decl. ¶12]; Ex. 38 [Schmitz Decl. ¶15]; Ex. 39 [Croteau Decl. ¶13].
[18] Virgin's proffered expert testimony on this point is not within the proper scope of rebuttal testimony for which he was designated and must be excluded.  *Clear-View Techs., Inc. v. Rasnick*, No. 13-cv-02744-BLF, 2015 U.S. Dist. LEXIS 72601, at *5 (N.D. Cal. June 3, 2015) ("a defendant's rebuttal expert is limited to offering opinions rebutting and refuting the theories set forth by plaintiff's expert(s)."); Fed. R. Civ. P. 37(c)(1) (requiring exclusion of affirmative opinions not timely designated).

excludes all time on a moving plane, even if that plane is on the ground in California.[19]  But when measuring the time that each Plaintiff worked irrespective of location, he includes all time worked on the ground in each state, including all block time worked, whether on the ground or in the air.[20]  By not applying the same definition of time worked in the comparison, Plaintiffs' time worked in California as a percentage of the total is falsely lowered.[21]  Further, Virgin's own measurements of average flight times—which form the basis for its overtime and meal and rest break defenses—is misleading because it only includes block time, and excludes time flight attendants spend working on an aircraft before block out or after block in, or time spent during a ground holding delay.[22]

**B.   Virgin's Contention that the Class Is Not Ascertainable Is Based Upon a Fundamental Misreading of the Law.**

The main thrust of Virgin's Opposition is that Plaintiffs' proposed class and subclass are not ascertainable because California law applies only to flight attendants who "work exclusively or principally in California," and only those such individuals have a right to recover. Dkt. 71 at 1. Virgin is wrong on two counts.  First, as this Court has already opined, the ascertainability analysis does not require denial of class certification simply because the class may include members who will not be able to recover.  *Lilly v. Jamba Juice Co*., 308 F.R.D. 231, 237 (N.D. Cal. 2014); *Rodman v. Safeway, Inc*., No. 11-cv-03003-JST, 2014 U.S. Dist. LEXIS 31438, 2014 WL 988992, at *15-16 (N.D. Cal. Mar. 10, 2014).

Second, the application of California law to persons working within California's borders does not depend on whether they worked "exclusively or principally in California."  Plaintiffs' proposed class consists of flight attendants based in California working for a California company and

---

[19] Ex. 42 [Estevez 118:10-119:4]. Virgin's counsel instructed Dr. Estévez to apply these faulty assumptions but did not provide any documents in support. Id.

[20] Ex. 42 [Estevez 114:17-115:10, 121:20-122:9].

[21] Ex. 42 [Estevez 113:21-114:6].  Counsel further refused to permit Mr. Estevez to answer the question, "[D]oes it seem reasonable to you that a plane that is on the ground in California is considered not in California?"  *See id*. at 119:13-23.

[22] *See* Ex. 3 [Weaver 48:7-49:22]. Even under Dr. Estévez's falsely narrow construct of time "in California," his report confirms that there are duty days in California that exceed 3.5, five and eight hours—time frames in which class members would be entitled to breaks and overtime. Def.'s Exhibit R, Estevez Report, p. 9-10; Ex. 42, [Estevez 125:9-18, 126:9-20, 127:6-10].

seeking to recover unpaid wages for time worked in California.  The California Supreme Court's thoughtful analysis in *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011) confirms that the Labor Code applies to flight attendants' work performed in California.  (Virgin discusses *Sullivan* only briefly in a footnote and then mischaracterizes its holding.)  There, the Court addressed whether California's overtime laws applied to non-resident instructors who performed work in California for California-based Oracle, even though they "worked mainly in their home states but also in California and several other states."  *Id.* at 1195.  The three plaintiffs (suing on behalf of a class) had respectively worked 20, 74 and 110 days in California during a three-year period.  *Id.*  On those facts, the Court found that California's overtime provisions "apply to plaintiffs' claims for compensation for work performed in this state."  *Id.* at 1194.  In so holding, the Court noted that the Labor Code was intended to apply to "all individuals" employed in the state.  *Id.* at 1204-05. Nothing in *Sullivan*, which controls here, requires that the nonresident work "exclusively or principally in California."  Plaintiffs have thus defined the class—all flight attendants based in California working for a California company and seeking to recover unpaid wages for time worked in California—in a way that is ascertainable.[23]

To prop up its contention, Virgin relies upon a misreading of *Tidewater Marine Western, Inc. v. Bradshaw*, 14 Cal.4th 557 (1996).  *Tidewater* did not hold that an individual must work primarily or exclusively in California to have the protection of California law.  As explained in *Sullivan*, at issue in *Tidewater* was whether California wage orders "applied to California residents who worked for California employers on boats that transported workers" in the Santa Barbara Channel. 51 Cal. 4th at 1198-99.  Because the Court concluded that the Santa Barbara Channel was within

---

[23] For this reason, all of the class certification cases cited by Virgin are inapposite.  *See, e.g., Blackwell v. SkyWest Airlines, Inc.*, 245 F.R.D. 453, 467-68 (S.D. Cal. 2007) (plaintiff failed to offer common, predominant facts where policy and practice varied by work station regarding breaks); *Brown v. American Airlines, Inc.*, 285 F.R.D. 546, 559-60 (individual issues regarding injury from wage statements predominated under *earlier and now invalid* interpretation for injury, see Labor Code § 226(e)(2)(B)); *Washington v. Joe's Crab Shack*, 271 F.R.D. 629, 640-41 (record showed no common practice in restaurants regarding breaks and off-the-clock time and plaintiffs agreed policy was facially compliant); *Hanni v. Am. Airlines, Inc.*, No. C 08-00732 CW, 2010 U.S. Dist. LEXIS 3410, at *26 (N.D. Cal. Jan. 15, 2010) (individualized issues rendered proposed class of passengers with contract and negligence claims not sufficiently ascertainable).

- 6 -

California, the Court simply applied the presumption that workers, like the plaintiffs in *Tidewater*, who reside in California and work exclusively or principally in California, enjoy the protection of the wage orders. *Tidewater*, 14 Cal.4th at 578. It did not hold, as Virgin would have it, that an individual *must* work principally in California to receive the protections of California law. Subsequently, *Sullivan* answered this question in the negative when it applied California law to a non-resident who had worked just 20 days out of a three-year period in California. 51 Cal.4th at 1194; *see Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011, following *Sullivan*, 51 Cal.4th 1191) ("California has chosen to treat out-of-state residents equally with its own."); *Aguilar v. Zep Inc.*, No. 13-cv-00563-WHO, 2014 U.S. Dist. LEXIS 120315, at *35 (N.D. Cal. Aug. 27, 2014) (rejecting argument that *Tidewater* held that "California wage protections do not apply to persons who live outside of California and temporarily work in California" and finding Labor Code claims applied to non-resident who traveled to and performed work in California); *Candy Shops, Inc. v. Sup. Ct*, 210 Cal. App. 4th 889, 906 (2012) (emp. in orig.) ("under *Sullivan* a California employer generally must pay *all* employees, including nonresident employees working in California, state overtime wages unless the employee is exempt.")[24]

Compounding its error, Virgin cites cases discussing the extraterritorial application of California law, i.e. whether California law applies to conduct outside of its borders. These cases do not apply to the proposed class claims, which ***do not seek to recover wages for any time worked outside of California***. These cases are relevant, if at all, only with respect to Plaintiffs' proposed subclass which seeks, on behalf of flight attendants who are California residents based in California and working for a California company, to recover for wages earned both inside and outside of California.

Even as to this subclass, however, Virgin gets its wrong. Whether California law applies does

---

[24] Virgin's theme that it is generally entitled to a presumption of lawlessness because it is an airline is without support. There is no federal aviation law that supplants state wage protections to flight attendants. The California Labor Code contains no exemptions for airlines, and the applicable wage order in fact contemplates its application to flight crew. *See* Wage Order 9-2001 ¶3(N) (noting that overtime provisions do not apply to airline employees only in cases where an employee works more than 40 but less than 60 hours in a week as a result of a voluntary shift swap).

not turn on whether a flight attendant worked principally or exclusively in California.  Instead, courts look first to whether the statute intends an extraterritorial application.  *Tidewater*, 14 Cal. 4th at 577-79.  That question runs to the subclass as a whole, and thus would favor certification.  Even if the presumption is against extraterritorial application, moreover, courts then consider a variety of factors, including residency, company headquarters, and job situs.  *Id.*; *Sullivan,* 51 Cal. 4th at 1199 (*Tidewater* found that California law "might follow California resident employees of California employers who leave the state 'temporarily . . . during the course of the normal workday.'"); *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1059, 1063 (N.D. Cal. 2014) (considering residency, job situs and employer's headquarters in considering extraterritorial application of wage laws); *Sarviss v. General Dynamics Info. Tech., Inc.,* 663 F. Supp. 2d 883, 900 (C.D. Cal. 2009) (noting extraterritorial application of California's wage laws does not apply to *non-residents* working outside of California); *see also In re iPhone 4S Consumer Litig.,* 2013 U.S. Dist. LEXIS 103058, *23-24 (N.D. Cal. July 23, 2013) (presumption against extraterritoriality does not prohibit UCL claims brought by out-of-state plaintiffs when defendant's "critical decisions" that gave rise to suit took place in California).

Plaintiffs' theory with respect to the subclass is that any presumption against the extraterritorial application of California law is overcome by the strong, common and uniform facts concerning the subclass.  All subclass members claim California as their place of residence, work for a California company (the only major airline based in California), are based at airports in California, begin and end each pairing in California, report to supervisors in California, attend all training in California, and are issued pay and pay statements in California. Dkt. 70 at pp. 2:10-12; 7:2-8, 13-14; 10:11-12; 12:8-10.[25]  While these subclass members may also spend time outside of California, that time is

---

[25] Virgin tries to complicate a straightforward matter by claiming that extensive discovery into each class member's residence is required to identify flight attendants who resided in California during the relevant time period.  Dkt. 71 at 16:12-18.  In reality, this determination is simple: where class members filed their taxes can be used to make a residency determination for each year for purposes of ascertaining the California subclass.  *Sarviss*, 663 F. Supp. 2d at 899 (California residency is determined by the payment of California income taxes).  The California Franchise Tax Board uses many factors in its guidelines for determining if someone is a resident, including but not limited to: the location of one's spouse, residence, bank, and healthcare providers; where one is registered to

within the scope of performing their duties for a California-based airline on job assignments that originate and end in California.[26]  Whether California law will apply to this subclass, therefore, is a question that will be answered to the subclass as a whole.

Virgin's proffered cases are inapposite, as they address facts dissimilar to those here.  *See, e.g., Sarviss*, 663 F. Supp. 2d at 897 (plaintiff sought to recover for California Labor Code violations that occurred exclusively outside of California for an out-of-state employer based soley on plaintiff's residency in California); *Russo v. APL Marine Servs., Ltd.,* 135 F. Supp. 3d 1089, 1095 (C.D. Cal. 2015) (alleged illegal conduct occurred solely in international waters).  Virgin also relies on an order by Judge Alsup granting summary judgment in favor of United Airlines in a claim brought by pilots alleging that their wage statements did not comply with California law.  *See Ward v. United Airlines, Inc*., No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 94803, at *3 (N.D. Cal. July 19, 2016).  Judge Alsup, however, *granted* class certification prior to considering the parties' cross-motions for summary judgment.  *See Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 38896, at *16-17 (N.D. Cal. Mar. 23, 2016) (finding that United's defenses regarding the scope and applicability of § 226(a) "were capable of classwide resolution").  Further, the parties in that case (1) agreed that § 226(a) did not apply extraterritorially; (2) agreed that the pilots did not principally work in California.  *Ward*, 2016 U.S. Dist. LEXIS 94803 *9.

Finally, neither *Ward* nor any of the cases upon which it relied in concluding that § 226(a) did not apply involved a California employer like Virgin that conducts all operations from California.

---

vote; what state issued the individual's driver's license; etc.  Cal. Franchise Tax Bd., Pub. 1031 (2015); *Whittell v. Franchise Tax Board*, 231 Cal.App.2d 278 (connections to a state, not just domicile, must be analyzed when determining residence).  Since the class members determine their residency each year when filing taxes, the court will not have to make this determination.

[26] Virgin suggests that Plaintiffs will include class members (Tomlinson, Ryan, Croteau, and Bernstein) who started and ended all of their pairings at JFK in its subclass of California residents simply because they were based out of California airports.  This is not the case.  Plaintiffs will use the class members' residency, i.e. where the individual filed his or her taxes, to determine if they fall within the California resident subclass for each year they were employed by Virgin during the class period.  Although Bernstein filed taxes in California in 2011 (a year in which she transitioned from California to New York) and will be included in the subclass for 2011, she did not file taxes in California in 2012, and will therefore be excluded from the subclass in 2012.  Likewise, Tomlinson, Ryan, and Croteau will not be included in the California resident subclass for any year since they never filed their taxes in California.

*See id.*; *Anderson v. CRST Int'l, Inc.*, No. CV 14-368 DSF (MANx), 2015 U.S. Dist. LEXIS 45161, at *1-2 (C.D. Cal. Apr. 1, 2015) (FEHA did not apply to acts occurring entirely outside of California for a company headquartered in Iowa from which it directs all operations); *Priyanto v. M/S Amsterdam*, No. CV 07-3811 AHM (JTLx), 2009 U.S. Dist. LEXIS 7849, at *15, 20 (C.D. Cal. Jan. 23, 2009) (California law did not apply to non-residents working for a foreign corporation who "cannot show they worked in California"); *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 481 (2000) (employee worked exclusively on federal enclave for federal contractor). In fact, the overwhelming majority of all of Virgin's flights arrive or depart in California.  During the class period, the daily percentage of Virgin's flights that arrived in or departed from California ranged from 88 percent to at least 99 percent—never were more than twelve percent of Virgin's flights conducted exclusively outside of California.[27]   In sum, the class and subclass are ascertainable.

**C. The Proposed Class Is Sufficiently Numerous, and Plaintiffs Are Adequate Representatives with Typical Claims.**

Virgin offers no argument as to numerosity, adequacy or typicality other than its erroneous assertion that Plaintiffs have failed to establish ascertainability.  As Virgin's attempt to redefine the class as those who "principally worked for Virgin in California" fails, so does its attack on the requirements of Rule 23(a) which Plaintiffs have met for the reasons stated in Plaintiffs' Motion. Dkt. 70 at 13-16.  Virgin's records identify all flight attendants within the class period by dates of employment, base and home address.[28] As to its argument that its own records are not accurate as to a class member's state of residence (for the subclass), they, at a minimum, establish a rebuttable presumption as to residency sufficient for ascertainability and numerosity.  *See* fn 27-28, *supra.*

**D.  Common Questions Predominate Over Any Individualized Inquiries.**

Virgin's contention that individualized issues predominate because only certain flight attendants are subject to California's laws fails for the same reasons articulated above.  Plaintiffs have proposed a well-defined class and subclass for which Virgin's liability for its labor violations will be resolved as to the class and subclass as a whole.

---

[27] Breshears Decl. ¶¶ 13-14.
[28] Ex. 40 [Class Contact List]; Ex. 41 [Class List].

1         Virgin's other half-hearted argument fails as well.  It contends that (1) the Court must

2 determine that Virgin's pay practices are unlawful before certifying the class; and (2) Virgin's pay

3 practices are "not per se unlawful." Dkt. 71 at 18.  This is plainly not the standard for the

4 predominance inquiry, which does not require (and in fact eschews) a merits determination and

5 instead calls for a pragmatic assessment of whether the proposed classes "are sufficiently cohesive"

6 to warrant certification.  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  Such cohesion is

7 typically found where, as here, liability "turns on an employer's uniform policy that is uniformly

8 implemented, since in that situation predominance is easily established." *Kamar v. Radio Shack*

9 *Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008).

### 1. Whether Virgin Fails to Pay Flight Attendants for All Hours Worked and Fails to Pay Overtime Are Common and Predominant Issues.

12         Plaintiffs seek recovery for the unpaid wages Virgin uniformly withholds from flight attendants

13 for non-block duty time, training, reserves, incident reports, drug testing and overtime hours.

14 Virgin does not and cannot argue that its pay practices—described in detail in Plaintiffs' Motion

15 and unrefuted by Virgin—differ as to members of the class.  See Dkt. 70 at 7-11; Dkt. 71 at 19.

16 That, frankly, should end the matter.

17         But Virgin persists, promoting a fiction that its pay practices are a lawful "credit system." As

18 an initial matter, Virgin cannot seriously contend that it can violate California's law against

19 averaging because of the "unique interstate nature" of flight attendants' duties.  Virgin has offered

20 no legal support for this notion because there is none.  Dkt. 71 at 19.  *See Vaquero v. Ashley*

21 *Furniture Indus.,* 824 F.3d 1150, 1154 (9th Cir. 2016) ("California law also prohibits 'averaging'

22 to meet minimum wage requirements."); *Quezada v. Con-Way Freight, Inc.*, No. C 09-03670 JSW,

23 2014 U.S. Dist. LEXIS 5922, at *5 (N.D. Cal. Jan. 16, 2014) (provisions of the California Labor

24 Code "require courts to consider whether an employee earns at least minimum wage for every hour

25 (or part of every hour) in isolation as opposed to on average").

26         Beyond that, there are simply no facts that support the existence of any kind of "credit system"

27 or "pay formula" other than one in which Virgin pays flight attendants for some hours, but not

28 others, in violation of California law.  Virgin admits that it does not pay flight attendants for all

1   hours worked, and admits it does not pay overtime.  (*See* Section II.A. *supra*.)  Virgin fails to

2   present *any* evidence of pay for hours in a duty period outside of block time, since it has no policy

3   nor practice of doing so.[29]  Further, Virgin offers no facts, because it has none, that the pay

4   practices at issue in *Oman v. Delta Air Lines*, 153 F. Supp. 3d 1094 (2015), and *Booher v. JetBlue*

5   *Airways Corp.*, 2016 WL 1642929 (N.D. Cal. Apr. 26, 2016) are "similar."  They are not, and the

6   Court should resist Virgin's invitation to draw comparisons to cases that have entirely different

7   facts.  The facts there involved an additional type of pay—duty period credit—that covered time

8   worked outside of block time and is entirely absent from the facts here.  *See Oman*, 153 F. Supp.

9   3d at 1098-99.  ***Virgin has no identifiable pay that applies to time worked outside of block time.***

10   Finally,  Virgin cannot escape the fact that its pay practices are the same for all flight attendants

11   and thus liability will "be so for all class members or for none; their claims rise and fall together."

12   *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1115 (9th Cir. 2014).[30]

13   Virgin also warns that the Court will be "mired in individual trials" determining whether flight

14   attendants worked off-the-clock.  Dkt. 71 at 20.  Not so.  ***Virgin has eliminated this risk by***

15   ***tracking each flight attendant's non-flight activities, including non-flight duty time, training,***

16   ***reserves, incident reports and drug testing.***[31]  Virgin's claim that there is "great divergence" as to

17   the amounts of time flight attendants were completing drug tests or incident reports, even if true, is

18

---

19   [29] *See e.g.*, Ex. 26 [Breshears' Expert Report ¶¶ 10-11, Exhibit B], showing that Plaintiff Garcia, in

20   February 2015, was only paid for 79.33 hours at a rate of $33.35 per hour, which necessarily did not include all the hours she worked (100.05 hours).

21   [30] Thus, the cases upon which Virgin relies, which involve a *lack of uniform policy and practice* unlike the circumstances here, are irrelevant. *See Coleman v. Jenny Craig, Inc.*, No. 11cv1301-

22   MMA (DHB), 2013 U.S. Dist. LEXIS 176294, at *25 (S.D. Cal. Nov. 27, 2013) (written policies complied with the law and evidence contradicted plaintiffs' theory that workers were not paid

23   overtime); *Flores v. CVS Pharm.*, No. 2:07-cv-05326-JHN-Ex, 2010 U.S. Dist. LEXIS 118098, at

24   *11 (C.D. Cal. Sep. 7, 2010) (wide variances in workers' experiences from store to store and no common, unlawful policy precluded class certification); *Koike v. Starbucks Corp.,* No. C 06-3215

25   VRW, 2008 U.S. Dist. LEXIS 115164, at *27 (N.D. Cal. June 20, 2008) (no evidence of a common policy or practice precluded class certification).

26   [31] E.g., Ex. 14 [Smith Flight Records 07/14, 01/15, 08/15, VIR/BER 9568]; Ex. 15 [Garcia Flight

27   Records for 06/14, 10/14, 01/15, VIR/BER 9662]; Ex. 29 [Bernstein Flight Records 06/11, 09/11, 04/12, VIR/BER 121, 124, 143-145]; Ex. 43 [Kliff 97:7-98:14; Ex. 46 [Garcia IR., VIR/BER 9711-

28   9714; Ex. 53 [Garcia Drug Tests VIR/BER 9408]; Ex. 26 [Breshears Report, ¶ 22].

inapposite.  Individualized damage calculations that "cannot defeat certification."  *Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 513-14 (9th Cir. 2013).[32]  Representative evidence including employee testimony and statistical evidence such as survey data or time and duration studies are appropriate forms of testimony so that employees will have a means of proving their claims.  *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1046 (2016).

### 2.  Whether Virgin's Uniform Practice Fails to Provide Meal and Rest Breaks to Flight Attendants Is a Common, Predominate Issue.

Virgin's argument that individualized issues will predominate over common ones again ignores the record and the law. As explained in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), an employer discharges its duty to provide a meal or rest break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040.  The same is true of rest breaks.  *Id.* at 1032-34.  If, however, an employer knows that breaks are missed, shortened, or unduly delayed because the employer has directed the employee to work, or otherwise impeded the taking of breaks, that duty is contravened.  *Id.* at 1039-40, 1049.

Virgin requires flight attendants to be on duty during each daily period of flying from an hour before a flight until 15 minutes after the last flight of a day, ***including time between flights*** ("turn time").[33]  Turn time must be at least one hour and ten minutes to provide an uninterrupted rest break and at least one hour and thirty minutes to provide an uninterrupted meal break because an hour of turn time consists of deplaning (15 min) and reboarding (45 min) duties.[34]

Virgin's contention that the Court would have to make individualized inquiries as to whether a flight attendant actually got a break misreads the law and the facts.  Even if a flight attendant had a few minutes to sit down or eat something while in flight or on a turn lasting an hour or less, ***that***

---

[32] Indeed, in its Motion to Strike Plaintiffs' Expert, Virgin conceded that damages issues do not preclude class certification when it stated that Plaintiffs' Expert Report "is not offered for purposes of establishing liability, and therefore is not helpful with respect to the determination of whether certification is appropriate."  Dkt. 74 at 1:7-9.

[33] Ex. 51 [Jenkins 147:16-25]; Ex. 47 [Croteau 42:1-19]; Ex. 44 [Bernstein 192:24-193:2.

[34] Breshears Decl., Ex. 1, Breshears Report ¶15, n. 20; Ex. 23 [Bernstein Decl. ¶19]; Ex. 25 [Garcia Decl. ¶16]; [Contaldo Decl. ¶14]; Ex. 32 [Laurie Decl. ¶18]; Ex. 33 [O'Connor Decl.¶14]; Ex. 34 [Hoover Decl. ¶13, 14]; Ex. 37 [Watt Decl. ¶12].

1   *flight attendant remains on duty, which violates California law*.  *Brinker*, 53 Cal. 4th at 1040.[35]

2   Even Virgin's expert acknowledges that Plaintiffs all had duty periods in California that exceeded

3   3.5  and 5 hours such that breaks would be required.[36] Thus whether Virgin is violating the law by

4   requiring flight attendants to remain on duty and unable to be relieved of meal or rest breaks on

5   their flight days is a common, predominant question that will be answered by common proof.

6   Further, Virgin's records demonstrate that it does not record meal breaks in violation of the wage

7   order, which creates a rebuttable presumption that meal periods were not adequately provided.

8   *Ricaldai v. US Investigations Servs*., LLC, 878 F.Supp.2d 1038, 1043-44 (C.D. Cal. 2012). Virgin

9   has offered no evidence to rebut this presumption.[37]

10      **E.  Plaintiffs' Proposed Trial Plan Demonstrates the Manageability of this Action.**

11      Virgin's challenge to Plaintiffs' trial plan is meritless.  This is a straightforward class action on

12   behalf of class members who all performed the same work and were subject to the same policies

13   and practices—facts unrefuted by Virgin.  Virgin's liability will be proven by its common unlawful

14   policies and practices, buttressed by representative and statistical evidence.  Dkt. 70 at 20-21.

15      Its contention that Plaintiffs offer only "self-serving assumptions that their claims can be

16   determined by mere reference to Virgin's records" is belied by those very records.  Virgin tracks

17   the tasks, locations, hours, and pay of flight attendants.  Virgin knows and thus can provide data for

18   each class member's duty periods by date and time, flight and location, reserve status, drug tests,

---

19
20   [35] For this reason, the cases cited by Virgin are inapposite.  *See In re Autozone, Inc.*, No. 3:10-md-02159-CRB, 2016 U.S. Dist. LEXIS 105746, at *46 (N.D. Cal. Aug. 10, 2016) (decertifying class
21   because "there is no uniform policy or practice forbidding appropriate rest breaks"); *Villa v. United Site Servs. of Cal., Inc.,* No. 5:12-CV-00318-LHK, 2012 U.S. Dist. LEXIS 162922, at *28 (N.D.
22   Cal. Nov. 13, 2012) (single declaration did not establish classwide practice of breaks violations); *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 586 (C.D. Cal. 2008) (denying class certification
23   where plaintiffs could not show a uniform practice that caused the denial of breaks).
     [36] Dkt 71. Def.'s Ex. R, Estevez Report, p. 9-10; Ex. 42 [Estevez 125:9-18, 126:9-20,127:6-10].
24   [37] Virgin's bizarre suggestion that flight attendants "waive" breaks by agreeing to work schedules
25   that do not permit such breaks has zero support in the law.  An employee may only waive a meal period if (1) there is mutual agreement and (2) the employee's shift is less than six hours. Wage
26   Order 9-2004 ¶11(A).  Virgin has shown evidence of neither.  If Virgin is suggesting it offers lawful on-duty meal periods, it has similarly produced no evidence that flight attendants ever
27   signed written agreements to on-duty meal periods.  *See Brinker*, 53 Cal.4th at 1039 (on duty meal period permissible only if written agreement and circumstances permit).
28

1   trainings, incident reports, base airport, and what hours it paid and for what tasks.  Virgin's richly

2   detailed data will provide the information necessary to calculate class members' unpaid hours for

3   duty time, training, reserve, and missed meal and rest breaks.[38]  *See, e.g., Minns v. Advanced*

4   *Clinical Empl. Staffing LLC,* No. 13-cv-03249-SI, 2015 U.S. Dist. LEXIS 71946, at *28 (N.D. Cal.

5   June 2, 2015) (certifying class where "plaintiffs have shown that damages can be calculated

6   through payroll, time, and employment records" and offered a methodology for claims where

7   employer data is lacking).  The challenges Virgin anticipates are phantom.[39]

8       Virgin's claim that the trial plan is lacking because Plaintiffs need and have failed to provide

9   survey data is a red herring.  To the extent that data would need to be gathered to prove damages

10  for drug testing and incident reports, it can be gathered through use of a survey, time and duration

11  study, or representative testimony, all acceptable forms of proving damages.[40]  Dkt. 79 at § III.D.

12  *See, e.g., Tyson Foods*, 136 S. Ct. at 1046; *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161 (9th Cir. 2014);

13  *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 53773, at *19-25

14  (N.D. Cal. Apr. 21, 2016).  Further, Defendant's proffered "survey" expert's report should be

15  stricken as it is plainly beyond the scope of rebuttal testimony.  *Clear-View Techs., Inc.*, 2015 U.S.

16  Dist. LEXIS 72601, at *5; Fed. R. Civ. P. 37(c)(1).

17      The vast majority of the evidence in this case is *common* evidence that will prove both liability

18  and damages.  *In addition*, Plaintiffs propose a statistical analysis drawn from class member data

19  and representative or statistical data for limited areas, such as for the time a drug test took.

20  **III.    CONCLUSION**

21      Plaintiffs respectfully request that this Court certify the class and subclass, appoint Plaintiffs as

22  Class representatives, and appoint Duckworth Peters Lebowitz Olivier LLP and Kosinski +

23  Thiagaraj, LLP as Class Counsel.

---

24  [38] Breshears Decl. ¶¶ 5-6, Ex.1 [Breshears Report ¶ 23].

25  [39] Virgin's attack on Plaintiffs' Expert fails, as his report sets forth an accurate and scalable
    methodology for calculating missed breaks and classwide damages, and the claim of errors in the

26  report are false.  Dkt. 79 at § III.B.; Breshears Decl. ¶¶ 5-6, 9, Ex.1 [Breshears Report ¶ 13-23].
    Virgin's own expert confirmed that its data can be used to run reports of flight attendants' time

27  records.  Dkt. 79 at 7:26-8:10; Ex. 42 [Estevez 26:25-28:24, 33:21-25, 44:11-46:22, 59:5-60:7].
    [40] *See* Breshears Decl., Ex. 1, Breshears Report at ¶¶ 17, 21.

28

Dated: October 6, 2016                Respectfully submitted,

                                      DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

                                      KOSINSKI + THIAGARAJ, LLP

                                      By: /s/ *Monique Olivier*

                                      Monique Olivier
                                      Attorneys for Plaintiffs and the Putative Class