Monique Olivier (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-0333
Facsimile:   (415) 449-6556

Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
KOSINSKI + THIAGARAJ, LLP
351 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 230-2860
Facsimile: (415) 723-7099

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUILIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VIRGIN AMERICA, INC.; and DOES 1 to 10, inclusive,<br><br>Defendants. | **CLASS ACTION**<br><br>Case No.  3:15-cv-02277<br><br>**DECLARATION OF EXPERT DAVID BRESHEARS IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S CLASS CERTIFICATION OPPOSITION**<br><br>Date:         October 18, 2016<br>Time:        2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:       Hon. Jon S. Tigar |

I, David M. Breshears, declare as follows:

1.  I have been designated by the Plaintiffs in this action as an expert witness, and have provided an expert report pursuant to the federal rules.  A true and correct copy of that report is attached hereto as Exhibit 1.

1

2.   The facts contained in this declaration are within my personal knowledge, and I could and would testify truthfully to those facts if called to do so under oath.

3.   I have reviewed the Motion to Strike my expert report filed by Virgin America, Inc. ("Virgin").  I have also reviewed the expert report of Valentín Estévez submitted by Virgin.

4.   Virgin states in its motion that I have not explained my data preparation "methodology." As an initial matter, this term should not be confused with the actual methodology for calculating damages, which is set forth fully in my expert report.  That methodology is set forth in the tables attached to my report as Exhibits B, C, and D.  Specifically, in the top row of each column, I explain what calculations, if any, I am using to reach the result in that column. As Virgin notes, after building the damages model that is presented in my report, I had my staff populate some of the data necessary for the model by manually entering this data.  This is neither surprising nor problematic for the reasons that follow.

5.   I was asked to develop a reliable method of calculating class-wide damages.  In order to do this, I used a sample of time and payroll data for the Plaintiffs, which I understand is consistent with the time and payroll data for all class members.  Because this sample was small, it was simply more efficient to manually input the data for certain of the fields, rather than write a script to have the data imported into the damages model.  I commonly do this in designing methodology reports, because the format of the sample data can be different than the format of the data for the entire data set. That is, it is more efficient to wait until I have the entire data set before automating the process of importing that data into the damages model.  In addition to being more efficient, it would not be possible to predict all of the possible nuances that may need to be built in to the actual formulas used to compute the data until the full data set is actually provided. Upon receipt of the class-wide data, the process of calculating damages will be done using an automated, formula driven process, that is applied consistently for each flight attendant and flight.  There are no calculations that were done manually for the purpose of my methodology report that cannot be automated for purposes of a class-wide damages analysis.

6.   It will not be necessary to "manually create 57,000 individual monthly analyses" as Virgin states.  Instead, a full set of class member flight and payroll data will be imported into the damages

model through an automated process that will permit the model to calculate the differential between the duty hours worked by class members and the number of hours for which they were paid.  It will also permit the model to calculate duty hours worked in excess of eight hours in a day, or forty hours in a week, as the model demonstrates.  (See Exhibit 1, Ex. B, C, D.)

7.   Virgin also suggests in its motion that I did not use an adequate sample of data.  As the model is intended to calculate damages based upon the data for *all* class members, there is no need to use a large sample set of data.  It is only necessary that the data I analyzed is of the same type as the data available for the remainder of the class.  Because Virgin uses the same time and payroll systems for all flight attendants, not just Plaintiffs, there is no reason to believe that the form of the data for the class would differ from the data I reviewed for the Plaintiffs.  I routinely calculate damages using large, class-wide data sets for companies with 20,000+ employees, and there is no reason of which I am aware why I could not do so here.

8.   Virgin also states that my expert report is flawed because I did not review or analyze the data from the AIMS system.  The AIMS system was the system of data used by Virgin for the first seven months of the class period, or as of today's date, 8% of the class period.  As, according to Virgin's expert Dr. Estévez, the AIMS data contains substantially the same flight data as CrewTrac, there is no reason to believe that this data could not be imported in the same manner as would be done with the CrewTrac data that I reviewed, with slight modifications for any differences in the way AIMS tracked flight attendants time.  Further, if the AIMS data is not available or is found unusable, it will not prevent damage calculations from being done for the majority of the class period.

9.   Virgin also states that I made "critical errors" in my report.  This is not true.  The only error Virgin describes is not an error at all.  Virgin's policy requires flight attendants to be on the airplane 45 minutes before a flight's scheduled departure when the flight attendant has subsequent flights during the duty period .  (See Ex. 1 at ¶ 8.) Because Virgin's policy is to release flight attendants from duty 15 minutes after the plane parks at the gate (called "block in"), I assumed for purposes of my report that flight attendants had 15 minutes of duty time on the airplane after each flight ("deplaning").  So in calculating duty time between two flights, I used those values.  So, for

example, if a flight attendant blocked in at 2:00 p.m. and her next flight was scheduled to leave at 4:00 p.m., the duty period between these flights would be 1 hour (15 minutes to deplane from the first flight and 45 minutes prior to scheduled departure) assuming that the actual departure was at 4:00 p.m. I would exclude the additional hour of assumed non-duty time for purposes of calculating hours worked (even though under Virgin's policy the flight attendant is still "on duty").

10. Virgin states that the report erroneously fails to credit Plaintiffs with the full 45 minutes of pre-flight duty time in four instances. But in each of those instances, the flight departed earlier than the scheduled departure, so the flight attendant in fact had *less than* 45 minutes of duty time. For example, Virgin points to an entry for Plaintiff Julia Bernstein on October 7, where Ms. Bernstein's first flight arrived at 10:51 a.m. and her next flight was scheduled to depart at 12:05 p.m. (See Ex. 1, Ex. D.) For that entry, Ms. Bernstein was credited with 39 minutes rather than 45 minutes of duty time. This is easily explained. Using the 15 minute post-flight rule, Ms. Bernstein was free from her post-flight duties at 11:06 a.m. She had to report to her next flight at 11:20 a.m., 45 minutes before the scheduled departure of 12:05 p.m. But on that date, the flight actually departed ("blocked out") at 11:59 a.m. Because the flight departed early, Ms. Bernstein only had 39 rather than 45 minutes of pre-flight duty time (11:20 am to 11:59 am = 39 minutes). If I had credited her with the full 45 minutes, that would have been six minutes more than she had actually worked. Each other occasion cited by Virgin is explained by the same circumstance.

11. Virgin also states that my analysis of meal breaks is flawed because it does not identify when a flight attendant actually missed a meal break. My analysis of meal breaks was simply intended to identify potential missed breaks, that is, days in which a duty period for a flight attendant exceeds five hours or ten hours.

12. Virgin also states that I am not qualified to opine on the use of surveys. I offered no opinion in my expert report about the design or implementation of a survey. I simply stated that if survey data was provided to me, I could use such data to calculate damages. I routinely use data provided to me from surveys, time/duration studies, and other methods to calculate damages. The fact that I do not purport to be a survey expert has no bearing on my ability to use reliable survey data in my analyses.

13. I have performed calculations on Virgin's average daily flight operations as presented in Defendant's Opposition to Class Certification filed September 15, 2016 (page 5, lines 1-10).   I used the data to calculate the percent of daily flights that had a departure or arrival in California. As discussed in the paragraph below, over the period 2011 to 2016, the ratio of flights with an arrival or departure in California ranged from 100 percent to 89 percent.

14. In the chart below, the first five columns are from Virgin's Opposition to Class Certification cited in the paragraph above.  The three right-most columns are my calculations.  In column E, I added the California departures and the California arrivals and then subtracted the number of intra-California flights.  Subtracting the number of intra-California flights avoids double counting any flight with a California departure (which is counted once in column B) and a California arrival (which is counted once again in column C).  In column F, I then divided the number of flights with either a departure or arrival in California by the number of daily flights (column A).  I also show, in column G, the average daily flights (column A) minus the number of flights with California arrivals and departures (column E).  Hypothetically, this should never be a negative number but I note that it is a negative number for 2011 and the source of this discrepancy would require further review of the source data used by the Defendant to populate the table included within Defendant's Opposition to Class Certification.

| Year | A Daily Flights | B Depart CA | C Arrive CA | D Intra-CA | E=B+C-D CA Arrive or Depart | F=E/A As % of Daily Flights | G=A-E Flights Not Associated with CA |
|------|------|------|------|------|------|------|------|
| 2011 | 155.16 | 89.31 | 89.31 | 20.90 | 157.72 | 102% | (2.56) |
| 2012 | 153.99 | 88.60 | 88.53 | 25.10 | 152.03 | 99% | 1.96 |
| 2013 | 159.49 | 94.00 | 93.96 | 30.50 | 157.46 | 99% | 2.03 |
| 2014 | 160.08 | 92.59 | 92.63 | 29.60 | 155.62 | 97% | 4.46 |
| 2015 | 171.83 | 90.50 | 90.47 | 29.80 | 151.17 | 88% | 20.66 |
| 2016 | 176.00 | 94.30 | 94.10 | 32.30 | 156.10 | 89% | 19.90 |

1     I declare under penalty of perjury under the laws of the United States that the foregoing is

2 true and correct.

3     Executed this 6th day of October, in Walnut Creek, California.

4

5                                     David M. Breshears, CPA/CFF

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BRESHEARS DEC ISO PLAINTIFFS' REPLY TO DEFENDANT'S CLASS CERT. OPP.**          **15-CV-02277-JST**

Exhibit 1

I, David Breshears, do hereby declare and state as follows:

1.        This declaration is based upon my own personal observation and knowledge, and if called upon to testify I could competently testify to the matters set forth in this declaration.  As detailed below, based upon the data available through discovery, I have developed a reliable methodology to calculate damages for the Plaintiffs in this case, which is equally applicable to the proposed class ("Class"), and with relative ease could be accomplished on a Class-wide basis after data for all Class members is provided to me for review and analysis.

2.        I am a Certified Public Accountant ("CPA") licensed to practice in the State of California continuously since 2006. I have also been designated by the AICPA as a CFF (Certified in Financial Forensics). I am currently a partner at Hemming Morse, LLP, CPAs and Forensic Consultants. My work in the accounting profession includes experience as an auditor and as a consultant. I have consulted on over 125 matters related to federal or state wage and hour laws. These matters include unpaid overtime, off-the-clock, meal and rest period violations, employee misclassification, recordkeeping violations, time shaving and similar topics. In 1998, I obtained a Bachelor of Science Degree in Accounting from California State University, Chico. I have given a number of presentations on accounting and wage and hour issues. My expert qualifications, including my testimony, are described in Exhibit A hereto.

3.        My firm has been compensated for my review and analysis in this matter at my standard hourly rate, which is currently $440 per hour. Others have assisted me in my work and my firm has been compensated for their work at their standard hourly rates.

4.      My firm has been retained by counsel for Plaintiffs in the matter of Julia

Bernstein, Lisa Marie Smith and Esther Garcia, on behalf of themselves and all others

similarly situated v. Virgin America, Inc. ("Virgin").  Plaintiffs have been employed

by Virgin as flight crew personnel in California at various times since March 18,

2011.  I have been asked to analyze time and payroll data with respect to the number

of hours, type of pay (e.g. overtime), rate of pay, and rest and meal breaks.  I have

been asked to calculate related potential damages due to Virgin's alleged failure to:

    a.  pay minimum wage,

    b.  pay overtime wages,

    c.  pay wages for all hours worked,

    d.  provide required meal periods,

    e.  provide required rest periods, and

    f.  provide accurate wage statements.

I have also been asked to identify potential missed meal periods based on the data I

have analyzed.

**Evidence Relied Upon**

5.      I have been provided with the Complaint filed March 18, 2015; the First

Amended Complaint filed October 30, 2015; the deposition transcript of Richard

Hendrickson recorded May 11, 2016 with exhibits; pages 74 to 77 and pages 238 to

245 from the deposition of Julia Bernstein recorded May 13, 2016; pages 178 to 189

from the deposition of Esther Garcia recorded May 18, 2016; pages 226 to 241 from

the deposition of Lisa Marie Smith recorded June 2, 2016;  training information

VIR/BER 009796 to VIR/BER 009810; Defendant's Supplemental Responses to

Garcia's Interrogatories, Set One, dated May 15, 2016; and, monthly flight records of

the three named plaintiffs.  The flight records for Julia Bernstein cover the period

February 2009 to June 2012, for Esther Garcia cover the period August 1, 2010 to June 2015, and for Lisa Marie Smith cover the period August 2011 to February 2016[1].  The monthly flight records for November 2011 to date were produced by the Sabre CrewTrac system according to the records themselves or are similar to the records Mr. Hendrickson identified as from CrewTrac.[2]  Monthly records prior to November 2011 are labeled "Personal Crew Schedule" and were identified by Mr. Hendrickson as from the AIMS system which preceded the CrewTrac system.[3]

6.      Included in Mr. Hendrickson's deposition exhibits were documents which I have relied upon for the analysis presented in this declaration.  Specifically, Exhibits 6, 7 and 8 which were earnings statements for the three named plaintiffs; Exhibits 2, 3, and 4 which were various versions of the Virgin America Inflight Teammate Work Rules[4]; and, Exhibit 16 the Virgin America Crew Pay Manual.  The two earnings statements in Exhibit 6 are for Esther Garcia and cover the work month of February 2015.  The two earnings statements in Exhibit 7 are for Lisa Marie Smith and cover the work month of May 2015.  The two earnings statements in Exhibit 8 are for Julia Bernstein and cover the work month of October 2011.

**Hours Worked and Paid (Base Wages)[5]**

7.      Virgin pays its flight attendants using a system that guarantees a certain number of hours per month.  That minimum is 70 hours per bid period (a bid period is

---

[1] Some of the flight records predate March 18, 2011, the beginning of the proposed Class Period.  For this declaration, I have used flight records subsequent to March 18, 2011.

[2] Mr. Hendrickson identified Exhibits 12 and 13 as reports from CrewTrac; deposition of Richard Hendrickson dated May 11, 2016, page 154, line 24 to Page 155, line 8.  These records show report times, actual departure times, actual arrival times, the block time used for compensation purposes, as well as other information.

[3] Mr. Hendrickson identified Exhibit 14 as a report from AIMS; deposition of Richard Hendrickson dated May 11, 2016, page 159, line 6 to page 160, line 2.

[4] For purposes of this report, I have used the 2013 version of the three versions of the InFlight Teammate Work Rules and footnoted any differences between the 2013 version and the two older versions.  In calculating potential damages for the entire class, the version applicable to the specific damage period will be used.

[5] This section does not address any premiums for overtime associated with the hours worked and paid.  Overtime is addressed in the next section of this declaration.

approximately a month) for lineholders[6] and 75 hours per bid period for reserves.[7]
For attendants who successfully bid for specific flights in the bid period (i.e.
lineholders), their minimum is typically the scheduled block time of all of their flights
in the bid period.[8]  Block time is defined by Virgin as "The time beginning when an
aircraft blocks out for the purpose of flight and ending when the aircraft comes to a
stop and engines are shut down at block-in."[9] Definitions of "block out" and "block
in" refer to parking at a gate or pushing back from the gate.[10]

      8.     Virgin also requires its attendants to check in one hour before flight time
for the first flight of the day of a pairing.[11]  Checking in typically occurs at a Virgin
Village station located in the secure area of the terminal when flying from the
attendant's home base.[12]  So, an attendant must pass through security on their first
flight of the day before check in.[13]  When flying from an airport that is not their home
base, attendants are required to report to the area designated by the Captain (one hour
before scheduled departure) and to be on board the aircraft 45 minutes prior to
scheduled departure.[14]  Prior to the 2013 version of the work rules, the requirement
was to be on the airplane 45 minutes prior to departure regardless of whether it was

---

[6] A line holder is "A (non-reserve) ITM holding a line of pairings for the bid month" according to the InFlight Teammate Work Rules (VIR/BER 000893).  ITM is the abbreviation for InFlight Team Member (VIR/BER 000892), which is Virgin's title for its flight attendants.
[7] Exhibit 3 to Deposition of Richard Hendrickson, May 11, 2016, Virgin America Inflight Work Rules, revision 5, dated October 1, 2013, VIR/BER00842 C.2. and D.1.  Adjustments to the minimum may occur if an attendant takes time off or is otherwise unavailable for service during the bid period.  The 2011 and 2012 versions have a minimum bid period of 70 hours for both reserve and lineholders (VIR/BER000953 C.2. a and VIR/BER000954 C.2.d for 2012 and VIR/BER001030 D.1 and VIR/BER001030 D.3 for 2011).
[8] VIR/BER 000843 E.1.b (i)  Adjustments to the minimum may occur if an attendant takes time off or is otherwise unavailable for service during the bid period.
[9] VIR/BER 000891
[10] VIR/BER 000891
[11] VIR/BER 000803 A.1.c
[12] Ibid.
[13] Mr. Hendrickson testified that at SFO, the Virgin Village was located after security, through another doorway, down an elevator, and through another door.  Deposition of Richard Hendrickson, May 11, 2016, p. 128, line 17 to P. 129 line 13.
[14] VIR/BER 000804 A.1.c(ii)(a) and (b)

the attendant's home base or not.[15]   None of this time is counted in the block time (unless the plane happens to depart prior to its scheduled departure time).

9.      At the end of the last flight of the day, the flight attendant is released from duty 15 minutes after the actual block-in time of the final scheduled flight in a duty period.[16]   Again, this 15 minutes when passengers disembark is not counted in the block time.  For purposes of this declaration I have assumed (based on the release time work rule) it takes approximately 15 minutes (if not more) for flight attendants to complete their duties upon arrival regardless of whether it is their last flight of the day.  These duties include waiting for passengers to disembark, cleaning the cabin and crossing the seatbelts on each seat, waiting with passengers who needed wheelchairs, accompanying minors to the front, and discussing any issues with gate agents.[17]

10.     I have analyzed three months of flight schedule activity for each of the named Plaintiffs.  The months correspond to the same months for which I have earnings statements (as described above in paragraph 6).  For purposes of my analysis I have been asked by Plaintiffs' counsel to assume the attendants should be paid from the time that they are required to report in (typically one hour before scheduled departure) until 15 minutes after the flight lands.[18]   For consecutive flights, where the next flight departed prior to a full hour elapsing, I have assumed that flight attendants should be paid for the time that was available (e.g. 15 minutes after the preceding flight landed until departure time of the next flight) up to forty five minutes.  For

---

[15] VIR/BER 00926 C.1.d (July 1, 2012) and VIR/BER 001013 A.2 (March 1, 2011)
[16] VIR/BER 000804 A.2.a
[17] Deposition of Lisa Marie Smith, dated June 2, 2016, pages 226 to 241
[18] I understand Defendant may argue that only hours worked in California may be eligible for consideration of damages.  For purposes of Plaintiffs' off-the-clock/minimum wage claims, these claims do not involve any flight time, only time on the ground.  If required to consider only California for the off-the-clock/minimum wage claims, I can exclude any unpaid time occurring in non-California airports.  For purposes of Plaintiffs' overtime and meal/rest claims, I can similarly narrow my damages calculations to time when class members work exclusively in California.

consecutive flights where the time between flights is greater than one hour, I have not counted the time beyond the one hour before the next flight.  The results of the analysis are shown in Exhibit B (Esther Garcia), Exhibit C (Lisa Marie Smith), and Exhibit D (Julia Bernstein).

11.     For Esther Garcia, in February 2015, her ADP wage statements show 37.5 hours for the period February 1 through 15 and 38.8 hours for the period February 16 through 28.  In addition, she was paid 3.03 hours to meet a minimum guaranteed 79.33 (37.5 plus 38.8 plus 3.03) hours.  However, when calculating her hours using the methodology outlined in paragraph 10, she worked 100.05 hours.  This indicates that she may have a claim for unpaid wages for 20.72 hours (100.05 less 79.33).  At her base rate of $33.35 per hour, her potential claim is $691.01 (20.72 hours multiplied by $33.35) for February 2015.

12.     For Lisa Marie Smith, in May 2015, her ADP wage statements show 37.5 hours for the period May 1 through 15 and 20.25 hours for the period May 16 through 31.  In addition, she was paid 2.12 hours to meet a minimum guaranteed 59.87 (37.5 plus 20.25 plus 2.12) hours.  However, when calculating her hours using the methodology outlined in paragraph 10, she worked 82.93 hours.  This indicates that she may have a claim for unpaid wages for 23.06 hours (82.93 less 59.87).  At her base rate of $32.00 per hour, her potential claim is $738.03 (23.06 hours multiplied by $32.00) for May 2015.  Since these hours were incurred while she was in a lead attendant position, she may also have a claim for the lead attendant additional hourly wage rate of $4.80.  With the lead attendant additional hourly compensation her damages would increase by $110.70 for the month of May 2015.

13.     For Julia Bernstein, in October 2011, her ADP wage statements show 35 hours for the period May 1 through 15 and 22 hours for the period May 16 through

31.  In addition, she was paid 36.92 hours to meet a minimum guaranteed 93.92 (35 plus 22 plus 36.92) hours.  When calculating her hours using the methodology outlined in paragraph 10, she worked 71.98 hours.  This indicates that she may not have a claim for unpaid base wages for October 2011.  However, as shown in the paragraph below, she did work more than eight hours per day (given the methodology I have used), which would result in potential claims for overtime premiums.

**Overtime Premiums**

14.     In addition to the potential claims for unpaid base wages, plaintiffs have claimed that they were not paid overtime premiums when working more than 8 hours per day or over 40 hours per week.[19]  As shown in Exhibits B, C and D, all three plaintiffs worked more than 8 hours per day during the month analyzed when calculating hours worked as described in paragraph 10.  Specifically:

a.   In Exhibit B, Esther Garcia worked more than eight hours on five of the thirteen days she was on duty in February 2015.  At 5.98 hours of overtime at a premium of $16.68 (an additional one half of her regular rate) her claim for potential damages is $99.77 (5.98 multiplied by $16.68) for February 2015.

b.   In Exhibit C, Lisa Marie Smith worked more than eight hours on six of the eleven days she was on duty in May 2015.  At 7.32 hours of overtime and a premium of $18.40 (an additional one half of her regular rate of $16.00

[19] The California Wage Order that applies to flight attendants exempts from overtime the hours an attendant works over forty hours in a week due to a voluntary swap of a shift that causes the overtime hours.  (State of California Industrial Welfare Commission, Order no 9-2001, Effective July 1, 2002, page 6, section 3 (N)).  I have been advised by counsel that when a flight attendant voluntarily changes his/her schedule that there is/are a specific code(s) in the flight records that indicates the voluntary swap which would allow me to exclude those hours from overtime calculations involving work time in excess of forty hours.  For example, the Crew Pay Manual indicates a number of "Crew Member Dropped Trip" and "Crew Member Added Trip" Rainmaker transaction codes that appear to correspond, on a one to one basis with someone dropping or adding a flight (VIR/BER 001127).  Rainmaker is short for "Rainmaker CrewPay" and this software system imports data from CrewTrac to calculate pay credits (VIR/BER 001047).

plus one half of the lead attendant additional compensation of $4.80 per hour) her claim for potential damages is $134.63 (7.32 multiplied by $18.40). In addition, Ms. Smith worked 51.40 hours during one week, which makes her eligible for potential overtime of 6.65 hours (after subtracting daily overtime for the week). I observed no codes on flights during this week that would indicate she made a voluntary change in her schedule. Therefore, her potential claim for overtime premiums includes an additional $122.36 ($18.40 multiplied by 6.65 hours).

c.   In Exhibit D, Julia Bernstein worked more than eight hours on five of the nine days she was on duty in October 2011. At 7.00 hours of overtime and a premium of $12.00 (an additional one half of her regular rate) her claim for potential damages is $84.20 (7.00 multiplied by $12.00). In addition, Ms. Bernstein worked 50.05 hours during one week, which makes her eligible for potential overtime of 5.48 hours (after subtracting daily overtime for the week). I observed no codes on flights during this week that would indicate she made a voluntary change in her schedule. Therefore, her potential claim for overtime premiums includes an additional $65.80 ($12.00 multiplied by 5.48 hours).

**Other Claims**

15.   Plaintiffs have made other claims regarding meal and rest breaks as well as time spent on training and drug testing, amongst other claims. Because I can calculate duty time from the flight information provided to me, I can calculate potential missed meal breaks. For Esther Garcia, in February 2015 she worked thirteen days of which twelve days were over five hours on duty. Only four of the twelve days had a break between flights (in the first five hours of duty) which would

have allowed her to have a meal break of thirty minutes or more.[20]  For Lisa Marie Smith, in May 2015 she worked eleven days of which nine days had over five hours on duty.  Only three of the nine days had a break between flights (in the first five hours of duty) which would have allowed her to have a meal break of thirty minutes or more.  For Julia Bernstein, in October 2011 she worked nine days of which eight days had over five hours on duty.  None of the eight days had a break between flights (in the first five hours of duty) which would have allowed her to have a meal break of thirty minutes or more.  In addition, Julia Bernstein had one day when she worked over ten hours and did not have a break between flights that would have allowed for a second meal break.

16.     Julia Bernstein's wage statement for the period ending October 31, 2011 shows year to date training of 168 hours.  Because claims for testing and training relate to the ratio of time paid to actual time spent (for example, plaintiffs may claim that drug testing took one hour instead of a half hour), it will be possible to calculate potential claims for the time spent on these types of activities.  Similarly, any claims associated with reserve activity, where flight attendants claim they were paid a fraction of actual hours worked, may be analyzed using payroll records.

17.     For example, Julia Bernstein's wage statement for the period ending October 31, 2011 shows she was paid 0.5 hours for drug testing.  The company policy was to pay .5 hours for each drug test.[21]  Ms. Bernstein claimed that drug testing took longer than a half an hour.[22]  Using surveys of class members or other discovery documents, it would be possible to estimate the length of time it took for drug testing.

---

[20] Note that in Exhibits B, C and D, the time between flights does not account for the assumed 15 minutes to disembark passengers from the previous flight and perform other duties at the end of the flight.  Therefore, unless there is at least 45 minutes in column G, there is not enough time for a thirty minute meal break.
[21] VIR/BER 000854 I.10
[22] Deposition of Julia Bernstein, dated May 13, 2016, page 239, line 23 to page 240, line 2

Then using either an average or other supportable amount of time for the entire class, or particular respondent's answers, it would be possible to estimate the amount of any unpaid hours due to drug testing.  Base rates of pay are available on the same wage statements as the paid time for drug testing, allowing me to calculate potential damages from any unpaid hours.

18.     Regarding training time, I have been informed by counsel that even though flight attendants are paid for training, they are not paid for all training time. Attendants were required to attend sixteen hours of recurrent training per year from 2011 to present.[23]  From 2011 through 2014 attendants also were required to attend sixteen hours of refresh training.[24]  There are two issues with training:  were the attendants paid for the duration of all mandatory training sessions and did the training sessions actually take longer than the stated requirements (e.g. eight hours)?  While the discussion below focuses on flight attendants who were not new employees, the same type of methodology may be applied to new employee training.

19.     For the first issue of being paid for the required training time, the Inflight Work Rules state that flight attendants are only credited with 3.5 hours of pay for each day of recurrent ground school training and 6.0 hours of pay for each day of refresh training.[25]  Assuming a day of training is eight hours of work time, an attendant appears to be paid for 7 hours of recurrent training and 12 hours of refresh (totaling 19 hours of training pay) when they were required to have 32 hours of training (16 hours of recurrent and 16 hours of refresh) from 2011 through 2014.  For 2015, an attendant appears to have been paid 7 hours for 16 hours of recurrent training.  If the stated differences discussed above are found to be accurate, potential

---

[23] Defendant's Supplemental Responses to Garcia's Interrogatories, Set One, dated May 15, 2016, No. 11
[24] Ibid and VIR/BER 009885
[25] VIR/BER 000849, H.1 and H.2

damages could be calculated at 11 hours of base wages (32 required hours less 19 paid hours) for any attendant who worked the full year of 2012, 2013 and 2014.  For 2015, potential damages could be calculated at 9 hours of base wages (16 required hours less 7 paid hours) for any attendant who worked the full year.[26]

20.     The claim that flight attendants were not paid for all of their required training time is supported by earnings statements.  The earnings statement for Esther Garcia for the period ending September 30, 2011 shows 7 hours of training which would be consistent with two eight hour days of recurrent training (paid at 3.5 hours per day, as noted in the preceding paragraph).   The earnings statement for Julia Bernstein for the period ending September 30, 2011 shows 7 hours of training which would be consistent with two eight hour days of recurrent training (paid at 3.5 hours per day, as noted in the preceding paragraph).  The earnings statement for Julia Bernstein for the period ending March 31, 2010 shows 6 hours of training which would be consistent with one eight hour day of recurrent training (paid at 3.5 hours per day, as noted in the preceding paragraph).

21.     For the second issue, did training take longer than the required time, there is some evidence that training may have taken more than eight hours per day.[27]  An agenda for 2014 training shows a first day of training that lasts nine hours with a one-half hour break for lunch.[28]  The same agenda, on day two, shows nine hours of training with a one hour lunch break (at which the "event" was "Virgin America Leadership").[29]  A 2015 training agenda shows two nine hour days of training, each with an hour lunch break.  A survey of class members or other discovery documents

---

[26] Earning codes related to training can be used to confirm whether or not an employee actually attended the required training sessions described above.
[27] A training day that exceeds eight hours may also include potential claims for overtime premiums.
[28] VIR/BER 009796
[29] VIR/BER 009797

may determine if the lunch periods were part of the training or truly a break time. Also, a survey or other discovery documents may determine whether the lunch period was the hour or half hour shown on the schedule.

22.     Flight attendants in reserve positions may also have claims for unpaid time.  Reserves are flight attendants who were not awarded a scheduled line of flying for a bid month.[30]  As mentioned in paragraph 7, reserve flight attendants had a guaranteed minimum number of hours (either 70 or 75 depending on the time period) for which they were paid in a month.  Reserve assignments are categorized as "long call" and "short call".[31]  For short call assignments, a flight attendant may be assigned to airport reserve which requires the attendant to be available to report for flight duty within five minutes.[32]   Airport reserve assignments are limited in time to six hour blocks.[33]  Airport reserve time is credited with four hours of base pay if the attendant is not assigned to a flight.[34]  If the attendant is assigned to a flight, they are credited with half of their reserve time and the block time/deadhead time of the flight(s).[35]  If the flight attendants should be paid for all of the time they spend on airport reserve, then the rules for calculating pay have not done so.  Virgin has records of the amount of time flight attendants have spent while on airport reserve.  These records can be used to calculate potential damages due to unpaid base wages.

**Summary**

23.     Given the records and documents I have received, I was able to calculate potential damages for unpaid base rate hours and unpaid overtime.  Given records for

---

[30] VIR/BER 000781 A.1
[31] Ibid, A.3
[32] VIR/BER 000787 G.5
[33] VIR/BER 000787 G.3;  RRR is airport reserve duty (VIR/BER 000786 G) and RAP is a duty period during which a short call reserve ITM must be available to receive a flight duty assignment (VIR/BER 000894).
[34] VIR/BER 000849 H.4
[35] Ibid.

the entire class and the entire class period, I would be able to calculate potential damages for unpaid hours and unpaid overtime for the class.  Similarly, potential claims for breaks, reserve time, training time, drug testing and other activities may be calculated using the same data sources.  I was also able to identify missed meal breaks.  Given records for the entire class and the entire class period, I would be able to identify meal breaks for the class.

24. I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 23, 2016
   San Francisco, CA

_David Breshears_

_____

David M. Breshears, CPA/CFF





**HEMMING MORSE, LLP**

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

## Employment & Education

| | |
|---|---|
| 2012 – Present | **Hemming Morse, LLP**<br>*Certified Public Accountants,*<br>*Forensic and Financial Consultants*<br>Partner |
| 1999 – 2011 | **Hemming Morse, Inc.**<br>Director, 2011<br>Manager, 2006-2010<br>Associate<br>Staff Accountant |
| 1998 | **California State University, Chico**<br>B.S.  Accounting |

## Professional & Service Affiliations

- Certified Public Accountant,
  State of California, since 2006

- Certified in Financial Forensics, since 2008

- American Institute of Certified Public Accountants

- California Society of Certified Public Accountants

- Association of Certified Fraud Examiners
  (Associate Member)

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062



www.hemming.com

# David M. Breshears, CPA/CFF

## Presentations & Seminars

- *"E-Discovery & Electronically Stored Information 101"*
  Beeson Tayer & Bodine, May 2013

- *"How to Collect, Produce, and Use E-Documents: A Practical Primer"*
  BASF - Labor & Employment Conference, Yosemite, February 2013

- *"Forensic Accounting for Today's Busiest Practice Areas"*
  Continuing Education of the Bar-California, March 2012

- *"Utilizing Experts in Wage and Hour Litigation"*
  Buchalter Nemer, July 2011

- *"Class Action Employment Litigation"*
  California Socity of Certified Public Accountants-State Steering Committee, August 2010

- *Adjunct Professor, Golden Gate University, Wage & Hour Damages, Spring 2009, Fall 2009, Spring 2010*

## Testimony

*Trial*

- **Honora Keller et al v. The Board of Trustees of California State University (2015)**
  Superior Court of the State of California
  County of San Francisco, Case No. CGC-09-490977

- **Amanda Quiles, et al v. Koji's Japan Incorporated, et al. (2014)**
  Superior Court of the State of California, County of Orange, Case No. 30-2010-00425532-CU-OE-CXC

- **Ming-Hsiang Kao v. Joy Holiday, Joy Express, Inc., et al. (2014)**
  Superior Court of the State of California
  County of San Mateo, Case No. CIV509729

- **Salinas, et al. v. Imperial Irrigation District (2014)**
  Superior Court of the State of California
  City and County of Riverside, Case No. 10017367

- **Amerman v. Gurvinder Musafar (2013)**
  Superior Court of the State of California
  County of Santa Clara, Case No. 112CV226364

- **Michael J. Pexa v. Farmers Group, Inc. (2012)**
  Superior Court of the State of California
  County of Sacramento, Case No. 34-2009-00034950

- **Marina Puchalski and Rajeev Chhibber v. Taco Bell Corp. (2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Maria Martinez and Juana Guzman v. Jatco, Inc. (2011**)
  Superior Court of the State of California
  County of Alameda, Case No. RG08397316

page 2 of 5

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062



# David M. Breshears, CPA/CFF

## Testimony

### Deposition

- **Daniel Villalpando v. Exel Direct Inc. (2016)**
  U.S. District Court, Northern District of California
  Case No. 3:12-cv-04137-JCS

- **Chris Elliott, et al. v. Schlumberger Technology Corporation (2016)**
  U.S. District Court, District Court of North Dakota, Fargo Division, Civil Action No. 3:13-cv-00079

- **Sanchez, et al. v. McDonald's Restaurants of California, Inc. (2015)**
  Superior Court of the State of California
  County of Los Angeles, Case No. BC499888

- **Betelhem Shiferaw v. Sunrise Senior Living Management, Inc. (2015)**
  U.S. District Court, Central District of California
  Case No. 2:13-cv-02171-JAK-PLA

- **Honora Keller et al v. The Board of Trustees of California State University (2015)**
  Superior Court of the State of California
  County of San Francisco, Case No. CGC-09-490977

- **Ming-Hsiang Kao v. Joy Holiday, Joy Express, Inc., et al. (2014)**
  Superior Court of the State of California
  County of San Mateo, Case No. CIV509729

- **Fraser, et al. v. Patrick O'Connor & Associates, L.P. (2014)**
  U.S. District Court, Southern District of Texas
  Case No. 4:11-cv-03890

- **Salinas, et al. v. Imperial Irrigation District (2014)**
  Superior Court of California, City and County of Riverside, Case No. 10017367

- **Smith, et al. v. Family Video Movie Club, Inc. (2013)**
  U.S. District Court, Northern District of Louisiana
  Case No. 1:11-cv-01773

- **Lang v. DirecTV, Inc. (2013)**
  U.S. District Court, Eastern District of Louisiana
  Case No. 2:10-cv-01085-NJB-SS

- **Sabas Arredondo, et al. v. Delano Farms Company, et al. (2013)**
  Eastern District of California, Fresno Division
  Case No. 1:09-cv-01247-LJO-DLB

- **Gabriel Fayerweather v. Comcast Corporation (2012)**
  Superior Court of the State of California
  County of San Diego, Case No. C-08-01470

- **Green v. Konica Minolta Business Solutions U.S.A., Inc. (2012)**
  U.S. District Court, Northern District of Illinois
  Eastern Division, Case No. 11-CV-03745 (N.D. Ill.)

- **Marina Puchalski and Rajeev Chhibber v. Taco Bell Corp. (May 2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Marina Puchalski and Rajeev Chhibber v. Taco Bell Corp. (April 2012)**
  Superior Court of the State of California
  County of San Diego, Case No. GIC 870429

- **Martin Marine v. Interstate Distributor Co. (2012)**
  Superior Court of the State of California
  County of Alameda, Case No. RG073582777

- **Maria Martinez and Juana Guzman v. Jatco, Inc. (2011)**
  Superior Court of the State of California
  County of Alameda, Case No. RG08397316

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

# HEMMING MORSE, LLP

CERTIFIED PUBLIC ACCOUNTANTS,
FORENSIC AND FINANCIAL CONSULTANTS

CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

## Selected Case Experience

- Engaged as damage expert by plaintiff, to analyze and quantify; meal and rest period claims, improper distribution of gratuities, and off-the-clock hours, for an upscale restaurant chain.

- Engaged as damage expert by defendant, a farm labor contractor, to evaluate claims related to off-the-clock hours worked and expense reimbursement for small tools for over 20,000 employees.

- Engaged as neutral accounting expert by plaintiff and defendant to calculate potential unpaid hours worked and additional overtime premiums for commission bonuses, for a manufacturing/engineering firm.

- Expert for the plaintiff. Retained to determine the frequency and magnitude of time shaving claims of a mid-size manufacturing firm.

- Provided consulting services to defense counsel in a class-action wage and hour matter, which alleged that hundreds of County employees were paid improper overtime wages under the FLSA. Prepared analyses using hours worked records, compensation data, employee records, and other data to determine the proper calculation of employees' regular rate of pay and related overtime compensation.

- Assisted counsel in preparing a case involving unpaid overtime, meal and rest break violations, and off-the-clock time for an employee of a hotel chain. Reviewed employment history files, time records, and other documents to determine the number of potential violations and to quantify damages.

- Assisted expert for plaintiffs' counsel in a class-action wage and hour matter, which alleged that over 250 small business banking officers were improperly classified as exempt. Reviewed statistical sample of hours worked, salary and commission related earnings, paid time off records, and other data to determine the damages related to unpaid overtime and missed meal breaks.

- Assisted expert for plaintiffs' counsel in a class-action matter against a fortune 500 company, which alleged that a class of several hundred individuals was misclassified as independent contractors in the state of Washington. Prepared analysis of average earnings across all class members and performed comparison to national averages for similarly situated employees and independent businesses. Performed business valuation services to determine economic value of independent contractor assets and to incorporate any discounts that may apply related to the controls and requirements of the customer/employer operating agreement.

- Assisted expert for plaintiffs' counsel in a class-action matter against a Fortune 500 company, which alleged that over 75,000 California employees were required to pool their tips with supervisory employees in direct violation of the California Labor Code.

- Provided consulting services to plaintiffs' counsel in a class-action wage and hour matter, which alleged that hundreds of employees were not paid the proper "living wage" in accordance with the company's contractual obligation. Created a database of hours worked and earnings information from paper and electronic records, and then providing damages estimates based on a variety of assumptions and legal theories.

- Advised counsel on class certification issues by applying economic and statistical approaches to analyze evidence relating to class member variation, if any, and to determine both liability and damages.

- Consulted for Health Provider in a dispute involving a guaranteed maximum price contract for the construction of various structures. Assisted the expert in analyzing construction costs incurred and calculating the amount due to the general contractor.

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062



CURRICULUM VITAE

www.hemming.com

# David M. Breshears, CPA/CFF

### Selected Experience continued

- Performed statistical and contractual analysis for labor settlement or arbitration purposes, including analysis of pay and benefits, job content, productivity, labor costs, and profitability.

- Consulted clients in their efforts to identify overpayments of construction projects; discover errors and identify unreasonable project charges; identify weaknesses in contractual agreements; reduce risks of fraud, waste, and abuse; and recover payments made in error.

- Prepared financial analyses in connection with assignments involving fraud, contract disputes and lost profits.

- Performed extensive research for a variety of cases, including cases involving fraud, contract disputes, and lost profits.

- Created various databases and/or tested the accuracy of databases created by others in order to assimilate large amounts of information to be presented in a meaningful manner.

- Managed audit engagements from planning to reporting, including delegation and review of staff assignments and control of time and expenses.

- Prepared and examined financial reports including research and analysis of technical accounting issues.

- Analyzed client accounting systems and related controls and developed specific recommendations for improvements.

page 5 of 5

**Walnut Creek Office**
1340 Treat Boulevard
Suite 209
Walnut Creek, CA 94597
Tel: 415.836.4000
Fax: 415.777.2062

| EXHIBIT - B  Esther Garcia February 2015 |
|---|

| | Block Time | A — Report Time [1] | B — Actual Departure | C=B-A — Report to Depart Time | D — Time in Hours | E=D+K — Pre-Depart Time | F — Actual Arrival | G — Time Between Flights [4] | H — Time in Hours | I=F-A — Arrival t | J — Time in Hours | K — Adjust for Prior Flight | L — Time Zone | M=J+K+L — Adjusted Time | N — Deplane | O=M+N — Total Hours | P — Hours per Day | Q — Hours per Week | R — Daily Overtime Hours | S — Weekly Overtime Hours | T — Potential Meal Break Violation [5] |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31-Jan | 5.98 | 12:00 | 12:58 | 0:58 | 0.97 | 0.97 | 15:57 | | | 3:57 | 3.95 | | 3.00 | 6.95 | 0.25 | 7.20 | 7.20 | 7.20 | | | Yes |
| 3-Feb | 4.60 | 11:30 | 12:28 | 0:58 | 0.97 | 0.97 | 20:04 | | | 8:34 | 8.57 | | (3.00) | 5.57 | 0.25 | 5.82 | 5.82 | | | | Yes |
| 4-Feb | 5.63 | 8:00 | 9:19 | 1:19 | 1.32 | 1.32 | 11:57 | | | 3:57 | 3.95 | | 3.00 | 6.95 | 0.25 | 7.20 | | | | | Yes |
| 4-Feb | 1.12 | 12:52 | 13:37 | 0:45 | 0.75 | 0.75 | 14:44 | 0:55 | 0.92 | 1:52 | 1.87 | | | 1.87 | 0.25 | 2.12 | 9.32 | | 1.32 | | |
| 5-Feb | 5.00 | 14:30 | 15:20 | 0:50 | 0.83 | 0.83 | 23:20 | | | 8:50 | 8.83 | | (3.00) | 5.83 | 0.25 | 6.08 | 6.08 | | | | |
| 6-Feb | 5.90 | 9:35 | 10:21 | 0:46 | 0.77 | 0.77 | 13:15 | | | 3:40 | 3.67 | | 3.00 | 6.67 | 0.25 | 6.92 | 6.92 | | | | Yes |
| 6-Feb | - | | [2] | | | | | | | | | | | - | | - | | | | | |
| 6-Feb | 3.50 | 22:30 | 0:17 [2] | | | | | | | | | | | 3.50 | | 3.50 | 3.50 | 3.50 | | | |
| 7-Feb | 3.50 | 12:25 | 13:23 [3] | | | | | | | | | | | 3.50 | | 3.50 | 3.50 | 35.13 | | | |
| 9-Feb | 2.45 | 12:05 | 13:03 | 0:58 | 0.97 | 0.97 | 15:30 | | | 3:25 | 3.42 | | | 3.42 | 0.25 | 3.67 | | | | | |
| 9-Feb | 1.88 | 16:18 | 17:03 | 0:45 | 0.75 | 0.75 | 18:56 | 0:48 | 0.80 | 2:38 | 2.63 | | | 2.63 | 0.25 | 2.88 | | | | | |
| 9-Feb | 1.38 | 20:15 | 21:00 | 0:45 | 0.75 | 0.75 | 22:23 | 1:19 | 1.32 | 2:08 | 2.13 | | | 2.13 | 0.25 | 2.38 | 8.93 | | 0.93 | | |
| 10-Feb | 1.40 | 18:40 | 19:28 | 0:48 | 0.80 | 0.80 | 20:52 | | | 2:12 | 2.20 | | | 2.20 | 0.25 | 2.45 | | | | | |
| 10-Feb | 5.32 | 22:45 | 23:20 | 0:35 | 0.58 | 0.58 | 7:39 | 1:53 | 1.88 | 8:54 | 8.90 | | (3.00) | 5.90 | 0.25 | 6.15 | 8.60 | | 0.60 | | |
| 11-Feb | 5.87 | 19:05 | 20:17 | 1:12 | 1.20 | 1.20 | 23:09 | | | 4:04 | 4.07 | | 3.00 | 7.07 | 0.25 | 7.32 | 7.32 | 24.85 | | | Yes |
| 22-Feb | 1.15 | 12:40 | 13:38 | 0:58 | 0.97 | 0.97 | 14:47 | | | 2:07 | 2.12 | | | 2.12 | 0.25 | 2.37 | | | | | |
| 22-Feb | 1.47 | 14:49 | 15:34 | 0:45 | 0.75 | 0.53 | 17:02 | 0:02 | 0.03 | 2:13 | 2.22 | (0.22) | | 2.00 | 0.25 | 2.25 | | | | | |
| 22-Feb | 1.23 | 17:36 | 18:21 | 0:45 | 0.75 | 0.75 | 19:35 | 0:34 | 0.57 | 1:59 | 1.98 | | | 1.98 | 0.25 | 2.23 | | | | | Yes |
| 22-Feb | 1.98 | 19:56 | 20:41 | 0:45 | 0.75 | 0.75 | 22:40 | 0:21 | 0.35 | 2:44 | 2.73 | | | 2.73 | 0.25 | 2.98 | 9.83 | | 1.83 | | |
| 23-Feb | 2.00 | 16:10 | 17:09 | 0:59 | 0.98 | 0.98 | 19:09 | | | 2:59 | 2.98 | | | 2.98 | 0.25 | 3.23 | | | | | |
| 23-Feb | 1.83 | 19:59 | 20:44 | 0:45 | 0.75 | 0.75 | 22:34 | 0:50 | 0.83 | 2:35 | 2.58 | | | 2.58 | 0.25 | 2.83 | 6.07 | | | | |
| 24-Feb | 1.88 | 18:35 | 19:32 | 0:57 | 0.95 | 0.95 | 21:25 | | | 2:50 | 2.83 | | | 2.83 | 0.25 | 3.08 | | | | | |
| 24-Feb | 5.22 | 22:32 | 23:17 | 0:45 | 0.75 | 0.75 | 7:30 | 1:07 | 1.12 | 8:58 | 8.97 | | (3.00) | 5.97 | 0.25 | 6.22 | 9.30 | | 1.30 | | |
| 25-Feb | 6.00 | 19:05 | 20:30 | 1:25 | 1.42 | 1.42 | 23:30 | | | 4:25 | 4.42 | | 3.00 | 7.42 | 0.25 | 7.67 | 7.67 | 32.87 | - | - | Yes |
| | 76.30 | | | | | 18.50 | | | | | | | | 94.80 | 5.25 | 100.05 | 100.05 | 100.05 | 5.98 | - | |

Pay 5/1-5/15   37.50   hours   regular
Pay 5/16-5/31   38.80   hours   regular
76.30
Pay 5/16-5/31   3.03   hours   meet guarantee
**Total Paid**   79.33   hours

**Hours Worked less Total Paid Hours   20.72   Overtime Hours   5.98**
**Regular Pay Rate  $ 33.35   1/2 Regular Pay  $ 16.68**
**Potential Damages for Unpaid Hours  $ 691.01        $ 99.77**

Notes:

[1] For subsequent flights on one day, estimated from what appears to be actual departure time less 45 minutes.

[2]  The second flight listed on Feb. 6 is Las Vegas to Las Vegas. The last flight is a deadhead from Las Vegas back to San Francisco.  Hours for the last flight were assigned the minimum time credit for a day of 3.5 hours (Virgin American Inflight Teammate Work Rules Revised October 1, 2013, page 96, VIR/BER 00086).

[3] The first flight on February 7 appears to have been cancelled (block time for that day is zero).  The second flight was a deadhead to LAX.  The flight gets a 3.5 hour credit for the minimum time for a day (Virgin American Inflight Teammate Work Rules Revised October 1, 2013, page 96, VIR/BER 00086).

[4] Time from the prior flight landing to the report time (which is assumed to be 45 minutes prior to schedule departure) of this particular flight.  Does not subtract out 15 minutes for disembarking from prior flight.

[5] Potential meal break violations are flagged "yes" when the flight attendant has flown over five hours on the first flight or, if there are consecutive flights, the flight attendant does not have time to take a thirty minute break in the first five hours of duty.

**EXHIBIT - C Lisa Marie Smith May 2015**

| | A | B | C=B-A | D | E=D+K | F | G | H | I=F-A | J | K | | L | M=J+K+L | N | O=M+N | P | Q | R | S | T | U |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Block Time | Report Time [1] | Actual Departure | Report to Depart Time | Time in Hours | Pre-Depart Time | Actual Arrival | Time Between Flights [4] | Time in Hours | Report to Arrival Time | Time in Hours | Adjust for Prior Flight | Time Zone | Adjusted Time | Deplane | Total Hours | Hours per Day | Hours per Week | Daily Overtime Hours | Weekly Overtime Hours | Potential Meal Break Violation [6] | Lead Flight Attendant |
| 18-May | 1.40 | 14:20 | 15:47 | 1:27 | 1.45 | 1.45 | 17:11 | | | 2:51 | 2.85 | | | 2.85 | 0.25 | 3.10 | | | | | | Yes |
| 18-May | 1.45 | 18:19 | 19:04 | 0:45 | 0.75 | 0.75 | 20:31 | 1:08 | 1.13 | 2:12 | 2.20 | | | 2.20 | 0.25 | 2.45 | | | | | | Yes |
| 18-May | 1.85 | 20:42 | 21:27 | 0:45 | 0.75 | 0.68 | 23:18 | 0:11 | 0.18 | 2:36 | 2.60 | (0.07) | | 2.53 | 0.25 | 2.78 | 8.33 | | 0.33 | (0.33) | | Yes |
| 19-May | 2.47 | 16:40 | 17:46 | 1:06 | 1.10 | 1.10 | 20:14 | | | 3:34 | 3.57 | | | 3.57 | 0.25 | 3.82 | | | | | | Yes |
| 19-May | 4.67 | 21:14 | 21:59 | 0:45 | 0.75 | 0.75 | 5:39 | 1:00 | 1.00 | 8:25 | 8.42 | | (3.00) | 5.42 | 0.25 | 5.67 | 9.48 | | 1.48 | (1.48) | | Yes |
| 20-May | 5.62 | 17:05 | 18:15 | 1:10 | 1.17 | 1.17 | 20:52 | | | 3:47 | 3.78 | | 3.00 | 6.78 | 0.25 | 7.03 | | | | | Yes | Yes |
| 20-May | 1.07 | 22:07 | 22:52 | 0:45 | 0.75 | 0.75 | 23:56 | 1:15 | 1.25 | 1:49 | 1.82 | | | 1.82 | 0.25 | 2.07 | 9.10 | | 1.10 | (1.10) | | Yes |
| 21-May | 1.57 | 15:30 | 17:08 | 1:38 | 1.63 | 1.63 | 18:42 | | | 3:12 | 3.20 | | | 3.20 | 0.25 | 3.45 | | | | | | Yes |
| 21-May | 2.48 | 18:43 | 19:28 | 0:45 | 0.75 | 0.52 | 21:57 | 0:01 | 0.02 | 3:14 | 3.23 | (0.23) | | 3.00 | 0.25 | 3.25 | 6.70 | | | | Yes | Yes |
| 22-May | 2.45 | 10:00 | 11:19 | 1:19 | 1.32 | 1.32 | 13:46 | | | 3:46 | 3.77 | | | 3.77 | 0.25 | 4.02 | | | | | | Yes |
| 22-May | 4.82 | 14:48 | 15:33 | 0:45 | 0.75 | 0.75 | 23:22 | 1:02 | 1.03 | 8:34 | 8.57 | | (3.00) | 5.57 | 0.25 | 5.82 | 9.83 | | 1.83 | (1.83) | | Yes |
| 23-May | 6.60 | 15:40 | 16:46 | 1:06 | 1.10 | 1.10 | 20:22 | | | 4:42 | 4.70 | | 3.00 | 7.70 | 0.25 | 7.95 | 7.95 | 51.40 | | 11.40 | Yes | Yes |
| 25-May | 2.08 | 13:10 | 14:35 | 1:25 | 1.42 | 1.42 | 16:40 | | | 3:30 | 3.50 | | | 3.50 | 0.25 | 3.75 | | | | | | Yes |
| 25-May | 1.92 | 16:40 | 17:25 | 0:45 | 0.75 | 0.50 | 19:20 | 0:00 | - | 2:40 | 2.67 | (0.25) | | 2.42 | 0.25 | 2.67 | | | | | Yes | Yes |
| 25-May | 1.57 | 19:56 | 20:41 | 0:45 | 0.75 | 0.75 | 22:15 | 0:36 | 0.60 | 2:19 | 2.32 | | | 2.32 | 0.25 | 2.57 | 8.98 | | 0.98 | | | Yes |
| 27-May | 1.63 | 5:40 | 6:42 | 1:02 | 1.03 | 1.03 | 8:20 | | | 2:40 | 2.67 | | | 2.67 | 0.25 | 2.92 | | | | | | Yes |
| 27-May | 5.78 | 8:28 | 9:13 | 0:45 | 0.75 | 0.63 | 18:00 | 0:08 | 0.13 | 9:32 | 9.53 | (0.12) | (3.00) | 6.42 | 0.25 | 6.67 | 9.58 | | 1.58 | | Yes | Yes |
| 27-May | | [2] | | | | | | | | | | | | | | | | | | | | Yes |
| 28-May | 3.50 | [3] | | | | | | | | | | | | 3.50 | | 3.50 | 3.50 | | | | | No |
| 29-May | 1.20 | 15:30 | 16:45 | 1:15 | 1.25 | 1.25 | 17:57 | | | 2:27 | 2.45 | | | 2.45 | 0.25 | 2.70 | | | | | | No |
| 29-May | 2.58 | 17:53 | 18:38 | 0:45 | 0.75 | 0.43 | 21:13 | 0:00 | (0.07) | 3:20 | 3.33 | (0.32) | | 3.02 | 0.25 | 3.27 | 5.97 | | | | Yes | No |
| 30-May | 3.50 | 9:10 | 10:10 [5] | | | - | 12:15 | | - | | | | | 3.50 | - | 3.50 | 3.50 | 31.53 | - | - | | No |
| | 60.20 | | | | 17.98 | | | | | | | | | 78.18 | 4.75 | 82.93 | 82.93 | 82.93 | 7.32 | 6.65 | | |

| | | |
|---|---|---|
| Pay 5/1-5/15 | 37.50 hours | regular |
| Pay 5/16-5/31 | 20.25 hours | regular |
| | 57.75 | |
| | 2.12 | meet guarantee |
| **Total Paid** | 59.87 hours | |
| | | 6.65 |
| **Hours Worked less Total Paid Hours** | 23.06   **Overtime Hours** 7.32 | 6.65 |

| | | | |
|---|---|---|---|
| Regular Pay Rate | $ 32.00 | 1/2 Lead Rate* $ 18.40 | $ 18.40 |
| **Potential Damages for Unpaid Hours at Regular Pay Rate** | **$ 738.03** | **$ 134.63** | **$ 122.36** |

| | | |
|---|---|---|
| Additional Compensation for Lead Attendant | $ 4.80 | *Regular rate of $32 plus lead rate of |
| | $ 110.70 | $4.80 equals $36.80. |

Notes:

[1] For subsequent flights on one day, estimated from what appears to be actual departure time less 45 minutes.

[2] The last flight on May 27 (JFK to SFO) is not included in the block time so is not included in the calculation of hours.  See note below.

[3] The flight on May 28 appears to be a deadhead from JFK to SFO (no block time reported).  Hours for this flight were credited at 3.5 hours per the minimum hours per day (Virgin American Inflight Teammate Work Rules Revised October 1, 2013, page 96, VIR/BER 00086).

[4] Time from the prior flight landing to the report time (which is assumed to be 45 minutes prior to schedule departure) of this particular flight.  Does not subtract out 15 minutes for disembarking from prior flight.

[5] Hours for the flight were assigned the minimum time credit for a day of 3.5 hours (Virgin American Inflight Teammate Work Rules Revised October 1, 2013, page 96, VIR/BER 00086).

[6] Potential meal break violations are flagged "yes" when the flight attendant has flown over five hours on the first flight or, if there are consecutive flights, the flight attendant does not have time to take a thirty minute break in the first five hours of duty.

| | | A | B | C=B-A | D | E=D+K | F | G | H | I=F-A | J | K | L | M=J+K +L | N | O=M+N | P | Q | R | S | T |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Block Time | Report Time [1] | Actual Departure | Report to Depart Time | Time in Hours | Pre-Depart Time | Actual Arrival | Time Between Flights [3] | Time in Hours | Report to Arrival Time | Time in Hours | Adjust for Prior Flight | Time Zone | Adjusted Hours | Deplane | Total Hours | Hours per Day | Hours per Week | Daily Overtime Hours | Weekly Overtime Hours | Potential Meal Break Violation [4] |
| 4-Oct | 6.17 | 6:30 | 7:22 | 0:52 | 0.87 | 0.87 | 10:32 | | | 4:02 | 4.03 | | 3.00 | 7.03 | 0.25 | 7.28 | 7.28 | | | | Yes |
| 5-Oct | 1.27 | 7:50 | 8:42 | 0:52 | 0.87 | 0.87 | 9:58 | | | 2:08 | 2.13 | | | 2.13 | 0.25 | 2.38 | | | | | |
| 5-Oct | 2.22 | 10:15 | 10:57 | 0:42 | 0.70 | 0.70 | 13:10 | 0:17 | 0.28 | 2:55 | 2.92 | - | | 2.92 | 0.25 | 3.17 | | | | | Yes |
| 5-Oct | 5.35 | 14:10 | 15:00 | 0:50 | 0.83 | 0.83 | 23:21 | 1:00 | 1.00 | 9:11 | 9.18 | | (3.00) | 6.18 | 0.25 | 6.43 | 11.98 | | 3.98 | (3.98) | |
| 6-Oct | 5.98 | 15:30 | 16:40 | 1:10 | 1.17 | 1.17 | 19:39 | | | 4:09 | 4.15 | | 3.00 | 7.15 | 0.25 | 7.40 | 7.40 | | | | Yes |
| 7-Oct | 1.28 | 8:40 | 9:34 | 0:54 | 0.90 | 0.90 | 10:51 | | | 2:11 | 2.18 | | | 2.18 | 0.25 | 2.43 | | | | | |
| 7-Oct | 4.82 | 11:20 | 11:59 | 0:39 | 0.65 | 0.65 | 19:48 | 0:29 | 0.48 | 8:28 | 8.47 | - | (3.00) | 5.47 | 0.25 | 5.72 | 8.15 | | 0.15 | (0.15) | Yes |
| 8-Oct | 5.05 | 7:50 | 8:50 | 1:00 | 1.00 | 1.00 | 10:53 | | | 3:03 | 3.05 | | 3.00 | 6.05 | 0.25 | 6.30 | | | | | Yes |
| 8-Oct | 1.18 | 13:05 | 13:47 | 0:42 | 0.70 | 0.70 | 14:58 | 2:12 | 2.20 | 1:53 | 1.88 | | | 1.88 | 0.25 | 2.13 | 8.43 | | 0.43 | (0.43) | |
| 9-Oct | 5.68 | 6:00 | 6:52 | 0:52 | 0.87 | 0.87 | 15:33 | | | 9:33 | 9.55 | | (3.00) | 6.55 | 0.25 | 6.80 | 6.80 | 50.05 | | 10.05 | Yes |
| 25-Oct | 6.32 | 10:45 | 11:49 | 1:04 | 1.07 | 1.07 | 15:08 | | | 4:23 | 4.38 | | 3.00 | 7.38 | 0.25 | 7.63 | | | | | Yes |
| 25-Oct | 1.08 | 15:20 | 15:59 | 0:39 | 0.65 | 0.60 | 17:04 | 0:12 | 0.20 | 1:44 | 1.73 | (0.05) | | 1.68 | 0.25 | 1.93 | 9.57 | | 1.57 | | |
| 26-Oct | 3.52 | 12:35 | 13:28 | 0:53 | 0.88 | 0.88 | 18:59 | | | 6:24 | 6.40 | | (2.00) | 4.40 | 0.25 | 4.65 | | | | | |
| 26-Oct | 3.58 | 19:00 | 19:37 | 0:37 | 0.62 | 0.38 | 21:12 | 0:01 | 0.02 | 2:12 | 2.20 | (0.23) | 2.00 | 3.97 | 0.25 | 4.22 | 8.87 | | 0.87 | | Yes |
| 27-Oct | 3.50 | 12:20 | 13:17 [2] | | | - | 14:39 | | | | - | | | 3.50 | | 3.50 | 3.50 | 21.93 | - | - | |
| | 57.00 | | | | 11.48 | | | | | | | | | 68.48 | 3.50 | 71.98 | 71.98 | 71.98 | 7.00 | 5.48 | |

|  |  |  |  |
|---|---|---|---|
| Pay 10/1-10/15 | 35.00 | hours | regular |
| Pay 10/16-10/31 | 22.00 | hours | regular |
| | 57.00 | | |
| | 36.92 | hours | meet guarantee |
| | 93.92 | hours | |

| | | | | 5.48 |
|---|---|---|---|---|
| **Hours Worked less Total Paid Hours** | (21.94) | **Overtime Hours** | 7.00 | 5.48 |
| Regular Pay Rate | $24.00 | 1/2 Regular Pay | $ 12.00 | $ 12.00 |
| **Potential Damages for Unpaid Hours** | | | **$ 84.00** | **$ 65.80** |

Notes:

[1] For subsequent flights on one day, estimated from what appears to be actual departure time less 45 minutes.

[2] The flight time for this flight was less than the minimum number of hours guaranteed per service date. Hours for the flight were assigned the minimum time credit for a day of 3.5 hours (Virgin American Inflight Teammate Work Rules Revised March 11, 2011, page 55, VIR/BER 01034).

[3] Time from the prior flight landing to the report time (which is assumed to be 45 minutes prior to schedule departure) of this particular. Does not subtract out 15 minutes for disembarking from prior flight.

[4] Potential meal break violations are flagged "yes" when the flight attendant has flown over five hours on the first flight or, if there are consecutive flights, the flight attendant does not have time to take a thirty minute break in the first five hours of duty.