# EXHIBIT 48

```
 1                UNITED STATES DISTRICT COURT
                           FOR THE
 2                NORTHERN DISTRICT OF CALIFORNIA

 3                    CIVIL ACTION NO. 15-CV-02277-JST

 4   JULIA BERNSTEIN, et al.,

 5          Plaintiff,

 6   vs.

 7
     VIRGIN AMERICA, INC., et al.,
 8
            Defendant.
 9

10

11           _____/

12
     DEPOSITION OF:    WILLIAM VICTOR TOMLINSON
13
     DATE:             Friday, August 19, 2016
14
     TIME:             10:04 a.m. - 3:21 p.m.
15
     TAKEN BY:         Defendant
16
     PLACE:            Orange Legal
17                     633 East Colonial Drive
                       Orlando, Florida 32803
18
     REPORTED BY:      Sara Miller, Notary Public
19                     State of Florida

20

21

22

23

24

25


                              1
```

1      A.     It could be.
2      Q.     It could be.  So you could fill out an
3  incident report for that instance?
4      A.     Correct.
5      Q.     Of the 12 or so incident reports you filled
6  out, do you remember any examples of what you had to
7  fill them out for?
8      A.     When I filled them out, they were generally
9  not things like spilling the drink on a passenger.  They
10 were a medical emergency, something that I felt was
11 credible to spend my time -- my unpaid time doing.
12     Q.     I will strike the unpaid time because we are
13 going to get into this right now.
14     A.     Okay.
15     Q.     So you would determine when to fill out the
16 incident report?
17     A.     On my own, yes.
18     Q.     Yes.  So incidents would occur sometime
19 during a pairing?
20     A.     Yes, sir.
21     Q.     Was there a timeframe when you had to fill
22 out an incident report?
23     A.     You were supposed to do it within 24 hours
24 of the incident.
25     Q.     Was it 24 hours of the incident or 24 hours

```
 1  of your pairing?
 2       A.    I think it's 24 hours of the incident.
 3       Q.    So there wasn't a requirement that you fill
 4  it out immediately upon the plane landing?
 5       A.    You could be fired for that.
 6       Q.    Okay.  But there wasn't a requirement that
 7  you fill it out --
 8       A.    No.
 9       Q.    There wasn't a requirement that you fill it
10  out at your home?
11       A.    No.
12       Q.    There wasn't a requirement that you fill it
13  out at a hotel?
14       A.    No.  It was a timeline.
15       Q.    Okay.  You just needed the 24 hours within
16  the incident?
17       A.    Correct.
18       Q.    Okay.  Did you ever fill out an incident
19  report on a sit?
20       A.    Not that I remember.
21       Q.    And that three to four hour sit example we
22  were talking about before, could you fill out an
23  incident report during the three to four hour sits?
24       A.    I could have, but I do not remember doing
25  it.
```

144

1  Q. That's fine, but you could have?
2  A. I could have.
3  Q. And is it a handwritten report?
4  A. It's actually an online report that you do;
5  however, every single incident that I ever reported, I
6  wrote a handheld note or hand recorded note of what had
7  happened so that I wasn't going off memory, I was going
8  off facts. And I typically did that on my manifest.
9  Q. So during the flight if something happened,
10 you might put a couple of notes down in the manifest so
11 you can remember when you filled out the report later?
12 A. Correct.
13 Q. But the report you had to submit was an
14 electronic form?
15 A. Correct.
16 Q. So you couldn't just hand them the manifest
17 and say here's what happened?
18 A. No.
19 Q. Was there a program, an incident report
20 program?
21 A. Yes.
22 Q. And could you access that from the computers
23 in the Virgin Village?
24 A. Yes.
25 Q. Was it -- could you do it on your phone?

145

```
1        A.    I don't know.
2        Q.    Was it a website you could access from off
3   site?
4        A.    Yes.  I can't remember the name.
5        Q.    Okay.  But you say in paragraph 11 that you
6   filled incident reports out from your home?
7        A.    Mm-hmm.
8        Q.    Presumably you were able to access that --
9        A.    Correct.
10       Q.    -- report program from your home?
11       A.    Correct.
12       Q.    Okay.  So within the 24 hours after the
13  incident, would you decide for yourself when to fill out
14  that report?
15       A.    I would do it when I have the time to get to
16  it.
17       Q.    Okay.
18       A.    Yeah.
19       Q.    So you'd wait until you have the time to
20  fill it out?
21       A.    Correct.
22       Q.    Look at paragraph 13 of your declaration.
23       A.    Okay.
24       Q.    I am not aware of any Virgin policy that
25  applies to ITMs about meal and rest breaks.
```

146

```
 1   bring a snack on to the plane with you?
 2        A.   Typically I did not, but on occasion I did.
 3        Q.   Okay.  But if passengers weren't demanding
 4   things during the flight, you had a snack, you could eat
 5   a snack?
 6        A.   Yes.
 7        Q.   Would you notify the other flight attendants
 8   if you were going to eat a snack quickly?
 9        A.   No.
10        Q.   Would you notify them if you were going to
11   take a drink?
12        A.   No.
13        Q.   The -- are there different ways in which
14   passengers can request assistance during a flight?
15        A.   Many different ways.
16        Q.   Okay.  What are the different ways?
17        A.   Woo (witness waves).  That's the biggest
18   one, hey you, ring the call light.  You're walking by
19   and you see that they passed out.
20        Q.   And in terms of them ordering food and
21   drinks, is it automatic where you go down the plane with
22   the cart or do they have to order?
23        A.   Well, I worked -- the majority of my time at
24   Virgin America was an ITL, so I was up front, but I also
25   went to the rear of the aircraft and helped serve.
```

Case 4:15-cv-02277-JST   Document 84-9   Filed 10/06/16   Page 8 of 9

JULIA BERNSTEIN vs. VIRGIN AMERICA
TOMLINSON, WILLIAM                                                                200

```
 1                    CERTIFICATE OF OATH

 2

 3  STATE OF FLORIDA:

 4  COUNTY OF ORANGE:

 5

 6            I, Sara Miller, Stenograph Reporter, Notary

 7  Public, State of Florida, certify that WILLIAM VICTOR

 8  TOMLINSON, personally appeared before me on this 19th

 9  day of August, 2016, and was duly sworn.

10       Witness my hand and official seal this 26th day of

11  August, 2016.

12

13

14                    *Sara Miller*

15                    _____
                      Sara Miller
                      Notary Public-State of Florida
16                    My commission Expires: 7/14/2020
                      My commission No. FF 982771

17

18

19

20

21

22

23

24  Produced Identification: Driver's License

25
```

Case 4:15-cv-02277-JST   Document 84-9   Filed 10/06/16   Page 9 of 9

JULIA BERNSTEIN vs. VIRGIN AMERICA
TOMLINSON, WILLIAM                                                                                      201

```
 1                REPORTER'S DEPOSITION CERTIFICATE
 2
 3   STATE OF FLORIDA:
 4   COUNTY OF ORANGE:
 5
 6        I, SARA MILLER, a Notary Public of the State
 7   of Florida, County of Orange, do hereby certify that I
 8   was authorized to and did stenographically report the
 9   foregoing deposition of WILLIAM VICTOR TOMLINSON; that a
10   review of the transcript was requested; and that the
11   transcript, pages 4 through 199 is a true and complete
12   copy of the stenographic notes.
13        I further certify that I am not a relative,
14   employee, attorney, or counsel of any of the parties,
15   nor am I a relative of employee of any of the parties'
16   attorney or counsel connected with the action, nor am I
17   financially interested in the outcome of this action.
18   Dated this 25th day of August, 2016.
19
20
21
22                              _____Sara Miller_____
23                              Sara Miller,
                                Stenograph Shorthand Reporter
24
25
```