ROBERT JON HENDRICKS, State Bar No. 179751
MORGAN, LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, CA 94105-1596
Tel:    +1.415.442.1000
Fax:    +1.415.442.1001
E-Mail: rj.hendricks@morganlewis.com

NANCY VILLARREAL, State Bar No. 273604
MORGAN, LEWIS & BOCKIUS LLP
1400 Page Mill Road
Palo Alto, CA 94306
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001
E-Mail: nancy.villarreal@morganlewis.com

Attorneys for Defendant
VIRGIN AMERICA INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of herself and all others similarly situated,<br><br>                 Plaintiffs,<br><br>          vs.<br><br>VIRGIN AMERICA, INC.; and Does 1-10, inclusive;<br><br>                 Defendants. | Case No. 3:15-cv-02277-JST<br><br>**AMENDED NOTICE OF MOTION AND MOTION OF DEFENDANT VIRGIN AMERICA INC. FOR SUMMARY JUDGMENT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: December 1, 2016<br>Time: 2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge: Hon. Jon S. Tigar |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFENDANT'S AMENDED NOTICE
AND MSJ
Case No. 3:15-cv-02277-JST

**PLEASE TAKE NOTICE** that on December 1, 2016 at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 9 of the above-referenced court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Virgin America Inc., ("Defendant" or "Virgin") will, and hereby does, move this Court for an order granting summary judgment in favor of Defendant and against Plaintiffs Julia Bernstein ("Bernstein"), Lisa Marie Smith ("Smith") and Esther Garcia ("Garcia") (collectively, "Plaintiffs").[1]  Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant moves for summary judgment on Plaintiffs' claims that Virgin:  (1) failed to pay minimum wage for each hour worked in violation of the California Labor Code (the "Labor Code"), Industrial Welfare Commission Wage Order No. 9-2001 ("Wage Order No. 9"), and San Francisco Minimum Wage Ordinance ("SFMWO") (First and Second Causes of Action); (2) failed to pay overtime wages (Third Cause of Action); (3) failed to pay wages for hours worked (Fourth Cause of Action); (4) failed to provide required meal periods and rest breaks, and itemized wage statements (Fifth, Sixth, and Seventh Causes of Action); (5) failed to pay waiting time penalties (Eighth Cause of Action); (6) failed to indemnify all necessary business expenditures (Ninth Cause of Action); (7) violated the California Unfair Competition Law (Tenth Cause of Action); and (8) violated the California Private Attorney General Act ("PAGA") (Eleventh Cause of Action).

As a preliminary matter, all of Plaintiffs' claims should be denied because the Labor Code does not apply extraterritorially and its application to Plaintiffs' employment would violate the Dormant Commerce Clause.  Plaintiffs' claims equally fail on an individual basis:  (1) Plaintiffs' meal and rest break claims are not only preempted, but they cannot show that they worked the requisite number of hours within California or that they were denied the ability to take a meal or rest break; (2) Plaintiffs' overtime claim similarly fails because Plaintiffs cannot establish that they worked within California for more than eight hours in one day or 40 hours in one week;

---

[1] The only differences between the original notice of motion and memorandum of points and authorities in support thereof filed on September 6, 2016 (Dkt. No. 60) and this notice and memorandum are the revised number of hours worked by Plaintiffs, and corresponding percentage calculations, on pages 5 and 6 of the memorandum, the reference to those percentages on page 10 of the memorandum, and the corresponding citations to the Supplemental Report of Valentin Estevez ("Estevez Report") attached to the Amended Declaration of Valentin Estevez.  In addition, footnote 37 from the original motion has been removed.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFENDANT'S AMENDED NOTICE
AND MSJ
Case No. 3:15-cv-02277-JST

1   (3) Plaintiffs minimum wage claims fail as Virgin's compensation system ensures that all hours

2   worked by Plaintiffs are paid for and that Plaintiffs are paid far more than the minimum wage for

3   all hours worked in full compliance with the Labor Code, Wage Order No. 9 and SFMWO (which

4   does not actually apply to any of the Plaintiffs); (4) Virgin's wage statements fully comply in

5   good faith with Labor Code § 226; (5) there is no evidence that Plaintiffs incurred any

6   reimbursable business expenditures during the relevant time period ("March 18, 2011 through the

7   present"); and (6) Plaintiffs' remaining claims are derivative.

8          Summary judgment, or alternatively partial summary adjudication of individual claims, is

9   appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue

10  of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex*

11  *Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The moving party

12  can satisfy this burden in two ways:  (1) by presenting evidence that negates an essential element

13  of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

14  showing sufficient to establish an element essential to that party's case on which that party will

15  bear the burden of proof at trial.  *Id.* at 322-23.  If the moving party meets its initial burden, the

16  nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some

17  metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

18  *Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); *Triton Energy Corp. v.*

19  *Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence

20  in support of the non-moving party's position is not sufficient.").  Rather, the nonmoving party

21  must "go beyond the pleadings" and by "depositions, answers to interrogatories, and admissions

22  on file," designate "specific facts showing that there is a genuine issue for trial."  *Celotex*,

23  477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

24  ///

25  ///

26  ///

27  ///

28  ///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFENDANT'S AMENDED NOTICE
AND MSJ
Case No. 3:15-cv-02277-JST

1   This Motion is based upon the accompanying Memorandum of Points & Authorities, the

2 Declarations of Nancy Villarreal, Jon Weaver, Richard Hendrickson, Valerie Jenkins, Matthew

3 Kliff, and Valentin Estevez and all of the exhibits attached thereto, the pleadings and the Court's

4 records on file herein, and on such other and further argument and evidence as may be presented

5 at or prior to the time of the hearing, and all matters of which this Court may properly take notice.

6 Dated: October 17, 2016     MORGAN, LEWIS & BOCKIUS LLP

7

8          By  _/s/  Robert Jon Hendricks_

9            ROBERT JON HENDRICKS
             NANCY VILLARREAL

10           Attorneys for Defendant
             VIRGIN AMERICA INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT.................................................................................. 1

II.    STATEMENT OF FACTS ...................................................................................... 2

    A.     Virgin's Operations and Route Network ..................................................... 2

    B.     ITM Scheduling .......................................................................................... 2

    C.     Virgin's Reserve System ............................................................................ 3

    D.     ITM's Responsibilities ............................................................................... 3

    E.     Plaintiffs ..................................................................................................... 5

        1.     Julia Bernstein ................................................................................ 5

        2.     Esther Garcia .................................................................................. 6

        3.     Lisa Marie Smith ............................................................................ 6

    F.     ITM Compensation ..................................................................................... 6

    G.     Virgin's Wage Statements........................................................................... 8

III.   VIRGIN IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF
       LAW, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT ......................... 9

    A.     The California Labor Code Does Not Apply Extraterritorially ............................. 9

    B.     Requiring Virgin to Comply With the Labor Code As To Its ITMs Would
        Violate the Dormant Commerce Clause ...................................................... 12

    C.     Plaintiffs' Meal and Rest Break Claims Are Preempted..................................... 16

        1.     Field Preemption ...................................................................... 16

        2.     Conflict Preemption .................................................................. 17

        3.     ADA Preemption....................................................................... 18

    D.     Plaintiffs Cannot Establish That They Work Within California For The
        Requisite Number of Hours to Trigger Overtime and Break Eligibility.............. 19

    E.     Virgin's ITM Compensation Policy Fully Complies With California Law.......... 21

    F.     Plaintiffs Are Not Covered Employees Under the SFMWO ............................... 23

    G.     Virgin's Wage Statements Comply With California Law .................................... 24

    H.     There Is No Evidence That Plaintiffs Incurred Any Business Expenses............... 24

    I.     Plaintiffs' Remaining Claims Must Be Dismissed.............................................. 25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1

**TABLE OF CONTENTS**
(continued)

2

**Page**

3

IV.   CONCLUSION ................................................................................................ 25

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Aguilar v. Zep Inc.*,
   2014 WL 4245988 (N.D. Cal. Aug. 27, 2014)..........................................................................11

*Angeles v. U.S. Airways, Inc.*,
   2013 WL 622032 (N.D. Cal. Feb. 19, 2013)............................................................................19

*Armenta v. Osmose, Inc.*,
   135 Cal.App.4th 314 ...............................................................................................................21

*Blackwell v. Skywest Airlines, Inc.*,
   2008 WL 5103195 (S.D. Cal. Dec. 3, 2008)............................................................................19

*Booher v. JetBlue Airways Corp.*,
   2016 WL 164929 (N.D. Cal. Apr. 26, 2016) ................................................................... passim

*Del Rosario v. Labor Ready Se., Inc.*,
   2015 WL 5016613 (S.D. Fla. Aug. 25, 2015)..........................................................................15

*DeSaint v. Delta Air Lines, Inc.*,
   2015 WL 1888242 (D. Mass. Apr. 15, 2015) ..........................................................................14

*Dilts v. Penske Logistics, LLC*,
   769 F.3d 637 (9th Cir. 2014)....................................................................................................19

*Donovan v. American Airlines, Inc.*,
   686 F.2d 267 (5th Cir. 1982)....................................................................................................23

*Donovan v. Trans World Airlines, Inc.*,
   726 F.2d 415 (8th Cir. 1984)....................................................................................................23

*Guy v. IASCO*,
   2004 WL 1354300 (Cal. App. 2d June 17, 2004) ....................................................................13

*Haszard v. Am. Med. Response Nw., Inc.*,
   237 F.Supp.2d 1151 (D.Or. 2001) ...........................................................................................23

*Hirst v. SkyWest Airlines, Inc.*,
   No. 15-C-02036, 2016 WL 2986978 (N.D. Ill. May 24, 2016) ..................................9,13,14,20

*In re Acknowledgment Cases*,
   239 Cal. App. 4th 1498 (2015)..................................................................................................25

*Johnson v. Serenity Transp. Inc.*,
   141 F.Supp.3d 974, 1003 (N.D. Cal. 2015) .............................................................................22

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Mersnick v. USProtect Corp.*,
    2006 WL 3734396 (N.D. Cal. Dec. 18, 2006) ..........................................................................20

*Miller v. Southwest Airlines, Co.*,
    923 F.Supp.2d 1206 (N.D. Cal 2013) ...................................................................................19

*Montalvo v. Spirit Airlines*,
    508 F.3d 464 (9th Cir. 2007)........................................................................................13,16,17

*Nat'l Ass'n of Optometrists Opticians v. Harris*,
    682 F.3d 1144 (9th Cir. 2012)...............................................................................................13

*Nat'l Fed. of the Blind v. United Airlines Inc.*,
    813 F.3d 718 (9th Cir. 2012)..................................................................................................17

*North Alaska Salmon Co. v. Pillsbury*,
    174 Cal. 1 (1916) .....................................................................................................................9

*Oman v. Delta Air Lines, Inc.*,
    2015 WL 9478241 (N.D. Cal. Dec. 29, 2015) .............................................................. passim

*Russo v. APL Marine Servs., Ltd.*,
    2015 WL 5626638 (C.D. Cal. Sept. 24, 2015)......................................................................11

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
    633 F.Supp.2d 883 (C.D. Cal. 2009) ...............................................................................10,12

*Sullivan v. Oracle*,
    51 Cal.4th 1191 (2011) ..........................................................................................................12

*Taylor v. Lockheed Martin Corp.*,
    78 Cal.App.4th 472 (2000).....................................................................................................20

*Thind v. Healthfirst Management Services, LLC*,
    2015 WL 4554252 (S.D.N.Y. July 29, 2015) .......................................................................15

*Tidewater Mar. Western, Inc. v. Bradshaw*,
    14 Cal.4th 557 (1996) .........................................................................................................9,10

*Ulrich v. Alaska Airlines, Inc.*,
    2009 WL 364056 (W.D. Wash. Feb. 9, 2009) ......................................................................23

*United Air Lines, Inc. v. Indus. Welfare Com.*,
    211 Cal.App.2d 729 (1963).....................................................................................................13

*Ward v. United Airlines, Inc.*,
    No. C 15-0230 WHA, 2016 WL 3906077 (N.D. Cal. July 19, 2016) ............................ passim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*White v. Starbucks Corp.*,
497 F.Supp.2d 1080 (2007)..................................................................................25

*Williams v. Brinderson Constructors Inc.*,
2015 WL 4747892 (C.D. Cal. Aug. 11, 2015) .......................................................20

*Wright v. Adventures Rolling Cross Country, Inc.*,
2012 U.S. Dist LEXIS 104378 (N.D. Cal. May 3, 2012) .......................................9

**STATUTES**

49 U.S.C.
§ 40103(a) ..................................................................................................1,9,20
§ 40116(f)...........................................................................................................12
§ 41713(b) ...........................................................................................................18

Airline Deregulation Act.........................................................................................18

8 Cal. Admin. Code
§ 11090 (1) ..........................................................................................................21

Cal. Lab. Code
§ 226.......................................................................................................... passim
§ 512............................................................................................................16,17

Pub. L. No. 85-726, 72 Stat. 744 (Federal Aviation Act) .......................................16

San Francisco Admin. Code
§ 12.R.3................................................................................................................23
§ 12P.2.................................................................................................................24
§ 12P.4.................................................................................................................24
§ 12R.4(a)............................................................................................................23

**RULES AND REGULATIONS**

14 C.F.R,
Chapter I................................................................................................................2
§ 121.193.............................................................................................................16
§121.193(b)...........................................................................................................4
§ 121.391.............................................................................................................16
§ 121.391(d)...........................................................................................................4
§ 121.467.............................................................................................................16
§ 121.467(b).........................................................................................................17
§ 121.523(d).........................................................................................................22

29 C.F.R. § 778.109 ...............................................................................................15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

59 FR 42974-01 ..................................................................................................17

IWC Wage Order No. 1 .......................................................................................18

IWC Wage Order No. 3 .......................................................................................18

IWC Wage Order No. 9 ................................................................................ passim

IWC Wage Order No. 12 .....................................................................................18

**OTHER AUTHORITIES**

85th Cong. 2d Sess. (1958) .................................................................................13

S. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)..............................................16

Dormant Commerce Clause of the United States Constitution.............................. passim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1

## I.       PRELIMINARY STATEMENT

2       Virgin is entitled to summary judgment as a matter of law because Plaintiffs' First

3   Amended Complaint represents an unprecedented, far-reaching, and fundamentally improper

4   attempt to have California law regulate interstate air transportation in a manner it cannot do.

5   Virgin's flight attendants (referred to as InFlight Team Members ("ITMs")), by the very nature of

6   their job, spend the vast majority of their working hours in the air in interstate travel – an area that

7   falls under the exclusive sovereignty of the U.S. Government (49 U.S.C. § 40103(a)) – regardless

8   of where they live, where they are based, or where their flight schedules take them.  Virgin (like

9   most airlines) utilizes a nationwide, credit-based compensation system that generally compensates

10  ITMs on a Duty Period basis, rather than paying a straight hourly rate.  Two separate Northern

11  District of California District Court Judges have recently found that such compensation systems

12  fully comply with California law.  *Oman v. Delta Air Lines, Inc.*, 2015 WL 9478241 (N.D. Cal.

13  Dec. 29, 2015); *Booher v. JetBlue Airways Corp.*, 2016 WL 164929 (N.D. Cal. Apr. 26, 2016).

14  Nonetheless, Plaintiffs[2] still contend that Virgin's compensation system, as well as its

15  corresponding wage statements, are subject to and violate California law.

16      Contrary to Plaintiffs' assertions, California law does not apply to the hours worked by

17  Plaintiffs as Plaintiffs principally worked outside of California.  As Judge Alsup recently found,

18  any attempt to apply California law extraterritorially belies the courts' long-held presumption

19  against such application of the Labor Code, and also violates the Dormant Commerce Clause of

20  the United States Constitution.  *Ward v. United Airlines, Inc.,* No. C 15-0230 WHA, 2016 WL

21  3906077 (N.D. Cal. July 19, 2016) (holding that pilots who worked primarily outside of

22  California, regardless of their state of residence or base, were not covered by Labor Code § 226

23  ("Section 226"), and that the application of Section 226 would impose too great a burden on

24  United's business thereby violating the Dormant Commerce Clause).  Moreover, even if the

25  California laws cited by Plaintiffs did apply, Virgin's policies and practices actually comply with

26  California law.  And Plaintiffs cannot even make out a factual showing of any violation.  Virgin's

27  Motion should therefore be granted in its entirety.

28

_____

[2] For ease of reference, Virgin will refer to the Plaintiffs as if they are all current employees.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

## II.   STATEMENT OF FACTS[3]

### A.   Virgin's Operations and Route Network

Virgin is an airline with a route network that currently services 21 cities and 24 airports in the continental United States, Hawaii and Mexico.[4]  Declaration of Valerie Jenkins ("Jenkins Decl."), ¶ 4.  From 2011 to 2016, Virgin conducted a daily average of between 155 and 176 flights.  Declaration of Nancy Villarreal ("Villarreal Decl."), Ex H, p. 5.  Each year, at least 30% of those flights exceeded five hours in duration[5] and at least 80.88% departed from and/or arrived at airports located outside of California.  *Id.* at pp. 7-10; Weaver Decl. ¶¶ 7-8.

### B.   ITM Scheduling

ITMs receive a monthly bid packet that provides a listing of all available Pairings scheduled to originate from the ITM's assigned airport the following month (the "bid month").[6]  Hendrickson 209:22-210:4; Bernstein 111:22-112:9; Smith 159:2-4.  For each Pairing, the bid packet provides the expected departure and arrival times for each flight; the number of Duty Periods; the expected Block Times; the expected "turn" or "sit" time between consecutive flights;[7] the total time the ITM will be away from base; and the expected pay credits for each flight, Duty Period, and the total Pairing.  Villarreal Decl., Ex. I.  Through the bid packets, ITMs know the minimum amount of credits they will receive for each Pairing.  *Id.*, Smith 168:8-12.

---

[3] Deposition testimony is cited as "[Deponent's Last Name] ##:##" and the cited portions of the transcripts of Julia Bernstein, Esther Garcia, Lisa Marie Smith, William Victor Tomlinson, Adam Croteau, Richard Hendrickson, and Valerie Jenkins are attached to the Declaration of Nancy Villarreal as Exhibits A-G, respectively.

[4] The Federal Aviation Administration (the "FAA") has regulatory authority over air transportation in the United States and regulates and oversees matters relating to the safety of airline flight operations through Federal Aviation Regulations ("FARs"), including the control of navigable air space, and ITM qualifications, training, and flight duty limitations and rest requirements.  Bernstein 130:22-131:10; Garcia 130:4-8, *see* 14 C.F.R, Chapter I, Subchapter G.

[5] For transcontinental flights (*e.g.*, California to New York), the average flight time is between 5.1 and 6.1 hours and the airplane is flying in federal airspace within three and a half and five hours of the ITMs' report time.  Declaration of Jon Weaver ("Weaver Decl."), ¶ 9.

[6] A "Pairing" is a pre-planned sequence of flights that may consist of one or more flights or one or more "Duty Periods."  A "Duty Period" begins at the scheduled report time of the first flight and ends upon the ITM's release from duty for that particular day or Pairing.  Hendrickson 24:22-25; Bernstein 126:22-127:11.

[7] This is the time between one flight's arrival and the next flight's departure for Duty Periods with multiple flights. Garcia 267:4-13; Smith 85:24-86:6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

ITMs submit up to 200 preferences for their schedule – *e.g.*, bidding for Pairings with the highest amount of credits or that fly to a particular city or on a particular day.  Jenkins Decl. ¶ 6, Jenkins 24:1-8, 265:9-266:7; Bernstein 117:13-22, 119:5-11.  The scheduling system then constructs the monthly schedules for all ITMs based on their individual preferences, ensuring compliance with the FAR's duty and rest requirements.  Villarreal Decl. Ex. J, VIR/BER 000798-801.  As a result of Virgin's preferential bidding system, ITMs work a fluctuating schedule that depends on the bid process results.  Jenkins Decl. ¶ 6, *see* Bernstein 123:4-11.  ITMs may then change their schedules by swapping, adding or dropping Pairings within that bid month. Bernstein 123:12-25, Jenkins 268:16-269:20.

### C.    Virgin's Reserve System

ITMs may bid for reserve duty and are guaranteed 75 credits hours at their base pay rate. Jenkins 54:2-10, 54:13:20, Villarreal Decl. Ex. J, VIR/BER 000783-785.  Virgin utilizes two reserve programs:  short call and long call.  For short call reserve, an ITM must be able to report for an assigned flight within two hours of being contacted by Virgin's Crew Services.  Villarreal Decl. Ex. J, VIR/BER 000785; Bernstein 102:23-103:1.  Long call reserve is a 24 hour reserve period for which the ITM is provided at least 12 hours to report for a Pairing.  Villarreal Decl. Ex. J, VIR/BER 000787-788.  For both programs, the ITM can engage in personal activities and is not required to be in uniform until he or she arrives at the airport for an assignment.  Bernstein 107:3-107:9; Smith 252:18-253:12; Jenkins 63:20-64:22; Jenkins Decl., ¶ 5.

### D.    ITM's Responsibilities

An ITM reports to the "Virgin Village" in the airport to begin his or her Pairing at the designated report time.[8]  Garcia 126:4-7.  The ITMs then have a short briefing to review the particulars for the Pairing before the crew reports to the departure gate.  Jenkins 91:7-92:8, 93:10-17; Smith 93:3-93:15.  The crew then performs pre-flight duties to ensure the aircraft cabin is ready to receive passengers before assisting with the boarding process.  Jenkins 94:6-21.  After the passengers board and the pilot receives clearance, the plane pushes back from the gate (or

---

[8] The Village is space that Virgin maintains at every airport to which it flies.  Jenkins 56:18-57:5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1  "Blocks Out").[9]  Jenkins 101:7-10, Villarreal Decl. Ex. J, VIR/BER 000891.  If ITMs do not or

2  cannot fulfill their duties, a flight cannot depart.  Bernstein 167:3-20; Garcia 131:2-21.  If an ITM

3  is delayed, the flight's departure may be delayed as well.  Smith 196:12-16; Garcia 131:25-132:8.

4       During "sterile flight deck" conditions, such as taxiing, takeoff, landing, and flight

5  operations conducted below 10,000 feet, FARs require ITMs to remain at their duty stations on

6  the plane unless they need to perform safety-related duties.  14 C.F.R. § 121.391(d); Bernstein

7  176:10-18, 178:15-18.  ITMs must also be uniformly distributed throughout the airplane during

8  takeoff and landing and monitor the cabin continuously throughout the flight to ensure

9  compliance with FAA regulations.  14 C.F.R. § 121.391(d); Bernstein 166:5-18.  ITMs serve as

10  the "eyes and ears" for the pilots and are responsible for remaining aware and vigilant of potential

11  passenger and safety issues during the flight.[10]  Bernstein 166:15-18; Garcia 134:12-19; Smith

12  125:17-126:12.  ITMs are on duty throughout a flight.  Garcia 274:24-275:3; Smith 258:10-20.

13  Nonetheless, ITMs are permitted and able to take breaks during a flight, including to eat.  Jenkins

14  148:5-16; 157:3-24; Garcia 274:14-22, 294:3-6.  The key is to coordinate with the other ITMS to

15  ensure that all federally required responsibilities are performed while the ITM takes his or her

16  break.  Jenkins 148:5-16.

17       Upon arrival at the destination, ITMs assist with the deplaning process.  *See* Garcia

18  247:18-22.  For Duty Periods with multiple flights, ITMs may remain on the plane when the next

19  flight involves the same equipment, passengers remain onboard, or the passengers for the next

20  flight will be boarding shortly.[11]  Smith 84:19-85:3.  Where the next flight involves a different

21  plane or there is time between the deplaning of the first flight and reporting to the second, ITMs

22  do not have any job duties, and are free to do whatever they want, such as rest, eat, or shop, so

---

[9] A flight's "block" time is measured from Block Out to Block In.  Smith 92:25-93:2.  "Block In" is when the aircraft sets its brakes at the next location.  Jenkins 100:13-16, Villarreal Decl. Ex. J, VIR/BER 000891.

[10] ITMs complete Incident Reports ("IRs") to report irregular events or incidents involving safety, security, operations or guest relations.  Jenkins Decl. ¶ 9; Villarreal Decl. Ex. J, VIR/BER 000868-869.  ITMs may complete and submit an IR at any time, including while on duty, so long as it is submitted within 24 hours after the end of the Pairing.  Croteau 164:25-165:7.

[11] At stops where passengers remain on board, Virgin is required by federal law to ensure that ITMs are onboard, though an ITM may leave the plane to engage in a personal activity.  14 C.F.R. §121.193(b); Smith 89:25-90:6; Tomlinson 85:12-20.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

long as they report to the gate on time before the next flight's departure. *See* Bernstein 192:24-193:2, 194:9-24; Garcia 269:19-24; Smith 87:2-13.[12]

### E.   Plaintiffs

#### 1.   Julia Bernstein

Bernstein joined Virgin as a reserve ITM in February 2009 based out of San Francisco International Airport ("SFO"). Bernstein 83:6-8, 88:25-89:5, 89:23-90:2. At the time she was hired, Bernstein provided Virgin with a Sacramento mailing address. Bernstein 100:8-25. While based at SFO, Bernstein also used a "crash pad" in Burlingame, California. Bernstein 99:13-100:4. As of the March 31, 2009 pay date, Bernstein's wage statements reflected the Burlingame address, though it was not her residence. Bernstein 138:22-139:9. Bernstein's wage statements reflected the addresses that Bernstein provided to Virgin's payroll company and Bernstein admits that the addresses did not always reflect where she was living. *Id.,* 142:12-143:6, 161:25-162:10. In September 2009, Bernstein became a non-reserve ITM based out of John F. Kennedy International Airport ("JFK") in New York and moved to New York. Bernstein 133:8-20, 133:25-134:4. Bernstein lived in New York for approximately two years. Bernstein 134:22-135:8. Bernstein's wage statements continued to list the Burlingame address until the December 15, 2009 pay date. 139:17-22, 140:7-13. After changing her address to a New York address, Bernstein changed the address back to the Sacramento address in April 2010 even though she lived in New York. Bernstein 145:5-14.[13] In February 2012, Bernstein changed her address to a Florida address (where she was then living), which then appeared on her wage statements through her termination. Bernstein 152:16-153:21. Bernstein's Pairings started and ended at JFK. Dkt. No. 32, ¶ 23. From March 18, 2011 through her termination, Bernstein was on duty for 1,399.6 hours, of which she spent approximately 222.0 hours (or 15.9%) in California. Estevez Supp., at 4, Table 1.

---

[12] If the ITMs' Duty Period ends in a destination other than the ITMs' base, they are released from work into a layover, which is a rest period between Duty Periods during which the ITMs leave the airport and are free to engage in personal activities. Bernstein 199:4-19, 200:17-21.

[13] In June 2010, Bernstein changed her address back to a different New York address for a single pay period, before changing it back to the Sacramento address. Bernstein 147:21-148:21.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1

### 2.    Esther Garcia

During her employment, Garcia was based at SFO or Los Angeles International Airport ("LAX") and represented to Virgin that she lived in California.  Dkt. No. 32, ¶ 27, Garcia 21:14-22:4.  From March 18, 2011 through her termination in June 2015, Garcia was on duty for 5,183.4 total hours.  Estevez Supp. at 4, Table 1.  Of that time, she spent approximately 1072.4 hours (or 20.7%) in California.  *Id.*  Garcia obtained a passport prior to starting work for Virgin and used it to travel internationally for personal vacations using her travel privileges during her employment with Virgin.  Garcia 72:10-12, 74:11-75:14, 76:10-12, 79:12-14.  Garcia never incurred any costs relating to renewing her passport during her employment.  Garcia 72:13-15.

### 3.    Lisa Marie Smith

Smith joined Virgin in February 2008, became an ITM based at SFO in September 2011, and has been based at SFO or LAX since that time.  Smith 17:21-25, 38:19-39:1.  Since becoming an ITM, Smith purports to live in California.  Smith 25:6-11, 32:3-9.  From March 18, 2011 through February 2016, Smith was on duty for 3,621.2 total hours.  Estevez Supp. at 4, Table 1.  Of that time, she spent only 964.7 hours (or 26.6%) in California.  *Id.*  Smith obtained a passport prior to becoming an ITM for Virgin so she could travel internationally, which she did during her employment for personal reasons.  Smith 98:2-23.  Because her passport expires in 2020, Smith has never incurred costs relating to renewing her passport while with Virgin.  Smith 136:6-21. [14]

### F.    ITM Compensation

Virgin provides its ITM rules, policies and scheduling procedures, including the policies regarding compensation, to ITMs through its Inflight Work Rules (the "Work Rules").  Jenkins 259:17-21.  Virgin compensates all of its ITMs, including Plaintiffs, for their Pairings and non-flight activities in accordance with the procedures set forth in the Work Rules.  Declaration of Richard Hendrickson ("Hendrickson Decl."), ¶¶ 5-6; Smith 129:22-130:8, 254:12-16.

---

[14] None of the Plaintiffs ever worked more than 40 hours in a week in California.  Estevez Supp., at 4, Table 2.  In every instance where they potentially worked more than eight hours in a day in California, Plaintiffs were assigned non-flight activities (*e.g.*, training) that were scheduled for more than eight hours, but for which there are no records of how many hours they actually worked on those days and for which Plaintiffs admit receiving meal and rest breaks and/or being able to engage in personal activities.  *Id.*; Bernstein 70:21-71:9, 72:4-8, 75:6-12; Smith 56:6-16, 58:18-24, Garcia 180:14-181:11; *see* Declaration of Matthew Kliff, ¶ 5.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    Under the Work Rules, ITMs receive "pay credits" for each bid month, which consist of

2    the greater of their total actual credits or their total bid line guarantee for the bid month.

3    Hendrickson 65:14-24; Villarreal Decl. Ex. J, VIR/BER 00841.  The total actual credit consists of

4    all Pairing credits, paid time off, and credits for non-pairing activities.  Those credits are

5    multiplied by the individual's base pay rate, which has been at least $20 per hour (and much

6    higher) throughout the relevant period.  Bernstein 238:21-239:1.[15]

7    The Pairing credit value for every Duty Period is comprised of block hours, deadhead or

8    ground transportation credit, and minimum duty credit.[16]  Villarreal Decl. Ex. J, VIR/BER

9    000845; Bernstein 227:21-228:6; Hendrickson 66:5-14.  In addition, for each Duty Period, ITMs

10   are guaranteed a minimum of 3.5 hours of credit – *e.g.*, if a Duty Period consists of 1.5 hours of

11   block time, the ITMs still receive 3.5 hours of credit.  Villarreal Decl. Ex. J, VIR/BER 000846;

12   Bernstein 229:17-22.  For "non-pairing activities," Virgin credits ITMs for, *inter alia*:

13   (1) recurrent training, at a rate of 3.5 hours of credit for each day; (2) refresh training (6 credits

14   for each day); (3) company business (3.5 credits for each day); (4) airport reserve, which provides

15   4 credits for the maximum six hour reserve period or, for those assigned a Pairing, half the ITM's

16   base rate for every hour on reserve plus the credits for the Pairing; and (5) 0.5 credits for

17   federally-required drug and/or alcohol testing.  Villarreal Decl. Ex. J, VIR/BER 000845-50, 854;

18   Bernstein 248:4-10, *see* 239:6-17.

19   Virgin also increases the ITM's base rate in several instances and provides additional

20   compensation to address contingencies that may arise during Pairings.[17]  For instance, Virgin

21   increases the ITM's base rate by 25% for all credits above 80 hours in a given bid month, by 15%

22   for all hours credited when the ITM is the ITL, and by 50% for all block time during any Duty

---

[15] Bernstein's base rate was between $24 and $25 during her employment, Garcia's was between $20 and $33.35, and Smith's was between $25 and $32.  Bernstein 143:20-25, 148:25-149:5, 153:8-16; Villarreal Decl. Exs. K-L.  Non-operational special assignment work is paid under a different model, where "credit hours" are not used but which pays at a much lower base rate. Villarreal Decl. Ex. J, VIR/BER 000849-857.

[16] Virgin credits an ITM at 50% of block time for deadheading.  Hendrickson 67:7-68:1; Villarreal Decl. Ex. J, VIR/BER 000845.

[17] Virgin also pays ITMs a $2 per hour per diem for all time they spend away from base when working a Pairing, including for time they are sleeping.  Smith 101:3-9; Villarreal Decl. Ex. J, VIR/BER 000850.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1  Period that operates on New Year's Day, Thanksgiving or Christmas.  Villarreal Decl. Ex. J,

2  VIR/BER 000850, 852.  Virgin also pays ITMs $15 per hour in Ground Holding Pay when a

3  flight is delayed at the gate for more than one hour (if the flight is delayed after departing the

4  gate, that time is included in the Pairing credit calculation).  *Id.* at VIR/BER 000853.

5      **G.**    **Virgin's Wage Statements**

6      ITMs are paid on the last calendar day of the month and the 15th of the following month

7  for all work performed during a bid month.  As Virgin does not know an ITM's final schedule for

8  a bid month until it is complete, it provides each ITM with 37.5 credits in their month-end

9  paycheck.[18]  Hendrickson 105:9-17, 111:21-112:2.  Following the close of the bid month, Virgin

10 calculates the ITMs' total credits for the bid month, determines what premium pay rates should be

11 applied and what additional payments should be made, and calculates the per diem.  Hendrickson

12 Decl. ¶ 6.  Those amounts are then included in the first paycheck following the close of the bid

13 month.  Villarreal Decl. Ex. J, VIR/BER 000858.

14     Each credit or payment earned by the ITMs is included on their wage statements.  *See*

15 Villarreal Decl. Exs. K-L.  Appendix B of the Work Rules identifies each of the pay codes

16 included on the wage statements.  Villarreal Decl. Ex. J, VIR/BER 000871-872.  The wage

17 statements show the total credits or "hours" earned by the ITM and the rate applied to those

18 credits, as well as the total earned for the pay period and year to date.  Villarreal Decl., Exs. K-L.

19 The wage statements also include separate line-items for each additional credit-generating

20 activity, as well as all premium pay rates, additional payments, and the per diem.  *Id.*; *see*

21 Bernstein 238:12-16, 239:6-16; Garcia 176:3-22, 179:8-17.  They also show all approved

22 withholdings, and applicable taxes and deductions.[19]  Villarreal Decl., Exs. K-L.

23     All ITMs have access to Virgin's Rainmaker system, which calculates the ITMs' credit

24 totals for a bid month and provides a report showing the total number of credit hours due for the

25 bid month, their bid line guarantee, and a daily breakdown of the credits to be received, broken

26 _____

27 [18] Prior to June 2013, Virgin provided each ITM with 35 credits in their month-end paycheck.
   Villarreal Decl., Ex. M, VIR/BER 000953.

28 [19] Virgin's wage statements also identify when an ITM's base rate of pay increases or state tax
   jurisdiction or address changes.  Bernstein 141:12-142:8, 148:18-149:9, 153:17-154:23.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

out by the applicable "pay buckets" identified in the Work Rules.  Hendrickson 102:3-20, 214:23-215:9; Villarreal Decl. Ex. N, Ex. J, VIR/BER 000871-872.  Rainmaker also includes an area for ITMs to report a suspected error on their report.  Villarreal Decl. Ex. N; Hendrickson 214:4-16.

## III.    VIRGIN IS ENTITLED TO SUMMARY JUDGMENT AS A MATTER OF LAW, OR ALTERNATIVELY PARTIAL SUMMARY JUDGMENT

### A.    The California Labor Code Does Not Apply Extraterritorially

The ITM position is an inimitable occupation that presents unique logistical and jurisdictional issues.  The very nature of the position requires ITMs to spend the vast majority of their work hours in the federally regulated airspace that is under the exclusive sovereignty of the United States Government. 49 U.S.C. § 40103(a).[20]  Unlike employees who come to California to work *in California*, any contact ITMs have with California is incidental to the purpose of their employment.  ITMs may live or be based in California, but the site of their work is *not* the airport, *it is the airplane*, where they provide services to, and are federally mandated to ensure the safety of, passengers engaged in interstate and international travel.

It is well settled that California law does not follow Plaintiffs wherever their Pairings take them, because there is a presumption against the extraterritorial application of the Labor Code. *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist LEXIS 104378, at **11-14 (N.D. Cal. May 3, 2012); *North Alaska Salmon Co. v. Pillsbury*, 174 Cal. 1, 4 (1916).  That presumption is rebutted only where a contrary intent is "clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history." *Pillsbury*, 174 Cal. at 4.  The Labor Code provisions at issue here do not express any intent to apply extraterritorially – intent the California legislature expressly provided for in other provisions of the Labor Code. *Tidewater Mar. Western, Inc. v. Bradshaw*, 14 Cal.4th 557, 577 (1996) (noting that, "[i]n some circumstances, state employment law explicitly governs employment outside the state's territorial boundaries."

---

[20] One district court recently found that a state has no sovereignty over the skies above it and its wage and hour laws arguably did not apply to the time ITMs spend over Illinois because "none of the flight time…can be said to have occurred within [the state]." *Hirst v. SkyWest Airlines, Inc.*, No. 15-C-02036, 2016 WL 2986978, at *10, n. 13 (N.D. Ill. May 24, 2016).

1    Virgin does not claim that California law does not apply to any of its employees working

2    principally in California.  Rather, California law should not apply to individuals, such as

3    Plaintiffs, whose primary duties require them to work in multiple jurisdictions in a given day.

4    Plaintiffs' employment records reflect the reality of their position, as none spent more than a

5    quarter of her time working *in California*.  Nonetheless, Plaintiffs claim that California law

6    should govern all aspects of their employment regardless of where that work was performed.[21]

7    That Plaintiffs live in California, are based in California, or pay California income tax are

8    only minor considerations when determining whether California's wage and hour laws apply to

9    them.  Rather, it is the site where they "exclusively or principally" perform their job and the

10    amount of work they perform *within* California that is determinative.  *Tidewater*, 14 Cal.4th at

11    565 ("[I]f an employee works exclusively or principally in California, then that employee is a

12    wage earner of California and presumptively enjoys the protection of [California labor]

13    regulations."); *Ward*, 2016 WL 3906077 at *3 (the decisions examining whether "California's

14    wage and hour laws…apply to out-of state work performed by California residents uniformly

15    rejected that proposition" and focused on the 'job situs test,' which considers where an employee

16    'principally' worked") (listing cases).  Plaintiffs cannot deny that the nature of their job requires

17    them to work in multiple states almost every day and that they principally work outside of

18    California.  Indeed, at most, Plaintiffs spent 26.6% of their time on duty within California.

19    Estevez Supp. at 4, Table 1.  While California courts have not yet specified the amount of time

20    that is sufficient to consider an employee as working "principally" in California, California courts

21    have found the amount of time Plaintiffs spent working within California's borders insufficient to

22    be afforded the protections of the Labor Code.  *See, e.g., Sarviss v. Gen. Dynamics Info. Tech.,*

23    *Inc.*, 633 F.Supp.2d 883, 899 (C.D. Cal. 2009) (holding that a California resident who spent

24    between eighty and ninety percent of his employment working outside of California did not

---

[21] Plaintiffs seek to bring claims on behalf of, *inter alia*, a Class of "all individuals who have
worked as California-based flight attendants of Virgin America, Inc." and to recover on behalf of
those ITMs only for "time worked within California." Dkt. No. 43-3, at 1.  Notably absent from
the Motion for Class Certification is any indication of whether Bernstein, a New York resident, is
limiting her claims in such a way.  Accordingly, for purposes of this Motion for Summary
Judgment, Virgin presumes that Bernstein's claims continue to apply to all of her time worked
regardless of location.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    qualify as a wage earner of California); *Ward*, 2016 WL 3906077 (finding that evidence that

2    certain class members spent as much as forty-two percent of their time in California in a bid

3    month did not preclude summary judgment for defendant); *Russo v. APL Marine Servs., Ltd.*,

4    2015 WL 5626638, at *3-4 (C.D. Cal. Sept. 24, 2015) (holding that the California Fair

5    Employment and Housing Act did not apply to a California resident who worked aboard a

6    California-based ship on international waters).[22]

7        Even for California residents such as Garcia and Smith, there is no support in the Labor

8    Code that the provisions at issue here apply based on California residency.  If that were the case,

9    employees could gain the protections of California wage and hour law despite never working in

10   California.  At the same time, employers would be relieved of any obligation to comply with

11   California law with respect to employees who work principally in California, but live out-of-state.

12   For Virgin, this would result in ITMs performing the same duties within California, but being

13   treated differently with respect to wages, wage statements, and meal and rest breaks, solely

14   because of where they (purportedly) live.  Moreover, whenever an ITM moves across state lines,

15   even if they continue to be based at the same airport, Virgin would need to alter its practices

16   simply because the ITM moves.  These issues are only compounded by the flexibility offered

17   ITMs, as they are easily able to live in and be based in different states.[23]

18       These are precisely the troubling issues Judge Alsup evaluated in his recent decision

19   finding that "Section 226 – like the rest of California's labor laws –" does not apply to pilots,

20   even those based in and/or residing in California, who work primarily outside of California.

21   *Ward*, 2016 WL 3906077, at **4-5 ("Section 226 must be subject to the same jurisdictional limits

22

23   [22] The decision in *Aguilar v. Zep Inc.*, 2014 WL 4245988 (N.D. Cal. Aug. 27, 2014) that Plaintiffs
     cite in their Motion for Class Certification is inapposite to the facts here.  Neither that case nor
24   any of the decisions cited in the decision implicate the airline industry.  Moreover, the non-
     resident plaintiff's contacts with California were significantly higher in *Aguilar* than Plaintiffs
25   here.  *Id.* (holding plaintiff, a Nevada-based outside sales representative servicing an area
     covering California and Nevada made 51 percent of his total sales to California customers).

26   [23] Bernstein's circumstances demonstrate why the Labor Code should not apply to individuals
     based on their residency or tax standing.  Throughout the relevant time period, she admittedly
27   lived in New York or Florida, and had all of her Pairings start in JFK.  Yet, with the exception of
     the final four months of her employment, *she provided* Virgin and ADP with a California address
28   for payroll and tax purposes – an address that at no point during that time did she live.  Bernstein
     140:7-19, 146:13-147:18, 147:21-148:11, 149:10-16, 154:14-23.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

as the wage-and-hour statutes and regulations to which it relates.").[24]  In doing so, Judge Alsup

recognized the absurd results that the plaintiff's interpretation of the law would yield:

> An employer in Nevada would need to apply Nevada wage-and-hour law to all paychecks, but it would also need to comply with the wage-statement laws of each state of residence of its employees.  Similarly, a California wage earner who resides elsewhere would not be entitled to the added protections guaranteed by California's wage-statement statute.  The California Legislature could not have intended for its wage-statement laws to cause such confusion for out-of-state workers while the substantive protections for workers remained confined to the work within state borders.  Nor could it have intended to deprive California wage earners of the protection offered by the wage-statement law simply based on their place of residence.

*Id.*  Those same absurd results would arise if California's remaining wage and hour laws were

applied to ITMs solely because they live or are based in California.[25]

Plaintiffs cannot establish that they principally work within California.  Consequently,

Plaintiffs are not California wage earners to whom the protections of the Labor Code apply.

### B. Requiring Virgin to Comply With the Labor Code As To Its ITMs Would Violate the Dormant Commerce Clause

Even if the application of the Labor Code to Plaintiffs would not violate the presumption

against extraterritoriality, applying those laws would still unconstitutionally violate the Dormant

Commerce Clause.  In demanding that Virgin comply with the Labor Code, Plaintiffs are

ostensibly arguing that Virgin must comply with the many, and often conflicting, laws of each

state in which Plaintiffs lived or worked.  The undue burden of such a requirement vastly

outweighs California's interest in ensuring that employees receive, for example, itemized wage

statements.  *Ward*, 2016 WL 3906077, at *5.  The burden on interstate commerce is especially

---

[24] The California Supreme Court made clear in *Sullivan v. Oracle* that California's wage and hour laws do not follow its residents (let alone non-residents) wherever they go.  51 Cal.4th 1191, 1199 (2011); *see also Sarviss*, 633 F.Supp.2d at 899 (holding that mere California residency is not enough to overcome the presumption against extraterritorial application of California law).  The *Sullivan c*ourt further recognized the possibility of a "limited extraterritorial application of California's employment laws, precisely balanced by interstate comity: California law…*might* follow California resident employees of California employers who leave the state 'temporarily…during the course of the normal workday', and California law might not apply to nonresident employees of out-of-state business who 'enter California temporarily during the course of the workday.'"  51 Cal.4th at 1199 (emphasis added).

[25] That Virgin withholds state income tax from Plaintiffs' wages is also immaterial.  *Id.* at *1. Federal law dictates the tax withholding status of air carrier employees.  If ITMs work in more than one state – which each of our Plaintiffs admittedly do – their wages are subject to the state income tax laws of where they reside or where they earn over fifty percent of their pay.  49 U.S.C. § 40116(f)(2).  Accordingly, Virgin's withholdings bear no relation to the amount of time the Plaintiffs spend working in California, which is the determinative question.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1  significant in the airline industry, in which services are "inherently national" and "require a

2  uniform system of regulation."  *Nat'l Ass'n of Optometrists Opticians v. Harris*, 682 F.3d 1144,

3  1148 (9th Cir. 2012) (recognizing that state regulations that impose significant burdens on

4  interstate transportation are "classic examples" of nondiscriminatory laws that violate the

5  Dormant Commerce Clause); *see also* S. Rept. 1811, 85th Cong. 2d Sess. (1958) ("The airline

6  industry "is unique among transportation industries in its relation to the federal government – it is

7  the only one whose operations are conducted almost wholly within federal jurisdiction");

8  *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007) ("Regulation on a national basis is

9  required because air transportation is a national operation."); *Hirst*, 2016 WL 2986978, at *10-11.

10       To determine whether California statutes violate the Dormant Commerce Clause, courts

11  balance the burdens on commerce against the state's interests.  *See United Air Lines, Inc. v. Indus.*

12  *Welfare Com.*, 211 Cal.App.2d 729, 747-48 (1963); *Guy v. IASCO*, 2004 WL 1354300, at *7

13  (Cal. App. 2d June 17, 2004) (unreported) (holding that the application of California's overtime

14  law to flight engineers who spent the majority of their work outside of California on international

15  flights would violate the Dormant Commerce Clause).  In *United*, the California Court of Appeals

16  found that a California wage order provision requiring airlines to pay for their employees'

17  uniforms would result in situations where different state rules would apply to the same flight crew

18  working the same flight.  211 Cal.App.2d at 749.  That is, allowing the California regulation to

19  govern interstate flights would lead to a situation where:  "A stewardess based in California gets a

20  free uniform even though most, or perhaps all, of her work is on interstate planes.  A stewardess

21  based outside of California who works on planes coming into California does not.  Likewise, on

22  interstate flights there might very well be two stewardesses working side by side, one with a free

23  uniform, the other with a uniform only a part of the cost of which United paid."  *Id.* at 748-49.

24  The resulting burden on interstate commerce was incommensurate with California's interest in

25  ensuring its California-based flight attendants received additional pay.  *Id.* at 749.

26       Similarly, in *Ward*, Judge Alsup found that requiring an airline to comply with Section

27  226 for its pilots would unduly burden interstate commerce.  *Ward*, 2016 WL 3906077 at *5.  The

28  court weighed California's interest in ensuring that California wage earners are informed about

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1   their compensation against the burden that would result from the application of Section 226 – in

2   other words, "the administrative burden of complying with the patchwork of state wage-statement

3   statutes and regulations (and subsequent interpretations and developments thereof)." *Id.* If those

4   laws apply to ITMs, an airline could, *e.g.,* be required to provide an ITM a different form of wage

5   statement each bid month depending on where they principally worked.  Virgin would have to

6   monitor its ITMs' precise hours spent working in every state and determine which state's law

7   would apply in a given bid month and then comply with each, including laws that could apply

8   simultaneously. *Id.* "Beyond the administrative challenge, this would also cause frequent

9   confusion among [ITMs] who would be unable to make sense of the inconsistent formats of the

10  wage statements – the very problem sought to be solved by Section 226(a)." *Id.* Accordingly, the

11  court found that the Dormant Commerce Clause prohibits the application of California law to

12  pilots, even those who work principally in California in a particular bid month. *Id.* at *6.[26]

13          The same issues would arise here if the cited Labor Code provisions applied to Virgin's

14  ITMs, regardless of whether they live, are based, or work in California.  For instance, Plaintiffs

15  claim that Virgin's credit-based, ITM compensation policy relies upon impermissible averaging

16  under California law and, therefore, Plaintiffs are not paid the minimum wage for all hours

17  worked.  California courts have recently found that comparable credit-based, flight attendant

18  compensation policies are not impermissible averaging under California law. *Oman*, 2015 WL

19  9478241 (finding that Delta's compensation policy does not run afoul of the Labor Code);

20  *Booher*, 2016 WL 164929, at *3 (same); *see also DeSaint v. Delta Air Lines, Inc.*, 2015 WL

21  1888242 (D. Mass. Apr. 15, 2015) (holding that Delta's compensation system compensates flight

22  attendants at the minimum wage for all hours worked and was not impermissible averaging under

23  Massachusetts law).  Moreover, in almost every jurisdiction in which Plaintiffs work and live –

24  including the federal airspace, Florida and New York – an employer satisfies the minimum wage

25  law requirements if an employee's total compensation divided by the number of hours the

26

27

28

---

[26] The Northern District of Illinois also recently found that the Dormant Commerce Clause would be violated if state wage and hours laws were applied to the claims of airline employees whose duties, like Plaintiffs' here, required them to work in multiple states. *Hirst*, 2016 WL 2986978, at *10.  The court held that "tracking the minute-by-minute location of each flight attendant on each operating SkyWest flight to determine the precise moment she enters and exits [Illinois] airspace" would impose a substantial burden on interstate commerce. *Id.* at *10, n. 14.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    employee worked during a pay period exceeds the minimum wage.[27]   Nonetheless, Plaintiffs

2    contend that Virgin either adjust its otherwise permissible methodology whenever ITMs work for

3    any time in California or that Virgin reconstruct its entire pay structure so that it complies

4    everywhere with Plaintiffs' interpretation of California law.

5           The unreasonableness of Plaintiffs' position is exemplified by Bernstein's employment

6    history.  Neither the Labor Code nor Wage Order No. 9 set a bright-line rule that an individual

7    must work a specified amount of hours within the geographic boundaries of California to be

8    deemed a covered employee.  If the Court were to find that Bernstein's minimal contact with

9    California is sufficient to require Virgin to pay her the minimum wage for all hours worked in

10   California, those same contacts would arguably require Virgin to provide a California-compliant

11   wage statement for those same hours, ensure that all wages related to those hours are timely paid

12   in accordance with California law, and provide meal and rest breaks to Bernstein when she works

13   in California, which, in turn, would require Virgin to track Bernstein's individual schedule in real

14   time, to determine when those break requirements are triggered.  Virgin would also seemingly be

15   required to follow the same process in every other state where Bernstein worked, ensuring that it

16   complied with the individual states' wage and hour laws.[28]   This is precisely the burden that

17   Judge Alsup found outweighs any interest California has in applying its wage and hour laws to

18   airline employees like ITMs.  *Ward*, 2016 WL 39006077, at *5.  California law cannot

19   monopolize the regulation of employment in such a way.  Accordingly, the Dormant Commerce

20   Clause precludes the application of the California Labor Code to Plaintiffs.

---

[27] *See, Del Rosario v. Labor Ready Se., Inc.*, 2015 WL 5016613, at *13 (S.D. Fla. Aug. 25, 2015) (applying averaging method to minimum wage claim under FLSA and Florida law); *Thind v. Healthfirst Management Services, LLC*, 2015 WL 4554252, at **4-5 (S.D.N.Y. July 29, 2015) (dismissing plaintiffs' minimum wage claims under the FLSA and New York Labor Law as being contrary to the law in the Second Circuit because, inter alia, plaintiffs' average hourly salary was always in excess of both the federal and state minimum wage); *see also* 29 C.F.R. § 778.109 (calculating the average hourly wage by dividing total remuneration for employment in any workweek by the total number of hours actually worked).

[28] The Court's determination of what is considered sufficient contact with California would have far-reaching implications well beyond this case and the airline industry.  If the Court were to find that whenever ITMs enter California to perform work they are covered by California law, that would require any employer to compensate its employees in accordance with California law whenever an out-of-state employee happens to work in California – *e.g.*, an employee who comes to California to attend a one day conference or simply works for three hours in the SFO terminal while waiting for a connecting flight between New York and Japan.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

C.      **Plaintiffs' Meal and Rest Break Claims Are Preempted**

"Aviation is unique among transportation industries in its relation to the federal government – it is the only one whose operations are conducted almost wholly within federal jurisdiction….Thus, the Federal Government bears virtually complete responsibility for the promotion and supervision of this industry in the public interest." See S. Rep. No. 1811, 85th Cong., 2d Sess. 5 (1958)."  Because air transportation is a national operation, "[r]egulation on a national basis is required."  *Montalvo,* 508 F.3d at 474.

In recognition of the need for national coordination of the airline industry, Congress has enacted several laws and regulations governing airlines and their employees.  Included in those regulations are those governing what ITMs can and cannot do during the operation of a flight from boarding through deplaning (and beyond), as well as regulations setting strict maximum duty period and minimum rest requirements for ITMs.  *See, e.g.*, 14 C.F.R. §§ 121.193, 121.391, 121.467.  Nonetheless, Plaintiffs seek to impose stricter requirements on Virgin and have the Labor Code, not federal law, govern the full terms and conditions of their employment.  This would include requiring Virgin to provide ITMs with a 10 minute duty-free rest period for every four hours on duty, an additional 30 minute, uninterrupted, duty-free meal period whenever a duty period exceeds five hours, and a second such meal period whenever the duty period exceeds 10 hours.  Labor Code § 512; Wage Order No. 9 §§ (11), (12).  Moreover, for any meal period required mid-flight, Virgin would have to provide a "suitable place" for that purpose.  Wage Order No. 9 § (11)(E).  As set forth below, federal law preempts the Labor Code from placing such requirements on Virgin with respect to meal and rest breaks under each applicable theory: (1) field preemption; (2) conflict preemption; and (3) express preemption.

1.      Field Preemption

Congress enacted the Federal Aviation Act (the "Act") in an effort to establish requirements and safety standards for the airline industry in order to ensure the safe operation of aircraft.  Pub. L. No. 85-726, 72 Stat. 744.  The resulting regulatory framework makes clear that Congress intended the field of aircraft safety to be one of significant federal interest.  *See Montalvo*, 508 F. 3d at 471 ("The purpose, history and language of the FAA lead us to conclude

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1   that Congress intended to have a single, uniform system for regulating aviation safety.").  Given

2   the density and detail of federal regulation over airline safety, it is easily inferred that any state

3   regulation within that field will interfere with the uniform, federal regulatory scheme.  *Nat'l Fed.*

4   *of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734 (9th Cir. 2012).

5          The FAA promulgated regulations focused on ITM duty period limitations and

6   requirement to "protect [ITMs] from work related fatigue that interferes with their ability to

7   perform essential safety duties" and avoid creating "an unacceptable safety risk."  Flight

8   Attendant Duty Period Limitations and Rest Requirements, 59 FR 42974-01, at *42974 (1994).

9   Those duty period limitations "enhance the safety of the flying public by ensuring that [ITMs] do

10   not become overly fatigued during flight assignments" and are "designed to suit all operations…

11   *without imposing a significant burden on operators.*"  *Id.* at *42977-78 (emphasis added).

12          Pursuant to those regulations, ITMs may not be scheduled for a duty period of more than

13   14 hours.  14 C.F.R. §§ 121.467(b)(1), (4)-6).  Thereafter, ITMs must be given a scheduled rest

14   period of at least nine consecutive hours between duty periods.  14 C.F.R. § 121.467(b)(2).  That

15   is, the FAA determined that:  (1) in order to perform the essential duties of their job, ITMs can

16   work for at least 14 hours without a break; and (2) by requiring that rest periods be scheduled in

17   combination with duty periods, "the objective of ensuring the flight attendants are provided an

18   opportunity to be rested will be met."  59 FR 42974-01, at *42978.  The regulations make clear

19   the dominance of the federal interest over aviation safety and "the legislative goal of establishing

20   a single, uniform system over air safety," and that Congress intended to displace state law when it

21   came to the work and rest limitations for ITMs.  *Montalvo*, 508 F.3d at 474.  The FAA occupies

22   the field with respect to setting rest and duty periods for ITMs, and California's meal period and

23   rest break laws are therefore preempted.

24                    2.      Conflict Preemption

25          No matter how well intended a state's laws might be, they may not conflict with federal

26   law.  California Labor Code §512 states that "[a]n employer may not employ an employee for a

27   work period of more than five hours without providing a meal period of not less than 30

28   minutes."  The corresponding Wage Order further requires that the employee be relieved of all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1   duty during that 30 minute period unless the employee agrees, in writing, to have an "on duty"

2   meal period.  Wage Order No. 9 §11(c).  That is, unless Plaintiffs agree to on duty meal periods,

3   they argue that Virgin must provide them a 30 minute, uninterrupted meal period.  The FAA

4   regulations, however, do not permit Plaintiffs to forego their responsibilities while inflight.

5   Bernstein 166:5-18; Tomlinson 154:7-155:5.  Yet Plaintiffs insist that California law requires

6   Virgin to do so, representing an impermissible conflict.

7        The FAA's regulation of ITMs strikes a delicate balance between safety, service, cost and

8   other interrelated factors implicated by the interstate nature of passenger transportation.  The

9   resulting, comprehensive scheme governs Plaintiffs' duties – duties they may not refuse to

10  perform.  That scheme also permits Plaintiffs to be scheduled for up to 14 uninterrupted hours of

11  service (without additional remuneration) before receiving rest.  That is, Plaintiffs do not have to

12  be relieved of their duties for up to 14 hours.  California law, which was promulgated without an

13  analysis of, or its impact on, the airlines industry and which applies equally to all industries,[29]

14  would not even allow Virgin to employ Plaintiffs under such circumstances.  It would also

15  preclude Virgin from flying the 30% of its flights that exceed five hours (and even more that

16  exceed 3 ½ hours) unless it somehow relieved Plaintiffs of their duties during those flights.  It is a

17  palpable overreach for Plaintiffs to assert that California can supersede federal law, regulate the

18  working conditions of ITMs, and impose burdens on Virgin in this way.

19        3.   ADA Preemption

20        To prevent state regulation from interfering with federal deregulation, the Airline

21  Deregulation Act (the "ADA") includes a broad preemption provision which provides that "a

22  State…may not enact or enforce a law… having the force and effect of law related to a price,

23  route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  Thus, a state enforcement action can

24  be preempted even if it does not specifically prescribe or directly regulate services.  As California

25  law would require that Virgin provide ITMs with meal and rest periods at certain times during the

26  workday, thereby regulating when ITMs may work, the application of these laws would have the

27  ─────────────
[29] Indeed, the meal and rest break requirements imposed on the transportation industry apply
28  equally to the, *inter* alia, the manufacturing industry, canning, freezing and preserving industry,
and motion picture industry.  *Compare* IWC Wage Order No. 9 §§ 11, 12 *with* Wage Order Nos.
1 §§ (11), (12), 3 §§ (11), (12) and 12 §§ (11), (12).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    force and effect of regulating Virgin's services and routes.

2           As Plaintiffs admit, when ITMs cannot perform their duties, Virgin's flights cannot

3    operate as scheduled, thereby affecting the services Virgin provides to its customers.  It is easy to

4    imagine a situation in which an ITM, must under California law be relieved of duty to take a

5    break, but doing so would prevent the aircraft from being prepared for takeoff or passengers

6    being boarded on time such that it would impact the schedule of the point-to-point transportation

7    of passengers.  Weaver Decl. ¶¶ 4-5; *see also Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at

8    *9 (N.D. Cal. Feb. 19, 2013) (holding that the responsibilities of defendant's Fleet Service, whose

9    duties help prepare a plane for flight, "directly impacted the transportation of passengers and

10   cargo, and therefore enforcing [California's] meal period and rest break regulations would

11   impermissibly regulate an air carrier's service"); *Blackwell v. Skywest Airlines, Inc.*, 2008 WL

12   5103195 (S.D. Cal. Dec. 3, 2008) (finding that California's meal and rest break laws would have

13   an impermissible, significant impact on the SkyWest's routes and prices and thus claims brought

14   by customer service representatives were preempted by the ADA); *Miller v. Southwest Airlines,*

15   *Co.*, 923 F.Supp.2d 1206 (N.D. Cal 2013) (holding that operation agents' meal and rest break

16   claims were preempted by the ADA because airline routes, services and costs would be affected);

17   *Angeles*, 2013 WL 622032.[30]

18          **D.     Plaintiffs Cannot Establish That They Work Within California For The**
            **Requisite Number of Hours to Trigger Overtime and Break Eligibility**
19
            In addition to seeking damages for alleged missed meal and rest breaks, Plaintiffs seek
20
     overtime pay for all hours worked over eight hours in a day and 40 hours in a week.[31]  As the
21
     Labor Code does not apply extraterritorially, Plaintiffs cannot meet their burden of showing that
22
     they worked the requisite number of hours *within* California to trigger those requirements.
23

24   ──────────────────────
     [30] The Ninth Circuit's decision in *Dilts v. Penske Logistics, LLC* dealt with neither ADA
25   preemption nor the airline industry.  769 F.3d 637 (9th Cir. 2014).  While commercial truck
     drivers can pull over and stop for each break period, the equivalent for ITMs would be landing
26   the plane.  That would not only require Virgin to acquire access rights to those transitional
     airports, but also significantly alter the routes its planes must take.

27   [31] Wage Order No. 9 also provides that when an employee works additional hours, not in excess
     of sixty, "due to temporary modification in the employee's normal work schedule…arranged at
28   the request of the employee," this additional time is exempt from the overtime requirements of
     the Wage Order.  Wage Order No. 9, § 3(N).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    Because the federally-regulated airspace is under the exclusive sovereignty of the United

2    States Government. (49 U.S.C. § 40103(a)), time spent flying through the navigable airspace

3    above California should not be considered time spent within the state of California. *See, Hirst*,

4    2016 WL 2986978, at *10, n. 14 (finding that Illinois has no sovereignty over the skies above it

5    and that, arguably, Illinois' wage and hour law should not apply to time worked in flight over the

6    state.).[32]  Further complicating any argument that Plaintiffs were working in California when they

7    flew over California is that California contains numerous military bases, national forests and

8    parks that classify as federal enclaves, where "the federal government exercises legislative

9    jurisdiction," and federal law, not state law, applies. *Taylor v. Lockheed Martin Corp.*, 78

10   Cal.App.4th 472, 478 (2000); *see*, *Mersnick v. USProtect Corp.*, 2006 WL 3734396 (N.D. Cal.

11   Dec. 18, 2006) (dismissing overtime claim under California law, because Vandenberg Air Force

12   Base was a federal enclave governed by the FLSA); *Williams v. Brinderson Constructors Inc.*,

13   2015 WL 4747892, *4 (C.D. Cal. Aug. 11, 2015) (finding that "California labor law simply does

14   not apply" to federal enclaves.).  Therefore, if the airspace above the land belongs to the entity

15   with jurisdiction over the land, the FLSA should apply to ITMs working in the airspace above a

16   federal enclave and such time would not be considered hours worked within California.

17          Plaintiffs did not maintain any records of the amount of time they actually worked in

18   California or how long they spent performing certain tasks.  Bernstein 75:6-12, 16-25, 76:9-12,

19   17-21, 240:6-19; Smith 55:25-56:21, 58:18-59:9; Garcia 187:19-188:3.  Nor can they identify

20   when and for how long they worked within California.  Smith 263:12-264:14; Garcia 49:2-7,

21   296:16-297:5.  As Plaintiffs cannot show that they worked *within* California for the requisite

22   number of hours without receiving overtime or a meal or rest break, their overtime and breaks

23   claims should be dismissed as a matter of law.[33]

24   _____

[32] To find otherwise would mean that an ITM working a direct flight from Mexico to Washington
25   that flew over California would be subject to California wage and hour laws even though he/she
never stepped foot in California.

26   [33] Plaintiffs also cannot show that they are not able to take meals or rest breaks during their Duty
Periods, because they admit they:  (a) are able to take breaks during flights; (b) are free to engage
27   in personal activities during turns, including eating meals; and (3) can depart the plane even when
passengers remain on during turns to get a cup of coffee or run an errand.  Bernstein 192:24-
28   193:2, 194:9-24, 199:4-19, 200:17-21; Smith 87:2-13; Garcia 274:14-22, 294:3-6.  Further,
Plaintiffs ignore that Virgin provides Pairings containing at least 30 minute periods for Plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

### E.      Virgin's ITM Compensation Policy Fully Complies With California Law

Plaintiffs claim that throughout their employment with Virgin they were subject to, and paid according to, a compensation policy that fails to pay them the applicable minimum wage for all hours worked.  Wage Order No. 9 requires every employer to pay a covered employee "not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, *or otherwise.*"  *Id*. at § (4)(B).  It does not require Virgin to set a single wage rate for its hourly employees.  Instead, it provides Virgin the flexibility to utilize other methodologies for calculating compensation so long as Virgin ensures that it pays Plaintiffs above the hourly minimum wage for all time worked – which it does.

Plaintiffs concede that the Work Rules, including Chapter 10 – Getting Paid, Section F.1, accurately set forth the manner in which they are compensated.  Bernstein 227:24-228:6; Smith 129:22-130:8, 254:12-16. That section makes clear that "[t]he credit value *for each duty period* within a pairing will consist of block hours, deadhead or ground transportation credit, and minimum duty credit…."  Villarreal Decl. Ex. J, VIR/BER 000845.  That is, Virgin's credit-based system compensates ITMs for each Duty Period – *i.e.*, the period encompassing all of the time that they are working – not just their flight time.

Virgin's system uses a "base" rate, which is not an agreed upon hourly rate of pay.[34] Rather, it is a variable in the equation Virgin utilizes to determine the actual pay for each Duty Period and, in turn, Pairing.  That Virgin does not pay its ITMs on a straight hourly basis does not make their compensation policy illegal under California law.  Indeed, two recent decisions upheld similar ITM compensation systems that did not pay on a straight hourly basis, but rather determined the credit value for each Duty Period through a series of formulas.  *Oman*, 2015 WL 9478241, at *9 (holding that Delta's compensation system did not implicate the "wrongs" identify in *Armenta v. Osmose, Inc.*, 135 Cal.App.4th 314, and was not impermissible averaging); *Booher*,

---

to take a meal break and that *Plaintiffs* control their own schedules through the bidding process.

[34] Plaintiffs condemn Virgin's compensation system because they are paid at a different rate of pay for each Pairing.  Wage Order No. 9 makes clear that Plaintiffs may be "paid on a time, piece rate, commission, *or [any] other basis*...." 8 Cal. Admin. Code § 11090 (1) (emphasis added); *see also* 8 Cal. Admin. Code § 11090(2)(O) ("'Wages' includes all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or *other method of calculation*.") (emphasis added).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

2016 WL 164929 (same).  Although those systems involve additional formulas beyond Virgin's block time and minimum duty credit, the *Oman* and *Booher* decisions reinforce how Virgin's plan complies with California's minimum wage laws.

There is no evidence that Virgin promised or that Plaintiffs expect to be paid at their base rate for each hour worked.  Indeed, Virgin provides bid packets that identify the minimum credits to be awarded for each Pairing, which allows ITMs to calculate their compensation for that Pairing.  *Oman*, 2015 WL 947821, at *9 (finding that the bid packets allow flight attendants to "easily calculate their rate of pay for the mix of responsibilities they would have during the [Pairing]"); *Booher,* 2016 WL 164929, at *2 ("This information allows the flight attendants to determine the pay formulas applicable to each Pairing as scheduled….").  Similarly, Virgin's Work Rules identify how many credits Plaintiffs will receive, or how their credits will be calculated, for all non-Pairing activities – *e.g.*, reserve, training, deadheading[35] and drug testing.  As a result, Plaintiffs know in advance how much they will be paid for their time on duty, whether that time is spent working a Pairing or engaged in a non-Pairing activity.  Therefore, Virgin's "Work Rules function in a different, fully-disclosed way to ensure that [ITMs] are paid for each hour worked" that does not violate California's minimum wage requirements.  *Oman*, 2015 WL 947281, at *11.

Further, Plaintiffs' challenge of Virgin's compensation for non-airport based reserve time and FAA-required training and drug testing is also meritless because such time is non-compensable.  For reserve, Virgin's policy does not set an excessive geographic restriction on Plaintiffs, as they can be anywhere so long as they can report to duty within two hours (short call reserve) or twelve hours (long call reserve) of being informed of an assignment.  *See, e.g.*, *Johnson v. Serenity Transp. Inc.*, 141 F.Supp.3d 974, 1003 (N.D. Cal. 2015) (holding that mortuary drivers' on call time was not compensable).  Moreover, while there is no evidence that

---

[35] Delta and JetBlue's compensation systems include a formula that credits their flight attendants with 1 hour of pay for every 2 hours spent on duty – the equivalent of Virgin's deadheading policy.  *Compare Oman*, 2015 WL 947821, at *4 (Duty Period Credit formula) *with* Villarreal Decl. Ex. J, VIR/BER 000845-846.  This "1 for 2" policy is also consistent with the FAA's treatment of deadhead time when evaluating flight time limitations:  "If a flight crewmember is required to engage in deadhead transportation for more than four hours before beginning flight duty, one half of the time…must be treated as duty time…."  14 C.F.R. § 121.523(d).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    Plaintiffs received frequent calls within a reserve period, the record is replete with testimony that

2    Plaintiffs were permitted to, and did, engage in personal activities during non-airport based

3    reserve periods.  Bernstein 107:3-9; Smith 252:18-253:12.  As for training, Plaintiffs admit that

4    their training, including initial and recurrent training, is required by the FAA for them to be

5    eligible to work as an ITM.  Smith 63:22-64:10; Croteau 107:14-19.  When training is imposed

6    by a government agency for employment in a particular line of work, and not by the employer,

7    that training is non-compensable.  *Ulrich v. Alaska Airlines, Inc.*, 2009 WL 364056 (W.D. Wash.

8    Feb. 9, 2009) (holding that training time was not compensable, because it was for the trainee's

9    benefit, allowed the plaintiff to qualify for employment, and gave her skills that would transfer to

10   other settings.[36]

11        Finally, there is no evidence that when applying the number of credits received for each

12   Duty Period against their hours worked for the Duty Period that Plaintiffs received below the

13   minimum wage.  Plaintiffs cannot show that they are not paid the minimum wage for all hours

14   worked in California (or anywhere else) and their minimum wage claim warrant dismissal.

15        **F.        Plaintiffs Are Not Covered Employees Under the SFMWO**

16        The SFMWO requires that an employer "pay Employees no less than the Minimum Wage

17   for each hour worked within the geographic boundaries of the City."  San Francisco Admin. Code

18   § 12R.4(a) (emphasis added).  To be covered, an employee must perform at least two hours of

19   work for the employer "*within the geographic boundaries of the City*" in a particular week.  San

20   Francisco Admin. Code § 12.R.3 (emphasis added).  The "City" is defined as "the City and

21   County of San Francisco."  *Id.*  SFO is owned by the City and County of San Francisco, but is

22   geographically located in San Mateo County, as is Virgin's Headquarters and training facility in

23   Burlingame, California.  All are outside the San Francisco City and County limits and, thus,

24   Plaintiffs could not have worked "within the geographic boundaries of the City."

---

25   [36] *See also*, *Donovan v. American Airlines, Inc.*, 686 F.2d 267 (5th Cir. 1982) (holding that flight
     attendant trainees were not "employees" within the meaning of the minimum wage provisions of
26   the FLSA while in training at the airline's learning center and, thus, their training time was non-
     compensable); *Donovan v. Trans World Airlines, Inc.*, 726 F.2d 415 (8th Cir. 1984) (same);
27   *Haszard v. Am. Med. Response Nw., Inc.*, 237 F.Supp.2d 1151, 1153 (D.Or. 2001) (holding that
     when training is required by the state, such time is not compensable) (citing Wage and Hour
28   Letter Opinion, WHM 99:8195, 8195-96 (Nov. 19, 1998)).  Similar logic should apply to the
     FAA-required mandatory drug testing.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

### G.      Virgin's Wage Statements Comply With California Law

Virgin does not compensate Plaintiffs on a straight hourly or piece-rate basis, but rather through a credit-based system similar to those recently approved in *Oman*, 2015 WL 947821, and *Booher,* 2016 WL 164929.  That system does not allow Virgin to easily transcribe the Plaintiffs' work and the manner in which they are paid onto an itemized wage statement showing the effective hourly rate of pay applied to each hour they are on duty.  To comply with Plaintiffs' interpretation of Section 226, Virgin would need to convert ITMs' wages into something they are not and create a "compliant" wage statement that itself would not accurately reflect the manner in which ITMs are paid.  That is not required and Virgin's wage statements make it abundantly clear that it is complying with Section 226 in good faith by providing all of the requisite information in a manner that mirrors its compensation system.

Virgin's wage statements identify the pay period, pay date, Virgin's name and address, and include separate line items for every form of compensation Plaintiffs receive during each pay period, including earnings for their regular schedule, premium rates, office days, drug testing, training hours, per diem, holidays, sick days, and profit sharing, as well as all withholdings and deductions.  For each pay bucket, the wage statements show the applicable rate of pay, the number of hours or credits applied to each, and the amounts earned/deducted for the applicable pay period and year to date.  As such, Plaintiffs can promptly and easily determine from their wage statement what they earned for each bid month and how many credits they received, and, thus, Plaintiffs cannot prove that Virgin knowingly and intentionally violated Labor Code wage statement requirements resulting in an injury to Plaintiffs.[37]

### H.      There Is No Evidence That Plaintiffs Incurred Any Business Expenses.

Plaintiffs' testimony makes clear that there is no evidence that Plaintiffs incurred any business expenses relating to their passports (the only expense alleged in their Complaint) that required reimbursement.  Compl. ¶ 101.  Garcia testified that she obtained her passport prior to starting her employment for Virgin, used it to travel internationally for personal vacations, and

---

[37] Plaintiffs can also verify their earnings, hours on duty and total credits for each bid month in real time via Virgin's Rainmaker tracking system.  Hendrickson 102:3-20, 214:23-215:9.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST

1    never renewed her passport or incurred any passport-related costs during her employment.  Garcia

2    72:10-15, 74:11-75:14, 76:10-12, 79:12-14.  Smith obtained a passport prior to becoming an ITM

3    so she could travel internationally, used her passport for personal reasons, and has never incurred

4    renewal costs because her passport expires in 2020.  Smith 98:2-8, 98:11-23, 136:6-21.

5    Moreover, the requirement to have a passport is imposed by law and not some idiosyncratic

6    Virgin requirement.  DLSE Opinion Letter 1994.11.17 ("While the license may be a requirement

7    of the employment, it is not the type of cost encompassed by Labor Code § 2802."); *In re*

8    *Acknowledgment Cases*, 239 Cal. App. 4th 1498, 1505-06 (2015) ("It is consistent with this

9    purpose to require that where an individual must, as a matter of law, have a license to carry out

10   the duties of his or her employment, the employee must bear the cost of obtaining the license.").

11                     **I.      Plaintiffs' Remaining Claims Must Be Dismissed**

12          The Court should also grant summary judgment in favor of Virgin on Plaintiffs' Fourth,

13   Eighth, Tenth and Eleventh Causes of Action because they are derived from allegations that

14   Virgin violated Labor Code §§ 226.7, 510, 512, 1174, 1182.12, 1194, 1194.2, and 2802, Wage

15   Order No. 9, and the SFMWO.  Because those claims fail as a matter of law, the derivative claims

16   must fail as well.  *See White v. Starbucks Corp.*, 497 F.Supp.2d 1080, 1089-90 (2007) (granting

17   summary judgment in favor of the defendant on the plaintiff's UCL claim when that claim was

18   derivative of the plaintiff's failed meal and rest break claims).

19   **IV.    CONCLUSION**

20          For all the reasons stated above, Virgin's motion should be granted and Plaintiffs' claims

21   should be dismissed in their entirety, with prejudice.  Further, Virgin should be awarded its costs

22   incurred in making this motion, together with such other and further relief as the Court deems

23   just, proper, and equitable.

24

25   Dated: October 17, 2016                    MORGAN, LEWIS & BOCKIUS LLP

26                                              By   /s/  *Robert Jon Hendricks*
                                                    ROBERT JON HENDRICKS
27                                                  NANCY VILLARREAL
                                                    Attorneys for Defendant
28                                                  VIRGIN AMERICA INC.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMORANDUM OF PTS & AUTHS. ISO
DEFENDANT'S AMENDED MSJ
Case No. 3:15-cv-02277-JST