Monique Olivier (SBN 190385)
(monique@dplolaw.com)
DUCKWORTH PETERS LEBOWITZ OLIVIER LLP
100 Bush Street, Suite 1800
San Francisco, California  94104
Telephone:  (415) 433-0333
Facsimile:   (415) 449-6556

Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
KOSINSKI + THIAGARAJ, LLP
351 California Street, Suite 300
San Francisco, California 94104
Telephone: (415) 230-2860
Facsimile: (415) 723-7099

Attorneys for Plaintiffs and the Putative Class

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    vs.<br><br>VIRGIN AMERICA, INC.; and DOES 1 to 10, inclusive,<br><br>        Defendants. | **CLASS ACTION**<br><br>Case No.  3:15-cv-02277<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT VIRGIN AMERICA'S  MOTION FOR SUMMARY JUDGMENT**<br><br>Date:       December 1, 2016<br>Time:      2:00 p.m.<br>Courtroom: 9, 19th Floor<br>Judge:    Hon. Jon S. Tigar |

# TABLE OF CONTENTS

I.     INTRODUCTION ....................................................................................... 1

II.    STATEMENT OF FACTS ......................................................................... 2

    A.  Virgin Is a California Employer with Deep Ties to California. ......................... 2

        1.  Virgin Received Millions of Dollars in State Subsidies to Train Its Flight Attendants Because It Committed to Being a California Employer. ....................... 2

        2.  Virgin's Flight Routes Show It Is a California Regional Airline. ........................... 3

        3.  Virgin Treated All Plaintiffs as California Employees. ............................................ 5

    B.  Virgin Does Not Pay Plaintiffs for Non-Flight Duty Time or Overtime. ......................... 5

    C.  Virgin's Wage Statements Do Not Show the Number of Hours Plaintiffs Worked. .......... 5

III.    ARGUMENT .............................................................................................. 8

    A.  Virgin Cannot Meet the High Standard for Summary Judgment. ....................................... 8

    B.  California Law Applies to Plaintiffs' Claims. .................................................................... 9

        1.  The Labor Code Applies to All of Plaintiffs' Time Worked in California. .............. 9

        2.  The Labor Code Applies to Plaintiffs' Work Outside of California. ....................... 10

    C.  Virgin's Pay Practices Violate California Law. ................................................................ 14

        1.  Virgin's Policy of Paying Plaintiffs for Some Hours and Not Others Violates California Law. ...................................................................................................... 14

        2.  Plaintiffs Worked Requisite Hours to Trigger Overtime and Breaks Violations. .. 16

        3.  Virgin's Wage Statements Do Not Comply with California Law. ......................... 16

    D.  The Dormant Commerce Clause Does Not Bar Plaintiffs' Claims. ................................. 18

    E.  Plaintiffs' Meal and Rest Break Claims Are Not Preempted. ........................................... 22

        1.  The Federal Aviation Act Does Not Preempt Plaintiffs' Breaks Claims. ............... 23

        2.  The Airline Deregulation Act Does Not Preempt Plaintiffs' Breaks Claims. ........ 24

IV.    CONCLUSION ........................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**

*Aalmuhammed v. Lee*,
202 F.3d 1227 (9th Cir. 2000) ................................................................ 11

*Aguilar v. Zep Inc.*,
No. 13-cv-00563-WHO, 2014 U.S. Dist. LEXIS 120315 (N.D. Cal. Aug. 27, 2014) .............. 10

*Anderson v. CRST Int'l*,
No. CV 14-368 DSF (MANx), 2015 U.S. Dist. LEXIS 45161 (C.D. Cal. Apr. 1, 2015) ......... 13

*Armenta v. Osmose, Inc.*,
135 Cal. App. 4th 314 (2005) ................................................................ 14

*Atl. C.L.R. Co. v. Mazursky*,
216 U.S. 122 (1910) ................................................................ 21

*Bibb v. Navajo Freight Lines*,
359 U.S. 520 (1959) ................................................................ 19, 20, 21

*Brinker Rest. Corp. v. Superior Court*,
53 Cal. 4th 1004 (2012) ................................................................ 22

*Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*,
152 F.3d 1184 (9th Cir. 1998) ................................................................ 23

*Charas v. Twa*,
160 F.3d 1259 (9th Cir. 1998) ................................................................ 24

*Difiore v. Am. Airlines, Inc.*,
483 F. Supp. 2d 121 (D. Mass. 2007) ................................................................ 23

*Dilts v. Penske Logistics, L.L.C.*,
769 F.3d 637 (9th Cir. 2014) ................................................................ 24, 25

*Donovan v. Am. Airlines, Inc.*,
686 F.2d 267 (5th Cir. 1982) ................................................................ 15

*Ehret v. Uber Techs., Inc.*,
68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................ 11

*Fla. Lime & Avocado Growers, Inc. v. Paul*,
373 U.S. 132 (1963) ................................................................ 24

*Garnett v. ADT, L.L.C.*,
139 F. Supp. 3d 1121 (E.D. Cal. 2015) ................................................................ 17, 18

*Ghazaryan v. Diva Limousine, Ltd.*,
169 Cal. App. 4th 1524 (2008) ................................................................ 16

ii

*Godfrey v. Oakland Port Servs. Corp.*,
   230 Cal. App. 4th 1267 (2014) ................................................................. 25

*Hawaiian Airlines v. Norris*,
   512 U.S. 246 (1994) .............................................................................. 23

*Hough v. Anderson*,
   73 F. Supp. 2d 981 (N.D. Cal. 1999) ...................................................... 15

*Huron Portland Cement Co. v. Detroit*,
   362 U.S. 440 (1960) ......................................................................... 21, 22

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011) .................................................... 11

*Indus. Welfare Com. v. Superior Court of Kern Cty.*,
   27 Cal. 3d 690 (1980) ......................................................................... 9, 21

*Int'l Franchise Ass'n v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015) .............................................................. 19, 20

*Johannes v. Aerotek, Inc.*,
   No. CASE NO. CV 98-6153 DT (AJWx), 2001 U.S. Dist. LEXIS 25408
   (C.D. Cal. June 25, 2001) ...................................................................... 8

*Kinzer v. Allegiant Air, L.L.C.*,
   No. 2:15-cv-02306-JAD-PAL, 2016 U.S. Dist. LEXIS 72006 (D. Nev. May 31, 2016) .......... 23

*Lathrop v. Uber Techs., Inc.*,
   No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 88907 (N.D. Cal. July 7, 2016) ...................... 12

*Leibman v. Prupes*,
   No. 2:14-CV-09003-CAS (VBKx), 2015 U.S. Dist. LEXIS 80101
   (C.D. Cal. June 18, 2015) ................................................................ 11, 13

*Lloyd A. Fry Roofing Co. v. Wood*,
   344 U.S. 157 (1952) .............................................................................. 21

*Martin v. Midwest Express Holdings, Inc.*,
   555 F.3d 806 (9th Cir. 2009) ................................................................. 24

*McKenzie v. Fed. Express Corp.*,
   765 F. Supp. 2d 1222 (C.D. Cal. 2011) ................................................... 17

*Montalvo v. Spirit Airlines*,
   508 F.3d 464 (9th Cir. 2007) ............................................................ 23, 25

*Morillion v. Royal Packing Co.*,
   22 Cal. 4th 575 (2000) ...................................................................... 15, 16

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
   682 F.3d 1144 (9th Cir. 2012) .......................................................... 19, 20

iii

*Ne. Bancorp v. Bd. of Governors of Fed. Reserve Sys.*,
    472 U.S. 159 (1985) ................................................................................................ 19

*Oman v. Delta Air Lines, Inc.*,
    153 F. Supp. 3d 1094 (N.D. Cal. 2015) ................................................................. 15

*Pac. Nw. Venison Producers v. Smitch*,
    20 F.3d 1008 (9th Cir. 1994) .................................................................................. 20

*People ex rel. Harris v. Pac Anchor Transp., Inc.*,
    59 Cal. 4th 772 (2014) ............................................................................................ 25

*Pharm. Research & Mfrs. of Am. v. County of Alameda*,
    768 F.3d 1037 (9th Cir. 2014) ................................................................................ 19

*Precht v. Kia Motors Am., Inc.*,
    No. SA CV 14-1148-DOC (MANx), 2014 U.S. Dist. LEXIS 185202
    (C.D. Cal. Dec. 29, 2014) ....................................................................................... 11

*Pressler v. Donald L. Bren Co.*,
    32 Cal. 3d 831 (1982) ............................................................................................... 9

*Priyanto v. M/S Amsterdam*,
    No. CV 07-3811 AHM (JTLx), 2009 U.S. Dist. LEXIS 7849 (C.D. Cal. Dec. 23, 2009) ........ 13

*Quezada v. Con-Way Freight, Inc.*,
    No. C 09-03670 JSW, 2014 U.S. Dist. LEXIS 5922 (N.D. Cal. Dec. 16, 2014) ...................... 14

*Raymond Motor Transp., Inc. v. Rice*,
    434 U.S. 429 (1978) ................................................................................................ 20

*Ridgeway v. Wal-Mart Stores, Inc.*,
    107 F. Supp. 3d 1044 (N.D. Cal. 2015) ................................................................. 15

*Rocky Mt. Farmers Union v. Corey*,
    730 F.3d 1070 (9th Cir. 2013) ................................................................................ 18

*Russo v. APL Marine Servs., Ltd.*,
    135 F. Supp. 3d 1089 (C.D. Cal. 2015) ................................................................. 13

*S. Pac. Co. v. Arizona*,
    325 U.S. 761 (1945) ................................................................................................ 20

*S.D. Myers, Inc. v. City & Cty. of S.F.*,
    253 F.3d 461 (9th Cir. 2001) .................................................................................. 20

*Sarviss v. Gen. Dynamics Info. Tech., Inc.*,
    663 F. Supp. 2d 883 (C.D. Cal. 2009) .............................................................. 12, 13

*Seckler v. Kindred Healthcare Operating Group, Inc.*,
    No. C10-01188 DDP, 2013 U.S. Dist. LEXIS 29940 (C.D. Cal. Mar. 5, 2013) ...................... 18

iv

*See's Candy Shops, Inc. v. Superior Court*,
     210 Cal. App. 4th 889 (2012) ................................................................... 10

*Sullivan v. Oracle Corp.*,
     51 Cal. 4th 1191 (2011) ..................................................................... 9, 11

*Sullivan v. Oracle Corp.*,
     662 F.3d 1265 (9th Cir. 2011) ......................................................... 1, 10, 19

*Taylor v. Lockheed Martin Corp.*,
     78 Cal. App. 4th 472 (2000) ................................................................... 13

*Tidewater Marine W., Inc. v. Bradshaw*,
     14 Cal. 4th 557 (1996) ........................................................................... 10

*Tillison v. Gregoire*,
     424 F.3d 1093 (9th Cir. 2005) ................................................................ 23

*United Air Lines, Inc. v. Indus. Welfare Com.*,
     211 Cal. App. 2d 729 (1963) .................................................................. 21

*Ulrich v. Alaska Airlines, Inc.*,
     No. C07-1215 RSM, 2009 U.S. Dist. Lexis 10104 (W.D. Wash. Feb. 9, 2009) ...... 15

*Valencia v. SCIS Air Sec. Corp.*,
     241 Cal. App. 4th 377 (2015) ................................................................. 25

*Vaquero v. Ashley Furniture Indus.*,
     824 F.3d 1150 (9th Cir. 2016) ................................................................ 14

*Ventress v. Japan Airlines*,
     747 F.3d 716 (9th Cir. 2014) .................................................................. 23

*W. & S. Life Ins. Co. v. State Bd. of Equalization*,
     451 U.S. 648 (1981) ............................................................................... 19

*Ward v. United Airlines, Inc.*,
     No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 94803 (N.D. Cal. July 19, 2016) ..... 13, 21

*White v. Mass. Council of Constr. Emplrs*,
     460 U.S. 204 (1983) ............................................................................... 19

*Williamson v. Mazda Motor of Am., Inc.*,
     562 U.S. 323 (2011) ............................................................................... 24

*Willner v. Manpower Inc.*,
     35 F. Supp. 3d 1116 (N.D. Cal. 2014) ..................................................... 17

*Wright v. Adventures Rolling Cross Country, Inc.*,
     No. C-12-0982 EMC, 2013 U.S. Dist. LEXIS 58868 (N.D. Cal. Apr. 24, 2013) ...... 13

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MTN. FOR SUMMARY JUDGMENT          15-CV-02277-JST

*Yates v. Superior Air Charter, L.L.C.*,
    No. SACV 15-00847 AG (DFMx), 2015 U.S. Dist. LEXIS 95511
    (C.D. Cal. July 20, 2015) ............................................................................... 24

*iPhone 4S Consumer Litig.*,
    No. C 12-1127 CW, 2013 U.S. Dist. LEXIS 103058 (N.D. Cal. July 23, 2013) ...................... 11

**Statutes**

29 U.S.C. § 218 (2012) ........................................................................................ 16

29 U.S.C. § 218(a) (2012) .................................................................................... 19

49 U.S.C. § 41713(b)(1) (2012) .......................................................................... 24

Cal. Lab. Code § 204 ........................................................................................... 18

Cal. Lab. Code § 226 ........................................................................................... 18

Cal. Lab. Code § 226(a) ...................................................................................... 17

Cal. Lab. Code § 226(e)(2)(B) ........................................................................... 18

Cal. Lab. Code § 1171.5(a) ................................................................................... 1

**Other**

29 C.F.R. § 785.27 ............................................................................................... 15

Cal. Code Regs., tit. 22, § 4400(v) ........................................................................ 6

Fed. R. Civ. P. 56(a) .............................................................................................. 8

Fed. R. Civ. P. 56(d) ....................................................................................... 1, 20

1

## I.   INTRODUCTION

2      Virgin's hubris in seeking summary judgment is matched only by its blatant violations of

3   California wage laws.  On a factual record not credibly subject to dispute, Virgin has violated

4   Plaintiffs' rights under California law by:  (1) failing to pay for all hours worked; (2) failing to pay

5   overtime; (3) failing to provide meal and rest breaks; (4) failing to provide accurate wage

6   statements; and (5) failing to provide all wages owed at the time of separation (known as the

7   "waiting time penalty" claim).  Virgin's motion lacks all merit and must be denied.

8      First, Virgin is a California-based business employing California-based and -resident Plaintiffs.

9   Virgin's strong, indisputable connection to California includes not only its entirely California-

10  based operations, but the millions of dollars it received from the state in exchange for hiring and

11  training California workers.  There is no question that California law applies to Plaintiffs' claims

12  under California's wage laws, which "are available to *all individuals* . . . who have applied for

13  employment, or who are or who have been employed, in this state."  Lab. Code § 1171.5(a).

14      Second, Virgin cannot hide behind the Commerce Clause or federal law.  "California applies its

15  Labor Code equally to work performed in California, whether that work is performed by California

16  residents or by out-of-state residents. There is no plausible Dormant Commerce Clause argument

17  when California has chosen to treat out-of-state residents equally with its own."  *Sullivan v. Oracle*

18  *Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011).  And federal law does not occupy the field of airline

19  employment, nor does it conflict with California's wage laws.

20      Third, the facts demonstrate that Virgin has engaged in wage theft and deprived Plaintiffs (and

21  over 1,400 other flight attendants) of the wages to which they are entitled.  Virgin does not pay

22  Plaintiffs for any time on the ground until a plane starts or stops moving, does not pay overtime,

23  and does not pay for hours training, taking drug tests, working on reserve or completing incident

24  reports. Virgin also has a uniform policy that flight attendants cannot be relieved of duty at any

25  time on flight days.  *None of this can be disputed credibly*.  It also is not subject to dispute that

26  these uniform pay practices are well-documented in Virgin's own procedures, and confirmed by

27

28

Plaintiffs' detailed time and pay records.[1]

Virgin's attempt to play fast and loose with the facts and law fails, as it is not entitled to judgment on any ground it raises. The Court should grant Plaintiffs' Motion for Class Certification and deny Defendant's Motion for Summary Judgment.

## II. STATEMENT OF FACTS

### A. Virgin Is a California Employer with Deep Ties to California.

When advantageous for its bottom line, Virgin has repeatedly categorized itself and its employees as Californian. Only now, when it faces its obligation to comply with California labor standards does it disavow its deep and longstanding ties to this State.

#### 1. Virgin Received Millions of Dollars in State Subsidies to Train Its California Flight Attendants Because Virgin Committed to Being a California Employer.

When deciding where to base its headquarters, Virgin chose California because it intended to apply for and receive millions of dollars from the State of California in training and tax subsidies. Specifically, in launching and building a profitable company, Virgin applied for and received three contracts from the California Employment Training Panel ("ETP" or "Panel")[2] worth a total of $17,342,372. Of this, Virgin "earned" $10,449,654 specifically to train its employees, primarily flight attendants.[3] At the time, Virgin openly acknowledged that it chose to become a California

---

[1] Review of a fraction of the unpaid time demonstrates the real wage loss. Approximately two years of just unpaid boarding and deplaning time on the ground in California results in a wage theft of 36 hours for Bernstein, 78 hours for Smith and 132.25 hours for Garcia. Those numbers do not reflect all of the other unpaid duty, training and drug testing time, nor any time at any airport outside of California. Declaration of Alison Kosinski in Support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment ("Kosinski Decl."), Ex. 37 [Breshears Decl., ¶¶ 6-8, Ex. 2]. All references to exhibits hereafter shall refer to the Exhibits in the Kosinski Declaration, unless otherwise noted.

[2] The ETP is a statewide program that funds trainings "to promote a healthy labor market, with an emphasis on helping businesses overcome the challenge of out-of-state and international competition." Ex. 3 [ETP Annual Report 2012-2013, p. 2].

[3] See Ex. 4 [ETP 2005 Contract, p. 10]. In its first contract, Virgin intended to train up to 630 flight attendants with ETP funds. Ex. 7 [Dec. 8, 2005 ETP Memo, p. 4]. When Virgin was not able to earn all of the $10,449,654 of its first ETP contract, it requested a second contract from California for $7,038,770. Ex. 5 [ETP 2008 Contract, p. 1]. Virgin then requested a third contract for $299,970 for training from May 5, 2011 through May 4, 2013, primarily to train flight attendants and customer service agents. Ex. 6 [ETP 2011 Contract, p. 1]; Ex. 10 [Jan. 7, 2013 Final Report, p. 1]. Virgin used up all of these funds. See Ex. 1 [ETP Annual Report 2007-2008]; Ex. 2 [ETP Annual Report 2009-2010]; Ex. 3 [ETP Annual Report 2012-2013].

employer in exchange for these California subsidies:  "The availability of Panel funding for customized training of its California workforce led to the decision by a new airline called Virgin America, to locate its initial airline operations in the San Francisco Bay Area."[4]  In 2011, after receiving just over $10 million from the California ETP, Virgin boasted to ETP that it was "a 'new generation' start-up airline and is currently the only airline that calls California its home."[5]

In order to qualify and receive these millions of dollars, Virgin had to establish that it would stimulate California's economy and create and retain California jobs.  *See* Unemployment Ins. Code § 10200 *et seq.*  At that time, it "committed to hiring and training local workers who have been displaced by the airline industry" and to creating "aviation jobs it intends to add to the California economy over the next five years."[6]  California similarly anticipated that its funds, which were "a determining factor" in Virgin's decision to locate in California could "stimulate significant economic growth for the San Francisco Bay Area."[7]  Virgin used these millions of California dollars to train its flight attendants.[8]

### 2.  Virgin's Flight Routes Show It Is a California Regional Airline.

While Virgin tries to paint itself as having no particular ties to California, Virgin's routes reinforce that it is a regional airline serving California.  ***Since 2011, the daily percentage of Virgin's flights that arrived in or departed from California airports was never less than 88 percent, and during some years reached 99 percent.***[9]  Virgin's 2016 route map shows only four year-round flights that depart from and arrive in a non-California airport—all other flights either leave from or arrive to California.[10]  Virgin's entire fleet of Airbus A320's are registered with the Federal Aviation Administration in Burlingame, California.[11]  Further, Alaska Airlines, which intends to acquire Virgin, stated that once acquired, "the combined airline will . . . leverag[e] our

---

[4] Ex. 7 [Dec. 8, 2005 ETP Memo, p. 2].
[5] Ex. 8 [ETP Training Proposal, April 29, 2011, p. 2].
[6] Ex. 7 [Dec. 8, 2005 Memo, p. 3].
[7] Ex. 7 [Dec. 8, 2005 Memo, p. 2].
[8] Ex. 5 [ETP 2008 Contract, Ex. B, p. 2].
[9] Ex. 37 [Breshears Decl. ¶¶ 3-4].
[10] Ex. 12 [2016 Flight Route Map].  For example, to fly from New York to Florida or from Chicago to Washington, D.C. on Virgin, one must stop over  in California.
[11] Ex. 15 [FAA Registry of Virgin America Aircrafts].

1  strength in the Pacific Northwest with Virgin America's strength in California."[12]

2  ### 3.  Virgin Treated All Plaintiffs as California Employees.

3  Virgin's headquarters and all of the company's corporate departments, including its Inflight

4  Department, which oversees its flight attendants, its Inflight Training Department, and its Crew

5  Payroll Department, are located in Burlingame, California.[13]  Furthermore, all Virgin training for

6  flight attendants take place at Virgin's headquarters in Burlingame, California, irrespective of

7  where a flight attendant is based.[14]  Virgin's policy dictates that flight attendants who are based at

8  satellite bases have to make their own travel arrangements for regulatory training and that the

9  company will not pay for or provide lodging.[15]  In contrast, for flight attendants based at an official

10  base other than SFO, Virgin provides a guaranteed seat ("positive space") and lodging.

11  Plaintiffs worked flights that almost always departed from or arrived in California.  For

12  example, Plaintiff Smith performed work in California for over 96 percent of her work days.[16]

13  Plaintiff Bernstein performed work in California for 100 percent of her workdays, and Plaintiff

14  Garcia spent over 97 percent of her workdays performing work in California.[17]  Nearly all of the

15  flights that Plaintiffs worked either arrived to, departed from, or flew wholly within California.[18]

16  Virgin also insisted that Plaintiffs sign an Invention Assignment and Confidentiality Agreement

17  stating that their employment is at will and that the agreement is governed by California law.[19]

18  Virgin consistently withdrew California State Disability Insurance and California Unemployment

19  Insurance contributions through payroll for Plaintiffs, and continues to do so for all flight

20

21  [12] Ex. 13 [Alaska Air Group SEC Form 10-Q].
   [13] Ex. 29 [Hendrickson 16:9-24, 88:1-8, 104:13-14]; Ex. 46 [Kliff 20:24-22:6]; Ex. 47 [Jenkins
22  69:1-4; 19:10-21].
   [14] Ex. 41 [Work Rules 2013, VIR/BER 860];  Ex. 46 [Kliff 35:14-18, 44:9-14, 49:3-15, 52:12-16,
23  56:15-16, 57:11-19]; Ex. 32 [Bernstein Decl. ¶¶ 22-24]; Ex. 33 [Garcia Decl. ¶ 18-19]; Ex. 28
   [Smith 63:16-21; 64:16-65:5].
24  [15] Ex. 41 [Work Rules 2013, VIR/BER 860]; Ex. 42 [Work Rules 2012, VIR/BER 909]; Ex. 18
   [Smith Email Re: LAX]; Ex. 32 [Bernstein Decl. ¶ 24].
25  [16] Ex. 37 [Breshears Decl. ¶ 6, Ex. 2 to Breshears Decl].
   [17] Ex. 37 [Breshears Decl. ¶ 6, Ex. 2 to Breshears Decl].
26  [18] Ex. 37 [Breshears Decl. ¶ 6, Ex. 2 to Breshears Decl]. (97% of Garcia's flights, 92% of Smith's
27  flights, and 95% of Bernstein's flights either arrived to, departed from, or flew wholly within
   California).
28  [19] Ex. 38 [Invention Assignment and Confidentiality Agreement, VIR/BER 9754-58, 9388, 9095].

- 4 -

attendants, irrespective of the flight attendant's base or home address.[20]  Likewise, Virgin's workers' compensation practices favor adjudicating and handling claims in California, and it designates the vast majority of its premiums to California.[21]  Virgin's Crew Payroll Department is located in Burlingame, California and it issues wage statements to flight attendants that display its headquarters address:  555 Airport Blvd., 4th Floor, Burlingame, CA 94010.

### B.  Virgin Does Not Pay Plaintiffs for Non-Flight Duty Time or for Overtime.

Virgin requires all flight attendants, including Plaintiffs, to be on duty from an hour before a flight until 15 minutes after the last flight of a day, which includes all time during flights and between flights ("turn time").[22] During flights, three flight attendants continuously work inside the aircraft and are responsible for providing inflight services to passengers.[23]  Once the aircraft lands and "blocks in" (i.e. parks at the gate), flight attendants assist passengers deplaning, check the lavatories, remove trash from the seats and floor, and cross seatbelts.[24]  Per Virgin policy, the flight attendants must stay onboard until all the passengers have deplaned, which usually takes at least fifteen minutes.[25]  If a flight attendant has another flight, she must report for duty at the second flight's departure gate and be onboard the aircraft forty-five minutes before the scheduled

---

[20] Ex. 22 [Bernstein Wage Statement VIR/BER 245]; Ex. 23 [Garcia Wage Statements VIR/BER 9469, 9587]; Ex. 24 [Smith Wage Statements VIR/BER 9239, 9322]; Ex. 17 [Team Member Onboarding Guide VIR/BER 1358, 1370]; Ex. 35 [Croteau Decl. ¶ 9-10; Ex. 36 [Tomlinson Dec. ¶ 9, Attachment B].

[21] Ex. 35 [Croteau Decl. ¶ 7-8]; Ex. 39 [Virgin's Catastrophe Premium Endorsement VIR/BER 10881-83] Catastrophe Designation: CA ($19,933); IL ($72); NV ($96); and NY ($131); Ex. 40 [Worker's Comp. and Employers Liability Insurance Policy Premiums VIR/BER 10961-78]  The total Workers' Comp premium cost from May 1, 2013 to May 1, 2014 is $807,240.  The policy allocates $697,726 to California (86.4% of the total) and the remaining $109,514 to other states.

[22] *See* Dkt. 70 pp. 4-6; Ex. 29 [Hendrickson 126:21-127:3]; Ex. 42 [Work Rules 2012, VIR/BER 926-927]; Ex. 43 [Work Rules 2011, VIR/BER 1013]; Ex. 45 [InFlight Manual, VIR/BER 1822]; Ex. 41 [Work Rules 2013, VIR/BER 803-804]; Ex. 32 [Bernstein Decl. ¶¶ 10-13]; Ex. 33 [Garcia Decl. ¶ 9-12]; Ex. 34 [Smith Decl. ¶ 8].

[23] Ex. 47 [Jenkins 102:11-103:25, 104:20-105:17]; Ex. 45 [InFlight Manual, VIR/BER 1837-1838, 1854-1858]; Ex. 33 [Garcia Decl. ¶ 11]; Ex. 27 [Garcia 241:10-14].

[24] Ex. 47 [Jenkins 107:15-108:12]: Ex. 32 [Bernstein Decl. ¶ 11]; Ex. 33 [Garcia Decl. ¶ 12]; Ex. 34 [Smith Decl. ¶ 13]; Ex. 26 [Bernstein 179:25-180:9]; Ex. 28 [Smith 237:8-19]; Ex. 45 [InFlight Manual, VIR/BER 1870].

[25] Ex. 47 [Jenkins 108:10-12]; Ex. 45 [InFlight Manual, VIR/BER 1797, 1868].

departure.[26]  Since flight attendants are still on duty during this turn time, they must remain in uniform, and act professionally.[27]

Virgin's own records establish that it pays Plaintiffs on an hourly basis for only block time. Virgin's Crew Pay Manual acknowledges that ***"[e]ven for flying activity, crew members are not paid for time 'on the clock' (duty time); instead, they are typically paid only when the aircraft is moving."***[28]  Virgin's Work Rules state that flight attendants are paid for a pairing as follows:  (1) for all block time worked each day of the pairing; (2) for block time spent deadheading, depending on the reason for deadheading; and (3) up to 3.5 hours of minimum duty credit if a flight attendant's block time and deadhead time in one day do not exceed 3.5 hours in total.[29]  The Work Rules do not identify any pay that is intended to compensate flight attendants for any time other than these three categories—there is no deplaning pay or boarding pay, for example.[30]  Virgin's new-hire letters assign flight attendants with an hourly rate—not a pay formula.[31]  Even records from the California ETP show that Virgin, since its inception, has treated only block time as hours worked when compensating flight attendants.[32]

Virgin also does not pay flight attendants for all time spent drug testing, drafting incident reports, attending training, and during ground holding delays.  Pursuant to its Work Rules, Virgin

---

[26] Ex. 45 [Inflight Manual, VIR/BER 1822]; Ex. 47 [Jenkins 108:13-109:21]; Ex. 32 [Bernstein Decl. ¶ 11]; Ex. 33 [Garcia Decl. ¶ 16]; Ex. 34 [Smith Decl. ¶ 11].
[27] Ex. 47 [Jenkins 155:5-20, 226:1-227:2]; Ex. 32 [Bernstein Decl. ¶ 14]; Ex. 33 [Garcia Decl. ¶ 16]; Ex. 34 [Smith Decl. ¶ 8].
[28] Ex. 44 [Crew Pay Manual, VIR/BER 1047].  The Manual, at VIR BER 1083, also contrasts pairing credit to a per diem stipend as "unlike credit for flying activity, per diem is paid whether or not the aircraft is moving."
[29] Ex. 41 [Work Rules 2013, VIR/BER 845-846].
[30] Ex. 41 [Work Rules 2013, VIR/BER 845-847].
[31] Ex. 41 [Smith New-Hire Letter, VIR/BER 9093] "[Y]ou will be paid on an hourly basis at the increased rate of $25.00 per hour." *See also* Ex. 22 [Bernstein Wage Statements], Ex. 23 [Garcia Wage Statements], and Ex. 24 [Smith Wage Statements], each which show under "Earnings" compensation earned at an hourly rate and corresponding number of hours worked at that rate.
[32] *See* Ex. 11 [Transmittal ETP 100, p. 1] "both flight time and duty time will be counted towards an average 35 hour per week requirement."  In order to receive a refund from ETP for its training costs, Virgin had to show that each ITM remained employed by Virgin for a period of at least ninety consecutive days following the completion of training.  *See* Ex. 4 [ETP 2005 Contract, p. 12]; Cal. Code Regs. tit. 22, § 4400(v) (2011).  In order to meet this retention requirement, Virgin agreed to classify all duty time—not just block time—as work time.

pays flight attendants for thirty minutes of drug testing at their hourly rate, irrespective of how much longer the drug test lasts.[33]  Plaintiffs consistently testified that drug tests lasted more than thirty minutes.[34]  With regard to drafting incident reports, Virgin's Work Rules are silent, meaning that whenever flight attendants draft and submit an incident report outside of block time, which is common, that time is uncompensated.[35]  For trainings, Virgin pays its flight attendants for 3.5 hours, where the trainings last at least five hours and typically eight hours.[36]

Virgin also does not pay Plaintiffs for all reserve time.  Virgin misrepresents its reserve system by ignoring airport reserve ("RRR")—which Virgin in fact counts as duty time.[37]  Flight attendants assigned to RRR must check in at the Virgin Village to begin their shift, be contactable by cell phone and able to report for flight duty *within five minutes*, and be in full uniform before reporting for a flight.[38]  Even when not yet assigned to a flight, flight attendants on RRR may be tasked with assisting with aircraft boarding or administrative tasks.[39]  Airport reserve shifts last up to six hours; however, Virgin pays flight attendants a maximum of four hours on RRR when they are not assigned to a flight or, if assigned to a flight, half the duration of the RRR period.[40]

Further, it is unrefuted that Virgin does not pay overtime.  Its various incentive pays, such as "ITL pay," which pays a 15% premium when a flight attendant takes on additional responsibilities as a lead,[41] are not overtime pay. Dkt. 97, p. 7.

### C.  Virgin's Wage Statements Do Not Show the Number of Hours Plaintiffs Worked.

Virgin's wage statements display an inaccurate number of hours worked by Plaintiffs.  At the month end, Virgin pays all flight attendants 37.5 hours at their hourly rate, irrespective of the

---

[33] Ex. 20 [General Manual, Ch. 5, VIR/BER 8028-31]; Ex. 41 [Work Rules 2013, VIR/BER 854].
[34] See Ex. 26 [Bernstein 239:23-240:2] "I know it would be more than 30 minutes."
[35] Ex. 41 [Work Rules 2013, VIR/BER 868]; Ex. 42 [Work Rules 2012, VIR/BER 938]; Ex. 28 [Smith 183:11-15].
[36] Ex. 46 [Kliff 44:22-45:7, 59:8-9].  In response to feedback from flight attendants, Virgin increased its pay to six hours per day for every eight hours of refresh training.  Ex. 21 [Fiorillo Email, VIR BER 9884-9886].
[37] See Dkt. 60, p. 3; Ex. 41 [Work Rules 2013, VIR BER 892].
[38] Ex. 41 [Work Rules 2013, VIR/BER 786-7, 892]; Ex. 47 [Jenkins 55:25-56:14, 64:18-22].
[39] Ex. 41 [Work Rules 2013, VIR BER 786-787]; Ex. 47 [Jenkins 55:25-56:14].
[40] Ex. 41 [Work Rules 2013, VIR BER 787]; Ex. 44 [Crew Pay Manual VIR BER 1089].
[41] Ex. 41 [Work Rules 2013, VIR/BER 850-853].

actual number of hours worked, for the pay period spanning the 1st to 15th of that month.[42]  On the fifteenth of the following month, Virgin pays all flight attendants the balance of compensation earned from the prior month—again a number that does not correspond with the actual number of hours worked during the second half of the month.[43]  Therefore, Plaintiffs are unable to determine from the wage statements the number of hours or amount of wages they worked or earned during a particular pay period.[44]  Further, irrespective of the breakdown of hours between pay periods, the wage statements display only the block hours worked by a flight attendant multiplied by the flight attendant's hourly rate—not the total actual hours worked, such as time worked from report time to block out, turn time, and time from block in to release from duty.[45]

## III.     ARGUMENT[46]

### A.  Virgin Cannot Meet the High Standard for Summary Judgment.

Summary judgment is only appropriate when there are no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a).  Virgin "has the burden of producing evidence that negates an essential element of each claim on which it seeks judgment or showing that the plaintiff cannot produce evidence sufficient to satisfy the burden of proof at trial." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. MDL No. 1917, 2016 U.S. Dist. LEXIS 139618, at *171 (N.D. Cal. Oct. 6, 2016).  Virgin must satisfy its burden of proving its preemption and Commerce Clause defenses by showing affirmative, admissible evidence.  *Johannes v. Aerotek, Inc.*, No. CV 98-6153 DT (AJWx), 2001 U.S. Dist. LEXIS 25408, at *38-39 (C.D. Cal. June 25, 2001). Virgin does not satisfy this demanding standard.

---

[42] Ex. 29 [Hendrickson 105:9-17, 106:11-18, 113:6-114:2]; Ex. 22 [Bernstein Wage Statements VIR/BER 173-253]; Ex. 23 [Garcia Wage Statements, VIR/BER 9469-9587]; Ex. 24 [Smith Wage Statements, VIR/BER 9227-9322, 9665-9698]. In 2011, Defendant switched its practice of paying a set 35.0 hours in the month-end check to paying 37.5 hours.  Ex. 29 [Hendrickson 112:13-113:4].
[43] Ex. 29 [Hendrickson 106:11-107:3].
[44] Ex. 29 [Hendrickson 117:8-21]; Ex. 32 [Bernstein Decl. ¶ 25]; Ex. 33 [Garcia Decl. ¶ 22]; Ex. 34 [Smith Decl. ¶ 20].
[45] Ex. 29 [Hendrickson 119:17-24].
[46] For the reasons set forth herein, the Court must also deny Defendant's motion as to Plaintiffs' derivative UCL, PAGA, and waiting time penalties.  Defendant does not address PAGA at all, which includes separately articulable claims not derivative of other claims, e.g., Virgin's violations of Labor Code § 204 for failing to pay Plaintiffs on time. (*See* Dkt. 32, ¶ 113.)

- 8 -

### B.   California Law Applies to Plaintiffs' Claims.

Virgin argues that California law does not apply to Plaintiffs' claims whether those claims are limited to time worked in California, or include time worked outside of California.  Although Virgin conflates and confuses the analysis, there are two distinct questions this Court must answer: does California law apply to Plaintiffs' time worked in California, and does California law follow Plaintiffs—California residents based in California and working for a California company—when they travel outside of California in the course of their duties?  The answer to both questions is yes.

### 1.   The Labor Code Applies to All of Plaintiffs' Time Worked in California.

The text of the Labor Code is clear that California law applies to Plaintiffs' time worked in California. "All protections, rights, and remedies available under state law, except any reinstatement remedy prohibited by federal law, are available to *all individuals* . . . who have applied for employment, or who are or who have been employed, in this state." Lab. Code § 1171.5(a).  If there was there any doubt on this issue, it was put to rest in 2011 by the California Supreme Court.  *See Sullivan v. Oracle Corp.,* 51 Cal. 4th 1191, 1197 & n.3 (2011).  The *Sullivan* Court held that California's overtime provisions "apply by their terms to all employment in the state," even to employees spending brief periods of time within its borders.  *Id.* at 1197-98.  Thus, the *Sullivan* plaintiffs themselves were entitled to California overtime protections for their California work, even though they spent as few as 20 days in the state within a three-year period. *Id.* at 1194.  Similarly, the Labor Code provisions at issue here broadly apply to all employment within California without restriction.  *See, e.g.,* Lab. Code §§ 201, 203, 204 ("All wages . . . earned by any person in any employment are due and payable twice during each calendar month . . ."), 226, 510, 1174, 1194, 1194.2; Wage Order 9-2004 (wage order applies to "all persons employed in the transportation industry.").  Neither *Sullivan* nor the Labor Code make any distinction as to employees who work "principally or exclusively" in California.[47]

---

[47] That the wage laws "speak broadly" to reach all employment within California is supported by the state's strong public policy protecting workers.  *Sullivan*, 51 Cal. 4th at 1198; *Pressler v. Donald L. Bren Co.*, 32 Cal. 3d 831, 837 (1982); *Indus. Welfare Comm'n. v. Superior Court*, 27 Cal. 3d 690, 702 (1980) (Labor Code provisions "are to be liberally construed with an eye to promoting such protection. …").

1    Virgin's reading of *Tidewater Marine Western, Inc. v. Bradshaw,* 14 Cal.4th 557 (1996), is

2    wrong.  *Tidewater—*which predates Sullivan—simply addressed whether the Santa Barbara

3    Channel was within California's borders such that California law would apply to work being done

4    there.  *Tidewater*, 14 Cal.4th at 578.  It did *not* hold that an individual must work principally in

5    California to receive the protections of California law.  Further, every case since *Sullivan* has

6    confirmed that California law protects *all* work done within its borders.  *See, e.g., Sullivan v.*

7    *Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011) (*Sullivan II*) ("California has chosen to treat

8    out-of-state residents equally with its own."); *Aguilar v. Zep Inc*., No. 13-cv-00563-WHO, 2014

9    U.S. Dist. LEXIS 120315, at *35 (N.D. Cal. Aug. 27, 2014); *Candy Shops, Inc. v. Sup. Ct*, 210 Cal.

10   App. 4th 889, 906 (2012) (emp. in orig.) ("under *Sullivan* a California employer generally must

11   pay *all* employees, including nonresident employees working in California, state overtime wages

12   unless the employee is exempt."); *Yoder v. W. Express, Inc.*, --- F.Supp.3d ----, 2015 WL

13   11123303, at *13 (C.D. Cal. 2015) (noting that *Sullivan* plaintiffs spent as much as 98.6 percent of

14   working time in other states).[48]  Virgin does not dispute that Plaintiffs have worked in California.

15   And it is unrefuted that Plaintiffs' time on the ground in California is unpaid.[49]  Summary

16   judgment on this ground must be denied.

### 2.   The Labor Code Applies to Plaintiffs' Work Outside of California.

18       The Court must engage in a *separate analysis* to determine whether California law will follow

19   Plaintiffs beyond its borders, i.e. whether the Labor Code has extraterritorial application as applied

20   to Plaintiffs' claims.  Again, Virgin misstates the proper legal test.  Virgin relies upon *Tidewater* to

21   argue that Plaintiffs must demonstrate that they work "principally or exclusively" in California (the

22   so-called "job situs" test) for California law to apply.  *Tidewater* contains no such holding.  In fact,

23   the Court *declined* to apply the job situs test to employees who also work outside of the state: "[w]e

24   express no opinion as to whether the trial court can enjoin the application of IWC wage orders to

---

[48] Indeed, elsewhere in its brief, Virgin concedes that its "primarily or exclusively" argument is out
of whole cloth, as it explains that "[n]either the Labor Code nor Wage Order No. 9 set a bright-line
rule that an individual must work a specified amount of hours within the geographic boundaries of
California to be deemed a covered employee."  Dkt. 60, p. 15.
[49] Ex. 44 [Crew Pay Manual, VIR/BER 1047]; Ex. 37 [Breshears Decl., Ex. 2].

crew members who work primarily outside California's state law boundaries because the Court of Appeal did not address that question." *Id.* at 579. Further, *Sullivan* expressly noted that California law "might follow California resident employees of California employers who leave the state 'temporarily . . . during the course of the normal workday.'" *Sullivan,* 51 Cal. 4th at 1199.

Thus, even if a presumption against extraterritorial application applies generally to the Labor Code, the Court must "proceed to consider whether plaintiffs' proposed application of the [law] would cause it to operate, impermissibly, with respect to occurrences outside the state." *Sullivan*, 51 Cal. 4th at 1207. "Under California law, the relevant inquiry for whether a state law is being applied extraterritorially is not the location of employment or where the contract was formed, but rather whether 'the conduct which gives rise to liability . . . occurs in California.'" *Leibman v. Prupes*, No. 2:14-CV-09003-CAS (VBKx), 2015 U.S. Dist. LEXIS 80101, at *16-17 (C.D. Cal. June 18, 2015) (*quoting Diamond Multimedia Sys., Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059, (1999)) (employee's claims were "not an improper extraterritorial application of California law" where wrongful conduct emanated from California. That is, any presumption is overcome where, as here, Plaintiffs "are harmed by wrongful conduct occurring in California." *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 916 (C.D. Cal. 2011) (non-California residents can avail themselves of CLRA and UCL where wrongful conduct occurs in California). "In determining whether wrongful conduct occurred in California, ***courts consider factors such as where the defendant does business, whether the defendant's principal offices are located in California, where the plaintiffs are located, and where the alleged actionable conduct took place***." *Id.* at 917 (emphasis added); *Precht v. Kia Motors Am., Inc.*, No. SA CV 14-1148-DOC (MANx), 2014 U.S. Dist. LEXIS 185202, at *11-12 (C.D. Cal. Dec. 29, 2014); *In re iPhone 4S Consumer Litig.,* 2013 U.S. Dist. LEXIS 103058, *23-24 (N.D. Cal. July 23, 2013) (claims cognizable where defendant's "critical decisions" that gave rise to suit took place in California); *Ehret v. Uber Techs., Inc.,* 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014) (California law applied to misrepresentations developed in California, contained on websites maintained in California, and payment processed through California servers); *see also Aalmuhammed v. Lee*, 202 F.3d 1227, 1238 (9th Cir. 2000) (California law applied where at least one party may have done work "by fax, phone, and email from California").

1    The facts demonstrate that California law applies to Plaintiffs when they travel beyond

2    California's borders.[50]  Virgin is a California-based airline—it based its headquarters in California

3    in order to receive California-provided training subsidies, it conducts all trainings in California,

4    and nearly all of its flights originate from or arrive to California.  It controls all operations from

5    California, runs and issues payroll from California, and maintains oversight of its flight attendants

6    from California. *See supra* II.A.  From 2011 to the present, the daily percentage of Virgin's flights

7    that arrived in or departed from California ranged from 88 percent to at least 99 percent—never

8    were more than twelve percent of Virgin's flights conducted exclusively outside of California.[51]

9    Plaintiffs are California residents based at California airports, beginning and ending their

10   pairings in California or flying in and out of California on an almost daily basis.[52] In fact, nearly all

11   of the flights that Plaintiffs worked either arrived to or departed from California, and Plaintiffs

12   performed work in California for anywhere from 96 percent to 100 percent of all their workdays.

13   While Plaintiffs spent time outside of California, that time is within the scope of performing their

14   duties for their California-based job for a California-based airline.  Virgin's wrongful conduct thus

15   originates in California such that California "has a clear and substantial interest in preserving a

16   business climate" free of unlawful labor practices and "for that reason has a legitimate interest in

17

18   [50] Concurrently filed with this motion is a Rule 56(d) affidavit, which sets forth how Virgin has refused to produce documentary evidence Plaintiffs need to fully oppose Defendant's Motion.
19   Plaintiffs submit that the Court has a sufficient record upon which to deny Virgin's motion.  If, however, the Court finds its decision may turn on facts related to the documents and responses
20   Virgin has withheld (showing its connection to California and a lack of burden to comply with California law), Plaintiffs request that this Court deny the motion and permit Plaintiffs to obtain the
21   documents Virgin is refusing to provide.  *See Lathrop v. Uber Techs., Inc.,* No. 14-cv-05678-JST, 2016 U.S. Dist. LEXIS 88907, at *2 (N.D. Cal. July 7, 2016) (granting request to defer summary
22   judgment ruling due to defendant's discovery failures).
     [51] Ex. 37 [Breshears Decl. ¶ 3].
23   [52] Plaintiffs limit their claims to time outside of California to when they were California residents based in California.  Residency is determined by where Plaintiffs filed their taxes each year.
24   *Sarviss,* 663 F. Supp. 2d at 899 (California residency is determined by the payment of California income taxes).  Plaintiffs Garcia and Smith filed their taxes in California during the relevant time
25   period.  Ex. 33 [Garcia Decl. ¶ 23]; Ex. 34 [Smith Decl. ¶ 21]. Bernstein filed her taxes in California in 2011, but not the subsequent years.  Ex. 32 [Bernstein Decl. ¶ 26].  All three Plaintiffs
26   were based in California for the entirety of their employment. Ex. 26 [Bernstein 88:14-89:5]; Ex. 27 [Garcia 54:10-20]; Ex. 28 [Smith 38:1-39:1]; Ex. 33 [Garcia Decl. ¶ 3]; Ex. 34 [Smith Decl. ¶
27   3]; Ex. 32 [Bernstein Decl. ¶ 3].

- 12 -

extending state-created remedies to out-of-state parties harmed by wrongful conduct occurring in California." *Leibman*, 2015 U.S. Dist. LEXIS 80101, at *18 (quotation omitted).)[53]

Virgin relies heavily on *Ward v. United Airlines, Inc.*, No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 94803 (N.D. Cal. July 19, 2016).[54]  But *Ward* is both factually distinct and, to the extent it applies the "job situs" test, legally erroneous.  *None* of the parties are based in California and most work was performed wholly outside of California.  *Id.*  at *1-3.  The parties also "agree[d] that § 226(a) does not apply extraterritorially," and the plaintiffs accordingly did not brief the issue. *Ward*, 2016 U.S. Dist. LEXIS 94803 *9.  As a result, the court in *Ward* failed to consider the appropriate authorities; instead, it relied upon four inapplicable cases.  *Tidewater*, as explained above, expressly *declined* to apply the job situs test to determine extraterritorial reach.  None of the other cases involved a California employer like Virgin or any significant contacts with California. *See Anderson v. CRST Int'l, Inc.*, No. CV 14-368 DSF (MANx), 2015 U.S. Dist. LEXIS 45161, at *1-2 (C.D. Cal. Apr. 1, 2015) (FEHA did not apply to acts occurring entirely outside of California for a company headquartered in Iowa from which it directs all operations); *Priyanto v. M/S Amsterdam*, No. CV 07-3811 AHM (JTLx), 2009 U.S. Dist. LEXIS 7849, at *15, 20 (C.D. Cal. Jan. 23, 2009) (California law did not apply to non-residents working for a foreign corporation who "cannot show they worked in California"); *Taylor v. Lockheed Martin Corp.*, 78 Cal. App. 4th 472, 481 (2000) (employee worked exclusively on federal enclave for federal contractor).[55]

Unlike these cases, Virgin's unlawful conduct occurs in California and California law protects

---

[53] Further, as long as workers work part of the week in California, California law applies to that week, even if the rest of the work was performed outside of the state. *See Wright v. Adventures Rolling Cross Country, Inc.*, No. C-12-0982 EMC, 2013 U.S. Dist. LEXIS 58868, at *31-33 (N.D. Cal. Apr. 24, 2013) (following FLSA regulation providing that employee is entitled to protection of FLSA for any week in which employee had any time subject to the FLSA, and holding that California wage laws apply to all weeks where employee has time worked in California). Plaintiffs worked in California for no less than 96 percent of their workdays, and in some cases worked in California every single workday. Ex. 37 [Breshears Decl. ¶ 6, Ex. 2].

[54] *Ward* is currently on appeal, Case Number 16-16415 in the Ninth Circuit.

[55] Similarly, Virgin's other proffered cases are inapposite, as they address facts dissimilar to those here.  *See, e.g., Sarviss*, 663 F. Supp. 2d at 897 (plaintiff sought to recover for California Labor Code violations that occurred exclusively outside of California for an out-of-state employer based solely on plaintiff's residency in California); *Russo v. APL Marine Servs., Ltd.,* 135 F. Supp. 3d 1089, 1095 (C.D. Cal. 2015) (alleged illegal conduct occurred solely in international waters).

the California-based and -resident Plaintiffs even when they leave the state to complete their work.

### C. Virgin's Pay Practices Violate California Law.

Unable to run from California law, Virgin then pivots and contends that (1) its minimum wage practices are lawful; and (2) Plaintiffs cannot show overtime or breaks violations in California; and (3) Plaintiffs cannot show wage statement violations.  Virgin's arguments lack merit.

#### 1. Virgin's Policy of Paying Plaintiffs for Some Hours and Not Others Violates California Law.

California law requires employers to pay their employees "for all hours worked." *Armenta v. Osmose, Inc.*, 135 Cal. App. 4th 314, 323 (2005); Wage Order 9-2001, § 2(H). Virgin's claim that it applies a lawful, industry-specific "pay formula" that compensates Plaintiffs for all hours worked is nothing more than a post-hoc rationalization for unlawful averaging.  First, at no point does Virgin identify the specifics of the mysterious "formula"—precisely because there is none. Second, Virgin's argument that "credit value for each duty period" consists of block hours, deadhead or ground transport, and minimum duty credit is no different from any business paying only for certain hours and not others; notably absent from this list is all of the additional duty time Plaintiffs work without pay.  California courts have repeatedly rejected this type of textbook averaging.  *See Vaquero v. Ashley Furniture Indus.*, 824 F.3d 1150, 1154 (9th Cir. 2016) ("California law also prohibits 'averaging' to meet minimum wage requirements."); *Quezada v. Con-Way Freight, Inc.*, No. C 09-03670 JSW, 2014 U.S. Dist. LEXIS 5922, at *5 (N.D. Cal. Jan. 16, 2014) (provisions of the California Labor Code "require courts to consider whether an employee earns at least minimum wage for every hour (or part of every hour) in isolation as opposed to on average").  Third, Virgin's "pay formula" claim is directly contradicted by its admission that "[e]ven for flying activity, crew members are not paid for time 'on the clock' (duty time); instead, they are typically paid only when the aircraft is moving."[56]  Fourth, Virgin in fact promises flight attendants an hourly rate, and Plaintiffs understand they are paid hourly.[57]

Virgin's reliance on *Oman* and *Booher* to justify its failure to pay for all time worked is

---

[56] Ex. 44 [Crew Pay Manual, VIR/BER 1047].

[57] Ex. 19 [Smith New-Hire Letter, VIR/BER 9093]; Ex. 32 [Bernstein Decl. ¶ 14]; Ex. 34 [Smith Decl. ¶ 7]; Ex. 33 [Garcia Decl. ¶ 8].

misplaced.  The facts in these cases involved an additional type of pay—duty period credit—that covered time worked outside of block time.  *See Oman*, 153 F. Supp. 3d at 1098-99.  Virgin's characterization of its deadheading policy as the equivalent to other airlines' duty period credit falls short: deadheading pay applies *only* to block time during which a flight attendant is deadheading; duty period credit applies during non-flight duty hours.[58]  *Id*. at 1098. **Virgin has no identifiable pay that applies to time worked outside of block time.**  *Oman* and *Booher* are inapposite.

Virgin's assertion that it is not required to compensate Plaintiffs for FAA-required trainings is meritless.  Training is compensable unless attendance is voluntary, the training is outside of regular work hours, the training is not related to the employee's job, and the employee performs no productive work during the training.[59]  29 C.F.R. § 785.27; *see Harris v. Vector Marketing Corp.*, 73 F. Supp. 2d 996 (N.D. Cal. 2010). Plaintiffs' trainings were all required, conducted during regular work hours, and are directly related to flight attendant responsibilities.  Virgin argues that government-imposed training is non-compensable, but cites no cases under California law, and only cases that involve trainees who have not yet begun their employment—a situation not at issue here.[60]  Further, Virgin acknowledges that it required its flight attendants to attend trainings not required by the FAA, and did not pay Plaintiffs for all training hours.[61]

With no legal support, Virgin simply asserts that "similar logic [to trainings] should apply to the FAA-required mandatory drug testing."  Dkt. 97, p. 23 n.35.  The lack of any citation is not surprising, given that California law is clear:  hours worked include all time "during which an employee is subject to the control of an employer."  Wage Order 9-2001 § 2(H); *see Ridgeway v. Wal-Mart Stores, Inc.*, 107 F. Supp. 3d 1044 (2015) (FAA-mandated layovers are compensable, even where drivers were not required to perform work); *Morillion v. Royal Packing Co.*, 22 Cal.4th

---

[58] Ex. 41 [2013 Work Rules, VIR/BER 845-846]; Ex. 42 [Work Rules 2012, VIR/BER 952]; Ex. 43 [2011 Work Rules VIR/BER 1034].
[59] *See Ulrich v. Alaska Airlines, Inc.*, No. C07-1215 RSM, 2009 U.S. Dist. Lexis 10104 (W.D. Wash. Feb. 9, 2009) (applying trainee test to a flight attendant's initial training before any offer of employment was made); *Donovan v. American Airlines, Inc.*, 686 F.2d 267 (5th Cir. 1982) (similarly applying FLSA to initial training before airline hires flight attendants).
[60] Ex. 46 [Kliff 42:11-44:8, 55:17-57:13].
[61] Ex. 46 [Kliff 66:22-67:18]; Ex. 25 [Defendant Virgin America Inc.'s Supplemental Responses to Plaintiff Garcia's Interrogatories, Set One, No. 12]; Ex. 21 [Fiorillo Email, VIR/BER 9884-9886].

575, 587 (2000).  Flight attendants are under Virgin's control from the moment they are directed to report to a testing site until the minute Virgin releases them upon completion of the test.[62]

### 2. Plaintiffs Worked Requisite Hours to Trigger Overtime and Breaks Violations.

Moving from fiction to fantasy, Virgin claims that none of Plaintiffs' time in California is sufficient to trigger California's protections for breaks and overtime.  As explained above, all of Plaintiffs' time is compensable under California law.  Moreover, even if Plaintiffs' claims were limited to time in California, Virgin's own expert confirms that Plaintiffs had duty days in California that exceed 3.5, five and eight hours—enough to entitle them to breaks and overtime.[63] The correct approach would be to look at Plaintiffs' duty time for flights that depart and land in California.  For example, on several workdays during the class period Plaintiffs worked sufficient hours entirely within California to trigger meal period, rest breaks, and overtime requirements.[64]

Virgin's insistence that California law cannot apply to flight attendants in the air is just another attempt to argue preemption, which, as is clear below, fails.  Its citation to a single out-of-Circuit case addressing an Illinois wage claim is unpersuasive, as is its contention that only the FLSA controls time in the air, a claim directly contradicted by the statute itself.  *See* 29 U.S.C. § 218.  Its "federal enclave" defense similarly lacks merit, as those cases all involve time solely in a federal jurisdiction.  Here, there is *no* exclusive federal jurisdiction of aviation employees for employment matters (see *infra*).  Plaintiffs had duty periods in California that exceeded 3.5 hours, 5 hours and 8 hours.  Virgin fails to demonstrate material undisputed facts in its favor.

### 3. Virgin's Wage Statements Do Not Comply with California Law.

Virgin does not deny that its wage statements fail to state an accurate number of hours worked

---

[62] Ex. 26 [Bernstein 241:5-243:9]; Ex. 27 [Garcia 183:16-185:4].  Virgin also fails to pay for airport reserve time, where a flight attendant remains at the airport and must be ready for duty and in uniform with no more than five minutes' notice.  Ex. 41 [Work Rules 2013, VIR/BER 786-787, 892]; Ex. 47 [Jenkins 55:25-56:14, 64:18-22].  *See Morillion*, 22 Cal.4th at 587 (holding time compensable where employees are not able to run errands but able to read or rest); *Ghazaryan v. Diva Limousine*, 169 Cal.App.4th 1524, 1535 (2008). Similarly, during a ground holding delay, a flight attendant must remain on board and on duty, but is not paid for the first hour of delay, in violation of California law.  Ex. 41 [Work Rules 2013, VIR/BER 853].
[63] Def.'s Amended Exhibit R-1, Estevez Report, p. 5; Ex. 30 [Estevez 125:9-18, 126:9-20, 127:6-10].  And Virgin's definition of "in California" *excludes* any flight time.  *Id.*
[64] Ex. 16 [Sample Duty Periods Worked Entirely within California]. *See also* n. 53.

1    for each pay period.  Its argument that judgment is warranted despite this admission fails.

2        First, Virgin falsely asserts that it must issue these inaccurate wage statements because it "does

3    not know an ITM's final schedule for a bid month until it is complete."  Dkt. 97, p. 8.  All the data

4    that Virgin needs to calculate the number of hours a flight attendant worked is available by the end

5    of each work day.[65]  While Virgin chooses only to upload data to ADP immediately before payroll

6    on the 15th of a month, it could easily do so shortly after the close of each pay period.

7        Second, Virgin cannot defend its facially noncompliant wage statements by relying on its

8    indefensible claim of a "credit-based system."  Even if such a claim had merit, it does not excuse

9    Virgin's deficient wage statements which must, and do not, show the total hours worked during the

10   pay period, and all applicable hourly rates and corresponding number of hours worked during the

11   pay period.  Lab. Code § 226(a); *McKenzie v. Federal Exp. Corp.* 765 F. Supp. 2d 1222 (C.D. Cal.

12   2011).  Virgin acknowledges that its month end wage statement does not show the accurate number

13   of hours worked during that pay period, but rather shows 37.5 hours.[66]  Similarly, Virgin's mid-

14   month wage statement does not show an accurate number of hours worked because it is based off

15   of the inaccurate 37.5 hours from the first half of the month.[67]

16       Third, Virgin cannot succeed in arguing that it did not knowingly and intentionally violate

17   section 226(a).  Plaintiffs need only show that an employer "knew that facts existed that brought its

18   actions or omissions within the provisions of section 226(a)," not that its actions were unlawful.[68]

19   *Willner v. Manpower Inc.*, 35 F. Supp. 3d 1116, 1131 (N.D. Cal. 2014); *Garnett v. ADT LLC*, 139

20   F. Supp. 3d 1121, 1133-34 (E.D. Cal. 2015) (rejecting good faith defense to section 226(a) claim).

21       Lastly, Virgin argues that Plaintiffs have not suffered injury because Plaintiffs can access

22

23   [65] Specifically, Virgin's CrewTrac system pulls actual flight block-in and block-out times from
     ACARS every minute or two, and this total block time data is then transmitted to Virgin's
24   Rainmaker every fifteen minutes.  Ex. 29 [Hendrickson 40:9-41:5, 182:7-15, 185:8-15].  This data
     auto-populates various pay buckets within Virgin's Rainmaker system and can then be uploaded to
25   ADP, Virgin's third-party payroll administrator.  Ex. 29 [Hendrickson 183:22-184:13].
     [66] Ex. 29 [Hendrickson 105:9-17, 106:11-18, 113:6-114:2]; Ex. 22 [Bernstein Wage Statements
26   VIR/BER 173-253]; Ex. 23 [Garcia Wage Statements, VIR/BER 9469-9587]; Ex. 24 [Smith Wage
     Statements VIR/BER 9227-9322, 9665-9698].
27   [67] Ex. 29 [Hendrickson 106:11-18].
     [68] Ex. 29 [Hendrickson 117:8-21, 119:17-122:12] (flight attendants not able to determine number
28   of block hours or duty period hours worked per pay period by looking at wage statement).

- 17 -

information about their hours and pay on Rainmaker.  An employee suffers injury for purposes of section 226 when they cannot "promptly and easily" obtain the required information *from the wage statement itself*.  Lab. Code § 226(e)(2)(B); *Garnett v. ADT LLC*, 139 F. Supp. 3d 1121, 1132 (E.D. Cal. 2015) (injury requirement is minimal and based solely on the information displayed on a pay stub); *Seckler v. Kindred Healthcare Operating Group, Inc.*, No. C10-01188 DDP, 2013 U.S. Dist. LEXIS 29940 (C.D. Cal Mar. 5, 2013).  Virgin admits that its wage statements do not contain required information, thus establishing injury under section 226.[69]  Accordingly, Virgin knowingly and intentionally violated Section 226 and that Plaintiffs suffered injury as a result.[70]

**D.  Plaintiffs' Claims Are Not Barred by the Dormant Commerce Clause.**

The dormant Commerce Clause ("DCC") does not shield a California company from paying its California workers in compliance with California law.  Virgin's continued failure to articulate the correct legal standard, and its failure to produce even a shred of evidence showing any burden caused by complying with California's Labor Code, are fatal to its DCC argument.

"The modern law of what has come to be called the dormant Commerce Clause is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors."  *Rocky Mt. Farmers Union v. Corey*, 730 F.3d 1070, 1087 (9th Cir. 2013) (quotation omitted).  Where a statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are

---

[69] Virgin's reference to Rainmaker is further irrelevant because it only contains data on the hours worked per bid month, not pay period. *See* Ex. 27 [Garcia 98:18-99:17, 238:7-23].  Plaintiffs had difficulty deciphering their pay stubs and could not determine how many hours they actually worked in a pay period.  *See* Ex. 32 [Bernstein Decl. ¶ 7]; Ex. 33 [Garcia Decl. ¶ 22]; Ex. 34 [Smith Decl. ¶ 20].

[70] Further, Virgin pays its flight attendants in arrears in violation of Labor Code section 204.  "Labor performed between the 1st and 15th days, inclusive, of any calendar month shall be paid for between the 16th and the 26th day of the month during which the labor was performed, and labor performed between the 16th and the last day, inclusive, of any calendar month, shall be paid for between the 1st and 10th day of the following month."  Lab. Code § 204(a).  Virgin pays its flight attendants for a portion of work performed between the 1st and 15th of a calendar month on the last day of that month.  Virgin then pays flight attendants for work performed between the 16th and last day of the month on the 15th of the following month—five days later than the maximum permitted under section 204.  Whenever a flight attendant works more than 37.5 hours in the first half of a month, Virgin does not pay for this time worked until the 15th of the following month—almost three weeks later than permitted.

1    only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive

2    in relation to the putative local benefits." *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir.

3    2011) (quoting *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970)); *see also Int'l Franchise*

4    *Ass'n v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015).  State laws that are not enforced because

5    of their burden on interstate commerce are "few in number."  *Bibb v. Navajo Freight Lines*, 359

6    U.S. 520, 529 (1959); *see Nat. Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148

7    (9th Cir. 2012) (only a "small number" of cases meet this substantial burden test).

8       First, the DCC does not bar Plaintiffs' state-level wage and hour claims because they have been

9    expressly authorized by Congress.  *See* 29 U.S.C. § 218(a) (the FLSA savings clause establishing

10   federal law as a floor and not a ceiling for wage protections).  "If Congress ordains that the States

11   may freely regulate an aspect of interstate commerce, any action taken by a State within the scope

12   of the congressional authorization is rendered invulnerable to Commerce Clause challenge." *W. &*

13   *S. Life Ins. Co. v. State Bd. Of Equalization*, 451 U.S. 648, 652-53 (1981); *see also Northeast*

14   *Bancorp, Inc. v. Bd. of Gov'rs of Fed. Res. Sys.*, 472 U.S. 159, 174 (1985) ("Congress's commerce

15   power in such instances is not dormant, but has been exercised.").  State regulation authorized by

16   Congress will therefore be allowed "even if it interferes with interstate commerce." *White v. Mass.*

17   *Council of Constr. Emplrs*, 460 U.S. 204, 213 (1983).  Plaintiffs' wage claims are "invulnerable" to

18   Virgin's DCC challenge.

19       Second, the Ninth Circuit soundly rejected the very argument that Virgin makes here.  The

20   Court explained, "California applies its Labor Code equally to work performed in California,

21   whether that work is performed by California residents or by out-of-state residents. There is no

22   plausible Dormant Commerce Clause argument when California has chosen to treat out-of-state

23   residents equally with its own." *Sullivan v. Oracle Corp.*, 662 F.3d 1265, 1271 (9th Cir. 2011).

24       Third, Virgin's vague assertions of administrative burden are insufficient to create a DCC

25   issue.  Under the DCC, "[t]he analysis turns on the interstate *flow of goods*." *Pharm. Research &*

26   *Mfrs. of Am. v. Cty. of Alameda*, 768 F.3d 1037, 1044-45 (9th Cir. 2014) (citation omitted)

27   (emphasis in original).  Even then, "not every exercise of local power is invalid merely because it

28   affects in some way the flow of commerce between the States." *Int'l Franchise Ass'n v. City of*

*Seattle*, 803 F.3d 389, 399 (9th Cir. 2015).  The burden must be "substantial" and must be proven by the party making the challenge.  *Id.*; *Nat'l Ass'n of Optometrists*, 682 F.3d at 1154-55.  State laws that have failed this analysis have directly impeded the *flow* of the commerce—usually by creating direct conflict between states.  For instance, an Illinois mudflap law, which directly conflicted with Arkansas law and national industry standards, imposed a substantial burden on interstate commerce when it required each truck entering Illinois to stop and swap out its mud flaps, a process which took from two to four hours.  *See Bibb*, 359 U.S. at 529-30.  Similarly, an Arizona limit on train lengths, which was more restrictive than the national standard, and required conversion as trains entered and exited the state, created a substantial burden on the flow of commerce.  *S. Pac. Co. v. Arizona*, 325 U.S. 761, 772-74 (1945); *see also Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429 (1978) (Wisconsin statute would have required "double" trailer trucks to detour around the state).  Not only does Virgin fail to meet this burden, but it cannot do so.  Virgin's pay practices do not substantially burden its interstate travel services.[71]

Ignoring all of this authority, Virgin anchors its argument on a false premise: that if Virgin has to comply with California law, it must *also* comply with other states' laws and to do so would be overly burdensome.  Dkt. 60 at p.12.  But Plaintiffs are not so arguing, and Virgin has no explanation as to why that would be the case.  Virgin is a California employer, employing workers based in California.  The DCC does not insulate it from complying with California law.  Virgin offers no argument that it would have to comply with other states' laws and, in reality, its position clearly is that ***it can refuse to comply with all states' laws***.

Virgin also insists that the national unity desired for airlines exempt them from any and all state

---

[71] Plaintiffs served document requests on Virgin specifically aimed at discovering any evidence of its so-called burden.  Virgin responded only with objections and refused to produce any responsive documents.  See FRCP Rule 56(d) Declaration of Monique Olivier, ¶¶ 26-28.  Virgin's DCC challenge thus fails to sufficiently demonstrate any burden, let alone a "clearly excessive" one, on interstate commerce. *See Pac. Nw. Venison Producers*, 20 F.3d at 1015-16 ("Although the summary judgment record describes the *nature* of the impacts on interstate and foreign commerce . . . the record lacks any indication of the *extent* of the commercial activities that have been foreclosed") (emphasis in original); *S.D. Myers, Inc. v. City & Cty. of San Francisco*, 253 F.3d 461, 471 (9th Cir. 2001) (requiring "specific details as to how the costs of the Ordinance burdened interstate commerce").

laws that are unrelated to their function as common carriers.  Virgin has offered no legal authority

for this proposition and, in fact, the law is to the contrary. State and local regulations that do not

impede the flow of transportation have regularly been held to apply to transportation companies.

*See e.g.*, *Huron Portland Cement Co. v. Detroit*, 362 U.S. 440, 448 (1960) (upholding Detroit's

pollution ordinance, with which federally licensed ships would be required to comply); *Lloyd A.*

*Fry Roofing Co. v. Wood*, 344 U.S. 157 (1952) (upholding Arkansas law requiring certain interstate

truck drivers to obtain a permit); *Atl. C. L. R. Co. v. Mazursky*, 216 U.S. 122, 133 (1910)

(upholding South Carolina penalty on railroads regarding the processing of claims for lost freight).

Similarly, the California Labor Code does not hold up commerce, such as air traffic, until the

employer complies with its provisions.   *Cf. Bibb*, 359 U.S. at 529.  Virgin's aircrafts take off and

land on schedule regardless of its pay policies.  By the time Virgin pays its employees, its

scheduled flights have already been completed.

    Virgin attempts to build its argument on the *Ward* and *United* cases, neither of which is

controlling, or even persuasive, here.  The *United* decision was largely about preemption due to a

collective bargaining agreement in place, and was later overruled.   *United Air Lines, Inc. v. Indus.*

*Welfare Com.*, 211 Cal. App. 2d 729, 749 (1963).[72]  Its DCC analysis was thin, and the burden it

cited on interstate commerce was attenuated, at best.  Specifically, the court's concern was

speculation that differing policies concerning paying for uniforms may create "personnel troubles."

*Id*. at 748-49.  This minor speculative concern is far from the "substantial burden" that higher

courts have required in order to invalidate a state law under the DCC.

    Further, the *Ward* Court did not engage in any of the above analysis required by the DCC, did

not cite the Ninth Circuit *Sullivan* case upholding the Labor Code against constitutional challenge,

and largely rested on the misguided state court *United* decision.  *See Ward v. United Airlines, Inc.*,

---

[72] *See Indus. Welfare Com. v. Superior Court of Kern Cty.*, 27 Cal. 3d 690, 728 n.15 (1980) ("To
the extent that the case of *United Air Lines v. Industrial Welfare Com.* (1963) 211 Cal. App. 2d
729, 744, supports the contention that state regulation of working conditions is invalid outside the
realm of health and safety provisions, that decision is disapproved. Numerous legislative
enactments and judicial authorities make it clear that the states possess broad authority, under their
police power, to prescribe minimum standards of employer conduct found necessary to protect the
welfare of employees, even when health or safety considerations are not directly implicated.").

No. C 15-02309 WHA, 2016 U.S. Dist. LEXIS 94803, at *16-17 (N.D. Cal. July 19, 2016).  For example, the court in *Ward* presumed a conflict with other states' laws even though (1) there was no discussion of what other states' laws would apply (which would have involved a conflict of laws analysis); (2) its conclusion that it would be necessary to determine the time worked in various states per bid period is premised on its erroneous application (discussed *supra*) of the job situs test; and (3) in fact, it is fairly easy to comply with California's laws on wage statements even if an employer also had to comply with the laws of other states because a wage statement that complies with California law would comply with virtually all states' wage statement laws.[73] Where the record "contains nothing to suggest the existence of any such competing or conflicting local regulations," a DCC challenge will not be sustained.  *Huron Portland Cement*, 362 U.S. at 448.  Virgin argues that the FLSA and certain other states permit averaging to meet minimum wage requirements while California expressly does not.  But the FLSA is the floor, not the ceiling, for wage protection, and Virgin fails to articulate a basis for any other states' law to apply.

Finally, both *Ward* and *United* are factually distinct from the instant case, as United is truly a more national carrier, with the vast majority of its flights operating *entirely outside* the state of California.  Here, 88-99% of Virgin's flights either arrived in or departed from California airports.  Given its focus on California, the burden on Virgin to follow California law hardly seems troublesome.

### E.  Plaintiffs' Meal and Rest Break Claims Are Not Preempted.

As explained in *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004 (2012), an employer discharges its duty to provide a meal break "if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or discourage them from doing so." *Id.* at 1040.  If, however, an employer knows that meal breaks are missed, shortened, or unduly delayed because the employer has instructed the employee to work, or has otherwise impeded the taking of breaks, that duty is contravened.  *Id.* at 1039-40, 1049.  Virgin does not have a policy in place that permits flight

---

[73] *See* Kosinski Decl. ¶ 16; Ex. 14 [ADP Wage Statement Compliance Chart].

attendants to take rest or meal breaks in which they are relieved of all duty.[74]  To the contrary, Virgin insists that flight attendants must be on duty at all times while onboard an aircraft.[75]  While Virgin claims that flight attendants can take meal breaks while in airports between flights, many turns are less than the time necessary to take a 30-minute meal break, given that a flight attendant has 15 minutes of duty onboard after the first flight blocks in, and 45 minutes of duty onboard the next flight before its scheduled departure.[76]  Thus Virgin violates California law.

There is a strong presumption against preemption, which Virgin cannot overcome.  *Tillison v. Gregoire*, 424 F.3d 1093, 1098 (9th Cir. 2005).  "Pre-emption of employment standards within the traditional police power of the State should not be lightly inferred."  *Hawaiian Airlines v. Norris*, 512 U.S. 246, 252 (1994) (internal quotations omitted).  In this context, preemption will not be found "unless Congress's intent to do so is clear and manifest."  *Californians for Safe & Competitive Dump Truck Transp. v. Mendonca*, 152 F.3d 1184, 1186 (9th Cir. 1998).

### 1.  The Federal Aviation Act Does Not Preempt Plaintiffs' Breaks Claims.

First, the Federal Aviation Act ("FAA") does not preempt the field of airline employment.  *See Ventress v. Japan Airlines,* 747 F.3d 716, 722 (9th Cir. 2014) ("we recognize that Congress has not occupied the field of employment law in the aviation context and that the FAA does not confer upon the agency the exclusive power to regulate all employment matters involving airmen.");  *Difiore v. Am. Airlines, Inc.*, 483 F. Supp. 2d 121, 127 (D. Mass. 2007) (citing cases).  To the extent that Virgin contends that Plaintiffs' claims are preempted under the "field" of airline safety, Virgin fails to demonstrate how the provision of breaks impacts airline safety.  Indeed, the regulations Virgin cites as "regulating the field" are intended to protect flight attendants from excessive fatigue.  *See* 59 Fed.Reg. 42974.  Requiring breaks under California law does not intrude upon the "single, uniform system over air safety" at issue in *Montalvo v. Spirit Airlines*, 508 F.3d 464, 471 (9th Cir. 2007), which concerned tort claims related to onboard deep vein thrombosis injuries. *See Kinzer v. Allegiant Air, LLC,* No. 2:15-cv-02306-JAD-PAL, 2016 U.S. Dist. LEXIS

---

[74] Ex. 47 [Jenkins 147:16-25, 150:18-151:22].
[75] Ex. 47 [Jenkins 147:16-25, 150:18-151:22].
[76] Ex. 37 [Breshears Decl. ¶ 1, Ex. 1, Breshears Report ¶ 15, n.20].

- 23 -

72006, at *7 (D. Nev. May 31, 2016) ("the Ninth Circuit has never held that all state-law employment claims implicating federal air-safety regulations are completely preempted and thus arise under federal law."); *Yates v. Superior Air Charter*, LLC, No. SACV 15-00847 AG (DFMx), 2015 U.S. Dist. LEXIS 95511, at *6-7 (C.D. Cal. July 20, 2015) (rejecting defendant's argument that plaintiff's employment claims were preempted by field of airline safety).  Virgin's reliance on *Montalvo* is overblown, as the Ninth Circuit clarified that the analysis there "rested heavily on the [FAA's] 'pervasive regulations' of warnings to passengers."  *Martin v. Midwest Express Holdings, Inc*., 555 F.3d 806, 810 (9th Cir. 2009).  No such pervasive regulation exists here.

Second, Virgin's arguments concerning conflict preemption are wholly without merit.  In order for conflict preemption to bar application of state law, there must be actual conflict with federal law, *see Fla. Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-43 (1963) ("where compliance with both federal and state regulations is a physical impossibility"), or the state law must "stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law," *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011).  Virgin does cite *any* legal authority to wade into the involved analysis as to whether conflict preemption applies. And it obviously misconstrues the federal regulation establishing *maximum* duty periods of 14 hours—which plainly does not *require* that flight attendants work a full 14 hours without other breaks.  In short, the FAA does not preempt Plaintiffs' meal and rest break claims.

### 2.  The Airline Deregulation Act Does Not Preempt Plaintiffs' Breaks Claims.

Virgin's argument that the Airline Deregulation Act ("ADA") expressly preempts Plaintiffs' breaks claims rings similarly hollow.  As with other forms of preemption, express "preemption provisions are narrowly and strictly construed."  *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1264 (9th Cir. 1998).  The narrowly-defined preemption provision of the ADA applies only to state laws "related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b)(1).  For state law to be preempted by this provision, it must be "*significantly* 'related to' rates, routes, or services."  *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643 (9th Cir. 2014) (emphasis added).

Applying these principles, the *Dilts* Court soundly rejected Virgin's express preemption

- 24 -

1    argument.  Holding that FAAA preemption for motor carriers is to be read consistently with ADA

2    preemption for air carriers, *Dilts*, 769 F.3d at 643-44, 647-50, the court analyzed whether

3    California's meal and rest break laws were "related to" rates, routes, or services of motor carriers,

4    *id.* at 643-44, 647-50.  Explaining that it was not even a close call, the Court held that "California's

5    meal and rest break laws plainly are not the sorts of laws 'related to' prices, routes, or services that

6    Congress intended to preempt."  *Id.* at 647.  Other recent decisions are in accord.  *See e.g.*,

7    *Valencia v. SCIS Air Sec. Corp.*, 241 Cal. App. 4th 377, 386 (2015) ("[t]here is no evidence… that

8    Congress enacted the FADA to allow companies to avoid state meal and break laws."); *Godfrey v.*

9    *Oakland Port Services Corp.*, 230 Cal. App. 4th 1267, 1277 (2014); *see also People ex rel. Harris*

10   *v. Pac Anchor Transp., Inc.*, 59 Cal. 4th 772, 783 (2014).[77]

11        Virgin relies on three cases, all of which predate *Dilts*, and none of which can be reconciled

12   with *Dilts*, or with California breaks law.  (*See* Dkt. 60 at p.19.)  California "allows some flexibility

13   with respect to the timing and circumstances of meal breaks."  *Dilts*, 769 F.3d at 642.  For

14   example, when "the nature of the work makes off-duty meal breaks infeasible, the employer and

15   employee may, by mutual written agreement, waive the off-duty meal break requirement" in favor

16   of an on-duty break.  *Id.*  Similarly, if shift length or other factors may render the required timing

17   of breaks impracticable, "employers have flexibility in scheduling breaks according to the nature of

18   the work."  *Id.*  Virgin does not grapple with this flexibility, because it is unrefuted that Virgin

19   could have, but failed to, obtain waivers and implement policies that would provide on-duty break

20   periods.  Instead, it has ignored its obligations altogether, and now seeks to evade liability by

21   claiming that the plane must literally come down from the sky in order to comply.  Nonsense.

22   **IV.    CONCLUSION**

23        Virgin is not entitled to summary judgment in any respect.  Its motion should be denied.

24

25   [77] Rather than show how its operations would be affected, Virgin relies on hyperbole to escape
     *Dilts*.  It argues that, in order for airlines to comply with Ninth Circuit precedent, Virgin "would be

26   landing the plane."  Dkt. 60, p. 19 n. 29.  Plaintiffs do not argue that operations must grind to a halt
     in order for breaks to be provided, and Virgin provides no evidence that compliance with

27   California's meal and rest break policy would have any kind of an impact on its prices, routes, or
     services.  *See Montalvo*, 508 F.3d at 475 (refusing to find preemption where the "Airlines have not

28   yet produced any evidence on this issue" of impact).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated: November 1, 2016                    Respectfully submitted,

DUCKWORTH PETERS LEBOWITZ OLIVIER LLP

KOSINSKI + THIAGARAJ, LLP

By: /s/ *Monique Olivier*

Monique Olivier
Attorneys for Plaintiffs and the Putative Class