UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>VIRGIN AMERICA, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02277-JST<br><br>**ORDER RE: MOTION FOR DECERTIFICATION**<br><br>Re: ECF No. 226 |

Before the Court is Defendants' Motion for Decertification. ECF No. 226. For the following reasons, the Court will grant the motion in part and deny it in part.

## I.   BACKGROUND

Plaintiffs are flight attendants who work or who have worked for Defendant Virgin America, Inc. and Defendant Alaska Air Group, Inc. (hereafter "Virgin") in California.[1] Third Amended Complaint ("TAC"), ECF No. 298 ¶ 2. Plaintiffs allege that Virgin did not pay them for hours worked before, after, and between flights; time spent completing incident reports; time spent in training; or time spent taking mandatory drug tests. Id. ¶¶ 32, 33; 36; 38. Plaintiffs further allege that Virgin did not allow flight attendants to take meal periods earlier than one hour before landing; did not allow flight attendants to take rest breaks; failed to pay overtime and minimum wages and failed to provide accurate wage statements. Id. ¶ ¶29, 30, 35, 39, 41, 42.[2] Plaintiffs

---

[1] Alaska Air Group and Virgin America merged during the course of this lawsuit. The Federal Aviation Administration ("FAA") issued a Single Operating Certificate for Virgin and Alaska Airlines, Inc., on January 11, 2018. ECF No. 274 at 3. Alaska Airlines was added as a defendant on March 20, 2018. ECF No. 298. It answered the Third Amended Complaint on April 18, 2018. ECF No. 310.

[2] See this Court's order regarding Virgin's motion for summary judgment, ECF No.121, for a more detailed description of the factual allegations and procedural history.

bring causes of action under multiple provisions of the California Labor Code, the California Industrial Welfare Commission Wage Order 9-2001, and the Private Attorney General Act of 2004 ("PAGA"). Id. ¶ 3.

This Court granted Plaintiffs' motion for class certification on November 7, 2016. ECF No. 104. The Court granted the motion as to the following class and subclasses:

> **Class:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. at any time during the period from March 18, 2011 (four years from the filing of the original Complaint) through the date established by the Court for notice of certification of the Class (the "Class Period").
>
> **California Resident Subclass:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. while residing in California at any time during the Class Period.
>
> **Waiting Time Penalties Subclass:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. and have separated from their employment at any time since March 18, 2012.

Id. at 28. Virgin moved to decertify the class on January 18, 2018. ECF No. 226.

## II.   JURISDICTION

Pursuant to the Class Action Fairness Act ("CAFA"), the Court has jurisdiction over this case as a class action in which a member of the class of plaintiffs is a citizen of a state different from any defendant, there are more than 100 class members nationwide, and the matter in controversy exceeds the sum of $5 million, exclusive of interests and costs. 28 U.S.C. § 1332(d).

## III.   LEGAL STANDARD

As the party seeking class certification, Plaintiff "bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." Marlo v. United Parcel Serv., Inc., 639 F.3d 942, 947 (9th Cir.2011) (internal citation omitted). The Court previously found that these requirements were met when it approved class certification. See ECF No. 104. Therefore, "decertification and modification should theoretically only take place after some change, unforeseen at the time of the class certification that makes alteration of the initial certification decision necessary." 3 William B. Rubenstein et al., Newberg on Class Actions § 7:34 (5th ed.2013). See Rodman v. Safeway Inc., No. 11-CV-03003-JST, 2015 WL 2265972, at *2 (N.D.

Cal. May 14, 2015).

## IV. PLAINTIFFS' OBJECTIONS TO VIRGIN'S EXPERT REPORTS

Before analyzing Virgin's motion, the Court considers Plaintiffs' objections to the expert testimony submitted by Virgin of witnesses Valentin Estevez, Mark Newbold, Darin Lee, Michael Boyd, Barry Valentine, Steven Trupkin and Yvette Hau-Lepera. ECF No. 261 at 25-31.

Dr. Valentin Estevez is a Ph.D. economist hired by Virgin to respond to the testimony of Plaintiffs' economist, Dr. David Breshears. Dr. Estevez reaches several conclusions: that class members were outside of California more than they were in it; that he would calculate damages differently than Dr. Breshears's did; and that he is unable to determine class members' residency for purposes of determining their eligibility for compensation. ECF Nos. 235-1, 235-2. Plaintiffs do not contest Dr. Estevez's expertise as an economist, but complain that Dr. Estevez's opinions address "questions of fact and law already decided by this Court" and are "completely irrelevant." ECF No. 261 at 25-26. They also assert that he "has no expertise in determining residency." *Id.* at 26. They argue that because he does not challenge Dr. Breshears' methodology or final calculations, his report "has no probative value." Finally, they note that Dr. Estevez responds to Dr. Breshears's initial report and not his updated report of December 2017. *Id.* at 27.

Expert testimony is admissible if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. "[G]enerally, the Court looks to: (1) whether the expert opinion is based on scientific, technical, or other specialized knowledge; (2) whether the opinion would assist the trier of fact; (3) whether the expert has appropriate qualifications; (4) whether the expert's methodology fits the conclusions; and (5) whether the probative value of the testimony outweighs prejudice, confusion, or undue consumption of time." Enyart v. Nat'l Conference of Bar Examiners, Inc., 823 F. Supp. 2d 995, 1002 (N.D. Cal. 2011). Just as Dr. Breshears' written testimony – to which Virgin objected when the shoe was on the other foot – was admissible because it addressed whether damages could feasibly be calculated for the class, Dr. Estevez's report is admissible for the same reason. It directly addresses whether damages can be calculated on a class-wide basis, a foundational question to whether certification is appropriate. *See* ECF No. ECF No. 104 at 7 (class certification order) (discussing whether Plaintiffs have

proposed "a method for calculating damages for the named Plaintiffs that . . . could . . . be applied on a class-wide basis."). Nothing in Dr. Estevez's report shakes the Court's prior conviction that Plaintiffs have, in fact, proposed an adequate method for class-wide determination of damages, but this is a comment on the persuasiveness of Dr. Estevez's opinion, not its admissibility. Finally, the Court is confident that Virgin is not offering Dr. Estevez as an expert in "residency," merely asking him to include whether that foundational fact is capable of determination. Accordingly, Plaintiffs' objection to Dr. Estevez's testimony is overruled.

Plaintiffs object to the testimony of Mark Newbold on the grounds that he was previously excluded as a late-disclosed fact witness and may not now serve as an expert witness. This objection is well taken. Because Virgin did not timely disclose Mr. Newbold, Magistrate Judge Corley precluded Virgin from relying on his testimony. She ordered, "Defendant is precluded from calling [its late-disclosed] witnesses in its case-in-chief at trial or submitting affidavits from them in connection with summary judgment." ECF No. 202 at 4. The Court enforces that order here even though this is a motion to decertify the class and not a summary judgment motion; at the time of Judge Corley's order it was not known that Virgin would move to decertify the class, and Judge Corley surely did not intend to create a carve-out for Virgin to use evidence that was otherwise excluded.

Virgin argues that Judge Corley's order should not apply because Newbold is being offered as an expert and not a fact witness. This argument is not persuasive. According to Virgin, Newbold's testimony concerns "[t]he impact of applying California's meal period and rest break requirements to flight attendants on Virgin's operations, routes, service, and rates." ECF No. 237-7 at 52. These are factual questions, not matters of expert opinion, and had Judge Corley not issued her order, Virgin would surely be offering Newbold as a fact witness. Plaintiffs' objection to Newbold's testimony is sustained.

Plaintiffs move to exclude the testimony of Dr. Darin N. Lee as "biased, irrelevant, and unreliable." Dr. Lee opines on "the impact of compliance on Virgin America's prices, routes, and services, thereby affecting consumers, and to assess whether compliance (as contemplated by the Plaintiffs) would benefit all, or almost all, of Virgin America's ITMs," and, given Virgin's merger

4

with Alaska Airlines, "how compliance with California's wage, meal period and rest break laws would impact the combined carrier's prices, routes, and services, thereby affecting consumers." ECF No. 227-1 at 6-7. The Court will not exclude these opinions under Rule 702, and so Plaintiffs' objection is overruled. But Dr. Lee's opinions simply are not relevant to the question of certification and whether Plaintiffs have met their burden under Rule 23. Rather, they simply make clear that Virgin disagrees with Plaintiffs' damages model.

Plaintiffs object to the testimony of Michael Boyd, Barry Valentine, Steven Trupkin and Yvette Hau-Lepera on the grounds that their opinions consist of legal conclusions. This objection also is well-taken. See, e.g., ECF No. 226 at 32 (offering this testimony to support its argument that "Virgin, thus, cannot even 'assign a flight attendant any duty period . . . unless the flight attendant has had at least the minimum rest required' under federal regulations" (citing 14 C.F.R. § 121.467(b)(10) ). Matters of law are "inappropriate subjects for expert testimony." Aguilar v. Int'l Longshoremen's Union Local No. 10, 966 F.2d 443, 447 (9th Cir. 1992). Resolving questions of law "is the distinct and exclusive province of the trial judge." Nationwide Transp. Fin. v. Cass Info. Sys., Inc., 523 F.3d 1051, 1058–59 (9th Cir. 2008) (citation and quotation omitted). Plaintiffs' objection is sustained and the testimony of these experts is excluded.

## V.   DISCUSSION

The Court now turns to the substance of Virgin's motion. It argues that the class should be decertified because Plaintiffs cannot satisfy the superiority requirement of Rule 23(b)(3). ECF No. 226 at 12. Virgin also argues that the case does not satisfy Rule 23(a)(4) because the named Plaintiffs have a conflict of interest with other class members. ECF No. 226 at 31.

### A.   Plaintiffs Satisfy the Superiority Requirement of Rule 23(b)(3)

Federal Rule of Civil Procedure 23(b)(3) requires the Court to find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than an individual basis." Hanlon

1  v. Chrysler Corp., 150 F.3d 1011, 1022 (9th Cir. 1998) (citing Alan Wright, Arthur R. Miller &
2  Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed.1986)).
3        "Class certification is usually appropriate where liability turns on an employer's uniform
4  policy that is uniformly implemented, since in that situation predominance is easily established."
5  Kamar v. Radio Shack Corp., 254 F.R.D. 387, 399 (C.D. Cal. 2008), aff'd sub nom. Kamar v.
6  RadioShack Corp., 375 F. App'x 734 (9th Cir. 2010); see also, e.g., Amey v. Cinemark USA Inc.,
7  No. 13-CV-05669-WHO, 2015 WL 2251504, at *6 (N.D. Cal. May 13, 2015)("[T]he
8  predominance requirement of Rule 23(b)(3) is generally satisfied if a party can show that an
9  employer used a standard policy that was uniformly implemented.").  This makes sense because
10 "[s]uch centralized rules, to the extent they reflect the realities of the workplace, suggest a
11 uniformity among employees that is susceptible to common proof."  In re Wells Fargo Home
12 Mortgage Overtime Pay Litig., 571 F.3d 953, 958 (9th Cir. 2009) (noting that "courts have long
13 found that comprehensive uniform policies detailing the job duties and responsibilities of
14 employees carry great weight for certification purposes").  For that reason, "[c]laims alleging that
15 a uniform policy consistently applied to a group of employees is in violation of the wage and hour
16 laws are of the sort routinely, and properly, found suitable for class treatment."  Brinker Rest.
17 Corp. v. Superior Court, 53 Cal. 4th 1004, 1033 (2012); Garvey v. Kmart Corp., No. C 11-02575
18 WHA, 2012 WL 2945473, at *2 (N.D. Cal. July 18, 2012) (same).
19       This Court previously found that that "[c]ommon questions will dominate this Court's
20 adjudication of the Plaintiffs' claims because liability hinges on Virgin's company-wide policies
21 regarding its flight attendants' working conditions and pay." ECF No. 104 at 22.  Virgin argues
22 that the predominance requirement is no longer met for four reasons.  First, "the court's multi-
23 factor test makes a class unmanageable." ECF No. 226 at 12.  Second, the choice of law analysis
24 required by Plaintiffs' allegations makes the case unmanageable. Id. at 23.  Third, Virgin's
25 specific defenses raise individual issues that will predominate. Id. at 27.  Finally, the absence of a
26 damages model "defeats predominance with respect to Plaintiffs' claims for overtime and unpaid
27 wages for incident reports, and as to the California Resident subclass." ECF No. 226 at 29.
28

### 1. The "Multi-factor Test"

Virgin argues that this Court created a multifactor test that must be applied to each individual class member to determine whether the relevant California Labor Code provisions apply to that class member. ECF No. 226 at 3. The Court did not create such a test. Rather, the Court engaged in a multi-factor analysis of Plaintiffs' claims as a whole in response to Virgin's argument that California labor law does not protect Plaintiffs because they do not work "exclusively or principally in California." ECF No. 97 at 19-22. The Court made the point that, contrary to Virgin's contention, California courts look to more than just job situs in determining whether California law applies to an employee. ECF No. 121 at 7-8. The Court noted that the California Supreme Court has endorsed "a multi-faceted approach" that includes three factors – California residence, receipt of pay in California, and principle "job situs" in California – that "are sufficient, but not necessary conditions for an individual to benefit from the protections of California law." Id. at 8. The Court also noted that other factors may be relevant to the inquiry, "such as the employer's residence and whether the employee's absence from the state was temporary in nature." Id. (citing Sullivan v. Oracle Corp., 51 Cal. 4th 1191, 1199-1200 (2011)). Applying these factors to this case, the Court concluded that Plaintiffs were not barred from asserting claims under California law simply because they did not work exclusively or principally in California. Id. at 9.

Virgin now leans on this section of the Court's prior order to argue that class certification is inappropriate because *each class member* will be subject to an individualized inquiry to determine that class member's residency, payment location, principal job situs, and whether an employee's absence from the state was temporary. ECF No. 226 at 13-22. That is not what the Court held, and it is not the law.[3] The Court sees no reason to reconsider its prior finding that class members are or were California residents who receive their pay in California; that Virgin is a California-based airline with its headquarters in California; that Plaintiffs' expert calculates that

---

[3] At the hearing on this motion, Virgin's counsel acknowledged that the supposed "multi-factor test" to which much of its brief is devoted is "not consistent with California law." ECF No. 294 at 11. This by itself is sufficient reason to reject this argument.

since 2011 between 88 and 99 percent of Virgin's flights each day either departed from or arrived in a California airport; and that although Plaintiffs spent about a quarter of their total work time in California, temporary out-of-state travel was an inherent part of their job. Id. at 8-9. The Court has already determined that class members can be feasibly identified by looking to Virgin's business records and the state where each flight attendant paid taxes. See ECF No. 104 at 18 ("If the Court later determines that members of the California Resident Subclass can only recover if their primary job situs is in California, the Court can feasibly identify those Subclass members who have a right to recover by looking to Virgin's business records."); id. at 19 ("Here, the proposed California Resident Subclass is ascertainable because the Court can feasibly identify its members simply by looking at Virgin's business records."); ECF No. 151 at 9 ("Because California Resident Subclass members have already made a determination regarding their residency, filed a California tax return, and/or provided Virgin with a California address during the class period, residency will likely be undisputed for the vast majority of subclass members[.]"). Virgin provides no good reason now for the Court to overrule its own prior conclusions.[4]

Additionally, an individual analysis by class member is not required to determine if California law applies to Plaintiffs' claims because the Court has already issued rulings that apply for every remaining claim. The Court held that California law clearly applies to Plaintiffs' claims that relate to work performed within California's borders. ECF No. 121 at 9. And the Court concluded that the presumption against the extraterritorial application of California law does not

---

[4] Even if the case required a more complex analysis of individual class members' residency, a class action would still be superior to individual litigation because the pursuit of individual claims is unlikely and liability depends on issues of common proof. See Bowerman v. Field Asset Servs., Inc., 242 F. Supp. 3d 910, 936 (N.D. Cal. 2017) (acknowledging manageability concerns but finding them "insufficient to tip the scales away from the superiority of proceeding as a class when its liability to over 100 class members depends on common proof"); Meyer v. Bebe Stores, Inc., No. 14-CV-00267-YGR, 2017 WL 558017, at *4 (N.D. Cal. Feb. 10, 2017) (denying a motion to decertify class despite manageability concerns because "but for a class action, such violations of the TCPA may never be brought to light"). This Court has already noted that there is no indication that class members would have an interest in bringing individual suits. To the contrary, the pursuit of individual claims is unlikely given the relatively low potential recovery and possible fear of retaliation for initiating an individual lawsuit against an employer. ECF No. 104 at 27. Given the "well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns," the Court would not find that Virgin's concerns justified decertification. Briseno, 844 F.3d at 1128.

apply to Plaintiffs' failure to pay for all hours worked, failure to pay overtime, failure to provide accurate wage statements, and failure to pay waiting time penalties claims because the actions that gave rise to the potential liability occurred in California.[5] Id. at 13. The Court noted that the only wrongful conduct that could have potentially occurred outside of California is Virgin's alleged failure to provide meal periods and rest breaks. Id. The Court noted that to the extent that the Plaintiffs might have been deprived of breaks outside of California, they must overcome the presumption against extraterritorial application. Id. at 13-14. Plaintiffs did not attempt to do so and now limit their meal and rest break claims to duty periods within California. ECF No. 225 at 23 n.59. Therefore, no individual analysis is required.

### 2. Choice of Law

Virgin argues that "before the Court can apply its test, it must conduct a proper choice of law analysis for each Class member." ECF No. 23 at 4. This is simply not true. Virgin has taken every opportunity to present the Court with arguments that California law should not apply – in its motion for summary judgment, its opposition to class certification, and its motion for leave to file a motion for reconsideration. See ECF Nos. 71, 97, 107, 127. The Court has considered these arguments and held that "Virgin is subject to California law because both Virgin and the Plaintiffs have deep ties to California and the wrongful conduct at issue in this case occurred in California. Regardless of where their employees' pairings take them, the challenged compensation policies at issue in this case emanated from Virgin's headquarters in California and Virgin paid its flight attendants pursuant to those policies in California. Nothing in the record suggests that Virgin has similar ties to other states, and Virgin has presented no evidence to support its contention that it will be required to comply with other states' laws." ECF No. 121 at 16. Virgin's repetition of this theme has not increased its persuasiveness.

Virgin now argues that "other states have the same or greater interest in applying their wage and hour laws" and that "the court must examine each state's interest in having its law apply to the flight attendants." ECF No. 226 at 25. Virgin cites no case requiring the Court to

---

[5] The Court granted summary judgment to Virgin on the San Francisco Minimum Wage Ordinance and failure to indemnify all necessary business expenses. ECF No. 121.

independently inquire whether the remaining claims trigger other state laws. Virgin does cite Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 728 (9th Cir. 2007) for the proposition that the "law on predominance requires [this Court] to consider variations in state law when a class action involves multiple jurisdictions." In Lozano, the Ninth Circuit held that the district court properly considered the effect of the Defendant's intent to seek arbitration. Lozano, 504 F.3d at 728. The district court found that the class action waiver was unconstitutional under California law but recognized that it may not be unconscionable under other state laws. Id. The court found that predominance was defeated because the defendant's intent to seek arbitration would require a state-by-state review of contract conscionability jurisprudence. Id. Here, unlike in Lozano, there is no pending state-by-state inquiry. Plaintiffs only allege violations of California law and the Court has determined that California law applies over the remaining claims. There are no issues with predominance because there are questions of California law common to the class.

Virgin also cites Allstate v. Hague Ins. Co., 449 U.S. 302, 308 (1981) for the proposition that a forum state "may have to select one law from among the laws of several jurisdictions having some contact with the controversy." However, in Allstate, the "Petitioner defended on the ground that whether the three uninsured motorist coverages could be stacked should be determined by Wisconsin law." Id. at 305-306. Here, Virgin has provided the court with other cases holding that state "wage and hour laws apply to work performed in their state, even if that work is temporary and/or performed by an out-of-state employee." ECF No. 226 at 25. Virgin has even gone as far as to point out the differences between "New York's use of 'averaging' for minimum wage compliance" and California labor law. ECF No. 279 at 15. However, this Court has already found that California law applies over the remaining causes of action. Unlike in Allstate, Virgin is not defending its actions by arguing that New York law, or any other state law, should govern this action in place of California law.[6]

---

[6] "California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement. [G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state. In such event [that party] must demonstrate that the latter rule of decision will further the interest of the foreign state and therefore that it is an appropriate one for the forum to apply to the case before it." Washington

Therefore, the Court finds no reason to set aside its previous finding of predominance. ECF No. 104 at 20-35.

### 3. Claim Specific Defenses

Virgin argues that three claim-specific defenses will defeat predominance. ECF No. 226 at 27.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor." Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617 (1997) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997)). For this reason, "[c]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members." Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003) (citing 6A Fed. Proc., L.Ed. § 12:248, Defenses to Individual Members' Claims (2002); 32B Am.Jur.2d Federal Courts § 2018 & n. 1 (2002); Hoxworth v. Blinder, Robinson & Co., 980 F.2d 912, 924 (3d Cir.1992); Cameron v. E.M. Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976)). "After all, Rule 23(b)(3) requires merely that common issues predominate, not that all issues be common to the class." Smilow, 323 F.3d at 39. If, at any stage in the class litigation, it becomes clear that "an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms," such as placing "class members with potentially barred claims in a separate subclass." Id. at 39–40.

Virgin first contends that Wage Order No. 9 provides that when an employee works additional hours, not in excess of sixty, due to temporary modification of the employee's schedule arranged at the request of the employee, this additional time is exempt from overtime requirements. Id. Virgin argues that Virgin's liability may depend on an analysis of whether a

---

Mut. Bank, FA v. Superior Court, 24 Cal. 4th 906, 919 (2001) (internal citations and quotation marks omitted). Even if the Court construes Virgin's briefing as a timely argument that New York law should apply, Virgin has not met this burden.

11

class member's additional hours of work were a result of a voluntary swap. Id. Virgin bears the burden of proving its Wage Order No. 9 defense. See Campbell v. PricewaterhouseCoopers, LLP, 642 F.3d 820, 825 (9th Cir. 2011) (citing Ramirez v. Yosemite Water Co., 20 Cal.4th 785 (1999)) ("In California, overtime exemption is an affirmative defense that must be pled and proved by the employer.). Plaintiffs argue that Virgin has no evidence to prove this defense because there are no payroll codes that track when flight attendants voluntarily swap shifts. ECF No. 261 at 16. Virgin responds that this information "can be learned only through the individual questioning of the flight attendant that Plaintiffs refused." ECF No. 279 at 11. Virgin also notes that its flight records indicate when a flight attendant has swapped a pairing. Id. at 14. Regardless, the essence of Virgin's argument is that damages might not be identical for each class member. That fact, even if true, would not justify decertification. See Just Film, Inc. v. Buono, 847 F.3d 1108, 1120 (9th Cir. 2017) ("To gain class certification, Plaintiffs need to be able to allege that their damages arise from a course of conduct that impacted the class. But they need not show that each members' damages from that conduct are identical.").

Next, Virgin argues that some flight attendants waived their meal periods when they submitted bid preferences for flights within California that had enough time for a meal period. ECF No. 226 at 28. The Court finds that Virgin has not presented a credible defense. Virgin contends that "by voluntarily selecting or rejecting a paring, the flight attendant has consented to the corresponding schedule and should be deemed to have waived any purported right to a meal period." ECF No. 279 at 14. Under California Labor Code Section 512, a meal period may be waived "by mutual consent of both the employer and employee" if the total work period per day of the employee is no more than six hours. Even assuming that flight attendants chose their pairings completely voluntarily, Virgin presents no evidence of "mutual consent." Virgin does not contend that either the employee or the employer were aware that by submitting their bid preferences or trading or swapping away flights, employees were waiving their meal periods. Indeed, since the Plaintiffs' allegation is that Virgin does not provide meal periods to *any* of its employees, a class member cannot be said to have waived a meal period he or she would not have received in the first place.

Finally, Virgin argues that class members waived their claims through their participation in Virgin's Career Choice program. ECF No. 226 at 28. Flight attendants who enter that program "receive a Career Choice transition package, which includes a one-time, lump-sum payment." Id. at 29. They also "unconditionally release Virgin from all claims relating to their employment with Virgin, including those raised here." Id. Virgin states that approximately 88 class members participated in the Career Choice program.

Because Virgin has not produced signed agreements from the flight attendants who purportedly released their claims, the question of class membership cannot be litigated or resolved at this point. That question will be addressed at trial or a post-trial proceeding. In any event, the existence of the Career Choice program does not require decertification. Even if the 88 participants in the Career Choice program waived their claims, the Court has adequate procedural mechanisms to address the waiver, such as excluding these class members or putting them in a separate subclass. See Smilow, 323 F.3d at 39-40.

### 4. Damages Model

In Comcast Corp v. Behrend, 569 U.S. 27, 36-38 (2013), the Supreme Court held that a court can certify a Rule 23(b)(3) class only if plaintiffs establish that there is a classwide method of awarding relief that is consistent with the plaintiffs' theory of liability. The Ninth Circuit has made clear, however, that "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)." Leyva v. Medline Industries Inc., 716 F.3d 510, 514 (9th Cir. 2013); see also Just Film, 847 F.3d 1108, 1121 (9th Cir. 2017) ("That some individualized calculations may be necessary does not defeat finding predominance"); Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 986 (9th Cir. 2015) ("damage calculations alone cannot defeat certification") (quoting Yokoyama v. Midland Nat. Life Ins. Co., 594 F.3d 1087, 1094 (9th Cir. 2010)).

Virgin argues that Plaintiffs have failed to offer a damages model that can properly calculate the damages related to Plaintiffs' overtime and incident report-related unpaid wages for three reasons. ECF No. 226 at 30. First, Virgin contends that the damages model does not separate the California Resident Subclass from the Class. In fact, Plaintiffs' expert has calculated

these damages separately.  See ECF No. 258-24 at 30-85; ECF No. 259-28 ¶¶8-9.[7]

Next, Virgin argues that Plaintiffs "present no model outside of individual inquiry to determine whether the [California Wage Order No. 9] exemption would apply or not."  ECF No. 226 at 30.  However, Plaintiffs are only required to propose a valid method for calculating damages for overtime pay.  See Lambert v. Nutraceutical Corp., 870 F.3d 1170, 1182 (9th Cir. 2017).  Plaintiffs are not required to prove Virgin's affirmative defense.  See Campbell , 642 F.3d at 825.

Finally, Plaintiffs allege that they were not paid for time spent drafting incident reports.  See ECF No. 276.  Virgin argues that Plaintiffs have not presented a model "for how damages for this claim would be determined outside of Class Member by Class Member inquiry."  ECF No. 226 at 31.  Plaintiffs concede that the model "does not account for damages for Virgin's practice of not paying Class members for completing incident reports."  ECF No. 261 at 24.  Plaintiffs previously proposed the possibility of using surveys, ECF No. 50-18 at 11, but offer none here.  Instead, they offer a handful of declarations from a small group of flight attendants regarding their personal experience.  ECF No. 282 at 15.  This is not sufficient evidence to prove that incident reports always take at least fifteen minutes.

Thus, Plaintiffs have not proposed a valid method for calculating damages arising from the need to complete incident reports.  See Lambert, 870 F.3d at 1182 ("Uncertainty regarding class members' damages does not prevent certification of a class as long as a valid method has been proposed for calculating those damages.").  Therefore, the Court decertifies the class with respect to Plaintiffs' claims based on the completion of incident reports

**B.    There is No Conflict of Interest**

Virgin contends that "the only way that Virgin could attempt to comply with both California law and the federal safety, duty period, and minimum rest regulations is to limit flight attendant duty periods such that the obligations of California law are not triggered."  ECF No. 226

---

[7] Virgin also argues that the model calculates damages "based on a flawed reliance on information contained in wage statements."  ECF No. 226 at 30.  Plaintiffs admit there was an error in their original model but submitted a revised model which corrects this error.  ECF No. 261 at 24; ECF No. 273 ¶¶1-4.

at 33. Virgin argues that Plaintiffs' efforts to apply California meal period and rest break laws to flight attendants would not benefit all, or almost all, Class members and that this "represents a conflict of interest with and between class members," warranting decertification. Id. at 34. As this Court previously noted, "[i]t is not 'a physical impossibility' for Virgin to simultaneously comply with California law and FAA regulations. For example, Virgin could staff longer flights with additional flight attendants in order to allow for duty-free breaks. In addition, the FAA regulation that Virgin relies on is wholly consistent with California's break requirements because it merely establishes the maximum duty period time and minimum rest requirements." ECF No. 121 at 25; see 14 C.F.R. § 121.467. Therefore, there is no conflict of interest that warrants decertification.

## CONCLUSION

For the foregoing reasons, the class is decertified with respect to any claims based on the completion of incident reports. In all other respects, Virgin's motion to decertify the class is denied.

**IT IS SO ORDERED.**

Dated: July 9, 2018

_____
JON S. TIGAR
United States District Judge