OLIVIER SCHREIBER & CHAO LLP
Monique Olivier (SBN 190385)
(monique@osclegal.com)
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone:  (415) 484-0980

KOSINSKI + THIAGARAJ, LLP
Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 230-2860

*Attorneys for Plaintiffs and the Class*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>VIRGIN AMERICA, INC.; and Does 1-10, inclusive;<br><br>Defendants. | Case No. 15-cv-02277-JST<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:   May 9, 2019<br>Time:   2:00 p.m.<br>Crtrm.: Courtroom 9; 19th Floor<br>Judge:  Hon. Jon S. Tigar |

1

## **NOTICE OF MOTION AND MOTION**

2

3
PLEASE TAKE NOTICE THAT on May 9, 2019 at 2:00 p.m. or as soon thereafter as the

4
matter may be heard, in Courtroom 9 of the United States District Court for the Northern District

5
of California, located at 450 Golden Gate Avenue, San Francisco, CA 94102, before the

6
Honorable Jon S. Tigar, Plaintiffs, Julia Bernstein, Esther Garcia and Lisa Marie Smith

7
("Plaintiffs"), on behalf of themselves and the certified Class, will respectfully move this Court

8
for an award of attorneys' fees and expenses from Defendants, Virgin America, Inc. and Alaska

9
Airlines, Inc. (individually and collectively, "Defendants" or "Virgin"), pursuant to Rules 23(h)

10
and 54(d) of the Federal Rules of Civil Procedure, California Code of Civil Procedure § 1021.5,

11
and the California Labor Code for work done and costs incurred to achieve the judgment in this

action.

12
This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

13
and Authorities filed concurrently herewith, the declarations of counsel filed concurrently

14
herewith, all other pleadings, papers, records and documentary materials on file in this action,

15
those matters of which the court may take judicial notice, and the oral arguments of counsel made

16
at the hearing on this motion.

17

18
Dated:  March 13, 2019                    Respectfully submitted,

19

20
                                          */s/ Monique Olivier*_____
                                          Monique Olivier

21
                                          Attorneys for Plaintiffs and the Class

22

23

24

25

26

27

28

---

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ..................................................................................................... 1

II.     OVERVIEW OF CLASS COUNSEL'S WORK IN THIS ACTION ......................... 1

III.    ARGUMENT ........................................................................................................... 8

    A.   California Law Governs the Standard for Attorneys'
       Fees and Expenses ......................................................................................... 8

    B.   Plaintiffs' Lodestar is Reasonable .............................................................. 10

       1.   Class Counsel's Hourly Rates are Reasonable ................................... 10

       2.   Class Counsel's Time was Reasonably Spent ..................................... 14

    C.   A Positive Multiplier is Appropriate ........................................................... 16

       1.   This Action Presents Novel, Difficult and Complex Issues .................. 17

       2.   Class Counsel Demonstrated Skilled Advocacy and Obtained
           Exceptional Results ............................................................................ 18

       3.   This Action Precluded Other Significant Employment ......................... 19

       4.   This Action Was Undertaken on a Completely Contingent Basis ........... 20

       5.   This Action Is in the Public Interest .................................................... 23

    D.   Class Counsel Are Entitled to Payment of Their
       Reasonable Expenses .................................................................................. 23

IV.     CONCLUSION ...................................................................................................... 25

1

**<u>TABLE OF AUTHORITIES</u>**

2

*Cases*

*Aguilar v. Zep Inc.*,
  No. 13-CV-00563-WHO, 2014 WL 4063144 (N.D. Cal. Aug. 15, 2014).....................................8

*Allison Gay v. Tom's of Maine, Inc.*,
  Case No. 0:14-cv-60604-KMM (S.D. Fl. 2016) ........................................................12

*Ambrosio v. Cogent Communications, Inc.*,
  3:14-cv-02182-RS, Dkt. 169 (N.D. Cal.) ...................................................................11

*Balderas v. Massage Envy*,
  No. 12-cv-06327 NC, Dkt. Nos. 69-1, 78 (N.D. Cal.) ..............................................11

Beaty v. BET Holdings, Inc.,
  222 F.3d 607 (9th Cir. 2000)......................................................................................14

*Bell v. Delta Air Lines*,
  No. 13-cv-01199 YGR, Dkt. Nos. 59-1, 67 (N.D. Cal.) ...........................................11

*Bowerman v. Field Asset Services*,
  13-cv-00057-WHO, Dkt. 464 (N.D. Cal.) .................................................................11

*Braga v. AccentCare, Inc.*,
  No. CGC-07-467071 (Super. Ct. San Francisco County)..........................................12

*Buckingham v. Bank of Am.*,
  No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243 (N.D. Cal. July 11, 2017) .............12, 22

*Butler National Corp. v. The Union Central Life Insurance Co.*,
  Case No. 1-1:12-cv-00177-SJD-KLL (S.D. Oh. 2014) ............................................12

*Cabrales v. County of Los Angeles*,
  935 F.2d 1050 (9th Cir. 1991)....................................................................................15

*Camacho v. Bridgeport Fin., Inc.*,
  523 F.3d 973 (9th Cir. 2008).......................................................................................10

*Caudle v. Bristow Optical Co.*,
  224 F.3d 1014 (9th Cir. 2000).....................................................................................15

*Corson v. Toyota Motor Sales U.S.A., Inc.*,
  Case No. 1:12-cv-8499-JGB (C.D. Ca. 2016) ..........................................................12

*Chalmers v. City of Los Angeles*,
  796 F.2d 1205 (9th Cir. 1986)..............................................................................10, 24

ii

*Children's Hosp. & Med. Ctr. v. Bonta*,
  97 Cal.App.4th 740 (2002).............................................................................................. 10

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ........................................................................... 22

*Golden Star, Inc. v. Mass Mut. Life Ins. Co.*,
  Case No. 3:11-30235-MGM (D. Mass. 2015) .................................................................. 12

*Graham v. DaimlerChrsyler Corp.*,
  34 Cal. 4th 553 (2004) ................................................................................................. 9, 18

*Guifu Li v. A Perfect Day Franchise, Inc.*,
  5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) ...................................... 11

*Gutierrez v. Barclays Group*,
  No. 10-CV-1012 DMS BGS, 2012 WL 12868392) (S.D. Cal. 2010) ...................................... 23

*Gutierrez v. Wells Fargo Bank, N.A.*,
  No. C 07-05923 WHA, 2015 WL 2438274 (N.D. Cal. May 21, 2015)..................................... 22

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994)................................................................................................ 24

*Hefler v. Wells Fargo & Co.*,
  No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................ 12, 20, 24

*Henderson v. Volvo Cars of North America, LLC*,
  2013 WL 1192479 (D.N.J. March 22, 2013) ..................................................................... 12

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983)................................................................................................... 14, 15

*Horsford v. Board of Trustees of California State University*,
  132 Cal.App.4th 359 (2008)............................................................................................. 15

*In re Amgen Sec. Litig.*,
  CV7-2536 PSG (PLAx) 2016 U.S. Dist. LEXIS 148577 (C.D. Cal. 2016) .............................. 13

*In re Apple iPhone/iPod Warranty Litig.*,
  40 F. Supp. 3d 1176 (N.D. Cal. 2014) .............................................................................. 22

*In re: Caterpillar, Inc. C13 and C15Engine Products Liability Litig.*,
  MDL No. 2540 (D.N.J.) ................................................................................................... 12

*In re: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation*,
  Case No. 1:12-md-02316-BYP (N.D. Oh. 2016)................................................................ 12

*In re Magsafe Apple Power Adapter Litig.*,
  No. 5:09-CV-01911-EJD, 2015 U.S. Dist. LEXIS 11353 (N.D. Cal. Jan. 30, 2015) ................ 13

*In re Merry-Go-Round Enterprises, Inc.*,
  244 B.R. 327 (Bankr. D. Md. 2000) ........................................................................... 23

*In re Rite Aid Corp. Sec. Litig.*,
  146 F. Supp. 2d 706 (E.D. Pa. 2001) ......................................................................... 23

*In re Rite Aid Corp. Sec. Litig.*,
  362 F. Supp. 2d 587 (E.D. Pa. 2005) ......................................................................... 23

*In re RJR Nabisco, Inc. Sec. Litig.*,
  1992 WL 210138 (S.D.N.Y Aug. 24, 1992) ................................................................ 23

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*,
  295 F.R.D. 438 (C.D. Cal. 2014) .............................................................................. 24

*In re Whirlpool Corp. Front Loading Washer Products Liability Litigation*,
  Case No. 1:08-WP-65000 (N.D. Oh. 2016) ................................................................ 12

*Ketchum v. Moses*,
  24 Cal.4th 1122 (2001) ................................................................................... *passim*

*Kramer v. Autobytel, Inc.*,
  No. 10-CV-02722-CV, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. 2012) ........................ 23

*MacDonald v. Ford Motor Co.*,
  142 F. Supp. 3d 884 (N.D. Cal. 2015) ......................................................................... 9

*Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP*,
  191 Cal. App. 4th 1500 (2011) ................................................................................... 9

*Moore v. Jas. H. Matthews & Co.*,
  682 F.2d 830 (9th Cir. 1982) .................................................................................... 14

*Moreno v. City of Sacramento*,
  534 F.3d 1106 (9th Cir. 2008) .................................................................................. 14

*Perfect 10, Inc. v. Giganews, Inc.*,
  No. CV 11-07098-AB SHx, 2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) ...................... 13

*Prison Legal News v. Schwarzenegger*,
  608 F.3d 446 (9th Cir. 2010) .................................................................................... 13

*Q+Food v. Mitsubishi Fuso Truck of America, Inc.*,
  3:14-cv-06046 (D.N.J.) .......................................................................................... 12

iv

*Ridgeway v. Wal-Mart Stores, Inc.*,
  269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................................. 9, 16

*Rodman v. Safeway Inc.*,
  No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ............................. *passim*

*Rodriguez v. Cty. of Los Angeles*,
  96 F. Supp. 3d 1012 (C.D. Cal. 2014), aff'd, 891 F.3d 776 (9th Cir. 2018) ..................... 8, 13, 16

*Rutti v. Lojack Corp., Inc.*,
  No. SACV 06–350 DOC (JCx), 2012 WL 3151077 (C.D. Cal. July 31, 2012) ......................... 24

*Santiago v. CACH LLC*,
  No. 13-CV-02234-JST, 2013 WL 5945805 (N.D. Cal. Nov. 4, 2013) ...................................... 11

*Sav-on Drug Stores, Inc. v. Superior Court*,
  34 Cal.4th 319 (2004) ............................................................................................................ 23

*Science App. Int'l Corp. v. Sup. Court*,
  39 Cal.App.4th 1095 (1995) ................................................................................................... 24

*Serrano v. Priest* ("*Serrano III*"),
  20 Cal. 3d 25 (1977) .......................................................................................................... 9, 15

*Steiner v. Am. Broad. Co.*,
  248 F. App'x 780 (9th Cir. 2007) ............................................................................................ 22

*Steinfeld v. Discover Fin. Servs.*,
  No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 48540 (N.D. Cal. Mar. 31, 2014) ............... 13, 22

*Stetson v. Grissom*,
  821 F.3d 1157 (9th Cir. 2016) ................................................................................................ 11

*Thomas v. MagnaChip Semiconductor Corp.*,
  No. 14-CV-01160-JST, 2018 WL 2234598 (N.D. Cal. May 15, 2018) .............................. 15, 24

*Trewin v. Church and Dwight, Inc.*,
  Case No. 3:12-cv-01475-MAS-DEA (D.N.J. 2015) .................................................................. 12

*Van Vranken v. Atlantic Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ......................................................................................... 23

*Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS,
  2016 U.S. Dist. LEXIS 182521 (N.D. Cal. Dec. 9, 2016) ........................................................ 12

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ................................................................................................ 23

v

*Vo v. Las Virgenes Municipal Utility Dist.*,
  79 Cal.App.4th 440 (2000) ........................................................................................... 14

*Winterrowd v. Am. Gen. Annuity Ins. Co.*,
  556 F.3d 815 (9th Cir. 2009) ...................................................................................... 10

**Statues**
Cal. Code Civ. P. § 1021.5 ........................................................................................ 8, 9
Cal. Civ. P. Code § 1033.5 .......................................................................................... 24
Labor Code § 218.5 ......................................................................................................... 8
Labor Code § 1194 .................................................................................................. 8, 23

**Rules**
Fed. R. Civ. P. 23 ............................................................................................................ 8
Fed. R Civ. P. 30 ............................................................................................................. 2
Fed. R. Civ. P. 37 ............................................................................................................ 7
Fed. R. Civ. P. 56 ............................................................................................................ 3
N.D. Cal. L.R. 54-5(b) ................................................................................................. 10

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.      INTRODUCTION

Plaintiffs and Class Counsel have litigated this matter for four years – and will continue to do so – against unyielding defendants vigorously represented by skilled counsel.  Every single step of this litigation was hard-fought and fraught with risk.  This action has involved numerous discovery disputes, a motion for class certification, two motions for summary judgment, a motion for decertification, and finally a motion for judgment.  The action has culminated in a substantial victory for the Class, with the Court awarding $59,063,082.75 through February 4, 2019 plus post-judgment interest, and another $18,735,862.50 to the State of California's Labor & Workforce Development Agency, for a total judgment of $77,798,945.25 plus post-judgment interest at the statutory rate.

Since the outset of this case, Defendants have pursued an aggressive strategy that has caused this contingency litigation to consume thousands of hours of billable attorney and staff time.  Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d), the California Labor Code, and California Code of Civil Procedure § 1021.5, Plaintiffs ask the Court to compensate Olivier Schreiber & Chao, LLP, Kosinski & Thiagaraj, LLP and Shepherd Finkelman Miller & Shah, LLP ("Class Counsel"), through this Motion for Attorneys' Fees and Costs ("Motion") for the exceptional results they have obtained for Plaintiffs and the Class.

 Class counsel documents a base lodestar of attorneys' fees in the amount of $3,242,407.50, all of which has been contingent fee work.  Plaintiffs request a multiplier of four times the lodestar, in recognition of the extraordinary results achieved and the substantial risk undertaken.  Plaintiffs also seek the payment of $250,775.81 in expenses incurred in litigating the case.

## II.      OVERVIEW OF CLASS COUNSEL'S WORK IN THIS ACTION

There are over 369 docket entries in this action.  The major litigation events are well-documented in prior briefings and by this Court.  *See, e.g.*, Dkt. 316, 317.  The recovery of over $77 million is the culmination of four years of hard-fought litigation – encompassing over 5,100

1

hours of Class Counsel's time – with a substantial risk of no compensation. For the purposes of this Motion, Plaintiffs focus on the most significant events for which specific work was undertaken by Class Counsel to reach the outstanding recoveries for Plaintiffs and the Class, summarized as follows.

**Pleadings:** After investigation and due diligence, Plaintiffs filed their initial complaint on March 18, 2015 in the Superior Court of California, San Francisco County. Defendants removed the action to this Court and answered the Complaint on May 20, 2015. Dkt. 1, 5. After an initial Case Management Conference on August 26, 2015, Plaintiffs filed their First Amended Complaint with leave of Court on October 30, 2015, which Defendants also answered on November 20, 2015. Dkt. 23, 32 and 33. After Virgin America, Inc. was acquired and merged with Alaska Airlines, Inc., on March 20, 2018, Plaintiffs added Alaska Airlines, Inc. as a defendant and successor-in-interest. Dkt. 297, 298. Alaska filed an answer on April 18, 2018. Dkt. 310.

**Discovery Conducted in Support of Class Certification**: Discovery in this case was lengthy and hotly contested. To support their motion for class certification, Class Counsel served three sets of requests for production of documents, totaling 90 document requests, and two sets of interrogatories, totaling 27 interrogatories. Class Counsel also deposed four of Virgin's corporate representatives pursuant to Fed. Rules Civ. Pro. 30(b)(6) in preparation for Plaintiffs' class certification motion. During this pre-certification period, Virgin served five sets of interrogatories on the named plaintiffs, totaling 73 interrogatories, and seven sets of requests for production of documents, totaling 222 document requests, all to which Plaintiffs were obligated to respond. Virgin also deposed Plaintiffs Bernstein, Garcia, and Smith, as well as class member declarants Holidais Evans-Bunch, Adam Croteau, Ramon Ryan, and Victor Tomlinson, prior to class certification. Declaration of Monique Olivier in Support of Plaintiffs' Motion for Fees and Expenses ("Olivier Decl.") ¶¶ 33-34.

**Class Certification and Defendants' Surprise Motion for Summary Judgment:** Plaintiffs prepared and filed their motion for class certification on July 6, 2016. Dkt. 50. Virgin responded by obtaining an extension to respond to the class certification motion until September

2

15, 2016 [Dkt. 56], and then filing a surprise motion for summary judgment on September 6, 2016 [Dkt. 60], as part of a transparent attempt to disrupt the orderly class certification proceedings. Virgin also opposed Plaintiffs' request for an extension of time to respond to this surprise motion. Dkt. 68, 69, 76; *see also* Olivier Decl. ¶¶ 36-37.  The Court granted Plaintiffs' request and continued the hearing on Defendants' summary judgment motion until after the scheduled hearing on class certification.  Dkt. 78.  Undeterred, Defendants then filed another motion to set the hearing on Plaintiffs' motion for class certification concurrently with Defendants' summary judgment motion, which the Court denied.  Dkt. 86, 88, 93.  Due to the volume of material that Defendants had marked confidential pursuant to a stipulated protective order, the parties also filed multiple administrative motions to seal and responses thereto.  *See, e.g.*, Dkt. 43, 83, 84, 92, 95, 100.

Virgin opposed Plaintiffs' class certification motion on September 15, 2016, and also filed a motion to strike Plaintiffs' expert report.  Dkt. 71, 74.  On October 17, 2016, Defendants filed an amended notice of motion and motion for summary judgment.  Dkt. 97.  On October 18, 2016, the Court held oral argument on Plaintiffs' motion for class certification.  Dkt. 98.  The Court granted class certification on November 7, 2016.  Dkt. 104.

Plaintiffs opposed Defendants' summary judgment motion on November 1, 2016.  Dkt. 101.  Plaintiffs also filed a declaration under Fed. R. Civ. P. 56(d) due to Defendants' premature and surprise summary judgment motion.  Dkt. 101-49.  Defendants' opposed Plaintiffs' Rule 56(d) Affidavit, and Plaintiffs' filed a response.  Dkt. 109, 112.  The Court held oral argument on Defendants' summary judgment motion on December 13, 2016 [Dkt. 117] and thereafter permitted supplemental briefing [Dkt. 119, 120].  On January 5, 2017, the Court issued its order denying in large part Defendants' motion for summary judgment.  Dkt. 121.  On February 13, 2017, Defendants filed a motion for leave to file a motion for reconsideration or, in the alternative, for an order certifying the summary judgment order for interlocutory appeal.  Dkt. 127.  The Court denied Defendants' motion.  Dkt. 151.

On February 15, 2017, the Court issued its Third Scheduling Order setting a schedule for expert discovery, dispositive motions, pretrial and trial.  Dkt. 131.  Even class notice was contentious.  Defendants objected to Plaintiffs' proposal that class notice be sent via work email addresses for current Virgin employees, even though Defendants had used those email addresses to communicate about this litigation.  Dkt. 134, 137, 147-149.  The Court granted Plaintiffs' request that notice via work email addresses be sent, and issued an order resolving the parties' disputes and ordering class notice.  Dkt. 140, 150.  On April 6, 2017, class notice was sent via mail and email to 1,869 class members.  Olivier Decl. ¶ 42.  Much later in the litigation, in August 2018, Defendants informed Plaintiffs that there were 163 Class members who did not receive notice.  Defendants then informed Plaintiffs that there were an additional 51 Class members who did not receive notice.  On August 24, 2018, class notice was sent to these individuals.  *Id.*  Class counsel worked closely with the class administrator to facilitate and disseminate notice and maintain and update the Class notice website.  *Id.*

**Discovery Conducted after Class Certification:** Following class certification, the parties had significant disagreement as to the scope of further discovery.  Ultimately, the discovery burden on Class counsel was heavy.  Class Counsel served an additional two sets of requests for production of documents, totaling 28 more requests, and an additional two sets of interrogatories, totaling six more interrogatories.  Olivier Decl. ¶ 43.  Virgin served three more sets of documents requests on Plaintiffs, totaling 38 requests; three sets of requests for admission, totaling 75 requests; two sets of document requests to all absent class members, totaling seven requests; and one set of interrogatories to all absent class members, totaling nine interrogatories.  Class Counsel responded to each of these discovery requests.  *Id.*

On February 15, 2017, the Court referred all discovery matters to Magistrate Judge Corley for resolution.  Dkt. 130.  Class Counsel submitted and/or responded to ten discovery letter briefs to the Court, after lengthy meet and confer efforts with Virgin's counsel.  *See* Dkt. 54, 128, 154, 165, 172, 188, 193, 200, 203, 240.  The Court denied either in full or in part each of Virgin's discovery requests.  Dkt. 159, 175, 189, 195, 202, 205.  Virgin challenged these rulings by filing

four motions for relief from a non-dispositive pre-trial order (Dkt. 164, 179, 192, 210), and the Court denied each of these motions.  Dkt. 167, 185, 196, 215.

**Expert Discovery:** Class Counsel submitted the expert reports of Plaintiffs' expert David Breshears.  Dkt. 50-1, 79-6, 84-1, 258-24, 258-25, 259-28, 282-7, 343-2.  When it became apparent that discovery would continue to be contentious and absorb substantial time and resources, and that the action was on track for a class action trial, Class counsel associated with Shepherd, Finkelman, Miller & Shah LLP ("SFMS"), a law firm with substantial experience bringing class actions and other complex cases to trial, as co-counsel.  Olivier Decl. ¶ 47; Dkt. 181-84.  Virgin deposed Mr. Breshears twice.  During the second deposition, Mr. Breshears became aware of minor errors in his calculation.  Class Counsel immediately notified Virgin that Mr. Breshears would be correcting his expert report and offered to extend Virgin's expert rebuttal deadline and the opportunity to further depose Mr. Breshears.  Virgin repeatedly refused Class Counsel's offer.  Olivier Decl. ¶ 45.  Instead, it filed a motion to exclude Mr. Breshears' supplemental report, which both Magistrate Judge Corley and this Court denied.  *Id.* ¶ 46; Dkt. 247, 283.  Ultimately, Defendants did not depose Mr. Breshears regarding his corrected report, and failed to produce any rebuttal testimony to address Mr. Breshears' corrected report.  *Id.*

Virgin relied upon the analysis of expert Valentin Estevez in support of its motion for summary judgment, Dkt. 98, as well as on six additional experts for its motion for decertification and to oppose Plaintiffs' motion for summary judgment.  Dkt. 227, 227-1, 228, 228-1, 229, 229-1, 230, 231, 235, 281.  Class Counsel deposed Estevez twice, first in preparation for Plaintiffs' class certification motion and again in preparation for their summary judgment motion, and four of Virgin's additional experts prior to filing Plaintiffs' motion for summary judgment.  After flying across the country for many of these depositions, Class Counsel moved to exclude Virgin's experts.  Dkt. 261.  The Court ultimately sustained Plaintiffs' objections to five of Virgin's seven experts and excluded their testimony in support of Virgin's motion for decertification.  Dkt. 316.

**Plaintiffs' Motions for Summary Judgment and Defendants' Motion to Decertify the Class**:  In December 2017, Defendants sought leave to file a second summary judgment motion.

Dkt, which Plaintiffs opposed.  Dkt. 214, 218, 219.  The Court denied Defendants' motion.  Dkt. 220.  On January 12, 2018, Plaintiffs filed a motion for summary judgment, and Defendants filed a motion to decertify the class.  Dkt. 225, 226.  In support of their motion, Defendants submitted the voluminous reports of eight purported experts.  Dkt. 227-231.  The report of Darin Lee alone was over 84 pages.  ECF No. 227-1 at 6-7.  Again, because the material submitted in support of the motions contained substantial material that Defendants had identified as confidential, several administrative motions to file material under seal were also filed.  See, e.g., Dkt. 224, 255, 269, 271, 272.

Before the Court ruled on the parties' motions, Defendants also moved to stay the litigation pending resolution of a trio of cases involving transportation workers pending before the Ninth Circuit.  Dkt. 295.  Plaintiffs opposed the stay, and the Court denied the stay.  Dkt. 315.  The Court denied Defendants' motion for decertification and granted Plaintiffs' motion for summary judgment.  Dkt. 316, 317.

**Settlement:** The parties made an early attempt at settlement.  They participated in private mediation early in the case with Hunter Hughes, but the case did not settle.  Plaintiffs approached Defendants to engage in settlement discussions again in September 2017 and again in 2018, but Defendants did not respond.  Olivier Decl. ¶ 51.

**Motion for Judgment**:  Because Defendants had not complied with their discovery obligations and provided all data necessary to calculate complete damages for the Class and Subclasses, Plaintiffs were unable to provide a full damages report at the time of their motion for summary judgment.  Olivier Decl. ¶ 52.  In addition, Defendants continued to insist that a subgroup of the Class – class members who had participated in Virgin's buyout program ("Career Choice") – could not participate in the Class recovery.  Accordingly, after the Court granted Plaintiffs' summary judgment motion, the parties attended a series of case management conferences with the Court to determine how best to proceed.  Dkt. 321, 327.  Plaintiffs maintained that Defendants had waived any argument as to the Career Choice Class members because they had refused to produce Career Choice documents during discovery.  Dkt. 320-1.

Plaintiffs offered a compromise to Defendants that would have permitted them to maintain their argument as to the Career Choice Class members for whom full documentation had been produced.  Defendants declined this compromise.  Olivier Decl. ¶ 53.  Plaintiffs thereafter filed a motion for sanctions under Fed. R. Civ. P. 37 to exclude any Career Choice documents and for a determination that Defendants had waived their affirmative defense that Career Choice class members were barred from asserting claims.  Dkt. 333.  The Court granted Plaintiffs' motion.  Dkt. 345.[1]

Defendants produced updated Class-wide data, and Plaintiffs worked with their expert to produce an updated expert report.  The parties thereafter met and conferred extensively in an attempt to agree upon the amount and form of the judgment.  After a negotiated resolution failed, Plaintiffs filed a motion for judgment as to a sum certain, which Defendants opposed.  Dkt. 343, 352.  The Court granted Plaintiffs' motion.  Dkt. 365.  On February 4, 2019, the Court entered judgment awarding $59,063,082.75 plus post-judgment interest to the Class and Subclasses, and another $18,735,862.50 to the State of California's Labor & Workforce Development Agency, for a total judgment of $77,798,945.25.  Dkt. 367.

**Post-Judgment Work:**  The parties met and conferred about Plaintiffs' motion for fees and expenses and the appellate bond, and have responded to inquiries from hundreds of Class members regarding the status of the case.  Olivier Decl. ¶¶ 56-57.  After meeting and conferring, the parties negotiated stipulations regarding the amount and form of the bond.  Plaintiffs prepared and filed the Bill of Costs and this motion for fees and expenses and all supporting documentation.  Dkt. 371.

---

[1] The parties subsequently resolved the monetary sanctions associated with the Rule 37 Motion. The lodestar associated with that motion has been deducted from the fees sought herein.  Olivier Decl. ¶ 53.

7

### III.     ARGUMENT[2]

#### A.     California Law Governs the Standards for Attorneys' Fees and Expenses.

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "Where California law governs the claim, it also governs the award of attorneys' fees."  *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *2 (N.D. Cal. Aug. 15, 2014); *see Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) ("Calculation of attorney's fee awards in cases brought under state law is a substantive matter to which state law applies."); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *2 (N.D. Cal. Aug. 23, 2018).  "Nevertheless, the Court may still look to federal authority for guidance in awarding attorneys' fees."  *Rodman,* 2018 WL 4030558, at *2 (citations omitted).

Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses under the California Labor Code.  Specifically, Labor Code § 1194 provides that an employee "receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorney's fees, and costs of suit."  Labor Code § 218.5 provides that "[i]n any action brought for the nonpayment of wages, fringe benefits, or health and welfare or pension fund contributions, the court shall award reasonable attorney's fees and costs to the prevailing party[.]"  A salutary purpose of statutory fee authorizations is "encouraging attorneys to act as private attorneys general and to vindicate important rights affecting the public interest."  *Ketchum v. Moses*, 24 Cal.4th 1122, 1133-34 (2001).  To further this aim, "fee awards should be fully compensatory."  *Id.* at 1133.

Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs under California law because Plaintiffs asserted claims for nonpayment of wages, prevailed, and conferred a significant benefit on the Class.  Cal. Code Civ. P. § 1021.5.

---

[2] As part of the plan of allocation, Class counsel intends to seek an award of a percentage of the common fund by separate motion and anticipate that any amount awarded as a result of this motion will be effectively credited against any award by the Court from the common fund.

"Section 1021.5 allows courts to award attorneys' fees if an action 'resulted in the enforcement of an important right affecting the public interest.'"  *MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 895 (N.D. Cal. 2015) (Tigar, J.), quoting Cal. Civ. Proc. Code § 1021.5. "[S]ection 1021.5 requires both a finding of a significant benefit conferred on a substantial number of people and a determination that the "subject matter of the action implicated the public interest." *Id.,* quoting *Graham v. DaimlerChrsyler Corp.*, 34 Cal. 4th 553, 578 (2004); *see Monterey/Santa Cruz etc. Trades Council v. Cypress Marina Heights LP*, 191 Cal. App. 4th 1500, 1501 (2011); *see also Serrano v. Priest* ("*Serrano III*"), 20 Cal. 3d 25, 38 (1977) (under California law, the court is empowered to award reasonable attorneys' fees and costs when a litigant proceeding in a representative capacity has achieved a "substantial benefit" for a class of persons).

Plaintiffs' request follows the lodestar-adjustment method required by California law: reasonable hourly rates multiplied by hours reasonably spent, adjusted to reflect other factors such as contingent risk: "[T]he unadorned lodestar reflects the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider."  *Ketchum,* 24 Cal.4th at 1138; *see Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d 975, 984 (N.D. Cal. 2017) (in applying California's fee-shifting statutes, "courts typically use the 'lodestar method,'" and then consider a multiplier).  The lodestar "may be adjusted by the court based on factors including ... (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Ketchum*, 24 Cal. 4th at 1132.

This district's local rules provide that attorneys' fees motions must be supported by declarations containing a "statement of the services rendered by each person for whose services fees are claimed together with a summary of the time spent by each person, and a statement describing the manner in which time records were maintained" as well as a "brief description of relevant qualifications and experience and a statement of the customary hourly charges of each

9

such person or of comparable prevailing hourly rates or other indication of value of the services." N.D. Cal. L.R. 54-5(b); *see Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827 (9th Cir. 2009) (citation omitted) ("In California, an attorney need not submit contemporaneous time records in order to recover attorney fees. Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees, even in the absence of detailed time records.") (internal citations omitted).

As detailed below and in the declarations submitted with this Motion, Plaintiffs' request for attorneys' fees and expenses is reasonable and well-supported.

**B.      Plaintiffs' Lodestar Is Reasonable.**

Class counsel's lodestar through March 11, 2019 is $3,242,407.50, based on more than 5,100 billable hours of work over four years, all of which is documented by counsel's contemporaneous time records. *See* Olivier Decl. ¶¶ 6-12, 58, Exs. A-F; Kosinski Decl. ¶¶ 7-8, Ex. A; Declaration of James E. Miller ("Miller Decl.") ¶¶ 8-11, Ex. A. This lodestar reflects counsel's careful exercise of billing judgment. Olivier Decl. ¶¶ 8, 60; Kosinski Decl. ¶¶ 7-8; Miller Decl. ¶¶ 8-13, 17-18. As detailed below, Class counsel's hourly rates and the time Class counsel spent achieving the Class recovery are reasonable.

**1.    Class Counsel's Hourly Rates Are Reasonable.**

Under California law, Plaintiffs' attorneys are entitled to their requested rates if those rates are "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740, 783 (2002); *see Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) ("the established standard when determining a reasonable hourly rate is the "'rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation'") (citation omitted). The reasonable hourly rate "must be based on the 'experience, skill, and reputation of the attorney requesting fees' as well as 'the rate prevailing in the community for similar work performed by [comparable] attorneys....'" *Rodman*, 2018 WL 4030558, at *6 (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended by 808 F.2d 1373 (9th Cir. 1987)).

10

"The relevant community is typically the forum—here, San Francisco." *Id.* The complexity of the case also informs the reasonableness of hourly rates. *Santiago v. CACH LLC*, No. 13-CV-02234-JST, 2013 WL 5945805, at *5 (N.D. Cal. Nov. 4, 2013). "The lodestar should be computed either using an hourly rate that reflects the prevailing rate as of the date of the fee request to compensate class counsel for delays in payment inherent in contingency-fee cases, or using historical rates and compensating for delays with a prime-rate enhancement." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

Here, counsel's current hourly rates are reasonable in light of their significant experience, expertise, and skill. Class counsel here are experienced, highly regarded members of the bar with extensive expertise in the area of class actions, complex litigation, and wage and hour claims like those at issue here. Olivier Decl. ¶¶ 13-19; Kosinski Decl. ¶¶ 12-21; Miller Decl. ¶¶ 9-17. Lead Class counsel Monique Olivier has over 20 years of experience litigating employment and other complex civil cases. Alison Kosinski has over ten years of experience as an employment litigator. James E. Miller has over 27 years of experience in complex and class action litigation. They have each obtained significant recoveries for their clients, many of whom are lower income. They have also consistently received recognition in the community for their work in employment and class action cases. *Id.*

In addition, courts have consistently approved Class counsel's hourly rates. *See, e.g.*, *Bowerman v. Field Asset Services,* 13-cv-00057-WHO, Dkt. 464 (N.D. Cal.); *Ambrosio v. Cogent Communications, Inc.*, 3:14-cv-02182-RS, Dkt. 169 (N.D. Cal.); *Balderas v. Massage Envy*, No. 12-cv-06327 NC, Dkt. Nos. 69-1, 78 (N.D. Cal.); *Bell v. Delta Air Lines*, No. 13-cv-01199 YGR, Dkt. Nos. 59-1, 67 (N.D. Cal.); *Guifu Li v. A Perfect Day Franchise, Inc.*, 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012); *Braga v. AccentCare, Inc.*, No. CGC-07-467071 (Super. Ct. San Francisco County). Olivier Decl. ¶ 27.

Likewise, the hourly rates charged by the attorneys and staff at Shepherd, Finkelman, Miller & Shah, LLP have been routinely approved by courts throughout the United States. *See, e.g.*, *In re: Caterpillar, Inc. C13 and C15 Engine Products Liability Litig.*, MDL No. 2540 (D.N.J.)

[Dkt. No. 54]; *Q+Food v. Mitsubishi Fuso Truck of America, Inc.*, 3:14-cv-06046 (D.N.J.) [Dkt 70]*; In re: Ford Motor Co. Spark Plug and 3-Valve Engine Products Liability Litigation*, Case No. 1:12-md-02316-BYP (N.D. Oh. 2016) [Dkt. 122]; *Corson v. Toyota Motor Sales U.S.A., Inc.*, Case No. 1:12-cv-8499-JGB (C.D. Ca. 2016) [Dkt. 107]; *Allison Gay v. Tom's of Maine, Inc.*, Case No. 0:14-cv-60604-KMM (S.D. Fl. 2016) [Dkt. 43]; *Trewin v. Church and Dwight, Inc.*, Case No. 3:12-cv-01475-MAS-DEA (D.N.J. 2015) [Dkt. 68]; *Golden Star, Inc. v. Mass Mut. Life Ins. Co.*, Case No. 3:11-30235-MGM (D. Mass. 2015) [Dtk. 55]; *Butler National Corp. v. The Union Central Life Insurance Co.*, Case No. 1-1:12-cv-00177-SJD-KLL (S.D. Oh. 2014) [Dkt. 55]; *In re Whirlpool Corp. Front Loading Washer Products Liability Litigation*, Case No. 1:08-WP-65000 (N.D. Oh. 2016) [Dkt. 656]; *Henderson v. Volvo Cars of North America, LLC*, 2013 WL 1192479 (D.N.J. March 22, 2013).  Miller Decl. ¶ 13.

The billing rates of Class counsel's attorneys are also commensurate with, and in fact often below, prevailing rates in the San Francisco Bay Area for attorneys with comparable skill and experience litigating class actions.  Olivier Decl. ¶ 28; Kosinski Decl. ¶¶ 22-25; Miller Decl. ¶ 13. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (approving for purposes of lodestar cross-check rates ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals in securities class action);  *Villalpando v. Exel Direct Inc.*, No. 3:12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 182521, at *3 (N.D. Cal. Dec. 9, 2016) (approving hourly rates of $375 to $795 for attorneys, where $795 was for attorneys with 21 years of experience in wage class action); *Buckingham v. Bank of Am.*, No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *13 (N.D. Cal. July 11, 2017) (approving rates of $375 to $675 per hour for attorneys, where $675 was for an attorney with 17 years' experience, and finding that "Class counsel's billing rates are clearly reasonable for the market; similar and higher rates have been approved in this District."); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 U.S. Dist. LEXIS 11353,  at *37 (N.D. Cal. Jan. 30, 2015) ("[i]n the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff

12

from $150 to $240"); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 48540, at *4 (N.D. Cal. Mar. 31, 2014) (approving rates of class action firms including $725/hour for partner in practice for 21 years, $675/hour for partner in practice for 19 years, $550/hour for partner in practice for 12 years and paralegal rates from $240 to $295); *see also In re Amgen Sec. Litig.*, CV7-2536 PSG (PLAx) 2016 U.S. Dist. LEXIS 148577 at *27-28 (C.D. Cal. 2016) (finding reasonable hourly rates of "$750 to $985 for partners, $500 to $800 per hour for 'of counsels'/senior counsel, and $300 to $725 per hour for other attorneys"); *Perfect 10, Inc. v. Giganews, Inc.,* No. CV 11-07098-AB SHx, 2015 WL 1746484, at *15 (C.D. Cal. Mar. 24, 2015), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (finding rates of $825 - $930 per hour for senior partners, $610 - $750 per hour for junior partners, and $350 - $690 per hour for associates, reasonable).[3]

Further, although the rates in the Bay Area market are typically higher than those in the Washington D.C area, the hourly rates sought by Class counsel are also below the Adjusted Laffey Matrix, the tool that sets forth reasonable rates in the Washington D.C. area that courts in that area and elsewhere have applied (http://www.laffeymatrix.com/see.html).  For example, under the Matrix, the reasonable hourly rate (not adjusted for the Bay Area or for any class action expertise) for a 20+ year attorney would be $894, while the attorneys with like experience here seek $700-850 per hour.  Similarly, the reasonable hourly rate for an 8 to 10 year attorney would be $658, while the attorneys with like experience here seek $500/hour.  The accepted Laffey Matrix rates are considerably higher than the rates Class counsel is seeking here.  Olivier Decl. ¶ 29; Kosinski Decl. ¶ 25.

Therefore, Class counsel's hourly rates are in line with prevailing market rates and are reasonable.

---

[3] In assessing the reasonable hourly rates and looking to like cases, the comparison "extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject."  *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010) (holding that "the proper scope of comparison is not so limited" as to only other attorneys involved in prison litigation); *see Rodriguez v. Cty. of Los Angeles*, 96 F. Supp. 3d 1012, 1023 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018).

13

1

2
                 **2.**       **Class Counsel's Time Was Reasonably Spent.**

3
       The number of hours for which Plaintiffs' counsel request compensation also is

4
reasonable. Under California law, every hour reasonably spent on this action is compensable:

5
"Absent special circumstances rendering the award unjust, an attorney fee award should ordinarily

6
include compensation for *all* the hours *reasonably spent*, including those relating solely to the

7
fee." *Ketchum*, 24 Cal.4th at 1133 (emphasis in original); *see also Beaty*, 222 F.3d at 612 (in fee-

8
shifting cases, attorneys "ordinarily…can anticipate receiving full compensation for every hour

9
spent litigating a claim…'").

10
       Hours are reasonable if "at the time rendered, [they] would have been undertaken by a

11
reasonable and prudent lawyer to advance or protect his client's interest …[.]" *Moore v. Jas. H.*

12
*Matthews & Co.*, 682 F.2d 830, 839 (9th Cir. 1982).  In making that determination, courts must

13
look at "the entire course of the litigation, including pretrial matters, settlement negotiations,

14
discovery, litigation tactics, and the trial itself ...[.]" *Vo v. Las Virgenes Municipal Utility Dist.*,

15
79 Cal.App.4th 440, 447 (2000).  Generally, the attorneys' hours are justified if they were

16
"reasonably expended in pursuit of the ultimate result achieved in the same manner that an

17
attorney traditionally is compensated by a fee-paying client."  *Hensley v. Eckerhart*, 461 U.S. 424,

18
431 (1983); *see Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).[4]

19
       Class counsel undertook substantial work to obtain the Class judgment.  This included,

20
among other things, pre-suit investigation, drafting and amendment of pleadings, legal research

21
on numerous complex issues, fact-intensive interviews with Plaintiffs and Class members,

22
extensive motion practice, lengthy written discovery, approximately 20 depositions, class

23
—————————————

24
[4] In *Moreno*, the Ninth Circuit noted:

25
> It must also be kept in mind that lawyers are not likely to spend unnecessary time on
> contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to
> both the result and the amount of the fee. It would therefore be the highly atypical civil
> rights case where plaintiff's lawyer engages in churning. By and large, the court should
> defer to the winning lawyer's professional judgment as to how much time he was required
> to spend on the case; after all, he won, and might not have, had he been more of a slacker.

26

27

28
534 F.3d at 1112.

certification and a motion for decertification, multiple summary judgment motions, extensive expert discovery, and a motion for judgment. *See generally* Olivier Decl.; Kosinski Decl.; Miller Decl. Counsel's sworn declarations and attached time summaries fully document the attorney, paralegal, and law clerk hours spent in the successful prosecution of this action. *See id*. These time records are *prima facie* evidence that counsels' hours were reasonable. *See Horsford v. Board of Trustees of California State University*, 132 Cal.App.4th 359, 396 (2008) ("the verified time statements of the attorneys, as officers of the court, are entitled to credence in the absence of a clear indication the records are erroneous"). This Court has approved the use of tables summarizing the amount of work timekeepers performed at different stages of the litigation. *See Thomas v. MagnaChip Semiconductor Corp.,* No. 14-CV-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *Rodman,* 2018 WL 4030558, at *7.

As Class counsel's declarations make clear, the time reported was devoted to necessary and worthwhile tasks, and was calculated at counsel's reasonable billing rates. Additionally, tasks were delegated when possible to associate attorneys or legal assistants. Olivier Decl. ¶¶ 32, 59; Kosinski Decl. ¶¶ 26-33; Miller Decl. ¶¶ 13, 16-18.

The number of hours that Class counsel devoted to this case is reasonable. *See, e.g., Ketchum*, 24 Cal.4th at 1133; *Serrano*, 20 Cal.3d at 49 (counsel are entitled to compensation for all hours reasonably expended); *Hensley*, 461 U.S. at 435-36; *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000); *Cabrales v. County of Los Angeles*, 935 F.2d 1050, 1052-53 (9th Cir. 1991). As discussed above, Class counsel were required to expend considerable time and resources to investigate and litigate this case to a successful judgment.

In addition, Class counsel prosecuted the claims at issue efficiently and effectively, making every effort to prevent the duplication of work that might have resulted from having multiple firms working on this case. Tasks were reasonably divided among law firms to ensure avoid replicating work. Olivier Decl. ¶¶ 32, 59. Further, tasks were delegated appropriately among partners, associate attorneys and other staff according to their complexity. *Id.* Class counsel's contemporaneous time records were carefully reviewed and duplicative or inefficient

work, as well as *de minimis* time billed by attorneys who had little participation in the action, was deleted.  Olivier Decl. ¶ 8, 60; Miller Decl. ¶ 18.  In addition, Class counsel has excised all time from their request that involved the payment of attorneys' fees relating to the Court's order granting sanctions to Plaintiffs, as those sums have been paid.  Olivier Decl. ¶ 53

### C.     A Positive Multiplier Is Appropriate.

Plaintiffs seek a multiplier of 4 times the base lodestar in recognition of the results obtained and the skill and risk involved.  "California law provides that while 'the unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk, extraordinary skill, or any other factors a trial court may consider[.]'"  *Ridgeway*, 269 F. Supp. 3d at 995 (quoting *Ketchum*, 24 Cal.4th at 1138).  The purpose of a multiplier for contingent risk is to bring the financial incentives for attorneys enforcing important rights "into line with incentives … they are paid on a fee-for-services basis."  *Ketchum*, 24 Cal.4th at 1132; *see Rodriguez*, 96 F. Supp. 3d at 1025.  "California courts consider the following '*Ketchum* factors' when determining if a lodestar enhancement is warranted: (1) the novelty and difficulty of the questions involved; (2) the skill counsel displayed in litigating the issues; (3) the extent to which the nature of the litigation precluded other employment by the attorneys; and (4) the contingent nature of the fee award. Enhancements, or multipliers, are 'intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or the delay in payment of attorney fees.'"  *Rodriguez, 96 F. Supp. 3d at 1025 (quoting Ketchum,* 24 Cal.4th at 1132)*.*

Each of the *Ketchum* factors demonstrate that a 4x multiplier is warranted in this case.

### 1.  This Action Presents Novel, Difficult and Complex Issues.

As set forth above and reflected by the over 369 docket entries (and counting), this case involved many contested legal and factual issues.  This case presented a range of difficulties requiring the efforts of highly skilled and experienced attorneys.  Class counsel's combination of skills in class action litigation and trials and California wage and hour matters, as well as the considerable resources Class counsel were able to contribute in both money and staff time, were

16

critical in obtaining the exceptional results achieved to date in this action.  The sheer number of legal and factual issues raised by Defendants throughout the case speaks to the case's complexity.

As this Court has recognized, the case has raised issues that had not previously been resolved in the courts with respect to the application of California wage laws.  While Plaintiffs are convinced that, under California law, the members of the Class and Subclasses are entitled to their unpaid wages, overtime premiums, meal and rest break premiums, and waiting time penalties, as well as PAGA penalties, this action has presented some challenges.  For example, Defendants have maintained and continue to maintain that Plaintiffs' claims are barred by various preemption doctrines and by the Dormant Commerce Clause.  Defendants repeatedly raised these arguments and also sought to introduce expert testimony in support of those arguments.  Defendants also repeatedly raised arguments as whether Plaintiffs could maintain a Subclass one criteria of which is the residency of the Subclass members.  Olivier Decl. ¶¶ 69-77.

During discovery, there were substantial difficulties in obtaining the necessary information from Defendants.  Practically all discovery requests were met with resistance and involved considerable resources in meeting and conferring and ultimately seeking court intervention on several matters.  Olivier Decl. ¶ 71-72.  When Defendants did produce documents, they were voluminous and unorganized, while often also being incomplete.  In particular, the voluminous Class member flight schedule and pay data was produced in a variety of formats which necessitated Plaintiffs spending significant time and resources to work with their expert and their expert's consultant to write and implement a coding script to import the data into a usable format. *Id.*  These productions significantly increased the difficulty, time and cost.  Review and analysis of these documents took hundreds of hours of attorney, staff and expert time.  In addition, Class counsel had to follow up with Defendants a number of times due to Defendants unwillingness to provide updated Class member data. *Id.*

Defendants also attempted to engage in far-reaching discovery, seeking to propound written discovery on, and depose, each Class member.  Defendants also sought extensive discovery from the Class representatives, deposed each Class representative as well as several

Class member declarants, and deposed Plaintiffs' expert for multiple days.  Olivier Decl. ¶ 72.
Class member outreach in this case was extensive, with Class members regularly communicating
with Class counsel as to the status of the action.  Olivier Decl. ¶ 57.  In addition, Defendants
communicated with the Class as to the status of the proceedings at different points throughout the
litigation, which required Class counsel to expend additional time and resources to address
concerns raised by these communications.  *Id.*

The dispositive motions also presented difficult and complex issues.  Immediately after
Plaintiffs filed their class certification motion, Defendants filed a surprise motion for summary
judgment on their legal defenses, requiring Plaintiffs to seek relief from the Court as to the
briefing and hearing schedule, and then to engage substantial resources to oppose Defendants'
motion while pursuing class certification.  Plaintiffs' motion for class certification required a
detailed presentation of the evidence marshalled in support, as well as a preliminary expert report.
As a result of Class counsel's thorough review of the evidence and research of the legal issues,
Plaintiffs were able to move successfully for summary judgment on all claims, and also oppose
Defendants' attempt to decertify the Class.  Dkt. 316, 317.  After those motions were resolved,
Plaintiffs were also able to obtain an order preventing one of Defendants' affirmative defenses,
and an order granting all of Plaintiffs' requests for damages, and the vast majority of the penalties
Plaintiffs' sought on behalf of the state of California.  Dkt. 345, 365.

**2.  Class Counsel Demonstrated Skilled Advocacy and Obtained Exceptional Results.**

"The 'results obtained' factor can properly be used to enhance a lodestar calculation where
an exceptional effort produced an exceptional benefit."  *Graham,* 34 Cal. 4th at 582; *see Rodman,*
2018 WL 4030558, at *3 (finding that exceptional result for the class supported enhancement of
fee award).  Here, the Claimants recovered over $77 million in recovery for the Class and the
State as a result of Class counsel's efforts.  This amount reflects the full amount of compensatory
damages and statutory penalties on behalf of the Class and Subclasses, and only a modest
discretionary reduction in the full amount of civil penalties sought.  Dkt. 365.

1

2
      Throughout the action, Plaintiffs prevailed on virtually all legal issues, after

3
comprehensive briefing, motion practice and oral argument, at nearly every stage of the case.  The

4
Court certified the Class, approved the Class Notice Plan that Plaintiffs developed with minor

5
changes, granted summary judgment to Plaintiffs on all claims and on their entitlement to

6
damages (no easy feat for Plaintiffs), granted Plaintiffs' motion for sanctions pursuant to Rule 37,

7
and granted Plaintiffs' motion for judgment as to the amounts of damages and penalties.  The

8
Court also largely denied Defendants' motion for summary judgment and motion for

9
decertification.

10
      Class counsel was able to secure exceptional results for the Class and Subclasses.

11
Accordingly, Class counsel's skill and the exceptional results achieved to date warrant the

12
application of the multiplier sought here.

### 3.  This Action Precluded Other Significant Employment.

13
      The court may also consider "the extent to which the nature of the litigation precluded

14
other employment by the attorneys."  *Ketchum*, 24 Cal.4th at 1132.  As a result of the extremely

15
time-intensive nature of this case arising from Defendants' strategy as well as the resources

16
generally necessary to staff this expansive case, Class counsel was unable to undertake

17
representation of many other clients and/or cases since this action was first filed in 2015, which

18
Class counsel would have undertaken had it not been for the time and resources necessary to

19
prosecute this action.  Olivier Decl. ¶¶ 63-68; Kosinski Decl. ¶¶ 35-36.

20
      For the first few years of this action, this action took up the majority of Ms. Olivier and

21
Ms. Kosinski's billable time during long stretches of the litigation.  Olivier Decl. ¶¶ 63-68;

22
Kosinski Decl. ¶¶ 35-36.  Even after SFMS entered the case as co-counsel, the discovery, motion

23
practice and pretrial burden on Class counsel was significant.  Class counsel were repeatedly

24
forced to turn down new employment due to the demands that this case had on their time.  Olivier

25
Decl. ¶¶ 63-68; Kosinski Decl. ¶¶ 35-36.

26
      This factor weighs in favor of the multiplier Plaintiffs seek.

27

28

1

**4.   This Action Was Undertaken on a Completely Contingent Basis.**

Class counsel has taken a huge risk to litigate this case on behalf of the Class.  In total, over 5,100 hours of attorney and staff time, plus over $250,000 in out-of-pocket expenses, have gone unpaid to date.  These significant outlays of resources were invested over the course of four years, without any guarantee that there would be any compensation at all, as the representation is being handled solely on a contingency basis.  Olivier Decl. ¶¶ 63-68; Kosinski Decl. ¶¶ 34-36; Miller Decl. ¶¶ 8-9.

An enhancement based on contingent risk "is intended to approximate market-level compensation for such services, which typically includes a premium for the risk of nonpayment or delay in payment of attorney fees."  *Ketchum*, 24 Cal.4th at 1138.  As the California Supreme Court has explained, a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions.  If he is paid no more, competent counsel will be reluctant to accept fee award cases."  *Id.* at 1133.  A risk enhancement is "earned compensation; unlike a windfall, it is neither unexpected nor fortuitous.  Rather it is intended to approximate market-level compensation for such services which typically pay a premium for the risk of nonpayment or delay in payment of attorney's fees."  *Id.* at 1138; *see Hefler*, 2018 WL 6619983, at *13 (noting "heavy financial burden," contingent nature of fee, and risks in litigating the case supported fee award).

The risk in prosecuting this action has been significant.  Defendants vigorously defended this case from the outset over four years ago, challenging every major milestone, including Plaintiffs' motion for class certification, summary judgment, and motion for judgment.  Plaintiffs beat back an early summary judgment motion from Defendants, and also defeated their attempts to seek reversal of the class certification and summary judgment orders through reconsideration motions, a decertification motion and an unsuccessful bid to certify the case for interlocutory review.  Defendants also sought to reverse every adverse discovery ruling and vigorously opposed every motion brought be Plaintiffs. Olivier Decl. ¶¶ 67-77; *see Rodman,* 2018 WL 4030558, at *3 (noting that class counsel "faced significant risks by engaging in substantial motion practice,

PLAINTIFFS' MOTION FOR FEES AND EXPENSES                    CASE NO.  15-cv-02277-JST

extensive discovery, and hard-fought litigation surrounding essentially every conceivable issue" which supported enhancement of fee award).

Class counsel has undertaken this litigation on a purely contingent basis.  Class counsel have not been paid for any of their time spent on this action, nor have they been reimbursed for the substantial out-of-pocket expenses they incurred in the prosecution of this action.  They have not charged Plaintiffs nor any class member any fees or costs to litigate their claims in this action. Olivier Decl. ¶¶ 63-68; Miller Decl. ¶¶ 8-9.

DPLO was a very small firm of five attorneys; OSC has only three.  SFMS has approximately 25 attorneys and, similarly, does most of its work on a contingency fee basis. Going head-to-head with a firm of over 1,500 attorneys and against a large corporation on behalf of workers presented a tremendous amount of financial risk to Class counsel.  Olivier Decl. ¶ 64; Kosinski Decl. ¶¶ 34-36.  Class counsel took this case without any assurance that they would be paid any fees or reimbursed any costs for our efforts or expenditures.  Class counsel had no way of anticipating the course taken by this case, but took the risk of expending all necessary hours and out-of-pocket expenses, against a formidable defendant, to ensure vindication of the Class.

The risks in this case were compounded by the vigorous and skillful manner in which defense counsel represented their client.  Throughout the case, Defendants' counsel aggressively pushed back against Plaintiffs' claims.  They resisted Plaintiffs' efforts at discovery, opposed class certification, filed a motion for summary judgment, sought interlocutory review, sought to stay the action, filed a motion for decertification, opposed Plaintiffs' motion for summary judgment, opposed Plaintiffs' motion for sanctions under Rule 37, and opposed Plaintiffs' motion for judgment.  Defendants also aggressively sought broad discovery, brought several discovery motions to the Court, and sought review of all of Magistrate Judge Corley's rulings against them. Defendants also denied and continues to deny the allegations against it and has, at various times, presented legal defenses it believes it has to Plaintiffs' claims.  Plaintiffs' repeated attempts to reach compromise with Defendants on even the most minor scheduling matters were often met with resistance and a refusal to compromise.  *See, e.g.,* Olivier Decl. ¶¶ 30, 33-37, 41.  As a result

21

of the highly complex and contentious nature of this litigation, Class counsel had to dedicate an enormous amount of time and resources to it.

All this contributed to the risk of recovering nothing or close to nothing for Class counsel's commitment and investment into the case.  Given these uncertainties, Class counsel undertook significant risk to litigate the case through judgment and secure the exceptional results for the Class.

The significant contingent risk in this action weighs in favor of a 4x multiplier.  Given Defendants' hard-nosed litigation strategy and unwillingness to settle the case on a reasonable basis at any stage of the litigation, Class counsel faced substantial risks in prosecuting the Class claims, and had to invest substantial resources to meet every challenge.

The requested multiplier is also supported by those awarded in similar cases.  *See, e.g.*, *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (finding a multiplier of 6.85 "falls well within the range of multipliers that courts have allowed."); *Buckingham*, 2017 U.S. Dist. LEXIS 107243, at *13 (approving a multiplier of 4.89 multiplier in a wage and hour class action); *Gutierrez v. Wells Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015) (approving a multiplier of 5.5 "on account of the fine results achieved on behalf of the class, the risk of non-payment they accepted, the superior quality of their efforts, and the delay in payment."); *In re Apple iPhone/iPod Warranty Litig.*, 40 F. Supp. 3d 1176, 1181 (N.D. Cal. 2014) (approving a 3.62 multiplier); *Steinfeld*, 2014 U.S. Dist. LEXIS 48540, at *4 (finding 3.5 multiplier appropriate for purposes of lodestar cross-check where Class counsel accepted the case on a contingency basis, obtained an excellent result for the Class, continued to work on the case throughout the settlement and after the fee motion filed); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting in multipliers in this range or higher"); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) (multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and stating that "[m]ultipliers in the 3-4 range are common"); *see also Vizcaino*, 290

22

F.3d at 1051, n.6 (multiples ranging from 1.0 to 4.0 are frequently awarded in common fund cases; affirming order awarding common fund fees where lodestar cross-check resulted in a multiplier of 3.65).[5]

### 5. This Action Is in the Public Interest.

Class counsel's achievements with regard to the factual and legal issues in this case will deter employers from engaging in similar conduct and encourage employees to enforce their rights. *See Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 340 (2004) ("Labor Code section 1194 confirms "a clear public policy ... that is specifically directed at the enforcement of California's minimum wage and overtime laws for the benefit of workers").

### D.     Class Counsel Are Entitled to Payment of Their Reasonable Expenses.

Class counsel also seeks expenses incurred in connection with the prosecution of the litigation.  To date, Class counsel has incurred expenses totaling over $250,000.  Olivier Decl. ¶ 78, Ex. G; Miller Decl. ¶ 14-15.  These expenses are separate from the costs sought under Plaintiffs' Bill of Costs, filed concurrently herewith.  Dkt. 371.

Class counsel is also entitled to payment of their reasonable expenses.  Fed. R. Civ. P. 23(h).  An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that "would normally be charged to a fee paying client."  *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 n.7 (9th Cir. 1986)); *Hefler*, 2018 WL 6619983, at *16.  Such costs typically include "photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018); *see also* Cal. Civ. P. Code § 1033.5(a)(1),

---

[5] Courts have awarded multipliers ranging from 0.6 to 19.6.  *See Vizcaino,* 290 F.3d at 1051 n.6 (citing cases)*; Steiner,* 248 Fed. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier); *In re Merry-Go-Round Enterprises, Inc.,* 244 B.R. 327 (Bankr. D. Md. 2000) (multiplier of 19.6); *In re Rite Aid Corp. Sec. Litig.,* 146 F. Supp. 2d 706, 736, n.44 (E.D. Pa. 2001) (multiplier of 4.5- 8.5)*; In re Rite Aid Corp. Sec. Litig.,* 362 F. Supp. 2d 587 (E.D. Pa. 2005) (multiplier of 6.96); *In re RJR Nabisco, Inc. Sec. Litig.,* 1992 WL 210138 (S.D.N.Y Aug. 24, 1992) (multiplier of 6); *Gutierrez v. Barclays Group,* No. 10-CV-1012 DMS BGS, 2012 WL 12868392) (S.D. Cal. 2010) (multiplier of 4.55); *Kramer v. Autobytel, Inc.*, No. 10-CV-02722-CV, 2012 U.S. Dist. LEXIS 185800 (N.D. Cal. 2012) (multiplier of 2.69).

(4), and (7) (Court must award costs for court fees, service of process fees, and witness fees); Cal. Civ. P. Code § 1033.5(a)(3) (Court must award deposition-related costs for transcribing, recording, and travel).  This Court has stated that to support an expense award, "Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."  *Hefler*, 2018 WL 6619983, at *16.

The Court has discretion to aware reimbursement for other costs if they are "reasonably necessary to the conduct of the litigation, rather than merely convenient or beneficial to its preparation."  *Parkinson*, 796 F. Supp. 2d at 1176 (quoting *Science App. Int'l Corp. v. Sup. Court*, 39 Cal.App.4th 1095, 1103 (1995)).  Class counsel's expenses were all reasonably necessary to the conduct of the litigation: they include electronic research, copying costs, travel costs, and delivery fees necessary to the conduct of this action.  Olivier Decl. ¶¶ 78-79, Ex. G.  Travel expenses were necessary in this action in order to conduct and defend the depositions of percipient and expert witnesses, as well as travel expenses incurred for the Plaintiffs and Class representatives to attend the mediation.  These costs were necessary for the prosecution of this litigation.  *See In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 469 (C.D. Cal. 2014) ("'[e]xpenses such as reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation, exhibits, documents scanning, and visual equipment are typically recoverable.'") *Rutti v. Lojack Corp., Inc.*, No. SACV 06–350 DOC (JCx), 2012 WL 3151077, at *12 (C.D. Cal. July 31, 2012).

IV.     **CONCLUSION**

In light of the substantial and excellent work done, and the exceptional results achieved, and for the reasons articulated above, Plaintiffs respectfully request that their Motion for Attorneys' Fees and Expenses be granted.


Date:   March 13, 2019              OLIVIER SCHREIBER & CHAO LLP

                                    */s/ Monique Olivier*
                                    Monique Olivier


*Additional Plaintiffs' Counsel:*

JAMES E. MILLER (SBN 262553)
(jmiller@sfmslaw.com)
SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP
65 Main Street
Chester, CT 06412
Telephone: (860) 526-1100

KOLIN C. TANG (SBN 279834)
(ktang@sfmslaw.com)
CHIHARU G. SEKINO (SBN 306589)
(csekino@sfmslaw.com)
SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP
1230 Columbia Street, Suite 1140
San Diego, CA 92101
Telephone: (619) 235-2416

JAMES C. SHAH (SBN 260435)
(jshah@sfmslaw.com)
SHEPHERD, FINKELMAN, MILLER AND SHAH, LLP
35 East State Street
Media, PA 19063
Telephone: (610) 891-9880

*Attorneys for Plaintiffs and the Class*