1   OLIVIER SCHREIBER & CHAO LLP
    Monique Olivier (SBN 190385)
2   (monique@osclegal.com)
3   201 Filbert Street, Suite 201
    San Francisco, CA 94133
4   Telephone:  (415) 484-0980

5   KOSINSKI + THIAGARAJ, LLP
    Alison Kosinski (SBN 261676)
6   (alison@ktlawsf.com)
7   Emily Thiagaraj (SBN 284634)
    (emily@ktlawsf.com)
8   201 Filbert Street, Suite 201
    San Francisco, CA 94133
9   Telephone: (415) 230-2860

10  *Attorneys for Plaintiffs and the Class*

11  *Additional Counsel on Signature Page*

12

13              **UNITED STATES DISTRICT COURT**

14            **NORTHERN DISTRICT OF CALIFORNIA**

15

16  JULIA BERNSTEIN, LISA MARIE SMITH,        Case No. 15-cv-02277-JST
    and ESTHER GARCIA, on behalf of
17  themselves and all others similarly situated,   **CLASS ACTION**

18                         Plaintiffs,         **DECLARATION OF MONIQUE
                                               OLIVIER IN SUPPORT OF**
19                   vs.                       **PLAINTIFFS' NOTICE OF MOTION
                                               AND MOTION FOR ATTORNEYS'**
20  VIRGIN AMERICA, INC.; and Does 1-10,       **FEES AND EXPENSES**
    inclusive;
21                                             Date:   May 9, 2019
                           Defendants.         Time:   2:00 p.m.
22                                             Crtrm.: Courtroom 9; 19th Floor
                                               Judge:  Hon. Jon S. Tigar
23

24

25

26

27

28

---

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES          CASE NO.  15-cv-02277-JST

I, Monique Olivier, declare as follows:

1.      I am a member of the State Bar of California and admitted to practice law in all the courts of the State of California and in the United States District Court for the Northern District of California.  I am in good standing with the Bar and with this Court.  I am a partner in the law firm Olivier Schreiber & Chao LLP ("OSC") and am counsel for Plaintiffs and the Class in this action.

2.      The facts contained in this declaration are within my personal knowledge, and I could and would testify truthfully to these facts if called to do so under oath.  I submit this declaration in support of Plaintiffs' Motion for Attorneys' Fees and Expenses.

3.      Prior to joining my current firm, I was a partner at Duckworth Peters Lebowitz Olivier LLP ("DPLO").  DPLO has actively participated in all aspects of this action for four years along with co-counsel Kosinski + Thiagaraj LLP ("KT").  Since founding OSC, I have remained actively involved in this matter as lead Class counsel.  In addition, when it became clear in 2017 that there would be significant post-certification discovery, summary judgment and pretrial work, we associated Shepherd Finkelman Miller & Shah LLP ("SFMS") as co-counsel.  The firms are collectively referred to below as Class counsel.

4.      Below I provide a summary of the fees and costs sought and an explanation of the documentation submitted in support thereof, a summary of my firms' extensive experience and expertise in class action litigation, the hourly rates for the attorneys and staff at my firms,  a description of the allocation of work and billing practices utilized in this case, and a discussion of the exceptional results achieved to date in light of the complexity and novelty of the legal issues and the risks to Class counsel in undertaking this contingency litigation.

5.      Additional information about KT's experience and work is contained in the declaration of Alison Kosinski in support of Plaintiffs' motion for attorneys' fees and costs, filed concurrently herewith ("Kosinski Declaration"). Additional information about SFMS's experience and work is contained in the declaration of James E. Miller in support of Plaintiffs' motion for attorneys' fees and costs, filed concurrently herewith ("Miller Declaration").

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES                    CASE NO.  15-cv-02277-JST

**<u>SUMMARY OF FEES AND EXPENSES REQUESTED</u>**

6.       Class counsel has dedicated significant time and resources to prosecuting the litigation on behalf of the class. Class Counsel's legal services were performed on a wholly contingent basis.  Each firm has maintained detailed time records regarding the work performed in connection with the prosecution of the litigation.

7.       As of March 11, 2019 the total combined lodestar for Class counsel for prosecuting and resolving the claims to date in this action is $3,242,407.50, representing over 5,100 hours of Class Counsel's time.  All of Class counsel's time is documented in counsel's contemporaneous time records.

8.       This lodestar also reflects counsel's careful exercise of billing judgment to remove any inefficient or duplicative time.  The portion of this total lodestar attributable to DPLO is $1,471,612.50.   The portion of this total lodestar attributable to OSC is $298,495.  The portion of the total lodestar attributable to KT is $795,245, and is documented in the Kosinski Declaration.  The portion of the total lodestar attributable to SFMS is $677,055, and is documented in the Miller Declaration.

9.       Plaintiffs seek a lodestar adjustment of four times the lodestar in recognition of the substantial risks taken and the extraordinary results achieved on behalf of the Class.

10.       Plaintiffs also request payment of expenses in the amount of $250,775.81.  These expenses are separate from, and in addition to, the Bill of Costs, filed concurrently herewith.

11.       Attached as Exhibit "A" is a chart reflecting Class counsel's lodestar to date ("Total Lodestar Chart"), which is broken down by law firm and timekeeper for whom recovery is sought.  This chart and all charts accompanying this Declaration, as well as the Kosinski Declaration and the Miller Declaration, were prepared based upon the records created contemporaneously during the pendency of the litigation.  Attached as Exhibit "B" is a chart reflecting (a) the names of the timekeepers from all firms who billed time to this case for which recovery is sought; (b) the totals by category of work for each firm, (c) the total number of hours they billed by category of work; and (d) their total hours.  Attached as Exhibit "C" is a chart

reflecting the hours by category of work for the timekeepers for which recovery is sought and their total hours.  Attached as Exhibit "D" is a chart reflecting the total time devoted to this representation by all firms by month.  Attached as Exhibit "E" are charts reflecting the time spent by category of work by month for each timekeeper at my current firm, OSC, for which recovery is sought and the total lodestar for each attorney based upon their current hourly rates.  Attached as Exhibit "F" are charts reflecting the time spent by category of work by month for each timekeeper at my former firm, DPLO, for which recovery is sought and the total lodestar for each attorney based upon their current hourly rates.

12.      Attached as Exhibit G is a chart of all expenses sought by category and by firm ("Total Expenses Chart").

**EXPERIENCE OF CLASS COUNSEL**

13.      I am a partner of Olivier Schreiber & Chao LLP, a San Francisco-based firm representing individuals and classes in civil litigation and appeals.  OSC specializes in employment, consumer, and civil rights matters.  All of OSC's partners are leaders in their fields and are widely recognized as experienced and capable litigators on behalf of plaintiffs.  Christian Schreiber and Katharine Chao graduated from the University of California at Los Angeles Law School and the University of California at Berkeley Law School, respectively, in 2006, and each has over twelve years of experience practicing law, with Mr. Schreiber focusing his practice on complex class actions and Ms. Chao focusing her practice on complex employment matters.  More information on our firm is available at www.osclegal.com.

14.      Prior to forming OSC this year, I was a partner at Duckworth Peters Lebowitz Olivier LLP.  DPLO is a San Francisco-based firm specializing in individual and complex litigation and appeals in the areas of employment, civil rights and consumer protection.  All of DPLO's founding partners have been named "Northern California Super Lawyers" by their peers, in recognition of their outstanding legal achievements and high ethical standards, every year since 2011.  More information on DPLO is available at www.dplolaw.com.

15.     I have been practicing law since 1997.  Since that time, my practice has been devoted in substantial part to complex litigation and class actions.  In particular, I have significant experience as lead counsel in employment, civil rights, and consumer class actions as well as appeals involving class action issues.  Every year since 2015, I have been recognized by Northern California Super Lawyers as one of the top women lawyers in Northern California.  In 2016 and 2017, the Daily Journal named me as one of the leading labor and employment lawyers in California.

16.     I am also an Appellate Specialist certified by the California State Bar Board of Legal Specialization.  In 2016, I was the recipient of the California Lawyer of the Year (CLAY) Award for my appellate work.

17.     I serve as a Mediator and an Early Neutral Evaluator for the U.S. District Court, Northern District of California's ADR Program and am a member of the Northern District's Pro Bono Panel.  I am also the San Francisco Vice President for the Federal Bar Association's Northern California Chapter, a member of the Board of Directors of the National Association of Consumer Advocates, and a former member of the Lawyer Representative Committee for the Northern District.  I am regularly invited to speak on class action and appellate issues, and have co-chaired the Federal Bar Association Northern District Chapter's Class Action Symposium since 2015.

18.     I received my J.D. (Order of the Coif) from the U.C. Davis King Hall School of Law and my B.A. from Boston College. I served as a judicial extern to the Hon. Lawrence K. Karlton, Eastern District of California.   Prior to founding DPLO and then OSC, I was the managing attorney at The Sturdevant Law Firm where I litigated employment, civil rights and consumer class actions nationally.

19.     OSC and DPLO have had significant success in litigating complex employment and civil rights cases.  A few examples of our work include:

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES                    CASE NO.  15-cv-02277-JST

- *Bowerman v. Field Asset Services, Inc., et al.*, No. 13-CV-00057-WHO (N.D.Cal.) (obtaining class certification and summary judgment, and obtaining verdict and judgment for first ten class members in excess of $7.5 million (including fees)).

- *Ambrosio et al. v. Cogent Communications, Inc.*, Case No. 14-02182 RS (certified class action on behalf of California sales personnel for overtime violations, resulting in classwide settlement of $3M).

- *Bell v. Delta Air Lines,* No. 13-cv-01199 YGR (United States District Court, Northern District of California) (class action on behalf of California airline cargo workers for overtime violations, resulting in classwide settlement of $1.4M).

- *Balderas v. Massage Envy,* No. 12-cv-06327 NC (United States District Court, Northern District of California) (class action on behalf of approximately California massage therapists for reimbursement of licensing and insurance costs, resulting in classwide settlement of $519,000 plus significant injunctive relief).

- *Kirola v. City and County of San Francisco*, No. 14-17521 (United States Court of Appeals for the Ninth Circuit (securing reversal of judgment in favor of defendant following bench trial of this action seeking disability access to city services and programs).

- *Li v. A Perfect Day Franchise, Inc. et al*., No. CV 10-01189 LHK (PSG) (United States District Court, Northern District of California) (class action on behalf of low wage workers subjected to massive wage violations, resulting in judgment over $13M).

- *Mansourian v. Regents of the Univ. of Calif.,* 602 F.3d 957 (9th Cir. 2010) (securing reversal of judgment in favor of defendant and removing procedural hurdles for women seeking to enforce their rights under Title IX).

- *Brust v. Regents of the University of California*, No. 2:07-cv-01488-FCD-EFB (United States District Court, Eastern District of California) (class action on behalf of women students alleging sex discrimination in athletics under Title IX and the Equal

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES          CASE NO.  15-cv-02277-JST

Protection Clause of the U.S. Constitution, resulting in injunctive relief and monetary restitution for class).

20.     I am lead counsel in this action and have been intimately involved in all aspects of this litigation.  My work prior to judgment consisted of: performing due diligence prior to filing the complaint; directing the work of the attorneys and staff; coordinating assignments with our co-counsel; drafting the original complaint and amended complaints; developing our litigation strategy; preparing for and participating in early mediation; supervising document review and analyzing key documents; preparing and directing written discovery; responding to written discovery; coordinating deposition strategy and related document productions; interviewing class members; defending Plaintiffs' depositions and taking the depositions of Defendants' witnesses and experts; drafting and editing key motions including class certification, motion for summary judgment, and oppositions to Defendants' motion for summary judgment and decertification; working closely with Plaintiffs' expert on analysis of data and preparation of original and supplemental expert reports; and preparing Plaintiffs' motion for judgment and supporting documents.

21.     I have also prepared, reviewed and revised the fee motion and accompanying materials. I have been primarily responsible for all post-judgment proceedings.

22.     Thomas E. Duckworth was a partner at DPLO, and is currently a partner of Duckworth Peters LLP.  He is a civil litigator with over 25 years of experience, specializing in employment law.  He assisted in pre-litigation due diligence, review and editing of class certification and summary judgment briefing, and review of the expert data and reports.

23.     Erika Heath was of counsel to DPLO, and is currently of counsel to Duckworth Peters LLP.  She is a civil litigator with over 9 years of experience, specializing in consumer and employment matters.  Erika researched and wrote meet and confer correspondence and briefing on discovery matters, handled depositions of defense witnesses, and researched and drafted sections of the opposition to Defendants' motion for summary judgment.

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES          CASE NO.  15-cv-02277-JST

24.     Aseil Mohmoud was an associate attorney at DPLO.  She graduated from law school in 2014 and was admitted to practice in California that same year.  She performed work under my direction on this case including document review and drafting of discovery responses.

**CLASS COUNSEL'S HOURLY RATES**

25.     Our lodestar for this case is based on the rates currently charged in all cases by the timekeepers, except as explained below.  The hourly rates range from $180 for law clerk work up to $750 for experienced litigation partners. We charge different rates for different attorneys within each category (e.g., partners, associates, etc.), based on a variety of factors, including years of practice, years as at the relevant level (e.g., years as a partner, etc.), relevant experience, relative expertise, court decisions approving our rates and rates of other attorneys, and rates of similarly-experienced peers at our firm and other firms.  We perform a similar analysis for our non-attorney timekeepers.  This is consistent for DPLO and OSC.  We continually monitor prevailing market rates charged by both defense and plaintiffs' law firms for individuals with similar levels of skill and experience who are doing comparable work as our attorneys and staff. We gather this information from surveys, the review of other fee applications, and conversations with attorneys in the relevant billing market. We set the billing rates for our firm to be consistent with the prevailing market rates in the private sector for attorneys and staff of comparable skill, qualifications and experience.

26.     My 2019 rate is $750 per hour.  That is the same rate for Mr. Duckworth.  We each have more than 20 years of litigation experience. Ms. Heath's rate is $475 per hour, and Ms. Mohmoud's rate is $350 per hour.  Based on my knowledge and experience, the hourly rates charged by DPLO and OSC are within the range of market rates charged by attorneys of equivalent experience, skill, and expertise.

27.     Multiple courts have approved our usual and customary billing rates.  *See, e.g.*, *Bowerman v. Field Asset Services, Inc.*, 15-cv-00057-WHO, Dkt. 464 (N.D. Cal.) (approving the 2018 rates of $700 for Ms. Olivier); *Ambrosio v. Cogent Communications, Inc.*, 3:14-cv-02182-RS, Dkt. No. 169 (N.D. Cal.) (approving the 2017 rates of $675 for Ms. Olivier, Mr. Duckworth

and Mr. Peters, $400 for Mr. Heath, and $275 for Ms. Mohmoud); *Balderas v. Massage Envy*, No. 12-cv-06327 NC, Dkt. Nos. 69-1, 78 (N.D. Cal.) (approving the 2014 rates of $600 for Ms. Olivier); *Bell v. Delta Air Lines*, No. 13-cv-01199 YGR, Dkt. Nos. 59-1, 67 (N.D. Cal.) (approving the 2014 rates of $600 for Ms. Olivier); *Guifu Li v. A Perfect Day Franchise, Inc.*, 5:10-CV-01189-LHK, 2012 WL 2236752 (N.D. Cal. June 15, 2012) (approving Ms. Olivier's 2011 hourly rate of $550); *Braga v. AccentCare, Inc.*, No. CGC-07-467071 (Super. Ct. San Francisco County) (approving Ms. Olivier's 2010 rate of $525).

28.     Our billing rates are commensurate with, and in fact often below, prevailing rates in the San Francisco Bay Area for attorneys with comparable skill and experience litigating class actions. *See, e.g., Villalpando v. Exel Direct Inc.,* No. 3:12-cv-04137-JCS, 2016 U.S. Dist. LEXIS 182521, at *3 (N.D. Cal. Dec. 9, 2016) (approving hourly rates of $795 to $375 for attorneys, where $795 was for attorneys with 21 years of experience); *Buckingham v. Bank of Am.,* No. 3:15-cv-6344-RS, 2017 U.S. Dist. LEXIS 107243, at *13 (N.D. Cal. July 11, 2017) (approving rates of $675 to $375 per hour for attorneys, where $675 was for an attorney with 17 years' experience, and finding that "Class counsel's billing rates are clearly reasonable for the market; similar and higher rates have been approved in this District."); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 48540, at *4 (N.D. Cal. Mar. 31, 2014) (approving rates of class action firms including $725/hour for partner in practice for 21 years, $675/hour for partner in practice for 19 years, $550/hour for partner in practice for 12 years and paralegal rates from $240 to $295); *Garner v. State Farm Mut. Auto Ins. Co.*, No. CV 08-1365 CW, 2010 WL 1687829 *2 (N.D.Cal. Apr. 22, 2010) (approving rates of class action firms for partners from $850/hour to $550/hour).

29.     Further, although the rates in the Bay Area market are typically higher than those in the Washington D.C area, the hourly rates sought by Class counsel are also below the Adjusted Laffey Matrix, the tool that sets forth reasonable rates in the Washington D.C. area that courts in that area and elsewhere have considered (http://www.laffeymatrix.com/see.html).  For example, under the Matrix, the reasonable hourly rate (not adjusted for the Bay Area or for any class action

expertise) for Mr. Duckworth and me would be $894, while we are seeking $750/hour. Similarly, the reasonable hourly rate for an 8-10 year attorney would be $658, while we seek $475 for Ms. Heath. The accepted Laffey Matrix rates are considerably higher than the rates sought here.

**ATTORNEYS' FEES AND EXPENSES AND ALLOCATION OF WORK**

30. The work we did over the course of this litigation was necessitated by the difficulty and complexity of the case, Defendants' staunch defense of the case, the skill and sophistication of defense counsel in opposing the claims, and the lengthy proceedings culminating in multiple motions for judgment. During the course of this case, Defendants litigated vigorously. Plaintiffs had to face multiple skilled and tenacious partners and associates throughout the case.

31. The substantial work in this case primarily includes: (1) case investigation; (2) drafting of the complaint and amended complaints, communication with clients, and reviewing and researching the answers to the complaints; (3) written discovery, disclosures and discovery disputes; (4) document review; (5) legal research; (6) communicating with class members throughout the course of the litigation; (7) class certification; (8) experts; (9) summary judgment; (10) decertification; (11) motion for judgment; (12) participating in settlement negotiations; and (13) post-judgment briefing. Having served as counsel since the inception of the case, I am fully familiar with the proceedings.

32. Initially, the case was primarily staffed by Alison Kosinski, Emily Thiagaraj and me. Due to my extensive class experience, I took the lead on developing the class aspects of the complaint, discovery and overall case strategy. Ms. Kosinski and Ms. Thiagaraj, who have lower billing rates, focused on drafting discovery and reviewing the voluminous documents produced by Virgin. We also delegated specific research assignments, class member outreach and discovery matters initially to Erika Heath and Aseil Mohmoud, and then, when SFMS came on board, to SFMS's attorneys and staff, who concentrated their work on expert discovery, summary judgment, decertification and the motion for judgment. Ms. Kosinski and Ms. Thiagaraj took the lead on defending class member depositions, and we split the responsibility of defending the class representative depositions, each of which were a full day.

9

33.     Discovery in this case was lengthy and hotly contested.  To support their motion for class certification, Class Counsel served three sets of requests for production of documents, totaling 90 document requests, and two sets of interrogatories, totaling 27 interrogatories.  Virgin served five sets of interrogatories on the named plaintiffs, totaling 73 interrogatories, and seven sets of requests for production of documents, totaling 222 document requests, all to which Plaintiffs were obligated to respond.

34.     During this pre-certification period, Class Counsel deposed four of Virgin's corporate representatives pursuant to Fed. Rules Civ. Pro. 30(b)(6) in preparation for Plaintiffs' class certification motion.  Virgin deposed Plaintiffs Bernstein, Garcia, and Smith, as well as class member declarants Holidais Evans-Bunch, Adam Croteau, Ramon Ryan, and Victor Tomlinson, prior to class certification.

35.     The parties participated in mediation with Hunter Hughes prior to filing for class certification.  All three Class representatives participated.  The case did not settle.  After that attempt at resolution was unsuccessful, Plaintiffs prepared and filed their motion for class certification on July 6, 2016.  Dkt. 50.

36.     Virgin responded by obtaining an extension to respond to the class certification motion until September 15, 2016 [Dkt. 56], and then filing a surprise motion for summary judgment on September 6, 2016 [Dkt. 60], as part of a transparent attempt to disrupt the orderly class certification proceedings.  Virgin also opposed Plaintiffs' request for an extension of time to respond to this surprise motion.  Dkt. 68, 69, 76.

37.     At no time had defense counsel raised the issue of filing an early summary judgment motion, or asked Plaintiffs' counsel to address any legal issues in advance of class certification.  The fact that defense counsel filed its motion on the heels of Plaintiffs' motion for class certification was exemplary of the gamesmanship with which Plaintiffs had to contend during the entirety of this litigation.

38.     The Court granted Plaintiffs' request and continued the hearing on Defendants' summary judgment motion until after the scheduled hearing on class certification.  Dkt. 78.

10

Undeterred, Defendants then filed another motion to set the hearing on Plaintiffs' motion for class certification concurrently with Defendants' summary judgment motion, which the Court denied. Dkt. 86, 88, 93. Due to the volume of material that Defendants had marked confidential pursuant to a stipulated protective order, the parties also filed multiple administrative motions to seal and responses thereto. See, e.g., Dkt. 43, 83, 84, 92, 95, 100.

39.     Virgin opposed Plaintiffs' class certification motion on September 15, 2016, and also filed a motion to strike Plaintiffs' expert report. Dkt. 71, 74. On October 17, 2016, Defendants filed an amended notice of motion and motion for summary judgment. Dkt. 97. On October 18, 2016, the Court held oral argument on Plaintiffs' motion for class certification. Dkt. 98. The Court granted class certification on November 7, 2016. Dkt. 104.

40.     Plaintiffs opposed Defendants' summary judgment motion on November 1, 2016. Dkt. 101. Plaintiffs also filed a declaration under Fed. R. Civ. P. 56(d) due to Defendants' premature and surprise summary judgment motion. Dkt. 101-49. Defendants' opposed Plaintiffs' Rule 56(d) Affidavit, and Plaintiffs' filed a response. Dkt. 109, 112. The Court held oral argument on Defendants' summary judgment motion on December 13, 2016 [Dkt. 117] and thereafter permitted supplemental briefing [Dkt. 119, 120]. On January 5, 2017, the Court issued its order denying in large part Defendants' motion for summary judgment. Dkt. 121. On February 13, 2017, Defendants filed a motion for leave to file a motion for reconsideration or, in the alternative, for an order certifying the summary judgment order for interlocutory appeal. Dkt. 127. The Court denied Defendants' motion. Dkt. 151.

41.     Even class notice was contentious. Defendants objected to Plaintiffs' proposal that class notice be sent via work email addresses for current Virgin employees, even though Defendants had used those email addresses to communicate about this litigation. Dkt. 134, 137, 147-149. The Court granted Plaintiffs' request that notice via work email addresses be sent, and issued an order resolving the parties' disputes and ordering class notice. Dkt. 140, 150.

42.     On April 6, 2017, class notice was sent via mail and email to 1,869 class members. Much later in the litigation, in August 2018, Defendants informed Plaintiffs that there

were 163 Class members who did not receive notice.  Defendants then informed Plaintiffs that there were an additional 51 Class members who did not receive notice.  On August 24, 2018, class notice was sent to these individuals.  Class counsel worked closely with the class administrator to facilitate and disseminate notice and maintain and update the Class notice website.

43.     Following class certification, the parties had significant disagreement as to the scope of further discovery.  Ultimately, the discovery burden on Class counsel was heavy.  Class Counsel served an additional two sets of requests for production of documents, totaling 28 more requests, and an additional two sets of interrogatories, totaling six more interrogatories.  Virgin served three more sets of documents requests on Plaintiffs, totaling 38 requests; three sets of requests for admission, totaling 75 requests; two sets of document requests to all absent class members, totaling seven requests; and one set of interrogatories to all absent class members, totaling nine interrogatories.  Class Counsel responded to each of these discovery requests.

44.     On February 15, 2017, the Court referred all discovery matters to Magistrate Judge Corley for resolution.  Class Counsel submitted and/or responded to ten discovery letter briefs to the Court, after lengthy meet and confer efforts with Virgin's counsel.  The Court denied either in full or in part each of Virgin's discovery requests.  Virgin challenged these rulings by filing four motions for relief from a non-dispositive pre-trial order, and the Court denied each of these motions.

45.     There was also significant expert discovery in the case.  Class Counsel submitted the expert reports of Plaintiffs' expert David Breshears.  Virgin deposed Mr. Breshears twice. During the second deposition, Mr. Breshears became aware of minor errors in his calculation. Class Counsel immediately notified Virgin that Mr. Breshears would be correcting his expert report and offered to extend Virgin's expert rebuttal deadline and the opportunity to further depose Mr. Breshears.  Virgin repeatedly refused Class Counsel's offer.

46.     Instead, Virgin filed a motion to exclude Mr. Breshears' supplemental report, which both Magistrate Judge Corley and this Court denied.  Ultimately, Defendants did not

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES          CASE NO.  15-cv-02277-JST

depose Mr. Breshears regarding his corrected report, and failed to produce any rebuttal testimony to address Mr. Breshears' corrected report.

47.     When it became apparent that discovery would continue to be contentious and absorb substantial time and resources, and that the action was on track for a class action trial, Class counsel associated the firm Shepherd, Finkelman, Miller & Shah LLP as co-counsel.

48.     Virgin retained seven experts to opine on matters in support of its motion for summary judgment, motion for decertification and opposition to Plaintiffs' motion for summary judgment.  Defendants' expert reports were varied and voluminous and required Class counsel to spend significant time and resources deposing all experts, who were located across the country. Class Counsel moved to exclude Virgin's experts.   The Court ultimately sustained Plaintiffs' objections to five of Virgin's seven experts and excluded their testimony.

49.     In December 2017, Defendants sought leave to file a second summary judgment motion, which the Court denied.  On January 12, 2018, Plaintiffs filed a motion for summary judgment, and Defendants filed a motion to decertify the class.

50.     Before the Court ruled on the parties' motions, Defendants also moved to stay the litigation pending resolution of a trio of cases involving transportation workers pending before the Ninth Circuit.  Plaintiffs opposed the stay, and the Court denied the stay.  The Court then denied Defendants' motion for decertification and granted Plaintiffs' motion for summary judgment.

51.     The parties made an early attempt at settlement.  They participated in private mediation early in the case with Hunter Hughes, but the case did not settle.  Plaintiffs approached Defendants to engage in settlement discussions again in September 2017 and again in 2018, but Defendants did not respond.

52.     Defendants had not complied with their discovery obligations and provided all data necessary to calculate complete damages for the Class and Subclasses.  As a result, Plaintiffs were unable to provide a full damages report at the time of their motion for summary judgment. In addition, Defendants continued to insist that a subgroup of the Class – class members who had participated in Virgin's buyout program ("Career Choice") – could not participate in the Class

recovery.  Accordingly, after the Court granted Plaintiffs' summary judgment motion, the parties attended a series of case management conferences with the Court to determine how best to proceed.

53.     Plaintiffs maintained that Defendants had waived any argument as to the Career Choice Class members because they had refused to produce Career Choice documents during discovery.  Plaintiffs offered a compromise to Defendants that would have permitted them to maintain their argument as to the Career Choice Class members for whom full documentation had been produced.  Defendants declined this compromise.  Plaintiffs thereafter filed a motion for sanctions under Fed. R. Civ. P. 37 to exclude any Career Choice documents and for a determination that Defendants had waived their affirmative defense that Career Choice class members were barred from asserting claims.  The Court granted Plaintiffs' motion.   The parties subsequently resolved the monetary sanctions associated with the Rule 37 Motion.  The lodestar associated with that motion has been deducted from the fees sought herein.

54.     Eventually, Defendants produced updated Class-wide data, and Plaintiffs worked with their expert to produce an updated expert report.  The parties thereafter met and conferred extensively in an attempt to agree upon the amount and form of the judgment.  After a negotiated resolution failed, Plaintiffs filed a motion for judgment as to a sum certain, which Defendants opposed.  The Court granted Plaintiffs' motion.

55.     On February 4, 2019, the Court entered judgment awarding $59,063,082.75 plus post-judgment interest to the Class and Subclasses, and another $18,735,862.50 to the State of California's Labor & Workforce Development Agency, for a total judgment of $77,798,945.25.

56.     In compliance with the Local Rules, the parties subsequently met and conferred about Plaintiffs' motion for fees and expenses and the appellate bond.

57.     Over the life of this action, Class counsel have responded to inquiries from hundreds of Class members regarding the status of the case.  In addition, Defendants communicated with the Class as to the status of the proceedings at different points throughout the

litigation, which required Class counsel to expend additional time and resources to address concerns raised by these communications.

58.     DPLO and OSC maintain contemporaneous time records reflecting the time spent on cases, including the date and amount of time spent on a task to one-tenth of an hour and a description of the work performed.

59.     I have reviewed the records of all time that was billed to this matter for DPLO and OSC.  Both firms have made every effort to litigate this action in an efficient and cost-effective manner by reducing duplication of effort and assigning work to maximize efficiency and quality. Further, tasks were delegated appropriately among partners and associate attorneys according to their complexity.  By nature, contingency arrangements cause counsel to be cognizant of the amount of time required by tasks on the case. Efficiency and economy are a necessary practice in such cases, as results, and not hours billed, are the focus.  This is particularly the case with small firms such as ours.

60.     I exercised billing judgment in DPLO's and OSC's hours by deleting time that was inefficient or duplicative.

61.     Additional hours of attorney time will continue to be incurred, and thus the lodestar will grow slightly, in order to finalize the fee motion work.  Plaintiffs will update the total hours in conjunction with the reply brief.

62.     To provide the Court with review of the work done by Class counsel in this case, without requiring the review of our detailed time records themselves, please refer to Exhibits A through F, which divide the work of Class counsel into specific phases that track the process of the litigation from our initial investigation through post-judgment proceedings, as well as charts the time by timekeeper on a monthly basis.  All of the work was reasonably split among all firms. For each major task, we would determine who would take the lead, and then the other firm would provide support and review.

## **CONTINGENT RISK**

63.     Class counsel has undertaken this litigation on a purely contingent basis. Class counsel have not been paid for any of their time spent on this action, nor have they been reimbursed for the substantial out-of-pocket expenses they incurred in the prosecution of this action.  The vast majority of the work that Class counsel does is done on a contingency fee basis. Because we do not have regularly paying clients, we rely on awards for attorneys' fees and costs in order to continue our work for the enforcement of labor, consumer and civil rights standards. We have not charged Plaintiffs nor any class member any fees or costs to litigate their claims in this action.

64.     DPLO is a very small firm of five attorneys; OSC has only three.  SFMS has approximately 25 attorneys and, similarly, does most of its work on a contingency fee basis. Going head-to-head with a firm of over 1500 attorneys and against a large corporation on behalf of workers presented a tremendous amount of financial risk to our firms.  We took this case without any assurance that we would be paid any fees or reimbursed any costs for our efforts or expenditures. At the outset, we had no way of anticipating the course taken by this case. In spite of this, we took the case on with every intent of expending all necessary hours and out-of-pocket expenses to ensure vindication of the Class. We have done our best to resolve this case as efficiently and favorably for the Class as possible and in doing so availed ourselves of the extensive experience and expertise that we have developed over the years in handling other class actions and wage and hour matters.

65.     Like other important and complex employment class actions, this case carried a risk of no recovery at all for either the class or the attorneys representing them. When we do succeed in vindicating statutory and employment rights on behalf a class of employees, such as in this case, our firm depends upon the recovery of our lodestar plus an appropriate multiplier. Otherwise, we could not continue to represent employees who are denied wages, but whose cases may be time-consuming and difficult to prove.

66.     For the first few years of this action, it took up the majority of my billable time during long stretches of the litigation.  I was repeatedly forced to turn down new employment due to the demands that this case had on my time.  In particular, I turned away a number of hourly and contingency fee matters on behalf of individuals and at least two potential class actions to focus my efforts on this case.  Even after we associated SFMS, the discovery, motion practice and pretrial burden on Class counsel was significant.

67.     Our risks in this case were compounded by the vigorous and skillful manner in which defense counsel represented their client.  Although I have always believed strongly in the strength of the claims in this case, the outcome has been uncertain.  Defendants have mounted a formidable defense of this action.  Throughout the case, they aggressively pushed back against Plaintiffs' claims.  Defense counsel forced Plaintiffs to meet and confer on nearly all discovery matters, opposed class certification, filed a motion for summary judgment, filed a motion for decertification, and sought to stay the action.  Defendants also denied and continue to deny the allegations against them and have, at various times, presented legal defenses it believes it has to Plaintiffs' claims.

68.     All this contributed to our risk of recovering nothing or close to nothing for our commitment and investment into the case.  Given these uncertainties, we undertook significant risk to finally take the case to trial, and secure the exceptional results for the Class.

**NOVELTY, DIFFICULTY AND COMPLEXITY OF CASE AND RESULTS ACHIEVED**

69.     This case presented a range of difficulties requiring the efforts of highly skilled and experienced attorneys.  I believe the team of Class counsel brought significant class action, complex litigation and California wage and hour experience to this matter.  Class counsel's depth of experience and considerable resources, in both money and staff time, were critical in obtaining the exceptional results achieved in this action.

70.     As this Court has recognized, the case has raised issues that had not previously been resolved in the courts with respect to the application of California wage laws.  While Plaintiffs are convinced that, under California law, the members of the Class and Subclasses are

entitled to their unpaid wages, overtime premiums, meal and rest break premiums, and waiting time penalties, as well as PAGA penalties, this action has presented some challenges.  For example, Defendants have maintained and continue to maintain that Plaintiffs' claims are barred by various preemption doctrines and by the Dormant Commerce Clause.  Defendants repeatedly raised these arguments and also sought to introduce expert testimony in support of those arguments.  Defendants also repeatedly raised arguments as whether Plaintiffs could maintain a Subclass one criteria of which is the residency of the Subclass members.

71.     During discovery, there were substantial difficulties in obtaining the necessary information from Defendants.  Practically all discovery requests were met with resistance and involved considerable resources in meeting and conferring and ultimately seeking court intervention on several matters.  When Defendants did produce documents, they were voluminous and unorganized, while often also being incomplete.  In particular, the voluminous Class member flight schedule and pay data was produced in a variety of formats which necessitated Plaintiffs spending significant time and resources to work with their expert and their expert's consultant to write and implement a coding script to import the data into a usable format.  These productions significantly increased the difficulty, time and cost.  Review and analysis of these documents took hundreds of hours of attorney, staff and expert time.  In addition, Class counsel had to follow up with Defendants a number of times due to Defendants unwillingness to provide updated Class member data.

72.     Defendants also attempted to engage in far-reaching discovery, seeking to propound written discovery on, and depose, each Class member.  Defendants also sought extensive discovery from the Class representatives, deposed each Class representative as well as several Class member declarants, and deposed Plaintiffs' expert for multiple days.

73.     The dispositive motions also presented difficult and complex issues.  Immediately after Plaintiffs filed their class certification motion, Defendants filed a surprise motion for summary judgment on their legal defenses, requiring Plaintiffs to seek relief from the Court as to

18

the briefing and hearing schedule, and then to engage substantial resources to oppose Defendants' motion while pursuing class certification.

74.     Plaintiffs' motion for class certification required a detailed presentation of the evidence marshalled in support, as well as a preliminary expert report.  As a result of Class counsel's thorough review of the evidence and research of the legal issues, Plaintiffs were able to move successfully for summary judgment on all claims, and also oppose Defendants' attempt to decertify the Class.  After those motions were resolved, Plaintiffs were also able to obtain an order preventing one of Defendants' affirmative defenses, and an order granting all of Plaintiffs' requests for damages, and the vast majority of the penalties Plaintiffs' sought on behalf of the state of California.

75.     Plaintiffs prevailed on virtually all legal issues, after comprehensive briefing, motion practice and oral argument at nearly every stage of the case.  The Court certified the Class, approved the Class Notice Plan that Plaintiffs developed with minor changes, granted Plaintiffs' summary judgment motion, and granted Plaintiffs' motion for judgment.  The Court also largely denied Defendants' motion for summary judgment and motion or decertification.

76.     Throughout the action, Plaintiffs prevailed on virtually all legal issues, after comprehensive briefing, motion practice and oral argument, at nearly every stage of the case.  The Court certified the Class, approved the Class Notice Plan that Plaintiffs developed with minor changes, granted summary judgment to Plaintiffs on all claims and on their entitlement to damages (no easy feat for Plaintiffs), granted Plaintiffs' motion for sanctions pursuant to Rule 37, and granted Plaintiffs' motion for judgment as to the amounts of damages and penalties.  The Court also largely denied Defendants' motion for summary judgment and motion for decertification.

77.     Class counsel was able to secure exceptional results for the Class and Subclasses. Accordingly, Class counsel's skill and the exceptional results achieved to date warrant the application of the multiplier sought here.

1

2

## **EXPENSES**

3      78.      As reflected in Exhibit G, Class counsel, to date, has also expended a total of

4   $250,775.81 in expenses in connection with the prosecution of the litigation. These expenses are

5   separate from the costs sought under Plaintiffs' Bill of Costs, filed concurrently herewith.

6      79.      Class counsel maintained all records regarding costs and expenses in this action.  I

7   have reviewed the records of costs expended in this matter. The expenses for which we seek

8   payment include copying costs, postage charges, delivery fees, deposition-related transportation

9   and travel expenses.   These expenses were reasonably necessary for the continued prosecution of

10   this litigation.

11      80.      Class counsel will continue to incur fees and expenses in this matter and reserve

12   the right to seek such additional fees and expenses at the appropriate time.

13      I declare under penalty of perjury under the laws of the United States that the foregoing is

14   true and correct.

15      Executed this 13th day of March in San Francisco, California.

16
                                    */s/ Monique Olivier*
17                                   Monique Olivier

18

19

20

21

22

23

24

25

26

27

28

OLIVIER DECL. ISO PLTFS' MTN FOR ATTORNEYS' FEES              CASE NO.  15-cv-02277-JST