1

2

3

4            UNITED STATES DISTRICT COURT

5            NORTHERN DISTRICT OF CALIFORNIA

6

7    JULIA BERNSTEIN, et al.,              Case No. 15-cv-02277-JST

         Plaintiffs,
8
                                          **ORDER GRANTING MOTION FOR**
9        v.                               **ATTORNEY'S FEES AND EXPENSES**

10   VIRGIN AMERICA, INC., et al.,         Re: ECF No. 374

         Defendants.
11

12

13          Before the Court is Plaintiffs' motion for attorney's fees and expenses.  ECF No. 274.

14   Defendants Virgin America, Inc. and Alaska Airlines, Inc. (collectively, "Virgin")[1] do not dispute

15   that Plaintiffs are entitled to reasonable attorney's fees, but argue that Plaintiffs' request for

16   $13,220,405.81 is unreasonable.  ECF No. 386.  The Court will grant the motion in part.

17   **I.     BACKGROUND**

18          This is a wage-and-hour class action brought by flight attendants who work or have

19   worked for Virgin in California.  As set forth in greater detail in the Court's prior orders, *see, e.g.*,

20   ECF No. 121, Plaintiffs allege that Virgin violated various California labor laws regarding

21   payment for hours worked, wage amounts, wage documentation, and the provision of meal and

22   rest breaks.  TAC ¶¶ 29-30, 32-33, 35-36, 38-39, 41-42.  The Court has granted judgment on

23   Plaintiffs' claims; Virgin has appealed.  ECF Nos. 367, 369.

24          Because of its relevance to Plaintiffs' motion for attorney's fees, the Court recounts the

25

26   _____

27   [1] Alaska Airlines, Inc. and Virgin America merged during the course of this lawsuit.  The Federal
     Aviation Administration ("FAA") issued a Single Operating Certificate for Virgin and Alaska
     Airlines, Inc., on January 11, 2018.  ECF No. 274 at 3.  Alaska Airlines was added as a defendant
28   on March 20, 2018.  ECF No. 298.  It answered the Third Amended Complaint on April 18, 2018.
     ECF No. 310.

United States District Court
Northern District of California

1 | lengthy history of this case in some detail.

2 |        Plaintiffs filed this action in state court on March 18, 2015.  ECF No. 1-1.  Virgin removed

3 | on May 20, 2015.  ECF No. 1.  Plaintiffs then filed a motion for class certification.  ECF No. 50.

4 | After Virgin objected that the font size of Plaintiffs' footnotes violated the Civil Local Rules, the

5 | parties stipulated for Plaintiffs to refile the motion, for the parties to exceed the page limits, and to

6 | extend the briefing schedule.  ECF Nos. 55, 56.  Plaintiffs refiled their motion on September 14,

7 | 2016.  ECF No. 70.  Virgin opposed the motion and separately moved to strike Plaintiffs' expert

8 | report.  ECF No. 74.  During that same period, Virgin also filed a competing motion for summary

9 | judgment on Plaintiffs' claims.  ECF No. 60.

10 |        On November 7, 2016, the Court certified the class and denied the motion to strike.  ECF

11 | No. 104.  The Court granted in part and denied in part Virgin's motion for summary judgment on

12 | January 5, 2017.  ECF No. 121.  On February 13, 2017, Virgin requested leave to file a motion for

13 | reconsideration of the Court's summary judgment order, or in the alternative, to certify it for

14 | interlocutory appeal, ECF No. 127, which the Court denied, ECF No. 151.

15 |        On January 12, 2018, Plaintiffs moved for summary judgment on their claims.  ECF No.

16 | 225.  Virgin filed a competing motion to decertify the class.  ECF No. 226.  On March 16, 2018,

17 | Virgin filed a motion to stay proceedings pending the resolution of a trio of cases then pending

18 | before the Ninth Circuit.  ECF No. 295.

19 |        On July 9, 2018, the Court resolved all three motions.  First, the Court denied Virgin's

20 | motion to stay.  ECF No. 315.  Second, the Court denied Virgin's motion to decertify the class,

21 | except as to Plaintiffs' claims based on time spent completing incident reports.  ECF No. 316.

22 |        Finally, the Court granted Plaintiffs' motion for summary judgment in large part.  ECF No.

23 | 317.  The Court concluded that Virgin was liable on Plaintiffs' claims that Virgin (1) failed to pay

24 | the minimum wage for all hours worked, Cal. Code Regs., tit. 8, § 11090, Wage Order 9-2001

25 | § 4(A); (2) failed to pay overtime, Cal. Lab. Code § 510; (3) failed to provide legally compliant

26 | meal periods, Wage Order 9-2001 § 11; (4) failed to provide legally complaint rest breaks, *id.*

27 | § 12; (5) failed to provide accurate wage statements, Cal. Lab. Code § 226(a); owed waiting time

28 | penalties, *id.* § 203; (6) violated the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

United States District Court
Northern District of California

§§ 17200, *et seq.*; and (7) was liable for penalties under the Private Attorneys General Act ("PAGA"), Cal. Lab. Code §§ 2698-99.6.  ECF No. 317 at 9-12.  The Court denied summary judgment on Plaintiffs' claim for prospective injunctive relief.  *Id.* at 13.

In that order, the Court did not determine an amount of damages.  Plaintiffs contended that they were unable to calculate the amounts due on their claims because Virgin failed to produce updated employment records or complete class member data.  ECF No. 225 at 13-14 n.16, 28 n.74.  The Court did reject, however, the four arguments that Virgin made regarding Plaintiffs' damages model.  ECF No. 317 at 13-16.

The parties then engaged in a series of failed attempts to stipulate to damages.  *See, e.g.*, ECF Nos. 321, 327, 330, 341.  Plaintiffs also moved to strike Virgin's affirmative waiver defense as to certain class members and exclude certain supporting evidence on the grounds that Virgin failed to timely produce that evidence.  ECF No. 333.  The Court granted the motion.  ECF No. 358.[2]

On October 31, 2018, Plaintiffs moved for summary judgment on damages.  ECF No. 343. The Court granted the motion on January 16, 2019, awarding a total of $77,026,818 comprised of: (1) $45,337,305.29 in damages and restitution on Plaintiffs' wage-and-hour claims; (2) $3,552.71 per day in continuing prejudgment interest after October 25, 2018; (3) $6,704,810 in statutory penalties on the claims for inaccurate wage statements and waiting time penalties; and (4) $24,981,150 in PAGA civil penalties.  ECF No. 365.  The Court entered judgment on February 4, 2019, ECF No. 367, and Virgin filed a notice of appeal on March 4, 2019, ECF No. 370.

On March 13, 2019, Plaintiffs filed this motion for fees and expenses, which Virgin opposed.  ECF No. 374.  After the motion was fully briefed, the Court requested supplemental briefing regarding whether Federal Rule of Civil Procedure 23(h) requires class counsel to provide notice to the class of a motion for attorney's fees, even when the award is not sought from the class's recovery.  ECF No. 389.  While Plaintiffs maintained that notice was not required at this stage, they nonetheless agreed to distribute notice to the class rather than press that position.  ECF

---

[2] The parties separately resolved the fees associated with that motion, and Plaintiffs do not include those hours in this fee request.  ECF No. 374-1 ¶ 53.

United States District Court
Northern District of California

1  Nos. 390, 392.  To date, no class member has objected to Plaintiffs' counsel's fee request.  The

2  Court held a hearing on the motion on August 1, 2019.

3  **II.  LEGAL STANDARD**

4       "In a certified class action, the court may award reasonable attorney's fees and nontaxable

5  costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  Here,

6  California law governs both Plaintiffs' entitlement to fees and calculation of those fees.  *Mangold*

7  *v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1478 (9th Cir. 1995).

8       Plaintiffs seek fees under California Labor Code sections 218.5 and 1194, as well as

9  California Code of Civil Procedure section 1021.5.  ECF No. 374 at 16.[3]  Because Virgin does not

10  dispute that Plaintiffs are entitled to fees on all of their successful claims, this Order considers

11  only the reasonableness of the requested amount.

12       The parties likewise agree that the lodestar method provides the appropriate means for

13  determining whether Plaintiffs' requested amount is reasonable.  Under this approach, the Court

14  calculates "a lodestar figure based on the reasonable hours spent, multiplied by the hourly

15  prevailing rate for private attorneys in the community conducting noncontingent litigation of the

16  same type."  *Ketchum v. Moses*, 24 Cal. 4th 1122, 1133 (2001).  The Court then exercises its

17  discretion to adjust the lodestar figure "based on factors including . . . (1) the novelty and

18  difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to

19  which the nature of the litigation precluded other employment by the attorneys, (4) the contingent

20  nature of the fee award."  *Id.* at 1132; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433-37 (1983)

21  (describing similar process).

22       The party seeking fees bears the burden of proving that the hours and rates were reasonable

23  and that a multiplier is appropriate.  *Hensley*, 461 U.S. at 437; *Ketchum*, 24 Cal. 4th at 1138.

24  However, "the determination of fees 'should not result in a second major litigation,'" and "trial

25  courts need not, and indeed should not, become green-eyeshade accountants.  The essential

26  goal . . . is to do rough justice, not to achieve auditing perfection."  *Fox v. Vice*, 563 U.S. 826, 838

27  _____

28  [3] Although not cited by Plaintiffs, the Court observes that PAGA also contains a mandatory fee-shifting provision.  *See* Cal. Lab. Code § 2699(g)(1).

United States District Court
Northern District of California

1  (2011) (quoting *Hensley*, 461 U.S. at 437).

2  **III.    DISCUSSION**

3    Plaintiffs request $12,969,630 in attorney's fees and $250,775.81 in expenses, for a total

4  award of $13,220,405.  ECF No. 74 at 9.  For the reasons that follow, the Court will award a lesser

5  amount.

6    **A.    Attorney's Fees**

7    **1.    Hours Reasonably Expended**

8    Courts "must carefully review attorney documentation of hours expended; 'padding' in the

9  form of inefficient or duplicative efforts is not subject to compensation."  *Ketchum*, 24 Cal. 4th at

10  1132 (citation omitted).  Because "[h]ours that are not properly billed to one's client also are not

11  properly billed to one's adversary," courts should exclude hours that were not "reasonably

12  expended" from the lodestar calculation, including where claimed hours are "excessive, redundant,

13  or otherwise unnecessary."  *Hensley,* 461 U.S. at 434.

14    Virgin asserts a number of objections to counsel's claimed hours.  Primarily, Virgin

15  contends that Plaintiffs' records are too vague to challenge.  As part of this argument, Virgin also

16  questions the reasonableness of certain time expenditures.  The Court first addresses the requisite

17  level of documentation.

18    **a.    Adequate Documentation**

19    Plaintiffs did not provide contemporaneous records of individual entries, but instead

20  provided summaries of the work performed by each timekeeper.  At their most granular, these

21  summaries document the work each timekeeper spent per month on each of fifteen categories of

22  tasks.  *See, e.g.*, ECF No. 374-7 at 2.  Through declarations, Plaintiffs also provided brief narrative

23  summaries of the work performed by each individual.  *See* ECF No. 374-1 ¶¶ 20-24; ECF No.

24  374-9 ¶¶ 26-29; ECF No. 374-11 ¶¶ 8, 17; ECF No. 387-1 ¶ 3.  Plaintiffs respond to Virgin's

25  objection by pointing out that this approach complies with the local rules and has been accepted

26  by multiple courts within this district.  ECF No. 387 at 10-11.

27    The Court agrees with Plaintiffs that contemporaneous time records are not always

28  required.  "California courts have . . . approved fee awards based on declarations describing the

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1    hours worked on various tasks, without providing underlying time records of the hours worked

2    and the type of work performed." *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 987

3    (N.D. Cal. 2017) (citing *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 487-88 (2014)); *see*

4    *also City of Colton v. Singletary*, 206 Cal. App. 4th 751, 785 (2012); *Chavez v. Netflix, Inc.*, 162

5    Cal. App. 4th 43, 64 (2008).  The same is true in the Ninth Circuit.  *See Fischer v. SJB-P.D. Inc.*,

6    214 F.3d 1115, 1121 (9th Cir. 2000).  And, as Plaintiffs note, this district's local rules require only

7    that the motion include "[a] statement of the services rendered by each person for whose services

8    fees are claimed together with a summary of the time spent by each person, and a statement

9    describing the manner in which time records were maintained," while providing the Court with

10   discretion to require additional documentation.  Civil L.R. 54-5(b)(2).

11          Nonetheless, Virgin's criticisms have some force.  The level of specificity at which

12   Plaintiffs have documented their time makes it difficult or impossible for Virgin to raise certain

13   challenges that courts have found justified partial reductions in other cases.  For instance, this

14   Court has previously reduced fees for "entries related to clerical tasks that are not compensable or,

15   at the very least, should not be billed at an attorney's hourly rate."  *Boconvi v. Velocity Express,*

16   *LLC*, No. 17-cv-02623-JST, 2018 WL 2248988, at *3 (N.D. Cal. May 17, 2018); *see also Hydros*

17   *Bottle LLC v. Stephen Gould Corp.*, No. 16-cv-04077-JST, 2017 WL 3453350, at *7 (N.D. Cal.

18   Aug. 10, 2017) (denying fees for hours that "appear to all be administrative and/or clerical in

19   nature, such as calendaring deadlines and filing and serving documents").

20          This Court has also found reductions appropriate where "entries such as 'reviewed email,'

21   'SJ motion,' and 'review documents' d[id] not provide enough detail about the work performed to

22   allow the Court to determine whether the claimed hours are reasonable."  *Boconvi*, 2018 WL

23   2248988, at *4.  Relatedly, where entries did provide such detail, the Court has sometimes noted

24   that the allocation of work on a particular motion was unreasonable.  *See Stewart v. Applied*

25   *Materials, Inc.*, No. 15-cv-02632-JST, 2017 WL 3670711, at *10 (N.D. Cal. Aug. 25, 2017)

26   ("While the Court would expect [the most senior attorneys] to review and edit the Motion before

27   filing, basic research and drafting tasks should have been left to a more junior lawyer.").

28          In addition, "[t]he Ninth Circuit has approved of reductions in fees for unnecessary and

duplicative intra-office conferences." *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *10 (N.D. Cal. Apr. 30, 2014) (citing *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007)).  As this Court has noted, "entries [that] lack any specificity" regarding the content of those meetings "make such review more difficult," and may "cause . . . some concern" that the number of meetings was unnecessary.  *Lemmons v. Ace Hardware Corp.*, No. 12-cv-03936-JST, 2015 WL 435462, at *3 (N.D. Cal. Feb. 1, 2015).  The Court has also recognized, however, that in "a large, putative class action . . . . some number of intra-office conferences are not only to be expected, but will often result in a savings of attorney time by ensuring that all attorneys on a team are kept apprised of important information about the case as it becomes available." *MacDonald v. Ford Motor Co.*, No. 13-cv-02988-JST, 2016 WL 3055643, at *4 (N.D. Cal. May 31, 2016).  Nonetheless, even in a complex class action, the Court has sometimes found that "the amount of such communications . . . was excessive." *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 854 (N.D. Cal. 2017).

Courts within this district have also been "critical of the practice of billing for multiple .1 hour entries separately where they could be consolidated." *Id.* at 855 (quoting *Hernandez*, 2014 WL 1724356, at *9).

Plaintiffs' approach thus deprives Virgin of the opportunity to reduce its liability by pointing out excessive hours in such categories.  At the same time, the Court is mindful that "the determination of fees 'should not result in a second major litigation.'" *Fox*, 563 U.S. at 838 (quoting *Hensley*, 461 U.S. at 437)).  Further, "lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees.  The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008).  While Virgin also takes issue with the total hours expended in certain categories, ECF No. 386 at 19 & n.7, its cursory objections do not suggest an alternative reasonable figure, cite a comparable case providing one, or reference Virgin's own hours spent on those same motions or tasks for comparison.  *Cf. Democratic Party of Wash. State v. Reed*, 388 F.3d 1281, 1287 (9th Cir. 2004) (reasoning that "one particularly good indicator of how much time is necessary . . . is how much time the other side's lawyers spent").  Moreover, "when trimming the fee application, the

1    district court 'should defer to the winning lawyer's professional judgment as to how much time

2    [s]he was required to spend on the case; after all, [s]he won, and might not have, had [s]he been

3    more of a slacker.'" *Elise Dragu v. Motion Picture Indus. Health Plan for Active Participants*,

4    159 F. Supp. 3d 1121, 1128 (N.D. Cal. 2016) (quoting *Moreno*, 534 F.3d at 1112).  Based on the

5    scope, complexity, and contentious nature of this case, the Court does not find the time claimed in

6    Plaintiffs' categories to be unreasonable.

7        Given these conflicting considerations, the Court concludes that the appropriate course is

8    to exercise its discretion to "impose a small reduction, no greater than 10 percent – a 'haircut' –

9    . . . without a more specific explanation."  *Moreno*, 534 F.3d at 1112; *see also Boconvi*, 2018 WL

10   2248988, at *4.  The Court will therefore apply a five percent reduction to the total hours

11   remaining after resolving Virgin's remaining objections.

**b.      Category Descriptions**

12   Virgin also objects to specific categories as particularly problematic.

13

14        First, Virgin points to a category that covers "[p]reparation of complaint and amended

15   complaints, Pro Hac motions, communications with clients, [and] review and research answers to

16   complaints."  ECF No. 374-3 at 2.  Having reviewed the complaints and other pleadings

17   throughout the litigation, the Court is well-positioned to determine whether the hours associated

18   with those pleadings are reasonable on the whole, even without individual entries.  *See, e.g.*,

19   *MacDonald*, 2016 WL 3055643, at *4-5.  But the same cannot be said for communications with

20   the class representatives, absent any supporting documentation or narrative explanation.[4]

21   "Although not per se objectionable, a court may reduce requested hours where block billing makes

22   it difficult to determine how much time was spent on particular activities."  *Venture Corp. v.*

23   *Barrett*, No. 13-CV-03384-HRL, 2018 WL 1524080, at *4 (N.D. Cal. Mar. 28, 2018); *see also*

24   *Havens v. Leong P'ship*, 586 B.R. 760, 768 (N.D. Cal. 2018) ("Reductions of fees between 10-

25

26   _____

27   [4] To be clear, the Court encourages counsel to communicate with their clients as necessary.
     Lumping that activity together with other pleadings-related tasks, however, combined with a lack

28   of detail, makes it difficult to evaluate the totals for any task within the category.

*United States District Court*
*Northern District of California*

30% for block billing have been approved.").[5]  Given that the manner in which Plaintiffs billed this particular category increases the risk that it contains excessive or otherwise necessary hours, the Court will apply a 10 percent haircut to these hours, instead of the 5 percent reduction for other categories.

Second, Virgin contends that Plaintiffs may have spent excessive time preparing and responding to expert reports, depending on whether expert depositions fall into the "Depositions" or "Expert Reports" category.  ECF No. 386 at 18.  Plaintiffs' response indicates that "Expert Reports" does not include deposition-related work.  ECF No. 387-1 ¶ 7.  Both parties made extensive use of experts in this case, including challenging the other side's experts.  For instance, Virgin relied on seven different experts in moving to decertify the class.  ECF No. 316 at 3-5. Plaintiffs successfully excluded the majority of them.  *Id.*  The Court finds that, taking into account the 5 percent haircut, the hours claimed in this category are reasonable.

Last, Virgin takes issue with Plaintiffs' use of an "Other" category, which accounts for 148.1 hours of the fee request.  ECF No. 386 at 18; *see also* ECF No. 374-3 at 2.  Plaintiffs response that "[h]aving a separate category for each litigation activity would eliminate the benefit of providing summaries," ECF No. 387 at 12-13, is not persuasive.  While true to some degree, that does not excuse Plaintiffs' burden to supply some reasonable basis to conclude that those hours are compensable.  *See Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1126 (9th Cir. 2002) (cautioning that a court cannot simply give "counsel the benefit of the doubt").  Given that Plaintiffs neglected to identify even representative examples of the types of tasks included, the Court cannot award fees for those hours.  The Court therefore excludes all 148.1 hours from the fee request.

### c.    Overstaffing/Duplicative Work

Virgin also criticizes Plaintiffs for not delegating more work to associates, noting that the overwhelming majority of the work was performed by partner attorneys.  ECF No. 386 at 19-20.

---

[5] The addition of pro hac vice motions to this category appears entirely unnecessary.  Only one Plaintiffs' attorney even filed such a motion, ECF No. 206, and Plaintiffs do not claim any time in this category for the attorney who sought admission.  ECF No. 374-12 at 8.

However, courts have recognized that it is inappropriate to "condition fees on plaintiffs' counsel's conformance to the typical commercial law firm's pyramidal staffing structure. The legal profession is diverse enough to embrace a variety of ways of conducting effective litigation, some of which may involve partners with relevant expertise conducting research or preparing a witness." *Aguilar v. Zep Inc.*, No. 13-cv-00563-WHO, 2014 WL 4063144, at *7 (N.D. Cal. Aug. 15, 2014) (quoting *Nat'l Fed'n of the Blind v. Target Corp.*, No. 06-cv-01802-MHP, 2009 WL 2390261, at *3 (N.D. Cal. Aug. 3, 2009)). Here, Plaintiffs' counsel are small firms that employ as few as two attorneys. ECF No. 374-1 ¶ 64; ECF No. 374-9 ¶¶ 34-36. The Court takes those firms' structures into account. *See Ridgeway*, 269 F. Supp. 3d at 991 ("In light of the various partners' in-depth knowledge of the case and the small size of the firms involved, the Court cannot say that the complained of tasks should have been assigned to a less experienced timekeeper."). Moreover, Plaintiffs state that, where appropriate, they delegated tasks to partners at Kosinki + Thiagraj Law, ECF No. 387-1 ¶ 3, whose $450-500 rates are more in line with an associate rate at a larger law firm. The Court finds this explanation adequate and concludes that no further reduction is required on this ground.

### d. Unsuccessful Claims

Virgin contends that Plaintiffs are not entitled to fees for hours spent litigating their expense reimbursement, San Francisco Minimum Wage Ordinance ("SFMWO"), or non-flight activity minimum wage claims. ECF No. 386 at 28-29. Although Virgin locates this argument in its opposition to the multiplier, it appears to also argue that the Court should exclude these hours altogether. *See also Ridgeway*, 269 F. Supp. 3d at 993-94; *Envtl. Prot. Info. Ctr. v. Dep't of Forestry & Fire Prot. (EPIC)*, 190 Cal. App. 4th 217, 239 (2010).

Under California law, "although fees are not reduced when a plaintiff prevails on only one of several factually related and closely intertwined claims," courts may reduce the fee award "when a claimant achieves only limited success." *Chavez v. City of Los Angeles*, 47 Cal. 4th 970, 989 (2010) (citation omitted). Courts have implemented these principles through a two-step process. At the first step, a court must "determine whether the prevailing party's unsuccessful claims are related to its successful ones." *Espejo v. The Copley Press, Inc.*, 13 Cal. App. 5th 329,

United States District Court
Northern District of California

382 (2017). "If the different claims are based on different facts and legal theories, they are unrelated; if they involve a common core of facts or are based on related legal theories, they are related." *Id.* As a guide, courts have looked to whether "the relief sought on the unsuccessful claim is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised." *EPIC*, 190 Cal. App. 4th at 239 (quoting *Harman v. City & County of San Francisco*, 136 Cal. App. 4th 1279, 1311 (2006)). If the unsuccessful claim is unrelated, the Court may exclude the hours associated with that claim. *Id.* If the claims are related, the Court then moves on to the second step, at which it may adjust the lodestar as part of the multiplier analysis to reflect the proportion of success achieved by counsel. *Id.*

The Court considers only the first step at this portion of the Order. Neither party offers much analysis beyond Virgin's conclusory assertion that the claims were unrelated. ECF No. 386 at 29. Virgin cites a single case from this district, in which plaintiffs were unsuccessful on their claim that the employer "pressured employees to avoid [meal] breaks by limiting the time per day that they could drive," while awarding "commendations and bonuses for miles driven and efficiency." *Ridgeway v. Wal-Mart Stores, Inc.*, No. 08-cv-05221-SI, 2014 WL 2600326, at *3 (N.D. Cal. June 10, 2014). They nonetheless prevailed on their claims that the employer failed to pay minimum wage for various tasks. *Id.* At the fee stage, the *Ridgeway* court held "that time spent pursuing the meal break claim under Labor Code section 226.7 was not related to the ultimately successful minimum wage claim," deducting time spent solely on the meal break claim. *Ridgeway*, 269 F. Supp. 3d at 994.

The Court concludes that Plaintiffs' SFMWO claim is related. It sought the same relief as many of their other claims, namely, to compel Virgin to pay class members for all time worked. First Amended Complaint ("FAC"), ECF No. 32 ¶¶ 53-54. Although brought under municipal rather than state law, the SFMWO claim "involve[d] a common core of facts" and was "based on related legal theories." *Espejo*, 13 Cal. App. 5th at 382.

*Ridgeway* also supports the conclusion that Plaintiffs' claims for unpaid time for non-flight activities were related to their successful claims. In addition to granting summary judgment in the

11

employer's favor on the meal period claim, the *Ridgeway* court also granted summary judgment on Plaintiff's minimum wage claims as related to certain unpaid tasks, such as "time spent moving trailers at any location to get their assigned trailer." *Ridgeway*, 2014 WL 2600326, at *6. Nonetheless, the court did not exclude time related to those allegations as unrelated at the fees stage.  As in *Ridgeway*, Plaintiffs' "claims" are different factual predicates for their single cause of action for unpaid hours worked.  FAC ¶ 67.  The Court concludes that they are sufficiently related so as to satisfy the first step of the analysis.

The closest call is Plaintiffs' claim for failure to reimburse employees for the costs of maintaining a valid passport.  FAC ¶ 101.  Whether this claim sought "to remedy a course of conduct entirely distinct and separate from the course of conduct" underlying Plaintiffs' successful claims largely depends on framing.  *EPIC*, 190 Cal. App. 4th at 239 (citation omitted).  Arguably, all of Plaintiffs' claims were directed towards Virgin's practices of shortchanging its flight attendants.  Yet there is an additional distinction between not compensating time and not reimbursing expenses that resembles the difference between indirectly pressuring drivers into skipping meal breaks and not compensating various off-the-clock tasks.  *See Ridgeway*, 2014 WL 2600326, at *3.  It is also noteworthy that Plaintiffs do not attempt to articulate the connection between those claims, despite their burden to justify their fees.  On this record, therefore, the Court concludes that the claims are not related for the purposes of apportioning fees.

Accordingly, the Court must exclude hours spent solely on Plaintiffs' claim under California Labor Code section 2802.  Based on the stipulation of the parties, ECF No. 396 at 2, the Court will reduce Plaintiffs' lodestar amount by $16,000 to reflect the unsuccessful passport claims.

### e.    Conclusion

In sum, the Court excludes the 148.1 hours claimed in the "Other" category, leaving 4,980.3 hours.  The Court applies a 10 percent reduction to the hours in the "complaint and client communications" category and a 5 percent reduction to the remaining hours, resulting in 4,723.345 hours of compensable time.

## 2.    Reasonable Hourly Rate

Court should calculate the lodestar using "the hourly prevailing rate for private attorneys in the community conducting noncontingent litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133 (emphasis omitted).  "[T]he burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  For this analysis, "relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "Declarations by attorneys regarding the prevailing market rate in the community can suffice to establish a reasonable hourly rate." *Reyes*, 281 F. Supp. 3d at 851 (citing *Widrig v. Apfel*, 140 F.3d 1207, 1209 (9th Cir. 1998)); *see also Ketchum*, 24 Cal. 4th at 1140 (considering "declarations by Bay Area attorneys concerning the prevailing rates for contingency fee cases").  The Court may also rely on "rate determinations in other cases, particularly those setting a rate for plaintiffs' attorney." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Plaintiffs request that the Court approve the following hourly rate for attorneys from Duckworth Peters Lebowitz Olivier LLP ("DPLO"), Olivier Schreiber & Chao LLP ("OSC"), Kosinki & Thiagaraj LLP ("KT"), and Shepherd Finkelman Miller & Shah LLP ("SFMS"):

| Firm | Attorney | Years of Experience | Rate |
|---|---|---|---|
| DPLO/OSC | Monique Olivier (partner) | 22 | $750 |
| DPLO | Thomas Duckworth (partner) | 25 | $750 |
| DPLO | Erika Heath (of counsel) | 9 | $475 |
| DPLO | Aseil Mohmoud (associate) | 5 | $350 |
| OSC | Christian Schreiber (partner) | 13 | $675 |
| OSC | Katherine Chao (partner) | 13 | $650 |
| KT | Alison Kosinski (partner) | 11 | $500 |
| KT | Emily Thiagaraj (partner) | 7 | $450 |

| | | | |
|---|---|---|---|
| SFMS | James Miller (partner) | 27 | $850 |
| SFMS | James Shah (partner) | 25 | $825 |
| SFMS | Ronald Kravitz (partner) | 30 | $725 |
| SFMS | Nathan Zipperian (partner) | 21 | $700 |
| SFMS | Kolin Tang (associate) | 8 | $525 |
| SFMS | Nicolas Lussier (project analyst) | 3 | $200 |
| SFMS | Jillian Boyce (paralegal) | 7 | $200 |

Virgin contests only the rates claimed by SFMS attorneys.  ECF No. 386 at 21-22.  The Court agrees with Virgin's concession that the rates sought by Plaintiffs' remaining counsel are reasonable and in line with the prevailing rates in this district.  ECF No. 374-1 ¶¶ 27-28 (collecting cases).

The Court also agrees that Plaintiffs have failed to justify the upper tier rates of $850 and $825 claimed by James Miller and James Shah, respectively.  While Plaintiffs cite cases from other districts approving SFMS's rates, ECF No. 374-11 ¶ 13, they do not point to any case from this district awarding a similar rate.[6]  Rather, it appears that Monique Olivier's and Thomas Duckworth's $750 rate reflects the prevailing upper-tier rate in this district for wage-and-hour class actions.  *See, e.g.*, *Black v. T-Mobile USA, Inc.*, No. 17-cv-04151-HSG, 2019 WL 3323087, at *6 (N.D. Cal. July 24, 2019) (finding rates "between $295 to $435 for associates and $495 to $725 for senior counsel and partners" to be "reasonable and in line with prevailing rates in this district for personnel of comparable experience, skill, and reputation" in wage-and-hour class action); *Bisaccia v. Revel Sys., Inc.*, No. 17-cv-02533-HSG, 2019 WL 3220275, at *8 (N.D. Cal. July 17, 2019) ($625 to $675 for partners in Fair Labor Standards Act ("FLSA") collective action); *Wilson v. Tesla, Inc.*, No. 17-cv-03763-JSC, 2019 WL 2929988, at *12 (N.D. Cal. July 8, 2019) ($742 highest rate in wage-and-hour class action); *Fronda v. Staffmark Holdings, Inc.*, No.

---

[6] Plaintiffs cite *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-01365-CW, 2010 WL 1687829, at *3 (N.D. Cal. Apr. 22, 2010), but that court did not discuss the requested rates or make any finding as to the prevailing community rate.  ECF No. 374-1 ¶ 28.  In any event, a "prevailing" rate is not simply the highest rate that any court has awarded in this district, but rather the one that reflects common practice.

15-cv-02315-MEJ, 2018 WL 2463101, at *11 (N.D. Cal. June 1, 2018) ($750 highest rate in wage-and-hour class action); *Walsh v. CorePower Yoga LLC*, No. 16-cv-05610-MEJ, 2017 WL 4390168, at *10 (N.D. Cal. Oct. 3, 2017) ($775 highest rate in wage-and-hour class and FLSA collective action).  Because Plaintiffs have not shown that Miller's and Shaw's rates are the prevailing ones in the community, the Court will award the same $750 rate it approves for Olivier and Duckworth.[7]

Applying these rates and the reductions to the claimed hours, Plaintiffs' counsel's lodestar is as follows:

| Attorney | Rate | Adjusted Hours | Lodestar |
|---|---|---|---|
| Monique Olivier (partner) | $750 | 1,966.14 | $1,556,670.00 |
| Thomas Duckworth (partner) | $750 | 3.835 | $3,037.50 |
| Erika Heath (of counsel) | $475 | 85.47 | $42,854.50 |
| Aseil Mohmoud (associate) | $350 | 5.85 | $2,161,25 |
| Christian Schreiber (partner) | $675 | 13.14 | $9,362.25 |
| Katherine Chao (partner) | $650 | 6.39 | $4,384.25 |
| Alison Kosinski (partner) | $500 | 1,021.78 | $539,325.00 |
| Emily Thiagaraj (partner) | $450 | 466.145 | $221,445.00 |
| James Miller (partner) | $750 | 498.785 | $394,901.30 |
| James Shah (partner) | $750 | 17.995 | $14,253.75 |
| Ronald Kravitz (partner) | $725 | 13.59 | $10,400.13 |
| Nathan Zipperian (partner) | $700 | 71.55 | $52,867.50 |
| Kolin Tang (associate) | $525 | 26.335 | $5,566.00 |

[7] The Court rejects Virgin's argument that SMFS attorneys must be billed at the average hourly rates for partners and associates from the class counsel firms.  ECF No. 386 at 21-22.  Virgin cites no legal authority for the proposition that class counsel's rates act as a cap on the rates of any associated counsel.  Rather, the question is whether the challenged rates are within the range of the prevailing rates in this district for similar work by similarly qualified attorneys.  *See Blum*, 465 U.S. at 895 n.11; *Ketchum*, 24 Cal. 4th at 1133.

United States District Court
Northern District of California

| | | | |
|---|---|---|---|
| Nicolas Lussier (project analyst) | $200 | 176.13 | $37,183.00 |
| Jillian Boyce (paralegal) | $200 | 101.195 | $21,364.00 |
| Passport claims | | | ($16,000.00) |
| **Total** | | 4,474.33 | $2,899,775.00 |

The Court thus concludes that a $2,899,775 lodestar represents counsel's reasonable hours at reasonable hourly rates.

### 3.      Multiplier

In calculating whether a multiplier is appropriate, a court attempts to "determine[], retrospectively, whether the litigation involved a contingent risk or required extraordinary legal skill justifying augmentation of the unadorned lodestar in order to approximate the fair market rate for such services." *Ketchum*, 24 Cal. 4th at 1132.  As noted above, California courts consider such factors as "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award." *Id.*  Court must scrupulously avoid "double counting," and therefore should not base on an enhancement on "these factors to the extent they are already encompassed within the lodestar." *Id.* at 1138.  In *Ketchum*, for instance, the California Supreme Court observed that "for the most part, the difficulty of a legal question and the quality of representation are already encompassed in the lodestar" because "[a] more difficult legal question typically requires more attorney hours, and a more skillful and experienced attorney will command a higher hourly rate." *Id.* at 1138-39.

Here, Plaintiffs request that the Court apply a multiplier of four to counsel's lodestar, asserting that all four factors highlighted in *Ketchum* support their request.  ECF No. 374 at 9.

### a.      Novelty and Difficulty of Issues

Plaintiffs assert – and Virgin does not meaningfully dispute – that the issues presented were novel and difficult.  ECF No. 374 at 24-26.

16

United States District Court
Northern District of California

1       The parties and the Court have said as much on multiple occasions, including when Virgin

2   moved to certify the Court's denial of summary judgment for interlocutory appeal, ECF No. 127 at

3   28-29, when Virgin sought to stay this action, ECF No. 295, and when the Court, at Virgin's

4   request, exercised its discretion to reduce the PAGA penalties from approximately $33.3 million

5   to $25 million, ECF No. 365 at 14-15.  But while this factor weighs in favor of some

6   enhancement, its weight is limited because it is to some extent reflected in the substantial number

7   of hours reasonably expended in this case.  *See Ketchum*, 24 Cal. 4th at 1138 (explaining that "[a]

8   more difficult legal question typically requires more attorney hours").  Nonetheless, the Court

9   concludes that some upward adjustment is supported by this factor.  *See Ridgeway*, 269 F. Supp.

10  3d at 998 (acknowledging that "the complexity of this case is part of the reason for plaintiffs'

11  nearly 11,000 hours of billing, which is already accounted for in the lodestar" but still finding that

12  "the numerous novel, difficult, and complex issues . . . weigh[ed] in favor a multiplier").

    **b.**    **Skill of Counsel and Results Obtained**

13

14      Plaintiffs contend that counsel demonstrated exceptional skill, as evidenced by the

15  exceptional results obtained despite Virgin's full-throated defense.  ECF No. 374 at 26-27.

16      "The 'results obtained' factor can properly be used to enhance a lodestar calculation where

17  an exceptional effort produced an exceptional benefit."  *Graham v. DaimlerChrysler Corp.*, 34

18  Cal. 4th 553, 582 (2004), *as modified* (Jan. 12, 2005) (citation omitted).  Plaintiffs cite the

19  absolute size of their $77 million recovery, but the Court does not find that fact, standing alone,

20  significantly probative.  As courts have recognized, the absolute amount of the recovery is often a

21  function of class size, and may be only loosely correlated to the effort and skill required to prevail.

22  *See Congdon v. Uber Techs., Inc.*, No. 16-cv-02499-YGR, 2019 WL 2327922, at *4 (N.D. Cal.

23  May 31, 2019) ("Had the class size been greater, so too would be the damages award.  What

24  would not have changed measurably is the amount of work necessary to achieve the same

25  result."); *Gutierrez*, 2015 WL 2438274, at *5 ("[T]he substantial monetary relief obtained in this

26  action is partly attributable to the size of the class.  In other words, the vast recovery is not entirely

27  attributable to class counsel's skill but partly due to the sheer size of the class.").

28      Virgin also contends that Plaintiffs did not achieve exceptional results because they did not

prevail on certain claims.  As explained above, the Court concluded that Plaintiffs' reimbursement claim was unrelated and excluded those hours from the lodestar entirely.  At the multiplier stage, the Court considers Plaintiffs' unsuccessful SFMWO and unpaid non-flight activities claims within the context of the litigation as a whole, asking whether Plaintiffs "achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" *EPIC*, 190 Cal. App. 4th at 239 (alteration in original) (quoting *Hensley*, 461 U.S. at 434).  If the Court finds that the hours reasonably expended – including time spent on the related but unsuccessful claims – disproportionately exceed the overall relief obtained, it may reduce the lodestar figure accordingly.  *Id.*

Here, the Court concludes that Plaintiffs' lack of success on these two claims does not meaningfully reduce the results achieved.  Plaintiffs prevailed on the key threshold questions regarding Virgin's obligations under California labor laws, resulting in substantial recoveries under their various wage-and-hour claims, notwithstanding their failure to recover for specific categories of tasks.  And, as explained above, Plaintiffs' SFMWO claim sought largely overlapping relief.  The likelihood that these claims unfairly inflated counsel's hours is also reduced by the fact that the Court granted summary judgment on those claims at a relatively early stage of the litigation, ECF No. 121, prior to significant motion practice, including Plaintiffs' successful motions for summary judgment on liability and damages.  Ultimately, the Court finds that the hours expended were reasonable in light of the overall success achieved, and agrees that success was exceptional.  *See Fox*, 563 U.S. at 834 ("A court should compensate the plaintiff for the time his attorney reasonably spent in achieving the favorable outcome, even if 'the plaintiff failed to prevail on every contention.'" (quoting *Hensley*, 461 U.S. at 435)).

Based on its oversight of this lengthy litigation, the Court also concludes that counsel displayed extraordinary skill, above and beyond that reflected in the prevailing market rate for attorneys with commensurate experience.  Combined with the results obtained, these considerations also support some enhancement.

### c.     Preclusion from Other Employment

The parties dispute whether Plaintiffs' counsel were precluded from accepting other work.

Virgin points out many of the lead partners have filed other cases during the pendency of the litigation.  ECF No. 386 at 26-27.  Virgin also stresses that SFMS does not assert that they were forced to turn down any work.  *Id.* at 27.

Virgin cites no authority for its position that this factor requires that counsel have no other clients during the case for which a multiplier is sought, and the contention runs against the Court's experience and common sense.  Contrary to Virgin, this factor is not binary, but rather considers "the extent to which taking the case on a contingent fee basis has precluded the attorney from taking other fee-generating work."  *Save Our Uniquely Rural Cmty. Env't v. County of San Bernardino*, 235 Cal. App. 4th 1179, 1188 (2015).  Nor does the relevant authority support Virgin's contention that counsel was required to provide information regarding "their overall workload prior to initiating this litigation or during its pendency."  ECF No. 386 at 26.  Indeed, the California Court of Appeal has rejected a similar argument that counsel must include "comparative billing data (such as hours billed annually by the firm or amount of income deferred)," finding that the trial court could reasonably credit class counsel's representation that the litigation had "consumed well over 2,100 hours of professional time, which in a small firm such as [theirs] comprises a significant amount of billing."  *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1218 (2008) (alteration in original).

Given the hours expended and size of their firms here, the Court similarly finds credible counsel's declarations stating that they carried a full caseload and had to turn down other fee-generating matters.  ECF No. 374-1 ¶ 66; ECF No. 374-9 ¶ 36.  Virgin's emphasis on the other actions brought by counsel, ECF No. 386 at 26-27, is consistent with a full caseload and actually supports that conclusion.

### d.    Contingent Risk

Finally, Plaintiffs assert that a multiplier is justified to compensate for the risks counsel assumed in litigating this case on an entirely contingent basis.  Virgin raises several points in response.

Virgin's first objection is that the contingent risk is already accounted for in using counsel's current rather than historical rates.  ECF No. 386 at 25-26.  But while "the utilization of

United States District Court
Northern District of California

current hourly rates may ameliorate the delay in payment of fees that counsel experienced," it does not mitigate the problems addressed "by the contingent risk factor, which accounts for 'the risk of default (the loss of the case, which cancels the debt of the client to the lawyer).'" *Ridgeway*, 269 F. Supp. 3d at 996 (quoting *Graham*, 34 Cal. 4th at 580). An enhancement for contingent risk is appropriate where "[t]he claims and defenses . . . raised a significant number of complex legal issues of first impression, and class counsel took a substantial risk that it would not prevail on these issues and thus would not recover a full fee." *Amaral*, 163 Cal. App. 4th at 1217. Here, counsel has devoted a significant outlay of nearly $3 million in attorney time over 4 years of district court litigation, incurring a substantial risk of non-payment.

Virgin's remaining contentions are likewise unpersuasive. Its argument that Plaintiffs' counsel's rates already price in contingent risk is contradicted by counsel's sworn declarations, ECF No. 374-1 ¶ 25, and otherwise unsupported by the record. And Virgin's pending appeal, ECF No. 370, belies its assertion that the contingent risk of the case dissipated when the Court first ruled in Plaintiffs' favor on certain key issues.

This factor likewise weighs in favor of some multiplier.

### e.     Appropriate Multiplier

In sum, all four factors on which Plaintiffs rely favor a positive multiplier. The Court gives relatively little weight to the difficulty of the issues and skill of counsel, which are already reflected in large part in the hours and rates claimed, and which sit at the high end of reasonableness. *See Ketchum*, 24 Cal. 4th at 1138-39. The contingent risk borne by counsel carries the most weight in the Court's analysis.

Turning to the appropriate multiplier, the Court finds unhelpful Plaintiffs' heavy reliance on multipliers approved when fees were awarded from a common fund. Plaintiffs' arguments ignore critical distinctions as to the principles governing the different awards and the resulting role of the lodestar. When a court "award[s] a fee from the fund or from the other benefited parties, [it] acts within its equitable power to prevent the other parties' unjust enrichment." *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 489 (2016). This "fee spreading" serves to "distribute[] the cost of hiring an attorney among all the parties benefited." *Id.* Courts have long

1   "[d]istinguish[ed] between fee spreading cases in which the fee award is to be taken from a

2   common fund (including a class action settlement fund involving absent class members), and

3   statutory fee shifting cases in which the award is a product of an adversary proceeding between the

4   prevailing and nonprevailing parties." *Id.* at 492 (citing *Court Awarded Attorney Fees, Report of*

5   *the Third Circuit Task Force*, 108 F.R.D. 237, 250-51 (1986)); *see also Blum*, 465 U.S. at 900

6   n.16.

7   The difference in treatment is most stark under federal law.  There, the Supreme Court has

8   emphasized "a 'strong presumption' that the lodestar figure is reasonable" under federal fee-

9   shifting statutes.  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).  Accordingly, a

10   multiplier is appropriate only "in those rare circumstances in which the lodestar does not

11   adequately take into account a factor that may properly be considered in determining a reasonable

12   fee." *Id.*; *see also Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566,

13   (1986) ("[The lodestar figure includes most, if not all, of the relevant factors constituting a

14   'reasonable' attorney's fee, and it is unnecessary to enhance the fee for superior performance in

15   order to serve the statutory purpose of enabling plaintiffs to secure legal assistance.").

16   By contrast, in common fund cases, "courts [within the Ninth Circuit] typically calculate

17   25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in

18   the record of any 'special circumstances' justifying a departure." *In re Bluetooth Headset Prod.*

19   *Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) (citation omitted).  Under this benchmark approach,

20   "counsel's success provides [some of] its own reward: the larger the total recovery, the larger

21   counsel's fee award will be, all else being equal." *Rodman v. Safeway Inc.*, No. 11-cv-03003-JST,

22   2018 WL 4030558, at *3 n.3 (N.D. Cal. Aug. 23, 2018).  It is no surprise, then, that starting from a

23   25 percent default results in "[m]ultiples ranging from one to four [being] frequently awarded in

24   common fund cases when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d

25   1043, 1051 n.6 (9th Cir. 2002).

26   True, "California does not follow the approach to fee awards adopted by the federal

27   courts. . . .  As a result, an upward or downward adjustment from the lodestar figure will be far

28   more common under California law than federal law." *Ridgeway*, 269 F. Supp. 3d at 995

United States District Court
Northern District of California

21

United States District Court
Northern District of California

(alteration in original) (quoting *Weeks v. Baker & McKenzie*, 63 Cal.App.4th 1128, 1173 (1998)). Nonetheless, even under California law, a court has far greater leeway to deviate from the lodestar in common fund cases.  Where an award is sought from the common fund, a court has discretion to "determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created."  *Laffitte*, 1 Cal. 5th at 503.  In such cases, the court may – but need not – "double check the reasonableness of the percentage fee through a lodestar calculation," which "provides a mechanism for bringing an objective measure of the work performed into the calculation of a reasonable attorney fee."  *Id.* at 504.  "If the multiplier calculated by means of a lodestar cross-check is *extraordinarily high or low*, the trial court should consider whether the percentage used should be adjusted so as to bring the imputed multiplier within a justifiable range," but even then, "the court is not necessarily required to make such an adjustment."  *Id.* at 505 (emphasis added).

Given these distinctions, authority from the common fund context is of limited value in determining the appropriate multiplier in a fee-shifting case or the range of multipliers commonly awarded.  Again, the Court finds the analysis in *Ridgeway* instructive.  There, as here, plaintiffs prevailed on the merits of their class wage-and-hour claims.  269 F. Supp. 3d at 981-82.  Counsel sought both a fee-shifting award from defendant *and* a percentage of the common fund.  *Id.* at 983-84.  The *Ridgeway* court first applied the lodestar method to the fee-shifting request, ultimately awarding a 2.0 multiplier.  *Id.* at 999.  Separately, it then analyzed the common fund request, applying the Ninth Circuit's 25 percent benchmark analysis, arriving at a figure which exceeded the fee-shifting award by roughly $2.2 million.  *Id.* at 1000.  The *Ridgeway* court ordered defendant to pay the full fee-shifting award and awarded the remaining $2.2 million out of the common fund.  *Id.* at 999-1000.

Plaintiffs here indicate that they intend to follow the same approach, ECF No. 374 at 16 n.2, albeit in more fragmented fashion.  Accordingly, the Court bases its analysis for this fee-shifting request on analogous fee-shifting cases.  To the extent that Plaintiffs' common fund cases support a greater multiplier, that difference is appropriately charged to the class, not Virgin.

The Court's independent review reveals a number of helpful benchmarks.

In *Ridgeway* itself, counsel devoted "11,000 hours of attorney and paralegal time, plus $1.7

million in out of pocket expenses" over the course of 9 years of vigorous litigation with a well-resourced corporation, ultimately obtaining a $60.8 million judgment after a 16-day trial. 269 F. Supp. 3d at 996-97. The *Ridgeway* court likewise noted the complexity of issues raised in the case, as well as the difficulty plaintiffs faced in proceeding with a class-action trial. *Id.* at 998. As noted above, the court concluded that these considerations supported a 2.0 multiplier for the fee-shifting request. *Id.* at 999.

The Court also takes guidance from the Ninth Circuit, which recently affirmed a 2.0 multiplier under California law in a prisoner civil rights case. *Rodriguez*, 891 F.3d at 809. There, the Ninth Circuit found the multiplier supported by "the substantial financial risk that [plaintiffs'] counsel assumed in investing $3.4 million of attorney time in a contingency case; the difficulty of representing prisoners with the . . . highest security classifications, in an excessive force action against high-ranking jail officials, all the while facing 'aggressive opposition' from [defendants]; and the opportunity costs [of] the [7] years-long litigation." *Id.*

In other wage-and-hour cases where courts have found a similar combination of complexity and contingent risk, trial courts have applied – and the California Court of Appeal has affirmed – somewhat smaller multipliers. *See Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 291 (2010) (1.75 multiplier); *Amaral*, 163 Cal. App. 4th at 1216 (1.65 multiplier).

Based on these cases and consideration of the factors above, the Court concludes that a 2.0 multiplier is appropriate here.

### f.      Multiplier for Fee Litigation

Finally, "in most cases, the enhancement for the fee litigation should be lower than the enhancement for the underlying litigation, if one is applied at all." *Graham*, 34 Cal. 4th at 582. Plaintiffs have made no effort to justify a multiplier for the fee litigation itself, and the Court does not find that the record supports one. Accordingly, the Court will not apply the multiplier to Plaintiffs' fees incurred in support of this motion.

### 4.      Total Fees Award

Applying a 2.0 multiplier to Plaintiffs' lodestar (with the exception of the fee litigation) results in an attorney's fee award of $5,753,115.00.

23

**B.     Costs**

An attorney is entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (citation omitted).  To support an expense award, Plaintiffs should file an itemized list of expenses by category and the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable.  *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *30 (N.D. Cal. Apr. 1, 2011), *supplemented*, 2011 WL 1838562 (N.D. Cal. May 13, 2011).  Counsel must also provide receipts to support their claimed expenses.  *MacDonald*, 2016 WL 3055643, at *10.

Plaintiffs request $250,775.81 in expenses.  ECF No. 374 at 9.  In support, they provide a single table of each firm's expenses by category, such as "Computerized Legal Research" and "Travel and Related Expenses."  ECF No. 374-8 at 2.  This chart is not itemized, nor is it supported by receipts.  *Cf. MacDonald*, 2016 WL 3055643, at *10.  However, the overwhelming majority of the expenses – $226,250 – are for expert fees, and the remaining amounts are evidently reasonable or even modest for a litigation of this size and scope.  ECF No. 374-8 at 2.  The Court will award the claimed expenses.

## CONCLUSION

For the foregoing reasons, the Court grants Plaintiffs' motion in part and awards $5,753,115.00 in attorney's fees and $250,775.81 in expenses.

**IT IS SO ORDERED.**

Dated:  January 21, 2020

_____
JON S. TIGAR
United States District Judge

United States District Court
Northern District of California

24