**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JULIA BERNSTEIN; ESTHER GARCIA; LISA MARIE SMITH, on behalf of themselves and all others similarly situated, | Nos. 19-15382 20-15186 |
| *Plaintiffs-Appellees*, | D.C. No. 4:15-cv-02277-JST |
| v. | |
| VIRGIN AMERICA, INC.; ALASKA AIRLINES, INC., | ORDER AND AMENDED OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Northern District of California
Jon S. Tigar, District Judge, Presiding

Argued and Submitted January 14, 2021
San Francisco, California

Filed February 23, 2021
Amended March 8, 2021

2    BERNSTEIN V. VIRGIN AMERICA

Before:  J. CLIFFORD WALLACE and MILAN D. SMITH, JR., Circuit Judges, and ROBERT S. LASNIK,[*] District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

## SUMMARY[**]

### California Labor Code

The panel affirmed in part, reversed in part, and vacated the district court's judgment in a putative class action, brought by a plaintiff class of California-based flight attendants who were employed by Virgin America, Inc., alleging that Virgin violated California labor laws.

During the Class Period, approximately 25% of Virgin's flights were between California airports.  Class members spent approximately 31.5% of their time working within California's borders.  The district court certified a Class of all individuals who worked as California-based Virgin flight attendants during the period from March 18, 2011; a California Resident Subclass; and a Waiting Time Penalties Subclass.

---

[*] The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

As a threshold matter, the panel held that the dormant Commerce Clause did not bar applying California law in the context of this case.

The panel reversed the district court's summary judgment to plaintiffs on their claims for minimum wage and payment for all hours worked.  Specifically, the panel held that Virgin's compensation scheme based on block time did not violate California law.  The fact that pay was not specifically attached to each hour of work did not mean that Virgin violated California law.

The panel held that under the circumstances of this case, Virgin was subject to the overtime strictures of California Labor Code § 510 as to both the Class and California Resident Subclass.

The panel affirmed the district court's summary judgment to plaintiffs on their rest and meal break claims. The panel rejected Virgin's contention that federal law preempted California's meal and rest break requirements in the aviation context because federal law occupied the field. Specifically, the Federal Aviation Act did not occupy the field of flight attendant meal and rest breaks.  Also, conflict preemption did not bar application of California's meal and rest break requirements.  Finally, the meal and rest break requirements were not preempted under the Airline Deregulation Act.  Extrapolating the principles of *Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011), the panel held that California's meal and rest break requirements applied to the work performed by the Class and California Resident Subclass.

Applying *Ward v. United Airlines, Inc.*, 466 P.3d 309, 321 (Cal. 2020) (holding that California Labor Code § 226(a) applied to workers who do not perform the majority

of their work in any one state, but who are based for work purposes in California), the panel affirmed the district court's summary judgment to plaintiffs on their wage statement claim.

The panel affirmed the district court's summary judgment to plaintiffs on their waiting time penalties claim. Specifically, the panel held that although there was no California Supreme Court case specifically interpreting the reach of the waiting time penalties statute – Cal. Labor Code §§ 201 and 202 – for interstate employees, the analogy to Cal. Labor Code 226 was compelling.  Because the California Supreme Court held § 226 to apply under these circumstances, the panel held that §§ 201 and 202 applied as well.

The panel affirmed the district court's decision on class certification.  Specifically, the panel held that the applicability of California law has been adjudicated on a class-wide or subclass-wide basis, and thus no individual choice-of-law analysis was necessary.

The panel reversed the district court's holding that Virgin was subject to heightened penalties for subsequent violations under California's Private Attorney General Act. Virgin was not notified by the Labor Commissioner or any court that it was subject to the California Labor Code until the district court partially granted plaintiff's motion for summary judgment.  On this basis, the panel held that Virgin was not subject to heightened penalties for any labor code violation that occurred prior to that point.

The panel held that since it reversed in part the district court's judgment on the merits, California law required that

the panel vacate the attorneys' fees and costs award.  The panel remanded the issue to the district court.

## COUNSEL

Shay Dvoretzky (argued), Skadden Arps Slate Meagher & Flom LLP, Washington, D.C.; Douglas W. Hall, and Anthony J. Dick, Jones Day, Washington, D.C.; David J. Feder, Jones Day, Los Angeles, California; Robert Jon Hendricks and Brendan T. Killeen, Morgan Lewis & Bockius LLP, San Francisco, California; for Defendants-Appellants.

Charles J. Cooper (argued), Peter A. Patterson, and John D. Ohlendorf, Cooper & Kirk PLLC, Washington, D.C.; Monique Olivier (argued), Olivier Schreiber & Chao LLP, San Francisco, California; James E. Miller, Shepherd Finkelman Miller & Shah LLP, Chester, Connecticut; Alison Kosinski, Kosinski & Thiagaraj LLP, San Francisco, California; for Plaintiffs-Appellees.

Jennifer L. Utrecht (argued) and Mark B. Stern, Appellate Staff; Joseph H. Hunt, Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; Steven G. Bradbury, General Counsel; Paul M. Geier, Assistant General Counsel; Charles E. Enloe, Trial Attorney; United States Department of Transportation, Washington, D.C.; Arjun Garg, Chief Counsel; Jonathan W. Cross, Senior Attorney; Federal Aviation Administration; for Amicus Curiae United States.

Anton Metlitsky and Kendall Turner, O'Melveny & Myers LLP, New York, New York; Chris Hollinger and Adam KohSweeney, O'Melveny & Myers LLP, San Francisco,

California; Patricia N. Vercelli, Airlines for America, Washington, D.C.; Jeffrey N. Shane, International Air Transport Association, Geneva, Switzerland; for Amici Curiae Airlines for America and International Air Transport Association.

Adam G. Unikowsky, Jenner & Block LLP, Washington, D.C.; Steven P. Lehotsky and Janet Galeria, U.S. Chamber Litigation Center, Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States.

Sarah Pierce Wimberly, Andrew Duncan McClintock, and Jessica Lynn Asbridge, Ford Harrison LLP, Atlanta, Georgia, for Amicus Curiae Regional Airline Association.

Robert W. Ferguson, Attorney General; Anastasia Sandstrom, Senior Counsel; Office of the Attorney General, Seattle, Washington; Phil Weiser, Attorney General, Denver, Colorado; William Tong, Attorney General, Hartford, Connecticut, Kathleen Jennings, Attorney General, Wilmington, Delaware; Karl A. Racine, Attorney General, Washington, D.C.; Clare E. Connors, Attorney General, Honolulu, Hawaii; Kwame Raoul, Attorney General, Springfield, Illinois; Aaron M. Frey, Attorney General, Augusta, Maine; Maura Healey, Attorney General, Boston, Massachusetts; Brian E. Frosh, Attorney General, Baltimore, Maryland; Keith Ellison, Attorney General, St. Paul, Minnesota; Jim Hood, Attorney General, Jackson, Mississippi; Aaron D. Ford, Attorney General, Carson City, Nevada; Gurbir S. Grewal, Attorney General, Trenton, New Jersey; Letitia James, Attorney General, New York, New York; Josh Stein, Attorney General, Raleigh, North Carolina; Ellen F. Rosenblum, Attorney General, Salem, Oregon; Josh Shapiro, Attorney General, Philadelphia, Pennsylvania; Thomas J. Donovan Jr., Attorney General,

Montpelier, Vermont; Mark R. Herring, Attorney General, Richmond, Virginia; for Amici Curiae Washington, Colorado, Connecticut, Delaware, District of Columbia, Hawaii, Illinois, Maine, Massachusetts, Maryland, Minnesota, Mississippi, Nevada, New Jersey, New York, North Carolina, Oregon, Pennsylvania, Vermont, and Virginia.

Xavier Becerra, Attorney General; Satoshi Yanai, Supervising Deputy Attorney General; Mana Barari, Deputy Attorney General; California Department of Justice, Los Angeles, California; for Amicus Curiae State of California.

Kathleen P. Barnard, Darin M. Dalmat, and Kelly Ann Skahan, Barnard Iglitzin & Lavitt LLP, Seattle, Washington, for Amicus Curiae Association of Flight Attendants-Communication Workers of America, AFL-CIO.

## ORDER

The opinion filed on February 23, 2021 is amended by the Amended Opinion filed in its place concurrently with this order.

## OPINION

M. SMITH, Circuit Judge:

This case requires us to determine whether certain provisions of the California Labor Code apply to an interstate transportation company's relationship with its employees. Plaintiffs Julia Bernstein, Esther Garcia, and Lisa Smith sued their employer, Virgin America, Inc., alleging that Virgin violated a host of California labor laws. The district court certified a class of similarly-situated plaintiffs and granted summary judgment to Plaintiffs on virtually all of their claims, and Virgin appealed. We affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are California-based flight attendants who were employees of Virgin. During the Class Period, approximately 25% of Virgin's flights were between California airports. Approximately 75% of Virgin's flights took off or landed at a non-California airport, but the vast majority of those flights retained some connection to California: "From 2011 through 2016, the daily percentage of Virgin's flights that arrived in or departed from California airports was never less than 88%, and during some years reached 99%." Class members spent approximately 31.5% of their time working within California's borders. There is

no evidence in the record to suggest that class members spent more than 50% of their time working in any one state, or that they worked in any other state more than they worked in California. Virgin's fleet of aircraft were registered with the Federal Aviation Administration at Virgin's headquarters in Burlingame, California, and the record does not reflect any other business headquarters.

In their complaint, Plaintiffs alleged that Virgin failed to pay minimum wage (Cal. Lab. Code §§ 1182.12, 1194, 1194.2), overtime (Cal. Lab. Code §§ 510, 1194), and for every hour worked (Cal. Lab. Code § 204); failed to provide required meal periods (Cal. Lab. Code §§ 226.7, 512), rest breaks (Cal. Lab. Code § 226.7), and accurate wage statements (Cal. Lab. Code § 226); failed to pay waiting time penalties[1] (Cal. Lab. Code §§ 201, 202, 203); and violated the Unfair Competition Law (Cal. Bus. & Prof. Code § 17200). Plaintiffs also sought compensation under the California Labor Code's Private Attorneys General Act (Cal. Lab. Code § 2698) (PAGA).

Virgin disputes that it is subject to California law, but does not contend that any other state's labor laws ought to apply to it.

In November 2016, the district court held that Plaintiffs satisfied the requirements for a class action pursuant to Federal Rule of Civil Procedure 23(b)(3), and certified the following classes:

---

[1] Waiting time penalties refer to the California requirement that employers expeditiously pay all wages due to employees who separate from employment. If an employer fails to comply, it is liable for "waiting time penalties" pursuant to the Labor Code.

**Class:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. at any time during the period from March 18, 2011 (four years from the filing of the original Complaint) through the date established by the Court for notice of certification of the Class (the "Class Period").

**California Resident Subclass:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. while residing in California at any time during the Class Period.

**Waiting Time Penalties Subclass:** All individuals who have worked as California-based flight attendants of Virgin America, Inc. and have separated from their employment at any time since March 18, 2012.

On July 9, 2018, the district court granted Plaintiffs' Motion for Summary Judgment in large part. The district court held that the California Labor Code applied to all work performed in California, and that "the presumption against extraterritorial application does not apply for the failure to pay for all hours worked, to pay overtime, to pay waiting time penalties, and to provide accurate wage statements" because the conduct underlying those claims took place in California. The district court also rejected the "job situs" test Virgin proposed, holding that, under California law, an employee need not work "exclusively or principally" in California to benefit from California law.

With respect to the dormant Commerce Clause arguments, the district court held that application of the California Labor Code does not violate the dormant Commerce Clause because the California Labor Code does not impose a substantial burden on interstate commerce that is "clearly excessive in relation to the putative local benefits." *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). The district court further held that the California meal and rest break requirements were not preempted by field, conflict, or express preemption pursuant to the Federal Aviation Act (FAA) or the Airline Deregulation Act (ADA). The district court awarded PAGA penalties for initial and subsequent violations of the Labor Code.

The district court then awarded attorney's fees and costs to Plaintiffs' counsel, excluding 148.1 hours that were not properly documented, reducing the award for "complaint and client communications" time by 10%, and imposing a 5% reduction to the remaining hours. The district court then applied a 2.0 multiplier based on the factors set forth in *Ketchum v. Moses*, 17 P.3d 735, 741–42 (Cal. 2001). The district court awarded the full amount of costs that Plaintiffs' counsel claimed based on its conclusion that the amounts claimed were reasonable. Virgin appealed from the district court's summary judgment and grant of attorney's fees, and the cases were consolidated for oral argument.

## STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. We review the district court's grant of summary judgment *de novo*. *United States v. Phattey*, 943 F.3d 1277, 1280 (9th Cir. 2019). Our task is to "view the evidence in the light most favorable" to Virgin "and determine whether there are any genuine issues of material fact and whether the district

court correctly applied the relevant substantive law." *Id.* (cleaned up).

We review a district court's decision on a motion for attorney's fees for abuse of discretion. *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1235 (9th Cir. 2000).

## ANALYSIS

### A.

As a threshold matter, we must consider whether the dormant Commerce Clause permits application of California labor law in the context of this case. We hold that the dormant Commerce Clause does not bar applying California law.

"Modern dormant Commerce Clause jurisprudence primarily 'is driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012) (quoting *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337–38 (2008)). "[A] state regulation does not become vulnerable to invalidation under the dormant Commerce Clause merely because it affects interstate commerce. A critical requirement for proving a violation of the dormant Commerce Clause is that there must be a *substantial burden* on *interstate commerce*." *Id.* (citation omitted). "These other significant burdens on interstate commerce generally result from inconsistent regulation of activities that are inherently national or require a uniform system of regulation." *Id.*

Indeed, only a "small number" of Supreme Court cases "have invalidated state laws under the dormant Commerce Clause that appear to have been genuinely nondiscriminatory . . . where such laws undermined a compelling need for national uniformity in regulation." *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 298 n.12 (1997). Among these are *Bibb v. Navajo Freight Lines, Inc.*, 359 U.S. 520 (1959), and *Southern Pacific Company v. Arizona*, 325 U.S. 761 (1945). Virgin relies on these cases, but they do not help its legal position.

In *Bibb*, the Arkansas Commerce Commission required straight mudflaps on trailers operating on state highways; an Illinois statute required curved mudflaps. 359 U.S. at 527. "Thus[,] if a trailer [were] to be operated in both States, mudguards would have to be interchanged, causing a significant delay in an operation where prompt movement may be of the essence." *Id.* Moreover, the interchange was laborious and could be "exceedingly dangerous." *Id.* The Supreme Court struck down the Illinois statute under the dormant Commerce Clause based on "the rather massive showing of burden on interstate commerce which [the motor carriers] made at the hearing." *Id.* at 528, 530.

In *Southern Pacific*, Arizona limited freight trains to seventy cars and passenger trains to fourteen cars, differing substantially from nearby states' length limitations. 325 U.S. at 771, 774. Railroad operations passing through Arizona were substantially burdened by the obligation to break up and remake trains at the Arizona state border. *Id.* at 772. The Supreme Court held that the facts in the record showed "[t]he serious impediment to the free flow of commerce by the local regulation of train lengths and the practical necessity that such regulation, if any, must be prescribed by a single body having a nation-wide authority."

*Id.* at 775. These cases stand for the principle that state regulations can violate the dormant Commerce Clause in the rare case where an interstate carrier must comply with different and incompatible state requirements, and where that compliance is substantially burdensome.

We are not persuaded that California's labor laws are similar in character and effect to Illinois's mudflaps decree and Arizona's train-length limitation. Virgin has not identified any other state labor laws with which it might be required to comply. Indeed, because California labor law's application is based upon the parties' various contacts with the state—as explained further below—a claim that a proliferation of similar state laws would substantially burden Virgin is dubious. Virgin does not have anything like the number of contacts with any other state that it has with California, and it fails to proffer evidence of any burden it allegedly suffers from doing business in other states with different regulations. *Cf. Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990) (distinguishing between the facts presented in *Bibb* and a case where the defendant merely "speculate[d] that other states will pass similar but inconsistent legislation," because "inconsistent state laws . . . can coexist without conflict as long as each state regulates only its own [entities]"). We hold that the dormant Commerce Clause is not implicated in this case.

**B.**

Virgin challenges application of California law to both the Class and the California Resident Subclass. But Virgin's proposed "job situs" test is a misinterpretation of California law. According to the California Supreme Court:

> The better question is what kinds of
> California connections will suffice to trigger

> the relevant provisions of California law.
> And second, the connections that suffice for
> purposes of one statute may not necessarily
> suffice for another. There is no single, all-
> purpose answer to the question of when state
> law will apply to an interstate employment
> relationship or set of transactions. As is true
> of statutory interpretation generally, each law
> must be considered on its own terms.

*Ward v. United Airlines, Inc.*, 466 P.3d 309, 319 (Cal. 2020).
In accordance with *Ward*, each of Plaintiffs' claims requires
separate analysis to determine whether the California
Supreme Court would apply California law to the Class and
Subclass under the circumstances of this case. *Cf. Pacheco
v. United States*, 220 F.3d 1126, 1131 (9th Cir. 2000) ("[W]e
must predict as best we can what the California Supreme
Court would do in these circumstances."). Where there is no
genuine issue of material fact whether Virgin complied with
California law, we decline to determine whether and how the
California Supreme Court would apply that particular law to
Virgin.

### a. Minimum wage and compensation for all hours worked

California Labor Code § 1182.12(a) prescribes "the
minimum wage for all industries." Section 204(a) requires
that "[a]ll wages . . . earned by any person in any
employment are due and payable twice during each calendar
month." Cal. Lab. Code § 204(a). After the district court's
ruling in this case, the California Supreme Court considered
whether a virtually identical compensation scheme violated
California law for payment of minimum wage and payment

16                 BERNSTEIN V. VIRGIN AMERICA

for all hours worked.  The court held that a payment scheme
based on block time does not violate California law where

> the scheme, taken as a whole, does not
> promise any particular compensation for any
> particular hour of work; instead, . . . it offers
> a guaranteed level of compensation for each
> duty period and each rotation.  Because there
> are no on-duty hours for which Delta
> contractually guarantees certain pay—but
> from which compensation must be borrowed
> to cover other un- or undercompensated on-
> duty hours—the concerns presented by the
> compensation scheme in [*Armenta v.
> Osmose, Inc.*, 37 Cal. Rptr. 3d 460 (Ct. App.
> 2005)] and like cases are absent here.

*Oman v. Delta Air Lines, Inc.*, 466 P.3d 325, 339 (Cal. 2020)
(emphases omitted).

Plaintiffs attempt to distinguish their case by noting that,
while Delta promised the *Oman* plaintiffs payment "by the
rotation rather than by particular hours worked," Virgin
promised them an hourly wage.  However, Plaintiffs' prior
briefing contradicts this assertion.   Instead, Plaintiffs'
answering brief stated that Virgin paid flight attendants
based on "(1) block time worked each day of the pairing;
(2) block time spent deadheading (traveling between airports
to reach an assigned flight . . .); and (3) up to 3.5 hours of
minimum duty if a flight attendant's block time and
deadheading time in one day did not exceed 3.5 hours in
total."  This does not reflect a promise to pay a particular
hourly wage.

Second, Plaintiffs contend that, unlike Delta's scheme in
*Oman*, Virgin's did not guarantee "that flight attendants are

always paid above the minimum wage for the hours worked during each rotation." *See Oman*, 466 P.3d at 338. Plaintiffs posit that a Virgin flight attendant could be ordered to report for duty five hours prior to their scheduled flight, but not be paid for any of that time. However, Plaintiffs have not alleged that this ever happened, nor that it would plausibly happen. Thus, the rule from *Oman* controls. The fact that pay is not specifically attached to each hour of work does not mean that Virgin violated California law. We therefore reverse the district court's summary judgment to Plaintiffs on their claims for minimum wage and payment for all hours worked.

### b. Overtime

Under California law,

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

Cal. Lab. Code § 510(a).

In *Sullivan v. Oracle Corp.*, 254 P.3d 237 (Cal. 2011), the California Supreme Court held that the overtime

provision applied to non-residents performing work in California for a California-based employer. *Id.* at 240–41. This holding compels the conclusion that California's overtime provision applies to the Plaintiff Class. *Sullivan* did not answer whether the overtime provision would apply to residents performing work outside California for a California-based employer, *i.e.*, the Plaintiff California Resident Subclass. However, the principles set forth in *Sullivan* require us to apply California overtime law to California residents' out-of-state work. In *Sullivan*, the court wrote, "To permit nonresidents to work in California without the protection of our overtime law would completely sacrifice, as to those employees, the state's important public policy goals of protecting health and safety and preventing the evils associated with overwork." *Id.* at 247. The same public policy goals would be thwarted by permitting residents to work outside of California for a California employer without the protection of its overtime law. Thus, we hold that under the circumstances of this case, Virgin was subject to the strictures of California Labor Code § 510 as to both the Class and Subclass.

Virgin's opening brief did not dispute that it failed to comply with § 510. Accordingly, we affirm the district court's grant of summary judgment to Plaintiffs on this claim.

### c.   Rest and meal breaks

### i.   Preemption

California Labor Code § 512(a) states:

> An employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a

> meal period of not less than 30 minutes . . . .
> An employer shall not employ an employee
> for a work period of more than 10 hours per
> day without providing the employee with a
> second meal period of not less than
> 30 minutes[.]

IWC Wage Order 9-2001 § 12(A) requires an "authorized rest period time" that is "based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof." "[I]nsofar as practicable," the rest period "shall be in the middle of each work period." *Id.* Virgin contends that federal law preempts California's meal and rest break requirements in the aviation context because federal law occupies the field. We disagree.

Under the field preemption doctrine,

> States are precluded from regulating conduct
> in a field that Congress, acting within its
> proper authority, has determined must be
> regulated by its exclusive governance. The
> intent to displace state law altogether can be
> inferred from a framework of regulation so
> pervasive that Congress left no room for the
> States to supplement it or where there is a
> federal interest so dominant that the federal
> system will be assumed to preclude
> enforcement of state laws on the same
> subject.

*Arizona v. United States*, 567 U.S. 387, 399 (2012) (cleaned up). Pursuant to the FAA, federal regulations entitled "Flight attendant duty period limitations and rest requirements" were promulgated that prohibit duty periods

of more than 14 hours, subject to certain exceptions, and require a 9-hour rest period after release from a duty period of 14 hours or less.  14 C.F.R. § 121.467(b)(1)–(2).

Although our circuit has not yet addressed the precise question of FAA preemption of state meal and rest break requirements, our case law makes clear that field preemption generally applies to state regulations specifically in the field of *aviation safety*.  In *Montalvo v. Spirit Airlines*, 508 F.3d 464, 468 (9th Cir. 2007), we held that Congress intended to occupy the field of "aviation safety."  This was based on the dominance of federal interests in regulation of the country's airspace, the passage of the FAA "in response to a series of fatal air crashes between civil and military aircraft operating under separate flight rules," and delegation of "full responsibility and authority for the . . . promulgation and enforcement of safety regulations" to the agency.  *Id.* at 471–72 (alteration in original).  We noted that the FAA also directed the Administrator "to regulate any 'other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.'"  *Id.* at 472 (quoting 49 U.S.C. § 44701(a)(5)).

In *Ventress v. Japan Airlines*, 747 F.3d 716 (9th Cir. 2014), we held that standards for pilots were also pervasively regulated because the FAA authorized the agency "to issue airman certificates to individuals who are qualified and physically able to perform the duties related to the certified position."  *Id.* at 721.  The plaintiff's retaliation and constructive discharge claims arising out of California's whistleblowing statute (after the plaintiff raised concerns about a colleague's fitness to fly) were therefore preempted. *Id.* at 722. *Ventress* made clear that a congressional interest in national aviation safety standards served as a basis for our holding that federal law preempted the state law claim at

issue. *Ventress* relied on "two reasons: the pervasiveness of federal safety regulations for pilots and the congressional goal of a uniform system of aviation safety." *Id.* We again emphasized the congressional interest in national aviation safety standards when we wrote, "In reaching this conclusion, we need not, and do not, suggest that the FAA preempts all retaliation and constructive termination claims brought under California law . . . . Instead, we hold that federal law preempts state law claims that encroach upon, supplement, or alter the *federally occupied field of aviation safety*[.]" *Id.* at 722–23 (emphasis added).

Virgin contends that meal and rest breaks touch on aviation safety in that the California requirements prohibit employers from assigning duties to an employee who is on a meal or rest break. But this connection is far too tenuous to support field preemption for California's requirements. Unlike the state laws at issue in *Montalvo* and *Ventress*, California's meal and rest break requirements have no *direct* bearing on the field of aviation safety.

We recognize that field preemption under the FAA is not necessarily limited to state laws that regulate aviation safety. In general, where a federal regulatory scheme is so pervasive that it evinces an intent to occupy the field, state regulations in the same field are preempted. *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir. 2009). However, 14 C.F.R. § 121.467, the federal regulation governing maximum duty periods for flight attendants, does not resemble the type of comprehensive regulation or contain the pervasive language that we consider necessary to discern congressional intent to occupy the field. *See Ventress*, 747 F.3d at 721–22 (discussing at least five different sections under two titles of regulations relating to the requirement for an airman certificate, the requirement of a

medical certificate, the delegation of the authority to issue a certificate to the Federal Air Surgeon, and the promulgation of standards for mental, neurological, and general medical conditions for the medical certificate).   When a single regulation has triggered field preemption, our court has highlighted the regulation's "exhaustive" level of detail.  *See Nat'l Fed'n of the Blind v. United Airlines Inc.*, 813 F.3d 718, 734–35 (9th Cir. 2016) (holding that 14 C.F.R. § 382.57 occupies the field of airport kiosk accessibility for the blind in part because it is "unmistakably pervasive in the pertinent sense, in that it exhaustively regulates the relevant attributes of accessible kiosks," including numerous "technical and design requirements").  While § 121.467 is lengthy, it only discusses allowed duty period lengths.  The regulation does not compel us to conclude that Congress left no room for states to prescribe meal periods and ten-minute rest breaks within the maximum total duty period allowed under federal law.

Conflict preemption also does not bar application of California's meal and rest break requirements.  Conflict preemption only applies "where compliance with both federal and state regulations is a physical impossibility." *Ventress*, 747 F.3d at 720.  It is physically possible to comply with federal regulations prohibiting a duty period of longer than fourteen hours and California's statutes requiring ten-minute rest breaks and thirty-minute meal periods at specific intervals.   Thus, California's meal and rest break requirements also survive under a conflict preemption analysis.

Finally, California's meal and rest break requirements are also not preempted under the ADA.  The ADA provides: "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to

a price, route or service of an air carrier[.]"  49 U.S.C.
§ 41713(b)(1).  In discussing an identical provision in the
trucking context, the Supreme Court "identified four
principles" of the law's preemption:

> (1) state enforcement actions having a
> connection with, or reference to, carrier rates,
> routes, or services are pre-empted; (2) such
> pre-emption may occur even if a state law's
> effect on rates, routes or services is only
> indirect; (3) it makes no difference whether a
> state law is consistent or inconsistent with
> federal regulation; and (4) pre-emption
> occurs at least where state laws have a
> significant impact related to Congress'
> deregulatory    and    pre-emption-related
> objectives.

*Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 645 (9th Cir.
2014) (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S.
364, 370–71 (2008)) (cleaned up).    But "background
regulations that are several steps removed from prices,
routes, or services, such as prevailing wage laws or safety
regulations, are not preempted, even if employers must
factor those provisions into their decisions about the prices
that they set, the routes that they use, or the services that they
provide." *Id.* at 646.  Where a law bears a reference to rates,
routes, or services, the Supreme Court has held that the law
"relates to" those items and is therefore preempted. *Morales
v. Trans World Airlines, Inc.*, 504 U.S. 374, 388–89 (1992)
(prohibition on deceptive advertising of airfare was
preempted).  Where a law bears no such reference, "the
proper inquiry is whether the provision, directly or
indirectly, *binds* the carrier to a particular price, route, or
service and thereby interferes with the competitive market

forces within the industry." *Dilts*, 769 F.3d at 646 (quoting *Am. Trucking Ass'ns, Inc. v. City of L.A.*, 660 F.3d 384, 397 (9th Cir. 2011)).

In *Dilts*, we interpreted the preemption clause in the Federal Aviation Administration Authorization Act of 1994 (FAAA), which provided, "States may not enact or enforce a law related to a price, route, or service of any motor carrier with respect to the transportation of property." 769 F.3d at 643 (quoting 49 U.S.C. § 14501(c)(1) (internal quotation marks and alterations omitted)). We held that the FAAA did not preempt California's meal and rest break requirements as applied to the interstate trucking industry. In our opinion, we wrote that "Congress did not intend to preempt generally applicable state transportation, safety, welfare, or business rules that do not otherwise regulate prices, routes, or services." *Id.* at 644. Moreover, an increase in cost associated with compliance was not sufficient to show a relation to prices, routes, or services. *Id.* at 646.

The language of the ADA's preemption clause is virtually identical to the language of the FAAA's. The reasoning of *Dilts* thus applies with equal force here. Just as the FAAA did not preempt California's meal and rest break requirements as applied to the trucking industry, the ADA does not preempt those requirements as applied to the airline industry.

### ii. Application

After establishing that California's meal and rest break requirements are not preempted, we next address whether these requirements apply to the work performed by the Class and Subclass under California law. Extrapolating the principles of *Sullivan*, we hold that they do.

In *Sullivan*, the California Supreme Court emphasized the California Legislature's public policy goals in the context of California's overtime statute. Among these goals was "protecting employees in a relatively weak bargaining position from the evils associated with overwork[.]" 254 P.3d at 241. Based on this state policy, and others, the California Supreme Court held that "[t]o exclude nonresidents from the overtime laws' protection would tend to defeat their purpose by encouraging employers to import unprotected workers from other states," and that "[n]othing in the language or history of the relevant statutes suggests the Legislature ever contemplated such a result." *Id.* at 242. The California Supreme Court concluded that application of the overtime statute to nonresidents, as well as residents, was the only feasible way "to reconcile with the Legislature's express declaration that 'all protections, rights, and remedies available under state law are available to all individuals who are or who have been employed, in this state.'" *Id.* (quoting Cal. Lab. Code § 1171.5(a) (alterations omitted)).

We hold that policy similarly dictates application of California's meal and rest break requirements to both the Class and Subclass. Like overtime pay, meal and rest break requirements are designed to prevent "the evils associated with overwork," mandating that employers treat employees humanely even when employees have been unable to bargain for that contractual right. Thus, like overtime pay, meal and rest break requirements applied to Virgin's relationship with both the Class and Subclass. Virgin's opening brief does not contend that it complied with California's meal and rest break requirements. We thus affirm the district court's summary judgment to Plaintiffs on these claims.

### d.  Wage statements

California Labor Code § 226(a) states:

> An employer, semimonthly or at the time of each payment of wages, shall furnish to his or her employee . . . an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee . . . , (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, . . . (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number . . . , (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee[.]

The California Supreme Court has determined that § 226 applies to workers who "perform the majority of their work in California; but if they do not perform the majority of their work in any one state, they will be covered if they are based for work purposes in California." *Ward*, 466 P.3d at 321.

*Ward* controls here. According to Virgin's expert, "class members collectively worked only 31.5% of their time in California." There is, however, no evidence that the class members performed "the majority of their work in any one state," and, indeed, the record compels the inference that if

Plaintiffs did not work in California for a majority of their time, they did not do so in any state.

Furthermore, Virgin itself classified all Plaintiffs in this action as being California-based. Virgin somewhat speciously contends that when it classified Plaintiffs as California-based, it meant that term in a different sense than the *Ward* court used it. This argument is unavailing. The court in *Ward* wrote, "the Legislature intended for section 226 to apply to workers whose work is not performed predominantly in any one state, provided that California is the state that has the most significant relationship to the work." *Id*. Thus, the California Supreme Court "conclude[d] this principle will be satisfied if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work." *Id*. Virgin's argument hinges on the final sentence—it asserts that many plaintiffs did not "present" themselves to "begin work" in California because Plaintiffs' pairings began and ended outside the state.

Virgin's argument fails for two reasons. First, *Ward* makes clear that presentation in California to begin work is *one* way in which a plaintiff might be based in California; it is not the *only* way. *Id.* (holding that the principle behind § 226 "will be satisfied if" it applies to the class of workers who present themselves to begin work in California, not that it cannot apply under other circumstances). Second, Virgin's argument misses the point of the *Ward* test, which serves to approximate whether California's "relationship to the work is more significant than any other state's." *Ward*, 466 P.3d at 323. The fact that Virgin's only employee base was in California and all of its flight crew were "based" there means that, so long as plaintiffs performed at least some

work there, California had the strongest ties to the employment relationship of any state.  Thus, under *Ward*, § 226 applies to Virgin.  Virgin's opening brief does not contend that it complied with § 226.  We therefore affirm the district court's summary judgment to Plaintiffs on their wage statement claim.

### e.  Waiting time penalties

California Labor Code § 201(a) states, "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Section 202(a) further provides, "If an employee not having a written contract for a definite period quits his or her employment, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting."  Section 203 sets forth penalties for failure to comply with §§ 201 and 202.

Although there is no California Supreme Court case specifically interpreting the reach of the waiting time penalties statute for interstate employers, we find an analogy to § 226 compelling.  Both the waiting time penalties and the wage statement requirements pertain to a tangible object that the employer must give to the employee.  Both requirements are technical in nature: section 226 specifies the information a wage statement must contain, and the waiting time penalties specify the time in which an employer must remit an employee's wages after separation from employment. Thus, using *Ward*'s language, the "kinds of California connections" that "will suffice to trigger the" two provisions are the same.  *See Ward*, 466 P.3d at 319.  Because the California Supreme Court held § 226 to apply under these circumstances, we hold that §§ 201 and 202 apply as well.

Virgin's opening brief does not dispute that it failed to comply with §§ 201 and 202. Consequently, we affirm the district court's summary judgment to Plaintiffs on their waiting time penalties claim.

## C.

Pursuant to Federal Rule of Civil Procedure 23, a class may be certified if "the class is so numerous that joinder of all members is impracticable"; "there are questions of law or fact common to the class"; "the claims or defenses" of the named plaintiffs are typical of those of the class; and the named plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). Additionally, Plaintiffs must show that "questions of law or fact common to class members predominate" over individual questions, "and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Of these requirements, Virgin challenges only the last: that class adjudication is the superior method. Virgin claims that class adjudication is inappropriate because choice-of-law analyses will be required for each plaintiff. Pursuant to our analysis, the applicability of California law has been adjudicated on a class-wide or subclass-wide basis, and thus no individual choice-of-law analysis is necessary. We affirm the district court's decision on class certification.

## D.

Finally, we consider whether the district court correctly held that Virgin was subject to heightened penalties for subsequent violations under PAGA. PAGA permits individuals to sue their employers to recover penalties to which they are entitled under the Labor Code. Cal. Lab. Code § 2699(a). Where the section violated does not

indicate the amount of the penalty for its violation, PAGA fixes the penalty at $100 "for each aggrieved employee per pay period for the initial violation," and $200 "for each aggrieved employee per pay period for each subsequent violation." *Id.* § 2699(f)(2).

Under California law, "[a] good faith dispute" that an employer is required to comply with a particular law "will preclude imposition" of heightened penalties. *Amaral v. Cintas Corp. No. 2*, 78 Cal. Rptr. 3d 572, 607 (Ct. App. 2008). "A 'good faith dispute' . . . occurs when an employer presents a defense, based in law or fact which, if successful, would preclude any recover[y] on the part of the employee." *Id.* "Until the employer has been notified that it is violating a Labor Code provision (whether or not the [Labor] Commissioner or court chooses to impose penalties), the employer cannot be presumed to be aware that its continuing underpayment of employees is a 'violation' subject to penalties." *Id.* at 614.

Virgin was not notified by the Labor Commissioner or any court that it was subject to the California Labor Code until the district court partially granted Plaintiffs' motion for summary judgment. On this basis, we reverse the district court's holding that Virgin is subject to heightened penalties for any labor code violation that occurred prior to that point.

## E.

Since we reverse in part the district court's judgment on the merits, California law requires that we vacate the attorney's fees and costs award "because we cannot say with certainty that the [district] court would exercise its discretion the same way" had Plaintiffs not prevailed on virtually all of their claims. *Ventas Finance I, LLC v. Franchise Tax Bd.*, 81 Cal. Rptr. 3d 823, 844 (Ct. App. 2008). We therefore

vacate the district court's order awarding fees and costs to Plaintiffs' counsel, and we remand the issue of attorney's fees and costs to the district court.

## CONCLUSION

In sum, we affirm the district court's summary judgment to Plaintiffs on their claims for overtime (§ 510); for violation of meal and rest break requirements (§§ 226.7, 512); for wage statement deficiencies (§ 226); and for waiting time penalties (§§ 201 and 202). We also affirm the district court's decision on class certification. We reverse the district court's summary judgment to Plaintiffs on their claims for minimum wage (§ 1182.12); for payment for each hour worked (§ 204); and for heightened penalties for subsequent violations under PAGA. We vacate the district court's order granting attorney's fees and costs to Plaintiffs, and we remand for further proceedings consistent with this opinion.

**AFFIRMED IN PART, REVERSED IN PART, VACATED IN PART.**