OLIVIER & SCHREIBER LLP
Monique Olivier (SBN 190385)
(monique@os-legal.com)
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

KOSINSKI + THIAGARAJ, LLP
Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (415) 230-2860

*Attorneys for Plaintiff and the Class*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> VIRGIN AMERICA, INC.; et al.; <br><br> Defendants. | Case No. 15-cv-02277-JST <br><br> **2023 DECLARATION OF EXPERT DAVID BRESHEARS IN SUPPORT OF MOTION TO APPROVE PLAN OF ALLOCATION** |

I, David Breshears, do hereby declare and state as follows:

1.      This declaration is based upon my own personal observation and knowledge, and if called upon to testify I could competently testify to the matters set forth in this declaration.

2.      I am a Certified Public Accountant ("CPA") who has been licensed to practice in the State of California continuously since 2006. I have also been designated by the AICPA as a CFF (Certified in Financial Forensics). I am currently a partner at Hemming Morse, LLP, CPAs and Forensic Consultants. My work in the accounting profession includes experience as an auditor and as a consultant. I have consulted on over 450 matters related to federal or state wage and hour laws. These matters include unpaid overtime, off-the-clock, meal and rest period violations, employee misclassification, recordkeeping violations, time shaving and similar topics. In 1998, I obtained a Bachelor of Science Degree in Accounting from California State University, Chico. I have given a number of presentations on accounting and wage and hour issues. My expert qualifications, including my testimony, are described in Exhibit A hereto.

3.      My firm has been compensated for my review and analysis in this matter at my standard hourly rate, which is currently $570 per hour. Others have assisted me in my work and my firm has been compensated for their work at their standard hourly rates.

4.      My firm has been retained by counsel for Plaintiffs in the matter of Julia Bernstein, Lisa Marie Smith and Esther Garcia, on behalf of themselves and all others similarly situated against Virgin America, Inc. and Alaska Airlines, as successor in interest ("Virgin" or "Defendant").  I previously signed declarations in this action on June 23, 2016; September 29, 2016; October 6, 2016; November 1, 2016; November 10, 2017; December 29, 2017; February 6, 2018; February 21, 2018; and September 27, 2018.  Those declarations provided an analysis of the amounts due to the Class and Subclasses based upon the findings of the District Court.

5.      I understand that after the initial judgment was entered in this case, Defendant appealed.  After the Ninth Circuit Court of Appeals issued its opinion, the case was remanded

back to the District Court.  I then provided a declaration on May 26, 2022, which was submitted in conjunction with Plaintiffs' Motion to Amend the Judgment after remand from the Ninth Circuit Court of Appeals.  My May 26, 2022 declaration set forth my analysis and calculations for the Class and Subclass due to Virgin's alleged failure to:

- pay overtime wages;

- provide required meal periods;

- provide required rest periods; and

- provide accurate wage statements.

6.      My May 26, 2022 declaration also calculated prejudgment interest, waiting time penalties for the Waiting Penalties Subclass ("Penalties Subclass"), and civil penalties under the Private Attorneys General Act ("PAGA") for Virgin's failure to pay overtime, and failure to provide meal periods, rest periods, accurate wage statements, and timely pay.  In Exhibits B, B-1 and B-2 to my May 26, 2022 declaration, I have provided, by Class/Subclass member, the damages related to overtime premium wages (with prejudgment interest), meal break violations, rest break violations, wage statement violations, waiting time penalties, and each PAGA penalty.

7.      I understand that on January 24, 2023, based in large part on the analysis and calculations in my May 26, 2022 declaration, the District Court entered judgment.  The total judgment amount is $30,976,831.87, broken down as follows:

| AMENDED JUDGMENT TOTALS | |
|---|---:|
| Overtime | $6,324,592.18 |
| Meal | $190,525.29 |
| Rest | $410,841.31 |
| Waiting Time | $2,249,470.58 |
| Interest on Overtime Claim | $5,125,302.51 |
| Wage Statement | $4,398,600.00 |
| PAGA | $12,277,500.00 |
| | **$30,976,831.87** |

8.      The judgment also provides that additional prejudgment interest of $1,732.76 for a period of nine days from January 15, 2023 to January 24, 2023 shall be included.  That additional prejudgment interest amount is **$15,594.84**.

9.      In addition, I understand that post-judgment interest applies to the total judgment pursuant to 28 U.S.C. § 1961, which "shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  That rate, for the week ending on January 20, 2023, is 4.66%.  The total post-judgment interest for a period of 163 days from January 24, 2023 to July 6, 2023, which I understand is when the District Court is holding a hearing, is **$644,965.14**.

10.     Accordingly, the total amount of the judgment as of July 6, 2023 will be **$31,637,391.85**.  If the judgment amount is paid before or after July 6, 2023, the amount of post-judgment interest will need to be recalculated according to the formula set forth in 28 U.S.C. § 1961 as described in the previous paragraph.

11.     I have updated my analysis and calculations provided to the District Court in my May 26, 2022 declaration based upon the District Court's January 24, 2023 judgment, and the additional prejudgment and post-judgment interest amounts identified above.

12.     I understand that Plaintiffs' proposed plan of allocation for the judgment amount to the Class and Subclasses will address various deductions from the judgment, subject to the approval of the District Court, for attorneys' fees, expenses, costs of administration relating to the distribution of the judgment, and any service awards to the named Plaintiffs.  After those deductions, there will be a distribution to the Class and Subclasses, which is the Net Distribution Amount.

13.     I will transmit my calculations (based upon Virgin's payroll data) to the Class Administrator in this case, who I understand is Strategic Claims Solutions ("SCS").  After the

District Court approves Plaintiffs' proposed plan of allocation, SCS will calculate the amounts owed to each Class and Subclass member based upon the Net Distribution Amount.

14. I have also been asked by Plaintiffs' counsel to explain the work that went into calculating damages for the overtime claims, meal and rest period claims, wage statement claims, PAGA penalties, and waiting time penalties, and how that work is connected to the work I did relating to the minimum wage claim, which was ultimately decided in Virgin's favor.

15. In order to calculate the damages for the overtime claims, meal and rest period claims, wage statement claims, PAGA penalties, and waiting time penalties, it was necessary to obtain and analyze all of the data from Defendant with respect to all hours worked by each Class and Subclass member.  Because Virgin did not calculate pay to flight attendants for each hour worked (i.e., "duty hours"), but instead calculated pay based upon "block" hours, in order to determine when flight attendants worked over eight hours in a day and/or forty hours in a week, and thus were entitled to overtime, it was necessary to analyze and determine how many duty hours each flight attendant worked each day and each week during the Class Period.  This was the same for the PAGA penalties based upon Virgin's failure to pay overtime.

16. Similarly, because Virgin did not calculate pay to flight attendants for each hour worked (i.e., "duty hours"), but instead calculated pay based upon "block" hours, in order to determine when flight attendants were not provided a meal or rest period, it was necessary to analyze and determine how many duty hours each flight attendant worked each day and each week during the Class Period.  This was the same for the PAGA penalties based upon Virgin's failure to provide meal and rest breaks.

17. As a result of the manner in which Virgin compensated its flight attendants, my work calculating damages for the overtime claims, meal and rest period claims, wage statement claims, PAGA penalties, and waiting time penalties was inextricably related to the work I

DECL. OF D. BRESHEARS ISO MTN TO
APPROVE PLAN OF ALLOCATION

5

CASE NO. 15-CV-02277-JST

performed in calculating potential damages related to the asserted minimum wage claim as they are all based on the computation of the actual hours worked.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:   5/10/23

David M. Breshears, CPA/CFF