OLIVIER & SCHREIBER LLP
Monique Olivier (SBN 190385)
(monique@os-legal.com)
Cassidy Clark (SBN 335523)
(cassidy@os-legal.com)
475 14th Street, Suite 250
Oakland, CA 94612
Telephone: (415) 484-0980

KOSINSKI + THIAGARAJ, LLP
Alison Kosinski (SBN 261676)
(alison@ktlawsf.com)
Emily Thiagaraj (SBN 284634)
(emily@ktlawsf.com)
1300 Clay Street, Suite 600
Oakland, CA 94612
Telephone: (415) 230-2860

*Attorneys for Plaintiffs and the Class*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, LISA MARIE SMITH, and ESTHER GARCIA, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>VIRGIN AMERICA INC.; ALASKA AIRLINES, INC. and Does 1-10, inclusive;<br><br>Defendants. | Case No. 15-cv-02277-JST<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO APPROVE THE PLAN OF ALLOCATION, ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**<br><br>Date:    July 6, 2023<br>Time:    2:00 p.m.<br>Crtrm:  Courtroom 6; 2nd Floor<br>Judge:  Hon. Jon S. Tigar |

1

### NOTICE OF MOTION AND MOTION

2     PLEASE TAKE NOTICE THAT on July 6, 2023 at 2:00 p.m. or as soon thereafter as the

3   matter may be heard, in Courtroom 6 of the United States District Court for the Northern District

4   of California, located at 1301 Clay Street, Oakland, California 94612, before the Honorable Jon

5   S. Tigar, Plaintiffs, Julia Bernstein, Esther Garcia and Lisa Marie Smith ("Plaintiffs"), on behalf

6   of themselves and the certified Class, will respectfully move this Court to approve (1) the Plan of

7   Allocation for distribution of the judgment; (2) attorneys' fees and expenses; and (3) service

8   awards to the Class Representatives.

9     This motion is based upon this Notice of Motion and Motion, the Memorandum of Points

10   and Authorities filed concurrently herewith, the declarations filed concurrently herewith, all other

11   pleadings, papers, records and documentary materials on file in this action, those matters of which

12   the court may take judicial notice, and the oral arguments of counsel made at the hearing on this

13   motion.

14

15   Dated:  May 18, 2023                    Respectfully submitted,

16
                                            */s/ Monique Olivier*
17                                          Monique Olivier

18                                          *Attorneys for Plaintiffs and the Class*

19

20

21

22

23

24

25

26

27

28

1

**<u>TABLE OF CONTENTS</u>**

2    I.     INTRODUCTION ....................................................................................................... 1

3    II.    PROCEDURAL BACKGROUND............................................................................... 3

     III.   ARGUMENT .............................................................................................................. 3
4
          A. THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE
5            AND SHOULD BE APPROVED.......................................................................... 3

6         B.  PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS FAIR, REASONABLE
             AND APPROPRIATE AND SHOULD BE APPROVED. ........................................ 4
7
          1. Defendants Have Agreed to Pay Plaintiffs' Statutory Fees........................................... 5
8
          2. Plaintiffs Are Entitled to Recover Fees as a Percentage of the Common Fund Judgment
9            for Securing Significant Relief for the Class While Bearing Substantial Risk. .............. 6

10            a.  Class Counsel Secured Excellent Results for the Class. ............................................ 7

11            b.  Class Counsel Assumed Significant Risk in Litigating This Action to Judgment
                  and on Appeal on a Wholly Contingent Basis. ......................................................... 9
12
              c.  This Action Involved Novel and Difficult Issues that Class Counsel Vigorously
13                and Skillfully Litigated. .......................................................................................... 11

14            d.  Class Counsel's Request Is Well Within the Range of Fees Awarded in Similar
                  Litigation. .............................................................................................................. 13
15
          3. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request. ............... 14
16
              a.  Class Counsel's Hourly Rates Are Reasonable. ...................................................... 15
17
              b.  Class Counsel's Time Was Reasonably Spent.......................................................... 17
18
              c.  A Positive Multiplier Is Appropriate....................................................................... 19
19
          C. PLAINTIFFS' REQUEST FOR EXPENSES IS REASONABLE AND
20           APPROPRIATE AND SHOULD BE APPROVED.................................................. 23

21        D. PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS FOR VIGOROUSLY
             PROSECUTING THIS ACTION ON BEHALF OF THE CLASS ............................ 24
22   IV.   CONCLUSION........................................................................................................... 26

23

24

25

26

27

28

i

1
2

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

3
4

*Aguilar v. Zep Inc.*,
2014 WL 4063144 (N.D. Cal. Aug. 15, 2014) ............................................................. 4

5

*Amaral v. Cintas Corp. No. 2*,
163 Cal.App.4th 1157 (2008) ................................................................... 11, 21, 22

6
7

*Atempa v. Pedrazzani*,
27 Cal.App.5th 809 (2018) ........................................................................................ 5

8
9

*Barbosa v. Cargill Meat Sols. Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ............................................................................. 14

10
11

*Beaty v. BET Holdings, Inc.*,
222 F.3d 607 (9th Cir. 2000) .................................................................................... 17

12

*Bell v. Farmers Ins. Exch.*,
115 Cal.App.4th 715 (2004) .......................................................................... 2, 5, 24

13
14

*Bernstein v. Virgin America, Inc.*,
3 F.4th 1127 (9th Cir. 2021) ....................................................................................... 9

15
16

*Brundle on behalf of Constellis Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
919 F.3d 763 (4th Cir. 2019) ...................................................................................... 5

17

*Buckingham v. Bank of Am.*,
2017 U.S. Dist. LEXIS 107243 (N.D. Cal. July 11, 2017)....................................... 22

18
19

*Caudle v. Bristow Optical Co.*,
224 F.3d 1014 (9th Cir. 2000) .................................................................................. 19

20
21

*Cellphone Termination Fee Cases*,
186 Cal.App.4th 1380 (2010) ................................................................................... 26

22
23

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) .................................................................................. 16

24

*Chavez v. Netflix, Inc.*,
162 Cal.App.4th 43 (2008) .................................................................................... 6, 7

25
26

*Chesemore v. All. Holdings, Inc.*,
2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) ........................................................... 5

27
28

*Children's Hosp. & Med. Ctr. v. Bonta*,
97 Cal.App.4th 740 (2002) ....................................................................................... 16

ii

*Clark* v. *American Residential Services LLC*,
  175 Cal.App.4th 785 (2009) ................................................................................. 24, 25

*Coates v. Farmers Group, Inc.*,
  2016 WL 5791413 (N.D. Cal. Sept. 30, 2016) ........................................................ 26

*Consumer Privacy Cases*,
  175 Cal.App.4th 545 (2009) ...................................................................................... 7

*Craft v. County of San Bernardino*,
  624 F. Supp. 2d 1113 (C.D. Cal. 2008) ................................................................... 22

*Dennis v. Kellogg Co.*,
  697 F.3d 858 (9th Cir. 2012) ..................................................................................... 4

*Dickey v. Advanced Micro Devices, Inc.*,
  2020 WL 870928 (N.D. Cal. Feb. 21, 2020) ........................................................... 17

*Downey Cares v. Downey Cmty. Dev. Comm'n*,
  196 Cal.App.3d 983 (1987) ....................................................................................... 8

*Elder v. Hilton Worldwide Holdings, Inc.*,
  2021 WL 4785936 (N.D. Cal. Feb. 4, 2021) ........................................................... 17

*Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*,
  2017 U.S. Dist. LEXIS 27249 (E.D. Cal. 2017) ...................................................... 14

*Espejo v. The Copley Press, Inc.*,
  13 Cal.App.5th 329 (2017) ........................................................................................ 8

*Graham v. DaimlerChrsyler Corp.*,
  34 Cal.4th 553 (2004) ................................................................................................ 5

*Gutierrez v. Wells Fargo Bank, N.A.*,
  2015 WL 2438274 (N.D. Cal. May 21, 2015) .......................................................... 22

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ............................................... 17, 20, 24

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................. 8, 18

*Horsford v. Bd. of Trustees of California State Univ.*,
  132 Cal.App.4th 359 (2005) ............................................................................... 11, 18

*In re Apple iPhone/iPod Warranty Litig.*,
  40 F. Supp. 3d 1176 (N.D. Cal. 2014) ..................................................................... 22

iii

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................................ 5

*In re: High-tech Employee Antitrust Litigation*,
   2014 WL 10520478 (N.D. Cal. May 16, 2014) ........................................... 26

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................ 17

*Kang v. Wells Fargo Bank, N.A.*,
   2021 WL 5826230 (N.D. Cal. Dec. 8, 2021) ............................................... 22

*Kasten v. Saint-Gobain Performance Plastics Corp.*,
   563 U.S. 1 (2011) ............................................................................................... 24

*Ketchum v. Moses*,
   24 Cal.4th 1122 (2001) ............................................................................ *passim*

*Laffitte v. Robert Half Int'l, Inc.*,
   1 Cal.5th 480 (2016) ................................................................................. *passim*

*Lealao v. Beneficial California, Inc.*,
   82 Cal.App.4th 19 (2000) ................................................................................ 7

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017) ....................................................... 26

*MacDonald v. Ford Motor Co.*,
   142 F. Supp. 3d 884 (N.D. Cal. 2015) ........................................................... 5

*Mitchell v. Robert DeMario Jewelry, Inc.*,
   361 U.S. 288 (1960) ........................................................................................... 24

*Moore v. Jas. H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982) ......................................................................... 18

*Moreno v. City of Sacramento*,
   534 F.3d 1106 (9th Cir. 2008) ....................................................................... 18

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014) ................................................................... 23

*Pellegrino v. Robert Half Int'l, Inc.*,
   182 Cal.App.4th 278 (2010) ........................................................................... 22

*Quinn v. State of Calif.*,
   15 Cal.3d 162 (1995) .......................................................................................... 6

*Ramirez v. Trans Union, LLC*,
   2022 WL 17722395 (N.D. Cal. Dec. 15, 2022)................................................... 17, 19

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
   281 F.Supp.3d 833 (N.D. Cal. 2017) ........................................................................ 5

*Ridgeway v. Wal-Mart Stores Inc.*,
   269 F. Supp. 3d 975 (N.D. Cal. 2017)................................................................*passim*

*Rodman v. Safeway Inc.*,
   2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) .....................................................*passim*

*Rodriguez v. Cty. of Los Angeles*,
   891 F.3d 776 (9th Cir. 2018) ................................................................................... 4

*Rodriguez v. West Publishing Corp.*,
   563 F.3d 948 (9th Cir. 2009) .................................................................................. 25

*Senne v. Kansas City Royals Baseball Corp.*,
   2023 WL 2699972 (N.D. Cal. Mar. 29, 2023)................................................... 14, 22

*Singer v. Becton Dickinson*,
   2010 WL 2196104 (June 1, 2010) ........................................................................... 14

*Sobel v. Hertz Corp.*,
   53 F. Supp. 3d 1319 (D. Nev. 2014)......................................................................... 5

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ............................................................................... 2, 5

*Steinfeld v. Discover Fin. Servs.*,
   2014 U.S. Dist. LEXIS 48540 (N.D. Cal March 10, 2014)...................................... 22

*Stetson v. Grissom*,
   821 F.3d 1157 (9th Cir. 2016) ................................................................................ 16

*Thieriot v. Celtic Ins.*, No. C,
   2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ........................................................ 26

*Thomas v. MagnaChip Semiconductor Corp.*,
   2018 WL 2234598 (N.D. Cal. May 15, 2018)........................................................ 23

*Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.*,
   460 F.3d 1253 (9th Cir. 2006) ............................................................................... 23

*Uschold v. NSMG Shared Servs.*, LLC,
   2020 WL 3035776 (N.D. Cal. June 5, 2020) .......................................................... 22

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) .................................................................................... 20, 22

*Vasquez v. Coast Valley Roofing*,
   266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................................... 14

*Vietnam Veterans of America v. Central Intelligence Agency*,
   2018 WL 4827397 (N.D. Cal. Oct. 4, 2018) .............................................................. 25

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ......................................................................... 7, 14, 15

*Vo v. Las Virgenes Municipal Utility Dist.*,
   79 Cal.App.4th 440 (2000) ................................................................................... 18

*Wershba v. Apple Computer*,
   91 Cal.App.4th 224 (2001) ................................................................................... 20

*Willix v. Healthfirst, In*c.,
   2011 WL 754862 (E.D.N.Y. Feb. 18, 2011) .............................................................. 26

*Wren v. RGIS Inventory Specialists*,
   2011 WL 1230826 (N.D. Cal. April 1, 2011) ........................................................... 14

*Wysinger v. Auto. Club of So. Cal.*,
   157 Cal.App.4th 413 (2007) .................................................................................... 8

**Statutes**

California Code of Civil Procedure § 1021.5 ................................................................ 5

California Labor Code § 1194 ........................................................................................ 5

California Labor Code § 218.5 ...................................................................................... 5

California Labor Code § 2698 .................................................................................. 1, 4

California Labor Code § 2699(g)(1) ............................................................................. 5

**Rules**

Fed. R. Civ. P. 23(e)(2) ................................................................................................ 3

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

   By this Motion, Plaintiffs move the Court to approve (1) the Plan of Allocation for

4

distribution of the judgment; (2) attorneys' fees and expenses; and (3) service awards to the Class

5

Representatives.

6

   This over eight-year litigation is finally coming to a close.  This Court entered an amended

7

judgment in January 2023 of $30,967,831.87.  Dkt. 458.  The judgment also provides for

8

additional prejudgment and post-judgment interest.  *Id.*  That interest brings the total judgment,

9

assuming it is paid on July 6, 2023, the date of this Court's hearing, to $31,637,391.85 (hereafter

10

the "Common Fund Judgment").  *See* Declaration of David Breshears ISO Plaintiffs' Motion

11

("Breshears Decl."), ¶¶ 8-10; Dkt. 468, Stipulation of Parties.  In addition, Defendants have

12

agreed to pay an additional $6,395,874.95 in statutory attorneys' fees and $40,000 to reimburse

13

Class counsel for taxable costs, bringing the total benefit to the Class to $38,073,266.80.  *See*

14

Declaration of Monique Olivier ISO Plaintiffs' Motion ("Olivier Decl.") ¶ 4.

15

   Plaintiffs seek approval of the Plan of Allocation in order to fairly and efficiently distribute

16

the Net Distribution Amount, which is the distribution to the Class and Subclasses after

17

deductions from the Common Fund Judgment for attorneys' fees, expenses, costs of

18

administration relating to the distribution of the judgment, and service awards to the Class

19

representatives.  Because Plaintiffs were able to obtain and analyze detailed payroll data for all

20

class members, the Plan of Allocation is based upon the specific dates and hours worked and

21

hourly rates paid of each Class member.  In other words, the Plan of Allocation will provide a

22

proportional share of recovery to each Class member based upon their actual time worked and

23

hourly rate paid and fairly reflects unpaid overtime, meal and rest period violations, wage

24

statement violations, waiting time violations, and the employee's share of penalties under the

25

Private Attorney Generals Act, Labor Code § 2698 *et seq*. ("PAGA").  Accordingly, the Plan of

26

Allocation is fair and reasonable and should be approved.

27

   Plaintiffs also seek attorneys' fees of $10,441,409 which will come from two sources:

28

$6,395,874 will be paid directly by Defendants; the remaining $4,045,534 to be paid from the

1

over $31 million Common Fund Judgment.  The amount of fees sought is 33.00% of the Common Fund Judgment (less than one-third), but the roughly $6.4 million Defendants have agreed to pay will be credited against that amount.  Accordingly, while Plaintiffs request is for a 33% fee, with the credit, Plaintiffs in fact seek a payment of 12.8% of the Common Fund Judgment, plus expenses. Plaintiffs also seek expenses of over $600,000, which will similarly come from two sources.  $40,000 will be paid by Defendants as reimbursement for Plaintiffs taxable costs, i.e., costs that are recoverable by statute; the remaining $575,289.38 to be paid from the Common Fund Judgment.

Because this is a hybrid class action in which attorneys' fees and expenses are recoverable both under California fee-shifting provisions and as a percentage of the common fund, Plaintiffs' request is fair, adequate and reasonable.  *See Staton v. Boeing Co.,* 327 F.3d 938, 967–69 (9th Cir. 2003) (common fund recovery permitted in addition to statutory fees); *Ridgeway v. Wal-Mart Stores Inc*., 269 F. Supp. 3d 975, 982–83 (N.D. Cal. 2017); *Bell v. Farmers Ins. Exch*., 115 Cal.App.4th 715, 725–26 (2004).

As detailed below, Plaintiffs' request warrants approval.  Plaintiffs and Class counsel have litigated this matter for nearly eight years against unyielding defendants vigorously represented by skilled counsel.  They have expended over 7,300 hours of attorney and staff time and have advanced expenses that exceed $500,000 (including the future costs of administration).  Every single step of this litigation was hard-fought and fraught with risk.  This action has involved a motion for class certification, two motions for summary judgment, a motion for decertification, numerous discovery disputes, a motion for judgment, two subsequent appeals to the Ninth Circuit Court of Appeals, a petition for certiorari to the United States Supreme Court, a motion to stay the proceedings, and finally, a motion to amend the judgment.  Even after a reduction of the Court's initial judgment, this action has culminated in a substantial victory of over $31 million for the benefit of the Class and the State of California.  Plaintiffs therefore request that the Court compensate Olivier & Schreiber LLP (and Ms. Olivier's former firm), Kosinski & Thiagaraj LLP, and Miller Shah LLP ("Class counsel"), and appellate counsel, Cooper & Kirk, PLLC, for the exceptional results they have obtained for the Class.

1    Finally, Plaintiffs request service awards in the amount of $25,000 each for their

2    extraordinary efforts as Class representatives to work with Class counsel to achieve the results

3    here.  As detailed herein, Plaintiffs went above and beyond their duties by spending hundreds of

4    hours with Class counsel in the pursuit of the Class recovery obtained here.

5    For all these reasons, Plaintiffs ask the Court to grant this Motion.

6    **II.    PROCEDURAL BACKGROUND**

7    The Court is extremely familiar with the long history of this case.  There are over 465

8    docket entries in this action.  The major litigation events are well-documented in prior briefings

9    and by this Court.  *See, e.g.*, ECF Nos. 121, 317, 365, 414, and 456.  The recovery of over $31

10   million is the culmination of nearly eight years of hard-fought litigation – encompassing over

11   7,300 hours of Class counsel's time – with a substantial risk of no compensation.  A detailed

12   history of the case, and of Class counsel's work in prosecuting it, is set forth in the Olivier

13   Declaration ¶ 17.

14   **III.   ARGUMENT**

15   **A.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND**
16   **ADEQUATE AND SHOULD BE APPROVED.**

17   A plan of allocation in an adjudicated class action "is subject to the same standards that

18   apply to the allocation of a class settlement fund, i.e., 'the distribution plan must be 'fair,

19   reasonable and adequate.'"  *Rodman v. Safeway Inc*., No. 11-CV-03003-JST, 2018 WL 4030558,

20   at *2 (N.D. Cal. Aug. 23, 2018), citations omitted.  "A plan of allocation that reimburses class

21   members based on the type and extent of their injuries is generally reasonable."  *Id.*

22   The proposed Plan of Allocation, attached as Exhibit A to the Olivier Declaration, is fair,

23   reasonable and adequate.  As detailed in the Plan of Allocation, the Class Administrator, Strategic

24   Claims Solutions ("SCS"), will determine a Net Distribution Amount by taking the total Judgment

25   amount and subtracting the amount of the Judgment owed to the California Labor & Workforce

26   Development Agency for its share of the PAGA penalties, and any award by the Court for

27   attorneys' fees (net of the attorneys' fees Defendants have agreed to pay), expenses, and service

28   awards.  SCS will then establish each Class member's proportional share of the Net Distribution

3

1  Amount based upon the calculations provided by Plaintiffs' expert David Breshears.  Mr.

2  Breshears calculated damages and penalties owed to each Class member based on their unique

3  payroll data including dates worked, hours worked each day and each week, workdays in which a

4  meal period was required but not provided, workdays in which a rest period was required but not

5  provided, wage statements received, and work weeks in which a wage violation occurred for

6  purposes of penalties under the Private Attorneys General Act, Labor Code § 2698 et seq.

7  ("PAGA").  Olivier Decl., ¶ 28, Ex. A; Breshears Decl. ¶¶ 14-17.

8         Class members will receive checks based upon their pro rata share of the Net Distribution

9  Amount, and will receive reminders to cash checks if they have not done so.  *Id.*  Class members

10  will also have an opportunity to obtain a preliminary amount of distribution from the Class

11  administrator, and provide any documentation in the event that they believe an error has been

12  made.  Any unclaimed funds after the resolution of all disputes and distribution of the judgment

13  will go as cy pres to Legal Aid at Work ("LAAW") a non-profit legal aid organization focused on

14  workers' rights.  *Id.*  Where there is a cy pres beneficiary, there must be "a driving nexus between

15  the plaintiff class and the cy pres beneficiaries."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th

16  Cir. 2012) (internal quotation marks and citation omitted).  That is clearly the case here.

17         The Plan of Allocation is fair, reasonable and adequate and should be approved.

18  **B.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES IS FAIR,
19         REASONABLE AND APPROPRIATE AND SHOULD BE APPROVED.[1]**

20         "Where California law governs the claim, it also governs the award of attorneys' fees."

21  *Aguilar v. Zep Inc.*, No. 13-CV-00563-WHO, 2014 WL 4063144, at *2 (N.D. Cal. Aug. 15,

22  2014); *see Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018) ("Calculation of

23  attorney's fee awards in cases brought under state law is a substantive matter to which state law

24  applies."); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *2 (N.D. Cal.

25  Aug. 23, 2018).

26         "This is a 'hybrid' class action—it was initiated under a statute with a fee-shifting

27

28  _____
[1] Class Counsel are providing notice to the Class and an opportunity to raise any objections to this request and will update the Court prior to the hearing on the Motion.

PLAINTIFFS' MOTION TO APPROVE ALLOCATION, FEES, AWARDS        CASE NO.  15-cv-02277-JST

1   provision, but it reached a judgment creating a common fund." *Ridgeway v. Wal-Mart Stores*

2   *Inc*., 269 F. Supp. 3d 975, 982–83 (N.D. Cal. 2017).  As such, Plaintiffs are entitled to seek

3   attorneys' fees both under fee-shifting law and through the common fund doctrine.  *Id*.; *See In re*

4   *Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 941 (9th Cir. 2011) ("The award of

5   attorneys' fees in a class action settlement is often justified by [a] common fund or statutory fee-

6   shifting[,] ... and sometimes by both."); *Staton v. Boeing Co.,* 327 F.3d 938, 967–69 (9th Cir.

7   2003) (common fund recovery permitted in addition to statutory fees); *Bell v. Farmers Ins. Exch*.,

8   115 Cal.App.4th 715, 725–26 (2004) (same); *see also Brundle on behalf of Constellis Emp. Stock*

9   *Ownership Plan v. Wilmington Tr., N.A.,* 919 F.3d 763, 787 (4th Cir. 2019), as amended (Mar. 22,

10  2019) (district court properly awarded fees under both fee-shifting from defendants and as a

11  percentage of the fund obtained for the benefit of the class); *Reyes v. Bakery & Confectionery*

12  *Union & Indus. Int'l Pension Fund*, 281 F.Supp.3d 833, 850 (N.D. Cal. 2017) ("[C]lass counsel

13  may be awarded fees from the common fund in addition to any award under ERISA's fee-shifting

14  statute."); *Chesemore v. All. Holdings, Inc.,* 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014); *Sobel*

15  *v. Hertz Corp.,* 53 F. Supp. 3d 1319 (D. Nev. 2014).

16          **1.   Defendants Have Agreed to Pay Plaintiffs' Statutory Fees.**

17          Plaintiffs are entitled to an award of reasonable attorneys' fees and expenses under several

18  statutory provisions.  California Labor Code § 1194 authorizes recovery for unpaid overtime,

19  "including interest thereon, reasonable attorney's fees, and costs of suit."  Labor Code § 218.5

20  provides in actions for non-payment of wages or benefits, "the court shall award reasonable

21  attorney's fees and costs to the prevailing party[.]"  Labor Code § 2699(g)(1) provides that the

22  prevailing party in a PAGA action to recover civil penalties is entitled to a reasonable attorney fee

23  award "as a matter of right." *Atempa v. Pedrazzani*, 27 Cal. App. 5th 809, 829 (2018).

24          Plaintiffs are also entitled to an award of reasonable attorneys' fees and costs under Code

25  of Civil Procedure § 1021.5, which "allows courts to award attorneys' fees if an action 'resulted

26  in the enforcement of an important right affecting the public interest.'"  *MacDonald v. Ford*

27  *Motor Co*., 142 F. Supp. 3d 884, 895 (N.D. Cal. 2015) (Tigar, J.), quoting Cal. Civ. Proc. Code §

28  1021.5. *see Graham v. DaimlerChrsyler Corp.*, 34 Cal. 4th 553, 578 (2004).

Defendants have agreed to pay $6,395,874.95 to satisfy their statutory fee obligations. This amount is in excess of Plaintiffs' lodestar of $5,844,319.50. The agreed upon amount represents a compromise of the total amount of fees that Plaintiffs would have sought from Defendants with a multiplier in a contested fee motion had a compromise not been reached. Dkt. 468. This negotiated resolution confers the additional significant benefit on the Class of avoiding a contested fee motion and potential appeals therefrom, which could significantly impede and delay distribution of the judgment to the Class. *Id.*

In addition, Plaintiffs have agreed to credit this fee amount back to the Common Fund Judgment against any fees awarded to Plaintiffs from the Judgment. *Id.*

### 2. Plaintiffs Are Entitled to Recover Fees as a Percentage of the Common Fund Judgment for Securing Significant Relief for the Class While Bearing Substantial Risk.

The Common Fund Judgment is over $31 million. Plaintiffs request attorneys' fees of 33% of the Common Fund Judgment, but the roughly $6.4 million Defendants have agreed to pay will be credited against that amount. Accordingly, with the credit, Plaintiffs only seek a payment of 12.8% of the Common Fund Judgment, plus expenses. This request is fair and reasonable.[2]

Class counsel are entitled to recover attorneys' fees under California's common fund doctrine. "California has long recognized . . . the propriety of awarding an attorney fee to a party who has recovered or preserved a monetary fund for the benefit of himself or herself and others." *Laffitte v. Robert Half Int'l, Inc.*, 1 Cal.5th 480, 488–89 (2016); *see also Quinn v. State of Calif.*, 15 Cal.3d 162, 167 (1995) ("[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs."). As this Court recognized earlier in this action, when "a court

---

[2] Another way to approach this is to add the amount Defendants have agreed to pay in statutory fees to the judgment, which would bring the total amount of the common fund for the benefit of the Class to $38,036,509.63, and then treat Plaintiffs' request as a percentage of that common fund. Using that approach, which courts have specifically endorsed under California law, Plaintiffs request would equate to 27.5% of the common fund, plus expenses. Under either approach, Plaintiffs' request is well within the values routinely approved in class action litigation, as further discussed herein. *See, e.g., Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 50 (2008) (adding statutory fees to common fund and awarding a percentage recovery from that which resulted in an approximately 2.5 multiplier).

1   awards a fee from the fund or from the other benefited parties, it acts within its equitable power to

2   prevent the other parties' unjust enrichment.  This 'fee spreading' serves to distribute the cost of

3   hiring an attorney among all the parties benefited."  Dkt. 402, p. 20 (cleaned up), quoting *Laffitte*,

4   1 Cal.5th at 20.

5          The fee sought by Class counsel is well within the range, if not below, what courts

6   typically award in like litigation.  Courts routinely award attorneys' fees equaling one-third of the

7   common fund under California law.  *See In re Consumer Privacy Cases*, 175 Cal. App. 4th 545,

8   558 (2009) ("Empirical studies show that, regardless whether the percentage method or the

9   lodestar method is used, fee awards in class actions average around one-third of the recovery."

10  (internal quotation marks omitted)); *Chavez*, 162 Cal. App. 4th at 66 n.11 (same).  Further, "while

11  the California Supreme Court recognized the Ninth Circuit's 25 percent benchmark for percentage

12  awards in common fund cases, it did not adopt such a benchmark for California cases."

13  *Ridgeway*, 269 F. Supp. 3d at 982, citing *Laffitte*, 1 Cal. 5th at 495.

14         Class counsel's requested fee falls well within the ordinary range approved by courts and

15  is amply justified under the factors courts consider in assessing a request for attorneys' fees.

16  Under California law, whether a requested percentage-based fee is reasonable involves several

17  interrelated factors, including: (1) the potential value of the litigation and the results obtained on

18  behalf of the class; (2) the litigation risks involved, including the contingent nature of the

19  representation; (3) the novelty and difficulty of the issues presented; and (4) the skill shown by

20  counsel.  *Laffitte*, 1 Cal. 5th at 504; *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th

21  Cir. 2002); *see also Lealao v. Beneficial California, Inc.* (2000) 82 Cal. App. 4th 19, 42–43; *see

22  also* Declaration of Richard M. Pearl ISO Plaintiffs' Motion, ¶¶ 9-12, 50-67.[3]

23                        **a.  Class Counsel Secured Excellent Results for the Class.**

24         The results achieved, in light of the specific challenges in this case, are considerable.

25  After over eight years of hard-fought litigation with unrelenting defendants, Class counsel's

26

27  [3] Mr. Pearl is a preeminent expert on attorneys' fees issues.  After thoroughly reviewing the issues
    in this case relating to fees, he offers his opinions in a detailed declaration submitted in support of
28  this Motion.  Class counsel is not requesting payment for Mr. Pearl's fees.

1  efforts have resulted in a judgment of over $31 million to benefit approximately 2,200 flight

2  attendants who did not receive their full wages and other benefits to which they were legally

3  entitled while working for Virgin.  Olivier Decl. ¶ 36.  This is not a settlement that represents a

4  compromise amount of recovery, but is, instead a judgment reflecting recovery of 100% of Class

5  member losses on their successful claims.  *See* Pearl Decl. ¶¶ 28, 33(d), 40, 44.  Further, the Plan

6  of Allocation will provide each Class member a pro rata share of the judgment based on their

7  unique payroll data that captures and remedies each Class member's actual wage violations.

8  Once the plan of allocation is approved, the Class Administrator stands ready to expeditiously

9  distribute the judgment to the Class.  Olivier Decl. ¶ 25, Ex. A; Breshears Decl. ¶ 13.  This

10  litigation has also resulted in several published decisions that will be of positive value for

11  interstate transportation workers, and others, seeing to enforce California wage laws.  Olivier

12  Decl. ¶ 44.  The litigation and the judgment, therefore, have conferred significant benefits on the

13  Class.  *Id.* ¶ 44; *see* Pearl Decl. ¶¶ 28 (noting that this case "stands apart from the relief obtained

14  in most class actions," in particular because the recovery is in the form of a judgment rather than

15  a compromise settlement), 50.

16  　　　While the appeal did result in a reduction of the overall judgment and the loss of

17  Plaintiffs' minimum wage claim due to an intervening California Supreme Court decision,

18  Plaintiffs prevailed on virtually all legal issues.  Where, as here, a prevailing party's unsuccessful

19  claims "involve a common core of facts or are based on related legal theories," full compensation

20  remains appropriate where the plaintiff has obtained excellent results.  *See, e.g., Espejo v. The*

21  *Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 382.  Further, it is generally inappropriate to

22  reduce fee awards based on the proportion of successful claims or which phases of litigation

23  directly produced the favorable result obtained.  *See Wysinger v. Auto. Club of So. Cal.*, 157

24  Cal.App.4th 413, 431 (2007); *Downey Cares v. Downey Cmty. Dev. Comm'n*, 196 Cal.App.3d

25  983, 997 (1987); *Hensley v. Eckerhart*, 461 U.S. 424, 435, fn. 11 (1983).  Indeed, as this Court

26  found in its earlier order regarding attorneys' fees, "Plaintiffs prevailed on the key threshold

27  questions regarding Virgin's obligations under California labor laws, resulting in substantial

28  recoveries under their various wage-and-hour claims, notwithstanding their failure to recover for

1   specific categories of tasks."  Dkt. 402 at 18.

2        There is no dispute that Plaintiffs' claims all involve a common core of facts and are

3   based on related legal theories and that the over $31 million judgment is exceptional.  *See, e.g.,*

4   Dkt. 298, Third Amended Complaint (Plaintiffs alleged that through "common practices, policies,

5   and/or schemes, Virgin has systematically underpaid Plaintiffs and members of the Class).  As

6   this Court is aware, the majority of the time and resources in this case have been dedicated to

7   defeating Defendants' arguments that California wage laws did not apply *at all* to the Class.  *See,*

8   *e.g.,* Dkt. 60, 71, 101, 407; *Bernstein v. Virgin America, Inc. et al.*, 3 F.4th 1127 (9th Cir. 2021);.

9   In that, Plaintiffs have been completely successful.  *See* Dkt. 402 at 18 (noting that the success

10  achieved was "exceptional").  Further, the analysis and prosecution of Plaintiffs' minimum wage

11  claim was inextricably intertwined with Plaintiffs' other claims: without establishing the number

12  of hours Class members worked in each workday and workweek, which Virgin indisputably did

13  not identify, it was not possible to determine whether Class members were owed meal period

14  premiums, rest period premiums, or overtime.  *See* Breshears Decl. ¶¶ 14-17; *see Cruz v. Fusion*

15  *Buffet, Inc.*, 57 Cal. App. 5th 221, 235-36 (2020) (court determined that plaintiff's unsuccessful

16  meal and rest break claims were "inextricably intertwined with her other wage and hour claims,"

17  including minimum wage and overtime, because, among other reasons, all of the claims required

18  an analysis of the number of hours the plaintiff worked and a review of the same documentary

19  evidence, including the plaintiff's timecards and paycheck stubs).

20        The excellent results achieved on behalf of the Class supports the fee sought here.

21
22                **b.  Class Counsel Assumed Significant Risk in Litigating This Action to
                     Judgment and on Appeal on a Wholly Contingent Basis.**

23        Class counsel have extensively litigated this case for over eight years on a purely

24  contingent basis, including all of the appellate and post-remand work.  As such, they have taken a

25  huge risk to litigate this case on behalf of the Class, investing over 7,300 hours of attorney and

26  staff time and over $575,000 in out-of-pocket expenses, have gone unpaid to date.  These

27  significant outlays of resources were invested over many years without any guarantee that there

28

1    would be any compensation at all.  Olivier Decl. ¶ 17; Kosinski Decl. ¶ 33; Miller Decl. ¶ 10.

2    Class counsel have not been paid for any of their time spent on this action, nor have they been

3    reimbursed for the substantial out-of-pocket expenses they incurred in the prosecution of this

4    action.  They have not charged Plaintiffs nor any class member any fees or costs to litigate their

5    claims in this action.  Olivier Decl. ¶ 84; Miller Decl. ¶ 10.  This type of risk warrants a common

6    fund recovery.  Dkt. 402; Pearl Decl. ¶ 33(d) (the "great risk alone" in litigating this case to

7    judgment "merits the 33% fee that Counsel request").

8         At the outset, Class counsel had no way of anticipating the course taken by this case.

9    Despite this, Class counsel took the case on with every intent of expending all necessary hours

10   and out-of-pocket expenses to ensure vindication of the Class.  Olivier Decl. ¶ 85.  The firms

11   involved in representing the Class are smaller firms with more limited resources who provide the

12   majority of their legal services on a contingency basis.  O&S and DPLO are small firms with only

13   five attorneys each.  *Id.* ¶ 86.  Kosinski & Thiagaraj is a very small firm of two attorneys.

14   Kosinski Decl. ¶ 34.  Miller Shah has approximately 25 attorneys and, similarly, does most of its

15   work on a contingency fee basis.  Miller Decl. ¶ 5.  Cooper & Kirk has approximately 21

16   attorneys.  Going head-to-head with a firm of over 1,500 attorneys and against a large corporation

17   on behalf of workers presented a tremendous amount of financial risk to Class counsel.  Olivier

18   Decl. ¶ 85; Kosinski Decl. ¶¶ 33-34.

19        As this Court has recognized, the risk in prosecuting this action has been significant.  Dkt.

20   402.  Defendants vigorously defended this case from the outset, challenging every major

21   milestone, including Plaintiffs' motion for class certification, summary judgment, and motion for

22   judgment.  Plaintiffs beat back an early summary judgment motion from Defendants, and also

23   defeated their attempts to seek reversal of the class certification and summary judgment orders

24   through reconsideration motions, a decertification motion, an unsuccessful bid to certify the case

25   for interlocutory review, an appeal to the Ninth Circuit, and a petition for certiorari to the

26   Supreme Court.  Defendants also sought to reverse every adverse discovery ruling and vigorously

27   opposed every motion brought by Plaintiffs.  Olivier Decl. ¶ 97; *see Rodman*, 2018 WL 4030558,

28   at *3 (noting that Class counsel "faced significant risks by engaging in substantial motion

practice, extensive discovery, and hard-fought litigation surrounding essentially every conceivable issue" which supported enhancement of fee award); *see* Pearl Decl. ¶¶ 30-33.

The risk here was particularly high since Plaintiffs were required to litigate this action through judgment and appeals.  Although Plaintiffs made repeated attempts at settlement, no settlement could be achieved.  Olivier Decl. ¶ 35.  The risks in the uncertainties of litigation are much greater than the risks involved in settlement.  *See*, *e.g.*, *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (2008) (awarding a multiplier based in part on the risks involved in litigation, where plaintiffs achieved judgment); *Horsford v. Bd. of Trustees of California State Univ.*, 132 Cal. App. 4th 359, 400 (2005) ("litigation is fraught with uncertainty and even the most scrupulous attorney will 'win some and lose some,' as the saying goes").  Given Defendants' hard-nosed litigation strategy and unwillingness to settle the case on a reasonable basis at any stage of the litigation, Class counsel faced substantial risk at every step in prosecuting the Class claims, and had to invest substantial resources to meet every challenge.

### c.   This Action Involved Novel and Difficult Issues that Class Counsel Vigorously and Skillfully Litigated.

As reflected by the over 465 docket entries (and counting) and as detailed in the Olivier Declaration, this case involved many contested legal and factual issues.  This case presented a range of difficulties requiring the efforts of highly skilled and experienced attorneys.  Class counsel's combination of skills in class action litigation, trials, California wage and hour matters, and appellate practice, as well as the considerable resources Class counsel were able to contribute in both money and staff time, were critical in obtaining the exceptional results achieved to date in this action.  Even before Defendant's Ninth Circuit appeal, this Court recognized "that the issues presented were novel and difficult."  Dkt. 402 (citing in the record where the parties and the Court have acknowledged the novel and difficult issues in this case); *see* Pearl Decl. ¶¶ 35 ("[T]his was not a run-of-the-mill class action.  The issues presented in the case are significantly more novel, complex and difficult than those presented by many if not most class action lawsuits.")

As this Court has noted, the case has raised issues that had not previously been resolved in the courts with respect to the application of California wage laws. Dkt. 402.  Defendants focused

1    the majority of their defense on complex preemption and constitutional grounds, early and

2    repeatedly raised these issues in dispositive motions and briefing, and employed eight experts who

3    submitted near treatise-length reports to support their opinions.  Defendants also challenged what

4    it alleged was the extraterritorial reach of California law, and repeatedly argued that Plaintiffs

5    could not base a class on state residency without permitting Defendants to challenge each Class

6    members residency.  Olivier Decl. ¶ 91.  Indeed, the sheer number of legal and factual issues

7    raised by Defendants throughout the case speaks to the case's complexity.

8           Practically all discovery requests were met with resistance and involved considerable

9    resources in meeting and conferring and ultimately seeking court intervention on several matters.

10   Olivier Decl. ¶ 92.  When Defendants did produce documents, they were voluminous and

11   unorganized, while often also being incomplete.  In particular, the format of the massive amount

12   of payroll data produced by Defendants made it impossible to review and analyze it without

13   dedicating significant resources to work with Plaintiff's expert to write and implement a coding

14   script to import the data into a usable format.  *Id.*  Review and analysis of these data ultimately

15   took hundreds of hours of attorney, staff and expert time.  *Id.*  Plaintiffs were also required to

16   resist Defendants' far-reaching discovery, including attempts to require each of the over 2,200

17   Class members to respond to extensive written discovery and be subjected to depositions.

18   Defendants also sought extensive discovery from the Class representatives, deposed each Class

19   representative as well as several Class member declarants, and deposed Plaintiffs' expert for

20   multiple days.  Olivier Decl. ¶ 93.

21          After Plaintiffs secured judgment on behalf of the Class, Class counsel embarked on a

22   several-years journey to defend the judgment on appeal.  Again, the issues were complex and

23   novel, as is demonstrated by the fact that the Ninth Circuit's reversal of Plaintiffs' minimum wage

24   claim was based upon an intervening California Supreme Court decision.  *See Bernstein*, 3 F.4th

25   1127; Dkt. 414.  The Parties filed cross petitions for rehearing and rehearing en banc.  The Ninth

26   Circuit denied the petitions and issued two amended Opinions.  Plaintiffs were then forced to

27   oppose Defendants' bid at Supreme Court review, which included substantive briefing as well as

28

1    meeting with and providing informal briefing to the U.S. Solicitor General, whose views the

2    Supreme Court had requested.  Olivier Decl. ¶ 45.

3         Class counsel met each of these challenges with extraordinary skill and competency.  The

4    skill required to properly litigate this case is evident not only in the results achieved, but in the

5    steps necessary to reach the same.  The team brought significant class action, complex litigation,

6    appellate, and California wage and hour experience to this matter.  Class counsel's depth of

7    experience and willingness to dedicate substantial resources were critical in obtaining the

8    exceptional results achieved in this action.  Olivier Decl. ¶ 90; Kosinski Decl. ¶¶ 11-20; Miller

9    Decl. ¶¶ 9-13, 19-20; Cooper Decl. ¶ 5-29; *see* Pearl Decl. ¶¶ 37-42 ("Class counsel skillfully

10   obtained the judgment through a series of carefully pursued dispositive legal motions," and "their

11   accumulated skill and expertise contributed significantly to the over $31 million Common Fund

12   Judgment."); *see also Chavez v. Jani-King of California, Inc. et al.*, Alameda County Superior

13   Court Case No. RG19043517, 7/7/22 Order Granting Final Approval, p. 15 (awarding 33.33% of

14   the $15 million common fund in a wage and hour class action to class counsel led by Ms. Olivier,

15   and noting the "high quality of Class Counsel's reputation, the novelty and complexity of the

16   issues involved, the excellent results obtained, and the contingent risk presented.").

17        Had Class counsel not diligently pursued the claims on behalf of the Class, it is highly

18   unlikely that any of the Class Members would have been awarded their back wages or any

19   penalties relating to the California wage violations at issue here.  Pearl Decl. ¶ 41.

20        The exceptional skill and determination that Class Counsel has shown throughout the case

21   to overcome the novel and challenging issues justifies the requested attorneys' fees and costs.

22
23               **d.   Class Counsel's Request Is Well Within the Range of Fees Awarded in
                         Similar Litigation.**

24        Class counsel's request is for just below one-third of the common fund (33.00%) and is, as

25   described above, in fact less than 13% of the fund after Defendants' negotiated contribution.

26   Many courts have approved fees at or above one-third of the common fund in cases that did not

27   involve the same complexity, length or risk as this action.  *See* Pearl Decl. ¶¶ 44-46.

28

                                              13

Several courts in cases specific to the wage and hour context have awarded fees at or above one-third of the fund. *Id.*; *see, e.g., Laffitte*, 1 Cal. 5th at 485 (affirming fee award of one-third of the common fund in wage and hour class action); *Chavez*, No. RG19043517 (approving 33% fee); *Emmons v. Quest Diagnostics Clinical Laboratories, Inc.*, 2017 U.S. Dist. LEXIS 27249, at *18- 24 (E.D. Cal. 2017) (33% fee approved); *Wren v. RGIS Inventory Specialists*, 2011 WL 1230826, at *31 (N.D. Cal. April 1, 2011), *supplemented by Wren v. RGIS Inventory Specialists*, 2011 WL 1838562, at *2 (N.D. Cal. May 13, 2011) (41.8% of the fund approved in wage and hour class action); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 453 (E.D. Cal. 2013) (awarding fees of 33.3% of the common fund); *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *20 (N.D. Cal. Mar. 29, 2023) (awarding fees of 30% of the common fund) (appeal filed Apr 28, 2023); *Vasquez v. Coast Valley Roofing*, 266 F.R.D. 482 (E.D. Cal. 2010) (33.3% fee in wage-and-hour action putative class-action); *Singer v. Becton Dickinson*, 2010 WL 2196104, *8 (June 1, 2010) (collecting cases in which 40% of a wage and hour common fund was awarded).

### 3. A Lodestar Cross-Check Confirms the Reasonableness of the Fee Request.

A lodestar cross-check further confirms that a fee award of 33% is reasonable.  As this Court stated in this case, under California law "[w]here an award is sought from the common fund, a court has discretion to 'determine the amount of a reasonable fee by choosing an appropriate percentage of the fund created.'  In such cases, the court may – but need not – 'double check the reasonableness of the percentage fee through a lodestar calculation.'" Dkt. 402 at 22, quoting *Laffitte*, 1 Cal. 5th at 503; *see Laffitte*, 1 Cal. 5th at 505 ("A lodestar cross-check is simply a quantitative method for bringing a measure of the time spent by counsel into the trial court's reasonableness determination."); *Vizcaino*, 290 F.3d at 1050 (a lodestar cross-check "may provide a useful perspective on the reasonableness of a given percentage award.").  In conducting a lodestar cross-check, the court is not "required to closely scrutinize each claimed attorney-hour." *Id.*; *Senne*, 2023 WL 2699972, at *20 ("Arguably, a lodestar cross-check is not required here because the Court has been extensively involved in supervising this litigation and has observed first-hand the

1    monumental effort Class counsel has put into this case.").  An evaluation may be done by

2    reviewing "counsel declarations summarizing overall time spent."  *Laffitte*, 1 Cal. 5th at 505.

3         In addition, positive multipliers are commonly accepted in the context of a lodestar cross-

4    check of a percentage fee.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 n.6 (noting that multiples ranging

5    from 1.0 to 4.0 are frequently awarded in common fund cases; affirming order awarding common

6    fund fees where lodestar cross-check resulted in a multiplier of 3.65).  Under California law,

7    courts consider factors similar to those assessed when determining if a percentage of the common

8    fund is a reasonable fee award to determine an appropriate multiplier to apply under the lodestar

9    analysis.  *See Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001) (the lodestar may be adjusted

10   based on factors, including "(1) the novelty and difficulty of the questions involved, (2) the skill

11   displayed in presenting them, (3) the extent to which the nature of the litigation precluded other

12   employment by the attorneys, (4) the contingent nature of the fee award").

13        Here, Class counsel's lodestar through March 15, 2023 is $5,844,319.50, based on over

14   7,300 hours over eight years of litigation, all of which is documented by Class counsel's

15   contemporaneous time records.  *See* Olivier Decl. ¶¶ 74, Exs. B & C; Kosinski Decl. ¶¶ 25-32;

16   Miller Decl. ¶¶ 11-12; Cooper Decl. ¶¶ 5-29.  This lodestar reflects counsel's careful exercise of

17   billing judgment.  Olivier Decl. ¶¶ 74, Exs. B & C; Kosinski Decl. ¶¶ 7-10; Miller Decl. ¶¶ 11-13,

18   20; Cooper Decl. ¶¶ 28-29.  That lodestar does not include the majority of the time negotiating

19   with Defendants regarding their statutory fee, the majority of the work performed on this Motion,

20   and any future work performed to finalize the judgment, work with the Class administrator to

21   distribute the judgment, and communicate with members of the Class.  Class counsel reasonably

22   estimates that additional lodestar to be valued at an additional $300,000.  Olivier Decl. ¶ 77.  As

23   detailed below and in the Pearl Declaration and Class counsel's declarations, Counsel's hourly

24   rates and the time spent achieving the Class recovery are reasonable.  In addition, each of the

25   *Ketchum* factors demonstrate that a positive multiplier is warranted in this case.

26              **a.  Class Counsel's Hourly Rates Are Reasonable.**

27        Class counsel's current hourly rates are reasonable in light of their significant experience,

28   expertise, and skill. Class counsel here are experienced, highly regarded members of the bar with

15

1    extensive expertise in the area of class actions, complex litigation, and wage and hour claims like

2    those at issue here.  *See* Pearl Decl. ¶¶ 53-63; Olivier Decl. ¶ 85.

3          Under California law, Plaintiffs' attorneys are entitled to their requested rates if those

4    rates are "within the range of reasonable rates charged by and judicially awarded comparable

5    attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bonta*, 97 Cal.App.4th 740,

6    783 (2002).  The reasonable hourly rate "must be based on the 'experience, skill, and reputation

7    of the attorney requesting fees' as well as 'the rate prevailing in the community for similar work

8    performed by [comparable] attorneys....'" *Rodman*, 2018 WL 4030558, at *6 (quoting *Chalmers*

9    *v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), amended by 808 F.2d 1373 (9th

10   Cir. 1987)).  "The lodestar should be computed either using an hourly rate that reflects the

11   prevailing rate as of the date of the fee request to compensate Class counsel for delays in payment

12   inherent in contingency-fee cases, or using historical rates and compensating for delays with a

13   prime-rate enhancement." *Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016).

14         Here, the hourly rates Counsel are using in their lodestar are reasonable in light of their

15   significant experience, expertise, and skill and, in fact, are largely less than the hourly rates

16   charged by comparable attorneys for similar work.  *See* Pearl Decl. ¶¶ 56-63.  For purposes of the

17   lodestar, Class counsel have used their 2022 hourly rates rather than our current rates, which are

18   4-8% higher.  *Id.*; Olivier Decl. ¶ 77.  Their 2022 rates range from $200 for paralegal work up to

19   $925 for experienced litigation partners, with Mr. Cooper, a Supreme Court specialist, charging

20   $1550 per hour.  All counsel have charged their 2022 rates to private clients; in addition most

21   counsel have been awarded their 2022 rates by a court.  Olivier Decl. ¶ 77; Kosinski Decl. ¶¶ 21-

22   24; Miller Decl. ¶¶ 14-15; Cooper Decl. ¶ 30.  In addition, the partners at Miller Shah LLP have

23   capped their rates at Ms. Olivier's 2022 rate, even though they normally bill at rates substantially

24   higher than that rate.  Miller Decl. ¶ 14-15.  The lodestar also does not include the majority of

25   work done on negotiating Defendants' fee contribution, the majority of the work on this Motion,

26   and all future work that will be necessary to finalize the Plan of Allocation, work with the Class

27   Administrator on finalizing and executing the distribution, and communicate with Class members,

28   which Counsel estimates will represent another $300,000 in lodestar.  Olivier Decl. ¶ 77.  This

1   effectively lowers Counsel's hourly rate even further.  This Court specifically noted in its prior

2   order regarding fees: "Based on its oversight of this lengthy litigation, the Court also concludes

3   that counsel displayed extraordinary skill, above and beyond that reflected in the prevailing

4   market rate for attorneys with commensurate experience." Dkt 402, p. 18.

5        As detailed by Mr. Pearl, the hourly rates charged by Class counsel are commensurate

6   with, and in fact often below, prevailing rates in this district for attorneys with comparable skill

7   and experience.  Pearl Decl. ¶¶ 53-63.  Many cases support the rates counsel reports here.  *See*,

8   *e.g.*, *Ramirez v. Trans Union, LLC*, No. 12-CV-00632-JSC, 2022 WL 17722395, at *9 (N.D. Cal.

9   Dec. 15, 2022) (approving billing rates ranging from $465 to $1,325 for attorneys, and $265 to

10  $485 for "litigation support" and paralegals); *Elder v. Hilton Worldwide Holdings, Inc.*, No. 16-

11  CV-00278-JST, 2021 WL 4785936, at *9 (N.D. Cal. Feb. 4, 2021) (Tigar, J.) (approving rates

12  ranging from $800 to $1,000 for partners, $375 to $400 for associates, and $200 to $300 for

13  staff); *Dickey v. Advanced Micro Devices, Inc.*, No. 15-cv-04992-HSG, 2020 WL 870928, at *8

14  (N.D. Cal. Feb. 21, 2020) (finding rates between $275 to $575 for associates and $615 to $1,000

15  for partners "in line with prevailing rates in this district for personnel of comparable experience,

16  skill, and reputation"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983,

17  at *14 (N.D. Cal. Dec. 18, 2018) (approving rates ranging from $650 to $1,250 for partners or

18  senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals); *In re Volkswagen*

19  *"Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL

20  1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving billing rates ranging from $275 to $1600 for

21  partners, $150 to $790 for associates, and $80 to $490 for paralegals).

22                    **b.  Class Counsel's Time Was Reasonably Spent.**

23        The number of hours for which Plaintiffs' counsel request compensation here "is

24  consistent with, if not below, other cases of comparable scope, complexity, and duration and is,

25  therefore, reasonable."  Pearl Decl. ¶¶ 10, 64-67.  Under California law, "[a]bsent special

26  circumstances rendering the award unjust, an attorney fee award should ordinarily include

27  compensation for *all* the hours *reasonably spent*, including those relating solely to the fee."

28  *Ketchum*, 24 Cal.4th at 1133 (emphasis in original); *see Beaty v. BET Holdings, Inc.*, 222 F.3d

                                          17

1   607, 612 (9th Cir. 2000) (in fee-shifting cases, attorneys "ordinarily…can anticipate receiving full

2   compensation for every hour spent litigating a claim…'").

3          Hours are reasonable if "at the time rendered, [they] would have been undertaken by a

4   reasonable and prudent lawyer to advance or protect his client's interest …[.]"  *Moore v. Jas. H.*

5   *Matthews & Co*., 682 F.2d 830, 839 (9th Cir. 1982).  In making that determination, courts must

6   look at "the entire course of the litigation, including pretrial matters, settlement negotiations,

7   discovery, litigation tactics, and the trial itself ...[.]"  *Vo v. Las Virgenes Municipal Utility Dist*.,

8   79 Cal.App.4th 440, 447 (2000).  Generally, the attorneys' hours are justified if they were

9   "reasonably expended in pursuit of the ultimate result achieved in the same manner that an

10  attorney traditionally is compensated by a fee-paying client."  *Hensley v. Eckerhart*, 461 U.S. 424,

11  431 (1983); *see Moreno v. City of Sacramento,* 534 F.3d 1106, 1112 (9th Cir. 2008).[4]

12         Counsel's sworn declarations and lodestar charts fully document the attorney and support

13  staff hours spent in the successful prosecution of this action.  Olivier Decl. ¶ 74; Kosinski Decl.

14  ¶¶ 25-32; Miller Decl. ¶¶ 10-12, 19-20; Cooper Decl. ¶¶ 5-29; *see also* Dkt. 402.  These time

15  records are *prima facie* evidence that counsels' hours were reasonable.  *See Horsford*,132 Cal.

16  App. 4th at 396 ("the verified time statements of the attorneys, as officers of the court, are entitled

17  to credence in the absence of a clear indication the records are erroneous").  As Class counsel's

18  declarations make clear, the time reported was devoted to necessary and worthwhile tasks, and

19  was calculated at counsel's reasonable billing rates.  In addition, Plaintiffs' counsel prosecuted

20  the claims at issue efficiently and effectively, making every effort to prevent the duplication of

21  work that might have resulted from having multiple firms working on this case, and delegating

22

23  [4] In *Moreno*, the Ninth Circuit noted:

24          It must also be kept in mind that lawyers are not likely to spend unnecessary time on
            contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to
25          both the result and the amount of the fee. It would therefore be the highly atypical civil
            rights case where plaintiff's lawyer engages in churning. By and large, the court should
26          defer to the winning lawyer's professional judgment as to how much time he was required
            to spend on the case; after all, he won, and might not have, had he been more of a slacker.
27

28  534 F.3d at 1112.

work whenever possible to timekeepers with lower hourly rates.  Olivier Decl. ¶¶ 69.  Duplicative or inefficient work, as well as *de minimis* time billed by attorneys who had little participation in the action, was excised.  Olivier Decl. ¶ 22; Miller Decl. ¶ 20.[5]

In its prior Order granting Plaintiffs' Motion for Attorneys' Fees and expenses, when counsel had expended over 5,100 hours, this Court recognized that Plaintiffs' time claimed was reasonable "[b]ased on the scope, complexity, and contentious nature of this case . . ." Dkt. 402. Since Plaintiffs' earlier fee motion, counsel has been forced to expend an additional 2,200 hours to combat Defendants' appeals and finally secure significant judgment for the Class. Olivier Decl. ¶ 38.  The Court is extremely familiar with the scope of work that occurred at the trial level.  The appellate work is well documented in counsel's declarations and in the appellate and Supreme Court dockets.  *See generally* Olivier Decl.; Kosinski Decl.; Miller Decl.; Cooper Decl.

Because Class counsel were required to expend considerable time and resources to investigate and litigate this case to a successful judgment, the number of hours that Class counsel devoted to this case is reasonable.  Pearl Decl. ¶¶ 10, 64-67 ("In my opinion, the number of hours for which Class counsel is requesting compensation appears to be consistent with, and likely less than, the number of hours I would expect to have been spent in a case of this duration, intensity, complexity, and results achieved."); *see, e.g., Ramirez*, 2022 WL 17722395, at *9 (9,076.5 hours were reasonable in light of significant financial recovery for the class after litigation through trial and multiple appeals, including before the Supreme Court); *Ridgeway*, 269 F. Supp. 3d at 995 (11,000 hours billed warranted for scope of trial and appellate work that resulted in $60 million common fund judgment); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1028 (9th Cir. 2000).

### c.   A Positive Multiplier Is Appropriate.

Class counsel's lodestar is $5,844,319.50.  To reach the $10.4 million figure that Class counsel request, a 1.79 lodestar multiplier must be applied, which is a reasonable and, in fact, "modest" multiplier for this action.  Pearl Decl. ¶¶ 10, 68-71.  Under California law, courts may

---

[5] In its prior order on fees, the Court reduced Class Counsel's lodestar in part based on the lack of clarity of certain categories of tasks.  Dkt. 402 at 9.  Class Counsel has clarified the categories of tasks and the hours allocated to each task.  *See* Olivier Decl., Ex. C.

award multipliers in light of several factors, including contingent risk, exceptional skill and quality of work by class counsel, novelty and complexity of the issues, excellent results, and whether the interests of the broader public have been served. *Ketchum*, 24 Cal.4th at 1132; *Ridgeway*, 269 F. Supp. 3d at 995 (multiplier under California law is intended to compensate for "contingent risk, extraordinary skill," and similar factors). This Court's previous order granting fees before the appeals in this case expressly found that a multiplier of 2 was appropriate based on "all four [*Ketchum*] factors and that the "contingent risk borne by counsel carries the most weight in the Court's analysis." Dkt. 402, p. 20. Counsel has continued to provide excellent representation to the Class since then, and has taken on more risk by defending the judgment on appeal and in opposition to Defendants' bid for Supreme Court review.

As the California Supreme Court has explained, a "lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Id.* at 1133. A risk enhancement is "earned compensation; unlike a windfall, it is neither unexpected nor fortuitous. Rather it is intended to approximate market-level compensation for such services which typically pay a premium for the risk of nonpayment or delay in payment of attorney's fees." *Id.* at 1138; *see Hefler*, 2018 WL 6619983, at *13 (noting "heavy financial burden," contingent nature of fee, and risks in litigating the case supported fee award). Multipliers often exceed 2 in similar and even less complex or successful litigation. *Id.*; *see Wershba v. Apple Computer*, 91 Cal. App. 4th 224, 255 (2001) ( "[m]ultipliers can range from 2 to 4 or even higher."); *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298-99 (N.D. Cal. 1995) ("[m]ultipliers in the 3-4 range are common").

Since this Court's prior order on fees, Counsel has committed an additional 2,200 hours over the last three plus years to prosecute the appeals and the post-remand proceedings and advancing thousands of dollars more in costs. And although the overall judgment was reduced due to the Ninth Circuit's reversal of the minimum wage claim and reduction of certain PAGA penalties, as this Court noted neither the absolute size of the recovery nor the fact that plaintiffs do not prevail on certain necessarily inform whether the results achieved have been exceptional.

20

Dkt. 402, pp. 17-18.  As detailed above, each of the factors that support the percentage of recovery also supports the modest multiplier of 1.79.  *See* Pearl Decl. ¶ 70 (opining that under the circumstances of this action "a 2.0 multiplier would be exceedingly reasonable"); *Ridgeway*, 269 F. Supp. 3d at 998 ("the numerous novel, difficult, and complex issues . . . weigh in favor a multiplier").  The fact that Plaintiffs litigated this case through judgment and appeals also weighs in favor of the requested multiplier.  *See*, *e.g.*, *Amaral v. Cintas Corp. No. 2*, 163 Cal. App. 4th 1157, 1217 (2008) (awarding a positive multiplier based in part on the risks involved in litigation, where plaintiffs achieved judgment).

Significantly, in considering and ultimately awarding the multiplier of 2 in 2020 on Plaintiffs' fee-shifting lodestar request, this Court noted that higher multipliers are typically awarded in the common fund context, that courts have "far greater leeway to deviate from the lodestar in common fund cases," and that multipliers are "appropriately charged to the class," not a defendant.  *Id.* at p. 21-22.  "When a court awards a fee from the fund or from the other benefited parties, it acts within its equitable power to prevent the other parties' unjust enrichment …. This 'fee spreading' serves to distribute the cost of hiring an attorney among all the parties benefited."  *Id.*, quoting *Laffitte*, 1 Cal. 5th at 489 (cleaned up).

Here, Plaintiffs recovered over $31 million for the Class as a result of Class counsel's efforts.  As this Court has recognized, the risk in prosecuting this action has been significant.  Defendants vigorously defended this case from the outset, challenging every major milestone, including Plaintiffs' motion for class certification, summary judgment, and motion for judgment.  Plaintiffs beat back an early summary judgment motion from Defendants, and also defeated their attempts to seek reversal of the class certification and summary judgment orders through reconsideration motions, a decertification motion, an unsuccessful bid to certify the case for interlocutory review, a partially successful appeal to the Ninth Circuit, and a writ of certiorari to the Supreme Court.  Defendants also sought to reverse every adverse discovery ruling and vigorously opposed every motion brought be Plaintiffs.  Olivier Decl. ¶ 88; *see Rodman*, 2018 WL 4030558, at *3 (noting that Class counsel "faced significant risks by engaging in substantial motion practice, extensive discovery, and hard-fought litigation surrounding essentially every

1   conceivable issue" which supported enhancement of fee award).  Despite Defendants' vigorous

2   efforts and appeals requiring Class counsel to litigate this case to the bitter end, Plaintiffs have

3   emerged with a significant victory on behalf of over 2,200 flight attendants.

4      The 1.79 multiplier Class counsel seek is also well within the range of multipliers awarded

5   in cases of similar complexity and results.  *See* Pearl ¶¶ 68-71; *see, e.g., Laffitte,* 1 Cal.5th at 487

6   (affirming 33% fee equivalent to a multiplier over 2); *Kang v. Wells Fargo Bank, N.A.,* No. 17-

7   CV-06220-BLF, 2021 WL 5826230, at *18 (N.D. Cal. Dec. 8, 2021), *aff'd sub nom. Kang v.*

8   *Fyson*, No. 22-15694, 2022 WL 6943174 (9th Cir. Oct. 12, 2022) (applying multiplier of 5.5)*;*

9   *Ridgeway*, 269 F. Supp. 3d at 998 (multiplier of 2 in wage and class judgment); *Senne*, 2023 WL

10  2699972, at *20 (applying multiplier of 1.53 which resulted in fee of $55.5 million); *Uschold v.*

11  *NSMG Shared Servs*., LLC, No. 18-CV-01039-JSC, 2020 WL 3035776, at *16 (N.D. Cal. June 5,

12  2020) (applying multiplier of 4); *see also Buckingham*, 2017 U.S. Dist. LEXIS 107243, at *13

13  (approving a multiplier of 4.89 multiplier in a wage and hour class action); *Gutierrez v. Wells*

14  *Fargo Bank, N.A.*, No. C 07-05923 WHA, 2015 WL 2438274, at *7 (N.D. Cal. May 21, 2015)

15  (approving a multiplier of 5.5 "on account of the fine results achieved on behalf of the class, the

16  risk of non-payment they accepted, the superior quality of their efforts, and the delay in

17  payment."); *Pellegrino v. Robert Half Int'l, Inc.*, 182 Cal. App. 4th 278, 291 (2010) (1.75 multiplier);

18  *Amaral*, 163 Cal. App. 4th at 1216 (1.65 multiplier); *In re Apple iPhone/iPod Warranty Litig.*, 40 F.

19  Supp. 3d 1176, 1181 (N.D. Cal. 2014) (3.62 multiplier); *Steinfeld*, 2014 U.S. Dist. LEXIS 48540,

20  at *4 (applying a 3.5 multiplier where Class counsel accepted the case on a contingency basis,

21  obtained an excellent result for the Class, and continued to work on the case after fee motion

22  filed); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008)

23  (approving a multiplier of 5.2 and stating that "there is ample authority for such awards resulting

24  in multipliers in this range or higher"); *Van Vranken*, 901 F. Supp. at 298-99 (multiplier of 3.6

25  was "well within the acceptable range for fee awards in complicated class action litigation").

26     The lodestar cross-check confirms the reasonableness of Plaintiffs' fee request.  This is

27  even more in light of the fact that Plaintiffs have agreed to credit Defendants' contribution against

28  the percentage of recovery awarded by the Court.

1
2

### C.    PLAINTIFFS' REQUEST FOR EXPENSES IS REASONABLE AND APPROPRIATE AND SHOULD BE APPROVED.

3        Class counsel also seeks recovery of expenses incurred in connection with the prosecution

4   of the litigation.  To date, Class counsel has incurred expenses totaling over $600,000.  Olivier

5   Decl. ¶¶ 101, Ex. D & E.  As part of the negotiated resolution of statutory fees, Defendants agreed

6   to pay $40,000 toward the reimbursement of taxable costs.  Accordingly, Plaintiffs seek

7   $575,293.38 in expenses from the Common Fund Judgment.  *Id.*

8        "There is no doubt that an attorney who has created a common fund for the benefit of the

9   class is entitled to reimbursement of reasonable litigation expenses from that fund."  *Ridgeway,*

10  269 F.Supp.3d at 1001, *quoting Ontiveros v. Zamora,* 303 F.R.D. 356, 375 (E.D. Cal. 2014).  "To

11  that end, courts throughout the Ninth Circuit regularly award litigation costs and expenses—

12  including reasonable travel expenses—in wage-and-hour class actions."  *Id.* (citing cases);

13  *Trustees of Const. Indus. & Laborers Health & Welfare Tr. v. Redland Ins. Co.,* 460 F.3d 1253,

14  1258 (9th Cir. 2006) (internal quotation marks and citation omitted) (non-taxable costs are

15  recoverable as part of the "reasonable attorney's fee" when "it is the prevailing practice in a given

16  community for lawyers to bill those costs separately from their hourly rates").  Such costs

17  typically include "photocopying, printing, postage, court costs, research on online databases,

18  experts and consultants, and reasonable travel expenses."  *Thomas v. MagnaChip Semiconductor*

19  *Corp.*, No. 14-CV-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).

20       Class counsel's expenses were all reasonably necessary to the conduct of the litigation.

21  The major costs are expert witness fees, without which the damages could not have been

22  calculated and the plan of allocation could not have been devised, and class administration fees,

23  without which Class members would not receive notice and would not receive their distribution

24  from the judgment.  The minor costs include copying costs, case-related travel costs, electronic

25  research, and delivery fees, all of which were also necessary to the conduct of this action.  Olivier

26  Decl. ¶¶ 102, Ex. D & E.  All expenses for which reimbursement is sought were necessary for the

27  prosecution of this litigation.

28

1    This Court has stated that to support an expense award, "Plaintiffs should file an itemized

2    list of their expenses by category, listing the total amount advanced for each category, allowing

3    the Court to assess whether the expenses are reasonable." *Hefler*, 2018 WL 6619983, at *16.

4    Plaintiffs have done so here, along with documentation supporting those expenditures.  Olivier

5    Decl. ¶¶ 102, Ex. D & E.

6    Plaintiffs' expense reimbursement request is reasonable and should be granted.

7
### D.    PLAINTIFFS ARE ENTITLED TO SERVICE AWARDS FOR VIGOROUSLY PROSECUTING THIS ACTION ON BEHALF OF THE CLASS
8

9    Class counsel request that the Court approve a service award in the amount of $25,000

10   each to Plaintiffs Bernstein, Smith, and Garcia, for a total of $75,000.

11   Named plaintiffs are eligible for reasonable service awards to compensate them "for the

12   expense or risk [they have] incurred in conferring a benefit on other members of the class."

13   *Clark* v. *American Residential Services LLC*, 175 Cal. App. 4th 785, 806 (2009).  Service

14   awards recognize that an employer's current employees are unlikely to seek legal redress for

15   "fear of economic retaliation [that] might often operate to induce aggrieved employees . . . to

16   accept substandard conditions."  *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292

17   (1960); *see also Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1 (2011); *Bell v.*

18   *Farmers Ins. Exch.*, 115 Cal. App. 4th 715, 746 (2004).

19   Over the past eight years, Plaintiffs have provided invaluable assistance and guidance to

20   Class counsel with respect to understanding the airline industry and Defendant's unique

21   practices and policies.  Olivier Decl. ¶¶ 104.  Plaintiff Bernstein began devoting significant time

22   to this case before it was filed.  *See* Declaration of Class Representative Julia Bernstein in

23   Support of Plaintiffs' Motion ("Bernstein Decl.") ¶ 4.  She met with Class counsel several

24   times, providing counsel with critical information to help build the case and draft the original

25   Complaint.  Bernstein Decl. ¶ 4.  Shortly after learning of the class action, Plaintiffs Garcia and

26   Smith approached Class counsel with additional information and an interest in helping to

27   represent the class of flight attendants.  *See* Declaration of Class Representative Esther Garcia in

28

1  Support of Plaintiffs' Motion ("Garcia Decl.") ¶ 3 and Declaration of Class Representative Lisa

2  Marie Smith in Support of Plaintiffs' Motion ("Smith Decl.") ¶ 4.  All three Plaintiffs provided

3  Class counsel with important documents and information about Defendants' pay policies and

4  industry practices that allowed Class counsel to prosecute this action to its fullest. Bernstein

5  Decl. ¶¶ 5-8; Garcia Decl. ¶¶ 4-7; Smith Decl. ¶¶ 5, 11.  Plaintiffs assisted with responding to

6  discovery requests, prepared declarations in support of multiple motions, and spent their time

7  preparing for depositions.  Bernstein Decl. ¶¶ 5,7; Garcia Decl. ¶ 4, 6; Smith Decl. ¶ 5, 11.

8  Plaintiffs attended mediation and have been actively involved in strategy and settlement

9  discussions throughout the course of this litigation.  Bernstein Decl. ¶¶ 6, 8; Garcia Decl. ¶ 5,7;

10  Smith Decl. ¶ 7, 11.  Plaintiffs have also actively communicated with other Class members

11  throughout these eight years, answering questions and updating the over 2,000 class members

12  on the status of the litigation.  Bernstein Decl. ¶ 9; Garcia Decl. ¶ 10; Smith Decl. ¶ 12.

13       Plaintiffs opted to pursue claims for the entire Class, not just for themselves, and

14  sacrificed the opportunity to potentially seek more lucrative damages awards or settlements had

15  they opted to pursue their claims on an individual basis.  Bernstein Decl. ¶¶ 9, 12; Garcia Decl.

16  ¶ 8, 11; Smith Decl. ¶ 12, 15.  Plaintiffs risked a great deal in order to bring this lawsuit.  Olivier

17  Decl. ¶ 106.  They attached their names to a lawsuit in an insular and small industry, for a case

18  that ended up lasting over eight years.  Plaintiff Smith became a target for retaliation as soon as

19  she joined the lawsuit.  Smith Decl. ¶ 6.  Plaintiffs endured, with the assistance of Class counsel,

20  years of tumultuous litigation that took time away from their work and home lives.  They played

21  an integral part in the litigation and achieved meaningful results for their fellow flight

22  attendants.  Olivier Decl. ¶ 107.

23       Accordingly, the Court should award a service payment of $25,000 to each of the

24  Plaintiffs "to compensate [them] for work done on behalf of the class, to make up for financial

25  or reputational risk undertaken in bringing the action, and . . . to recognize [their] willingness to

26  act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59

27  (9th Cir. 2009); *see Clark*, 175 Cal. App. 4th at 806; *Vietnam Veterans of America v. Central

28  *Intelligence Agency*, No. 09-CV-00037-CW, 2018 WL 4827397, at *1 (N.D. Cal. Oct. 4, 2018)

(approving service awards of $20,000 "given the lengthy duration of this litigation spanning almost a decade, Plaintiff' participation in discovery . . . and because their service awards will not prejudice the other class members and is unopposed by Defendant"); *Coates v. Farmers Group, Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) (holding "[t]he request for service awards . . . in the amount of $25,000 each is reasonable given the risks these Plaintiffs assumed and the amount of time they spent in conjunction with prosecuting this case"); *In re: High-tech Employee Antitrust Litigation*, No. 11-CV-2509-LHK, 2014 WL 10520478, at *2-3 (N.D. Cal. May 16, 2014) (awarding $20,000 services awards because "the Class Representatives have expended substantial time and effort in pursuing this litigation and have protected the interests of the Class"); *Willix v. Healthfirst, Inc*., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (service awards of $30,000, $15,000, and $7,500 in FLSA claim out of $7,675,000 settlement fund) (see 07 Civ. 1143, Docket # 311, ¶ 26).

The requested service awards of $25,000 to each of the three named Plaintiffs is warranted.  A $25,000 award constitutes less than .001% of the Final Common Fund Judgment. *See Cellphone Termination Fee Cases*, 186 Cal. App. 4th 1393 (approving service awards of less than 1.0% of gross settlement fund); *Thieriot v. Celtic Ins.*, No. C 10-04462 LB, 2011 WL 1522385, at *7–8 (N.D. Cal. Apr. 21, 2011) (approving service awards of 1.8% of gross settlement fund); *Ridgeway*, 269 F. Supp. 3d at 1002 (awarding $15,000 for each of 9 plaintiffs, which combined for 0.22% of $60 million settlement); *Low v. Trump Univ*., LLC, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 plaintiffs, which combined for 0.3% of $25 million settlement).

For these reasons, Class counsel respectfully request that the Court approve the requested service awards to Plaintiffs.

## IV.   CONCLUSION

For the reasons articulated above, Plaintiffs respectfully request that the Court grant their Motion, approve the Plan of Allocation, approve the attorneys' fees and expenses sought, and approve the service awards sought.

1    Dated: May 18, 2023                    OLIVIER & SCHREIBER LLP

2

3                                           By: _____
                                                Monique Olivier

4                                           *Attorneys for Plaintiffs and the Class*

5

6

7    *Additional Counsel for Plaintiffs and the Class*

8    JAMES E. MILLER (SBN 262553)
     (jemiller@millershah.com)
9    MILLER SHAH, LLP
     65 Main Street
10   Chester, CT 06412
     Telephone: (860) 526-1100

11   KOLIN C. TANG (SBN 279834)
     (kctang@millershah.com)
12   CHIHARU G. SEKINO (SBN 306589)
     (cgsekino@millershah.com)
13   MILLER SHAH, LLP
     1230 Columbia Street, Suite 1140
14   San Diego, CA 92101
     Telephone: (619) 235-2416
15

16   JAMES C. SHAH (SBN 260435)
     (jcshah@millershah.com)
17   MILLER SHAH, LLP
     1845 Walnut Street, Suite 806
18   Philadelphia, PA 19063
     Telephone: (610) 891-9880

19

20

21

22

23

24

25

26

27

28