UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIA BERNSTEIN, et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>VIRGIN AMERICA, INC., et al.,<br><br>　　　　Defendants. | Case No. 15-cv-02277-JST<br><br>**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION TO APPROVE THE PLAN OF ALLOCATION, ATTORNEY'S FEES AND EXPENSES, AND SERVICE AWARDS TO CLASS REPRESENTATIVES**<br><br>Re: ECF No. 478 |

Before the Court is Plaintiffs' unopposed motion to approve the plan of allocation, attorney's fees and expenses, and service awards. The factual and procedural background to this case is well known to the parties and is set forth in greater detail in several of this Court's prior orders. *See, e.g.,* ECF No. 456; ECF No. 121. On January 24, 2023, the Court entered an amended judgment in the amount of $30,976,831.87. After the addition of prejudgment and post-judgment interest, the total judgment is now $31,637,391.85 ("Common Fund Judgment"). ECF No. 468 ¶ 15. The parties subsequently reached an agreement with respect to an award of statutory fees. *See id.* ¶ 9. Plaintiffs filed the instant motion on May 18, 2023. The Court held a hearing on the motion on August 17, 2023. The Court will now grant the motion.

### A.   Plan of Allocation

"[T]he plan of distribution in [an] adjudicated class action is subject to the same standards that apply to the allocation of a class settlement fund, i.e., 'the distribution plan must be fair, reasonable and adequate.'" *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *2 (N.D. Cal. Aug. 23, 2018) (quoting *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)). "A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable." *Id.*

Plaintiffs' Plan of Allocation will reimburse class members based on the extent of their injuries. The Plan provides that each class member shall receive their pro rata share of the "Net Distribution Amount"—the Common Fund Judgment less attorney's fees, costs, service awards, and the amount payable to the California Labor & Workforce Development Agency ("LWDA")—based upon that class member's payroll data. ECF No. 469-1 ¶ 1.3.1; ECF No. 470 ¶ 13. Once the class administrator calculates the amount distributable to each class member and notifies class members of their respective amounts, class members will have 75 days to submit additional information or documentation to the class administrator to challenge that calculation. ECF No. 469-1 ¶ 1.3.2. The Plan further provides that the class administrator will issue checks to class members that will remain valid for 120 days and that, after 90 days, the class administrator will attempt to contact all class members that have not cashed their checks. *Id.* ¶¶ 1.3.2, 1.4.

The Plan also calls for unclaimed funds to be distributed to Legal Aid at Work as a *cy pres* beneficiary. *See id.* ¶ 1.7. There is a clear "driving nexus between the plaintiff class and the *cy pres* beneficiar[y]," as the plaintiff class comprises aggrieved employees who were denied wages owed, and Legal Aid at Work provides legal assistance to workers and working families. *Dennis v. Kellogg Co.*, 679 F.3d 858, 865 (9th Cir. 2012) (quoting *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011)). Accordingly, the *cy pres* award is "guided by the objectives of the underlying" California labor laws and "the interests of the silent class members," *id.* at 865 (quoting *Nachshin*, 663 F.3d at 1034), and it does not "benefit a group 'too remote from the plaintiff class,'" *id.* (quoting *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990)).

For these reasons, the Court concludes that the Plan of Allocation is fair, reasonable, and adequate and approves the Plan.

**B.     Attorney's Fees**

"Calculation of attorney's fees awards in cases brought under state law is a substantive matter to which state law applies." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 809 (9th Cir. 2018). This case "is a 'hybrid' class action" insofar as "it was initiated under a statute with a fee-shifting provision, but it reached a judgment creating a common fund." *Ridgeway v. Wal-Mart*

2

*Stores Inc.*, 269 F. Supp. 3d 975, 982–83 (N.D. Cal. 2017) (quoting *Sobel v. Hertz Corp.*, 53 F. Supp. 3d 1319, 1324 (D. Nev. 2014)). "In such instances, California courts permit plaintiffs to seek both attorneys' fees both under the fee-shifting law and through the common fund." *Id.*; *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The award of attorneys' fees in a class action settlement is often justified by the common fund or statutory fee-shifting exceptions to the American Rule, and sometimes by both."). In California, "regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery." *In re Consumer Privacy Cases*, 176 Cal. App. 4th 545, 558 (2009) (quoting *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 n.11 (2008)). And "while the California Supreme Court recognized the Ninth Circuit's 25% benchmark for percentage awards in common fund cases, it did not adopt such a benchmark for California cases." *Ridgeway*, 269 F. Supp. 3d at 999. Courts consider "the risks and . . . value of the litigation" as a function of "contingency, novelty, and difficulty," as well as "the skill shown by counsel, the number of hours worked[,] and the asserted hourly rates." *Lafitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 504 (2016).

Plaintiffs seek attorney's fees in the amount of $10,441,409, which equals 33% of the Common Fund Judgment. ECF No. 469 ¶ 10. However, Defendants have agreed to pay $6,395,874.95 in statutory fees, *id.*, to which Plaintiffs are entitled under Sections 218.5, 1194, and 2699(g)(1) of the California Labor Code, and under Section 1021.5 of the California Code of Civil Procedure. *See MacDonald v. Ford Motor Co.*, 142 F. Supp. 3d 884, 895 (N.D. Cal. 2015). That $6,395,874.95 payment will be credited against the $10,441,409 fee request such that only $4,045,534.49 will be paid from the $31,637,391.85 Common Fund Judgment. ECF No. 469 ¶ 10. Plaintiffs thus functionally seek a fee payment of 12.8% of the Common Fund Judgment.

The Court finds the fee award to be reasonable under the circumstances. Plaintiffs' counsel litigated this case through to judgment over a span of nearly eight years. The case itself concerned complex and novel questions of law, *see generally Bernstein v. Virgin Am., Inc.,* 3 F.4th 1127 (9th Cir. 2021), one of which was undecided by the California Supreme Court until after the parties litigated the case through summary judgment, *see* ECF No. 456 at 3 (noting that,

in partially reversing this Court's grant of summary judgment, the Ninth Circuit "rel[ied] on a California Supreme Court decision issued while [Defendants'] appeal was pending"), and another of which the California Supreme Court has not decided at all, *see Bernstein*, 3 F.4th 1133 ("[T]here is no California Supreme Court case specifically interpreting the reach of the waiting time penalties statute for interstate employers . . . ."). This difficulty was exacerbated by the heavily contested nature of the proceedings in this case, which included motions for class certification, class decertification, reconsideration, sanctions, summary judgment, judgment, as well as an appeal to the Ninth Circuit, a petition for a writ of certiorari to the Supreme Court, and a motion to amend the judgment. Prior defense counsel sometimes persisted in repeating arguments that the Court had previously rejected, unnecessarily prolonging the proceedings. Throughout these proceedings, Plaintiffs' counsel demonstrated commendable skill, largely prevailing at each juncture and eventually securing a sizable judgment of $31,637,391.85. That judgment represents 100% of the losses incurred by 1,869 class members as to the successful claims. ECF No. 469 ¶¶ 11, 26. Counsel also represented Plaintiffs "on a purely contingent basis," *id.* ¶ 85, and thus expended over 7300 hours of attorney time at the risk of obtaining no compensation for their efforts, *see* ECF No. 469-2 at 2. The value of this litigation in relation to the substantial risks undertaken by counsel justify an award in the amount requested, particularly given that class members will pay only part of the fees, functionally representing 12.8% of the Common Fund Judgment.

The reasonableness of the award is confirmed by counsel's lodestar. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("Calculation of the lodestar . . . provides a check on the reasonableness of the percentage award."). Courts frequently award "[m]ultiples ranging from one to four . . . in common fund cases when the lodestar method is applied." *Vizcaino*, 290 F.3d at 1052 n.6 (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998)). California courts consider the following factors in determining the appropriate multiplier: "(1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) the extent to which the nature of the litigation precluded other employment by the attorneys, (4) the contingent nature of the fee award."

4

*Ketchum v. Moses*, 24 Cal. 4th 1122, 1132 (2001). Here, counsel's lodestar is $5,844,319.50, *see* ECF No. 469-2, and counsel's hours are sufficiently documented, *see id.*; ECF No. 469-3; *see also Ridgeway*, 269 F. Supp. 3d at 987 ("California courts have . . . approved fee awards based on declarations describing the hours worked on various tasks, without providing underlying time records of the hours worked and the type of work performed."). Counsel's requested fee award of $10,441,409 produces a lodestar multiplier of 1.79, which is appropriate for the reasons discussed above. The Court therefore approves counsel's fee request.

**C.    Expenses**

"[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) (quoting *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016)). To support an award of costs and expenses, Plaintiffs should file an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable. *Wren v. RGIS Inventory Specialists*, No. 06-cv-05778-JCS, 2011 WL 1230826, at *29–30 (N.D. Cal. Apr. 1, 2011), *supplemented*, No. 06-cv-05778-JCS, 2011 WL 1838562 (N.D. Cal. May 13, 2011).

Counsel requests $575,293.38 in litigation expenses to be paid from the Common Fund Judgment. Plaintiffs support that request with an itemized list of expenses and copies of receipts, all of which detail expenses incurred in relation to this litigation. *See* ECF Nos. 469-4 & 469-5. Plaintiffs will also receive $40,000 from Defendants as reimbursement for costs recoverable under the applicable statutes. ECF No. 469 ¶ 4. The Court finds counsel's expenses reasonable and grants the request.

**D.    Service Awards**

Counsel requests that the Court approve service awards to Class Representatives Julia Bernstein, Esther Garcia, and Lisa Marie Smith in the amount of $25,000 each, or 0.001% of the Common Fund Judgment. "Such awards are discretionary and are intended to compensate class

5

representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (internal citation omitted). The Court should consider:

> (1) the actions the plaintiff has taken to protect the interests of the class; (2) the degree to which the class has benefitted from those actions; (3) the duration of the litigation and the amount of time and effort the plaintiff expended in purs[u]ing it; and (4) the risks to the plaintiff in commencing the litigation, including reasonable fears of workplace retaliation, personal difficulties, and financial risks.

*Wren*, 2011 WL 1230826, at *32 (N.D. Cal. Apr. 1, 2011). "[C]ourts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

In this district, an incentive award of $5,000 "is presumptively reasonable."[1] *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012). A $25,000 service award significantly "exceeds the typical incentive award in the Ninth Circuit[.]" *Louangamath v. Spectranetics Corp.*, No. 18-cv-03634-JST, 2023 WL 3579319, at *1 (N.D. Cal. Feb. 16, 2023) (collecting cases). "Courts will, however, grant an award that exceeds $5000 when it is warranted." *Id.* at *2 (collecting cases); *see Coates v. Farmers Group, Inc.*, No. 15-CV-01913-LHK, 2016 WL 5791413, at *2 (N.D. Cal. Sept. 30, 2016) ([T]he request for service awards . . . in the amount of $25,000 each is reasonable given the risks these Plaintiffs assumed and the amount of time they spent in conjunction with prosecuting this case"). For example, in *In re: High-tech Employer Antitrust Litigation*, No. 11-cv-2509-LHK, 2014 WL 10520478, at *2–3 (N.D. Cal. May 16, 2014), the court granted a $20,000 service award to each of six class representatives from a $20,000,000 settlement fund, or 0.1% of the fund. The court reasoned that "the Class Representatives have expended substantial time and effort pursuing this litigation, and

---

[1] At some point, the common law will have to reckon with inflation. $5,000 in February 2012, when the *Harris* decision was issued, had the same buying power as $6,790 has today. Bureau of Labor Stat., CPI Inflation Calculator, https://www.bls.gov/data/inflation_calculator.htm (measured as of September 2023). Because the Court approves incentive awards that greatly exceed the presumptive amount, it does not address the question of inflation further.

6

1  in doing so have protected the interest in the class"; that "the Class has benefitted from the efforts
2  of the Class Representatives" who "face some risk of retaliation, particularly in the employment
3  context"; and that "[e]ach Class Representative expressed a fear that other . . . companies or
4  clients might not want to work with them in the future due to their role in this case." *Id.*

5  Here, similar considerations favor an award in excess of $5,000 for each of the three Class
6  Representatives.  The Class Representatives have expended substantial time and effort pursuing
7  this litigation over a span of nearly eight years.  They worked with counsel to pull documents,
8  gather case-related information, respond to discovery, attend phone and in-person meetings,
9  discuss strategy, attend mediation and other court proceedings, attend their depositions, read case-
10 related filings, and communicate with class members about the status of the case. ECF No. 471 ¶¶
11 7, 10; ECF No. 472 ECF No. 473 ¶¶ 8, 11; ECF No. 472 ¶ 11, 14.  In connection with this case,
12 Bernstein spent approximately 150 hours, ECF No. 473 ¶ 11, Garcia spent approximately 130
13 hours, ECF No. 471 ¶ 10, and Smith spent over 500 hours, ECF No. 472 ¶ 4.  The Class
14 Representatives' efforts have also benefitted a class of approximately 1,869 members, ECF No.
15 469 ¶ 26, and resulted in a sizable judgment of $31,637,391.85, which represents 100% of the
16 losses incurred by class members as to the successful claims, *id.* ¶ 11.  The average pro rata
17 distribution of that judgment is approximately $8,900, and 20% of the class will receive
18 distributions that exceed $15,000.  ECF No. 486 at 4.

19  Further, the Class Representatives also face a risk of retaliation as employees in the airline
20 industry.  Smith, for example, is still employed by Defendant Alaska Airlines, Inc. ("Alaska").
21 ECF No. 472 ¶ 6.  After the amended complaint listing Smith's name was filed, Alaska began to
22 investigate Smith for uniform violations and performance concerns.  *Id.*  Smith additionally
23 expressed a fear of losing her job because of her active participation in this litigation.  *Id.*  Finally,
24 the Class Representatives' willingness to act as private attorneys general warrants recognition.
25 The judgment secures more than $12 million in civil penalties under the Private Attorneys General
26 Act of 2004, Cal. Lab. Code § 2699 *et seq.*, 75% of which will be paid to the LDWA.

27 However, courts adjust the amount of service awards "commensurate with the time they
28 each expended" in connection with the litigation.  *Wren*, 2011 WL 1230826, at *35.  Smith's 500

hours far exceeds Bernstein's 150 hours and Garcia's 130 hours. Additionally, Bernstein and Garcia did not express similar fears of retaliation as did Smith. Accordingly, the Court approves service awards of $25,000 for Smith, $12,000 for Bernstein, and $12,000 for Garcia.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion is granted in part and denied in part for the reasons set forth above.

**IT IS SO ORDERED.**

Dated: November 3, 2023



JON S. TIGAR
United States District Judge